Raymond A. Cardozo, Esq. (Bar No. 173263)
Emily F. Lynch, Esq. (Bar No. 324055)
**REED SMITH LLP**
101 Second Street, Suite 1800
San Francisco, CA 94105
Telephone: (415) 543-8700
Facsimile: (415) 391-8269
E-mail: rcardozo@reedsmith.com
E-mail: elynch@reedsmith.com

Derek J. Baker, Esq. (admitted *pro hac vice*)
**REED SMITH LLP**
Three Logan Square,
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420
E-mail: dbaker@reedsmith.com

Casey D. Laffey, Esq. (admitted *pro hac vice*)
Kurt F. Gwynne, Esq. (admitted *pro hac vice*)
**REED SMITH LLP**
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
E-mail: claffey@reedsmith.com
E-mail: kgwynne@reedsmith.com

*Counsel to the Federal Deposit Insurance Corporation,*
*as Receiver for Silicon Valley Bank and the*
*Federal Deposit Insurance Corporation as*
*Receiver for Silicon Valley Bridge Bank, N.A.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| SVB FINANCIAL GROUP,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Silicon Valley Bank and Silicon Valley Bridge Bank, N.A.,<br><br>Defendant. | Case No. 5:24-cv-01321-BLF<br><br>**FDIC-R1 AND FDIC-R2'S NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>Judge: Hon. Beth Labson Freeman<br>Action Filed: March 5, 2024<br>Hearing Date: September 5, 2024<br>Time: 9:00 a.m.<br>Courtroom: 3 – 5th Floor<br><br>[*Filed concurrently with [Proposed] Order Granting FDIC-R1 and FDIC-R2's Motion to Dismiss; Declaration of Luis Mayorga in Support of Motion to Dismiss*] |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES, COUNSEL OF RECORD, AND THE CLERK OF THE COURT:

PLEASE TAKE NOTICE that at 9:00 a.m. on September 5, 2024, or as on thereafter as the matter may be heard, before the Honorable Beth Labson Freeman, United States District Judge for the Northern District of California, the Federal Deposit Insurance Corporation, as receiver for Silicon Valley Bank ("FDIC-R1") and as receiver for Silicon Valley Bridge Bank, N.A. ("FDIC-R2"), will and hereby does move for dismissal of this action (except, as explained below, for a portion of Count I against FDIC-R1).

For lack of subject matter jurisdiction under Rule 12(b)(1), the Court should dismiss Counts II, III, V, VI, VII and VIII. For failure to state a claim under Rule 12(b)(6), FDIC-R1 the Court to dismiss every claim against FDIC-R1 in the Complaint in its entirety, except that FDIC-R1 seeks to dismiss Count I (Breach of Contract) only to the extent it seeks prejudgment interest and lost earnings. FDIC-R2 respectfully moves the Court to dismiss every claim against FDIC-R2 in the Complaint in its entirety.

This motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities; the Declaration of Luis Mayorga of the FDIC in Support of the Motion to Dismiss; the exhibits to the foregoing; the arguments of counsel; and all other material that may properly come before the Court.

Dated: May 10, 2024

**REED SMITH LLP**

By: */s/ Raymond Cardozo*
    Raymond A. Cardozo

*Counsel to the Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank, and the Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bridge Bank, N.A.*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF CONTENTS...................................................................................................... i

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

INTRODUCTION ............................................................................................................ 1

BACKGROUND .............................................................................................................. 3

    I.     The Collapse of Silicon Valley Bank and the Systemic Risk Exception...................... 3

    II.    SVBFG's Deposits at SVB ............................................................................... 4

    III.   SVBFG's Submitted Claims in the FIRREA Claims Processes........................... 4

    IV.   SVBFG's Chapter 11 Case ............................................................................... 5

STATEMENT OF ISSUES TO BE DECIDED ............................................................... 5

LEGAL STANDARDS ..................................................................................................... 7

        A.    Lack of Subject Matter Jurisdiction.................................................. 7

        B.    Failure to State a Claim Upon Which Relief May Be Granted........................ 7

ARGUMENT .................................................................................................................... 8

    I.     The Court Lacks Subject Matter Jurisdiction Over Counts II (Estoppel), III (Turnover), Count V (CFC), Count VI (NBA), Count VII (Declaratory Judgment), and Count VIII (Taking). .................................................................... 8

    II.    Count I Fails to Allege a Plausible Claim (a) Against FDIC-R2 and (b) Against FDIC-R1 for Prejudgment Interest or Lost Profits. ................................... 9

    III.   Count Two Against the FDIC-Rs Fails to State a Claim for "Estoppel."................... 11

        A.    Equitable Estoppel Is Not an Independent Cause of Action........................... 11

        B.    Equitable and Promissory Estoppel Cannot Be Asserted Against the FDIC. .............................................................................................. 12

        C.    The Complaint Fails to State a Claim for Promissory Estoppel. ................... 12

    IV.   Count III Against the FDIC-Rs Fails to State a Turnover Claim under Section 542 of the Bankruptcy Code. ................................................................. 15

    V.    Count IV Fails to State a Claim Against FDIC-Rs for Violation of the Automatic Stay................................................................................................ 16

    VI.   Count V Fails to State a Claim Against FDIC-R1 under Section 1406 or 681 of the CFC. ........................................................................................... 18

    VII.   Count VI Against FDIC-R2 Fails to State a Claim under the NBA. ........................ 20

    VIII.  Count VII (Declaratory Judgment) Against the FDIC-Rs Fails to State a Claim. .................................................................................................. 21

    IX.   Count VIII Fails to Assert a Takings Claim Against FDIC-R1 and FDIC-R2........... 24

    X.    Count IX Against the FDIC-Rs Fails to State a Claim for Conversion. ................... 24

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

XI.  Each of Counts X and XI against FDIC-R1 and Count XII against the FDIC-Rs Fails to State a Claim for Breach of Contract. ........................................................ 26

A.  Counts X, XI and XII Are Barred by 12 U.S.C. §§ 1821(d)(9)(A) and 1823(e). .............................................................................................. 26

B.  Counts X, XI and XII Also Fail to State a Claim under California Law. ........ 27

CONCLUSION .................................................................................................... 29

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF AUTHORITIES

**Cases**

*Anchev v. 335 West 38th St. Coop. Corp. (In re Anchev)*,
2009 Bankr. LEXIS 906 (Bankr. S.D.N.Y. Apr. 15, 2009)........................................17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................7, 8, 16, 28

*Balboa Cap. Corp. v. Shaya Med. P.C.*,
2021 U.S. Dist. LEXIS 246877 (C.D. Cal. Aug. 31, 2021).................................20

*Bank of Marin v. England*,
385 U.S. 99 (1966)....................................................................................17

*Barnhill v. Johnson*,
503 U.S. 393 (1992).............................................................................15, 25

*Battista v. FDIC*,
195 F.3d 1113 (9th Cir. 1999) ...........................................10, 11, 19, 21

*Be In, Inc. v. Google Inc.*,
2013 U.S. Dist. LEXIS 147047 (N.D. Cal. Oct. 9, 2013)...................29

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................7, 8, 16

*Beluca Ventures LLC v. Aktiebolag*,
622 F. Supp. 3d 806 (N.D. Cal. 2022)....................................24

*Bennett v. One W. Bank*,
2011 U.S. Dist. LEXIS 67459 (S.D. Cal. June 23, 2011)..................25

*Bernard v. Sheaffer (In re Bernard)*,
96 F.3d 1279 (9th Cir. 1996) ..........................................15, 25

*BKWSpokane, LLC v. FDIC*,
663 Fed. Appx. 524 (9th Cir. 2016).....................................12

*Bodungen v. Bank of America*,
1992 U.S. App. LEXIS 28443 (9th Cir. Oct. 28, 1992) .................25

*British Columbia Inv. Co. v. FDIC.*,
420 F. Supp. 1217 (S.D. Cal. 1976)...................................13

*Chang v. Redding Bank of Commerce*,
29 Cal. App. 4th 673 (1994) ...........................................15

*Chemique Pharms., Inc. v. FDIC*,
2010 U.S. Dist. LEXIS 153384 (C.D. Cal. Jan. 25, 2010) .................10

*Chevron Corp. v. Naranjo*,
667 F.3d 232 (2d Cir. 2012) .............................................22

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

*Chie v. Citigroup, Inc.*,
   2021 U.S. Dist. LEXIS 31554 (N.D. Cal. Feb. 18, 2021) ............................................... 25

*Citizens Bank v. Strumpf*,
   516 U.S. 16 (1995)...................................................................................... 15, 17, 25

*City of Chi. v. Fulton*,
   141 S. Ct. 585 (2021) .................................................................................................. 17

*City of Reno v. Netflix, Inc.*,
   52 F.4th 874 (9th Cir. 2022) ....................................................................................... 22

*Collins Dev. v. Silver State Bank*,
   2009 U.S. Dist. LEXIS 146433 (D. Nev. Dec. 23, 2009) ................................................ 9

*CommoLoCo, Inc. v. Rivera-Polanco*,
   2010 U.S. Dist. LEXIS 112452 (D.P.R. Oct. 21, 2010) ............................................... 19

*Creasy v. McGarry (In re Abingdon Orthopedic Assocs., P.C.)*,
   2012 Bankr. LEXIS 6282 (W.D. Va. Oct. 11, 2012) ............................................. 15, 17

*Crocker-Citizens Nat'l Bank v. Control Metals Corp.*,
   566 F.2d 631 (9th Cir. 1977) .................................................................................. 15, 25

*De La Torre v. CashCall, Inc.*,
   854 F.3d 1082 (9th Cir. 2017) ..................................................................................... 20

*DeSoto v. Yellow Freight Sys., Inc.*,
   957 F.2d 655 (9th Cir. 1992) ....................................................................................... 11

*Deutsche Bank Nat'l Trust Co. v. FDIC*,
   784 F. Supp. 2d 1142 (C.D. Cal. 2011) .................................................................... 9, 24

*D-F Fund VIII, L.L.C. v. Valley Ranch Dev. Co.*,
   1999 U.S. Dist. LEXIS 1777 (N.D. Tex. Feb. 11, 1999) ............................................. 24

*Donohue v. Apple, Inc.*,
   871 F. Supp. 2d 913 (N.D. Cal. 2012) ........................................................................ 28

*E. Enters. v. Apfel*,
   524 U.S. 498 (1998)....................................................................................................... 9

*Far West Fed. Bank, S.B. v. Off. of Thrift Supervision*,
   119 F.3d 1358 (9th Cir. 1997) ..................................................................................... 10

*FDIC v. Ching*,
   2016 U.S. Dist. LEXIS 149910 (E.D. Cal. Oct. 28, 2016) ........................................... 13

*FDIC v. Hsing*,
   2012 U.S. Dist. LEXIS 113193 (N.D. Cal. Aug. 10, 2012) ......................................... 21

*FDIC V. Meyer*,
   510 U.S. 471 (1994)..................................................................................................... 26

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**FDIC-R1 AND FDIC-R2'S NOTICE OF MOT. & MOT. TO DISMISS**
Case No. 5:24-cv-01321-BLF

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*FDIC v. San Diego Cmty. Hous. Corp.*,
  2010 U.S. Dist. LEXIS 158724 (S.D. Cal. March 3, 2010) ........................................ 14

*Fed. Sav. & Loan Ins. Corp. v. Musacchio*,
  695 F. Supp. 1053 (N.D. Cal. 1988) ......................................................................... 13

*Feigel v. FDIC*,
  935 F. Supp. 1090 (S.D. Cal. 1996) ............................................................................. 9

*First Indiana Fed. Sav. Bank v. FDIC*,
  964 F.2d 503 (5th Cir. 1992) .................................................................................... 21

*First Nat'l Ins. Co v. Geo Grout, Inc.*,
  2010 U.S. Dist. LEXIS 124997 (N.D. Cal. Nov. 12, 2010) ....................................... 23

*Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*,
  209 Cal.App.4th 1118 (2012) .................................................................................... 11

*Frazier v. Colonial Bank*,
  2011 U.S. Dist. LEXIS 22630 (M.D. Ala. Feb. 16, 2011) ......................................... 22

*Froman v. Fein (In re Froman)*,
  566 B.R. 641 (Bankr. S.D.N.Y. 2017) ....................................................................... 17

*GECCMC 2005-C1 Plummer St. Off. Ltd. P'ship v. J.P. Morgan Chase Bank, Nat'l Assoc.*,
  671 F.3d 1027 (9th Cir. 2012) .................................................................................. 19

*Hamilton v. Greenwich Invs. XXVI, LLC*,
  195 Cal. App. 4th 1602 (2011) .................................................................................. 27

*Hammerling v. Google LLC*,
  615 F. Supp. 3d 1069 (N.D. Cal. 2022) ..................................................................... 29

*In re Charter Co.*,
  913 F.2d 1575 (11th Cir. 1990) ................................................................................. 16

*In re Even St. Prods.*,
  2020 U.S. Dist. LEXIS 141267 (C.D. Cal. Aug. 6, 2020) .......................................... 16

*Intercontinental Travel Mktg. v. FDIC*,
  45 F.3d 1278 (9th Cir. 1994) ............................................................................. 8, 9, 22

*Jablon v. United States*,
  657 F.2d 1064 (9th Cir. 1981) ............................................................................. 11, 12

*Joyce v. Devastey*,
  2013 U.S. Dist. LEXIS 6392 (E.D. Pa. Jan. 16, 2013) .............................................. 22

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) ..................................................................................................... 7

*Krottner v. Starbucks Corp.*,
  406 Fed. App'x 129 (9th Cir. 2010) ........................................................................... 29

**FDIC-R1 AND FDIC-R2'S NOTICE OF MOT. & MOT. TO DISMISS**
Case No. 5:24-cv-01321-BLF

*Lawrence v. Wells Fargo Bank, N.A.*,
　2014 U.S. Dist. LEXIS 81278 (N.D. Cal. June 13, 2014) .................................................. 11

*Lee v. Los Angeles*,
　250 F.3d 668 (9th Cir. 2001) ............................................................................................... 8

*Marshack v. Tapager (In re Motivation Res.)*,
　158 B.R. 184 (Bankr. C.D. Cal. 1993) .............................................................................. 11

*McCaugherty v. Siffermann*,
　772 F. Supp. 1128 (N.D. Cal. 1991) .................................................................................. 27

*McKinley v. FDIC*,
　807 F. Supp. 2d 1 (D.D.C. 2011) ....................................................................................... 13

*Mersnick v. USProtect Corp.*,
　2007 U.S. Dist. LEXIS 68686 (N.D. Cal. Sept. 6, 2007) .................................................. 28

*Metro Cty. Title v. FDIC*,
　13 F.3d 883 (5th Cir. 1994) ............................................................................................... 24

*Mindys Cosmetics, Inc. v. Dakar*,
　611 F.3d 590 (9th Cir. 2010) ............................................................................................. 25

*Moncada v. W. Coast Quartz Corp.*,
　221 Cal. App. 4th 768 (2013) ............................................................................................ 12

*Mountaineer Coal Co. v. Liberty Mut. Ins. Co. (In re Mountaineer Coal Co.)*,
　247 B.R. 633 (W.D. Va. 2000) .......................................................................................... 17

*MTB Enters. v. ADC Venture 2011-2, LLC*,
　780 F.3d 1256 (9th Cir. 2015) ........................................................................................... 23

*Multibank 2009-1 Res-ADC Venture, LLC v. Pinecrest at Neskowin, LLC*,
　2013 U.S. Dist. LEXIS 51660 (D. Ore. Apr. 10, 2013) .................................................... 19

*Nathanson v. Cardtronics, Inc.*,
　2009 U.S. Dist. LEXIS 136167 (C.D. Cal. Mar. 26, 2009) .............................................. 20

*Nguyen v. Stephens Inst.*,
　529 F. Supp. 3d 1047 (N.D. Cal. 2021) ............................................................................ 25

*Northstar Fin. Advisors Inc. v. Schwab Invs.*,
　779 F.3d 1036 (9th Cir. 2015) ........................................................................................... 27

*O'Connor v. Uber Techs., Inc.*,
　58 F. Supp. 3d 989 (N.D. Cal. 2014) ................................................................................ 29

*O'Melveny & Myers v. FDIC*,
　512 U.S. 79 (1994) ...................................................................................................... 11, 27

*Opera Plaza Residential Parcel Homeowners Ass'n v. Hoang*,
　376 F.3d 831 (9th Cir. 2004) ............................................................................................. 19

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– iv –

*Oster v. Caithness Corp.*,
  2017 U.S. Dist. LEXIS 140198 (N.D. Cal. Aug. 30, 2017) ........................................ 28

*R.J. Cardinal Co. v. Ritchie*,
  218 Cal. App. 2d 124 (1963) ........................................................................................ 10

*Reliance Ins. Co. v. U.S. Bank, N.A.*,
  143 F.3d 502 (9th Cir. 1998) ....................................................................................... 25

*Resol. Tr. Corp. v. Allen*,
  16 F.3d 568 (4th Cir. 1994) ......................................................................................... 27

*Rosenfeld v. JP Morgan Chase Bank, N.A.*,
  732 F. Supp. 2d 952 (N.D. Cal. 2010) ........................................................................ 22

*S.G. Phillips Constructors, Inc. v. Burlington (In re S.G. Phillips Constructors, Inc.)*,
  45 F.3d 702 (2d Cir. 1995) .......................................................................................... 23

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) ....................................................................................... 7

*Somers v. Apple, Inc.*,
  729 F.3d 953 (9th Cir. 2013) ......................................................................................... 7

*St. Paul Mercury Ins. Co. v. Montgomery Cnty. Bankshares, Inc.*,
  2014 U.S. Dist. LEXIS 185050 (Bankr. N.D. Ga. Dec. 30, 2014) .............................. 22

*Stanford Health Care v. Blue Cross Blue Shield of N.C., Inc.*,
  2022 U.S. Dist. LEXIS 11482 (N.D. Cal. Jan. 21, 2022) ........................................... 29

*Sternberg v. Johnston*,
  595 F.3d 937 (9th Cir. 2009) ....................................................................................... 17

*Stevens v. FDIC*,
  2011 U.S. Dist. LEXIS 100090 (C.D. Cal. Aug. 25, 2011) ......................................... 11

*Travellers Int'l AG v. Robinson*,
  982 F.2d 96 (3d Cir. 1992) .......................................................................................... 23

*United States v. Inslaw, Inc.*,
  932 F.2d 1467 (D.C. Cir. 1992), *cert. denied*, 502 U.S. 1048 (1992) ....................... 17

*United States v. Kernen Constr.*,
  349 F. Supp. 3d 988 (E.D. Cal. 2018) ......................................................................... 23

*Vikco Ins. Servs, Inc. v. Ohio Indem. Co.*,
  70 Cal. App. 4th 55 (1999) .......................................................................................... 20

*Vinton v. Trustbank Sav., F.S.B.*,
  798 F.Supp. 1055 (D. Del. 1992) ................................................................................ 21

*Voris v. Lampert*,
  7 Cal. 5th 1141 (2019) ................................................................................................. 25

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Waldron v. FDIC*,
    935 F.3d 844 (9th Cir. 2019) ................................................................................ 23

*Westron v. Zoom Video Commc'ns, Inc.*,
    2023 U.S. Dist. LEXIS 77292 (N.D. Cal. 2023) ................................................... 27

*Willner v. Dimon*,
    849 F.3d 93 (4th Cir. 2017) .................................................................................... 9

**Statutes**

11 U.S.C. § 362(a)(3) ..................................................................................................... 16

11 U.S.C. § 542(b) .......................................................................................................... 16

12 U.S.C. § 1821(c)(2)(C) .............................................................................................. 14

12 U.S.C. § 1821(c)(3)(C) ........................................................................................ 13, 14

12 U.S.C. § 1821(d)(10)(A) ............................................................................................ 16

12 U.S.C. § 1821(d)(10)(A)-(B) ..................................................................................... 18

12 U.S.C. § 1821(d)(10)(B) ............................................................................................ 16

12 U.S.C. § 1821(d)(11) ................................................................................................... 4

12 U.S.C. § 1821(d)(13)(D) ............................................................................................ 23

12 U.S.C. § 1821(d)(2)(A)(i) ..................................................................................... 4, 27

12 U.S.C. § 1821(d)(2)(A)(i)(2) ....................................................................................... 4

12 U.S.C. § 1821(d)(5)(C)(i) ............................................................................................ 9

12 U.S.C. § 1821(d)(6) ................................................................................................... 22

12 U.S.C. § 1821(d)(6)(A) .............................................................................................. 23

12 U.S.C. § 1821(d)(9)(A) .............................................................................................. 27

12 U.S.C. § 1821(i)(2) ............................................................................................. *passim*

12 U.S.C. § 1821(i)(3) .............................................................................................. 19, 21

12 U.S.C. § 1821(j) ....................................................................................... 6, 12, 22, 24

12 U.S.C. § 1823(c)(1) .................................................................................................... 13

12 U.S.C. § 1823(c)(4) ...................................................................................................... 1

12 U.S.C. § 1823(c)(4)(A)(ii) ........................................................................................... 3

12 U.S.C. § 1823(c)(4)(F) ............................................................................................... 13

**FDIC-R1 AND FDIC-R2'S NOTICE OF MOT. & MOT. TO DISMISS**
Case No. 5:24-cv-01321-BLF

12 U.S.C. § 1823(c)(4)(G) ................................................................................ 1, 3

12 U.S.C. § 1823(c)(4)(G)(i) .................................................................................. 13

12 U.S.C. § 1823(e)(1)(A)-(D) .............................................................................. 27

12 U.S.C. § 1823(G)(i)(I)-(II) .................................................................................. 3

12 U.S.C. § 194 ...................................................................................................... 20

12 U.S.C. § 91 ........................................................................................................ 20

12 U.S.C. §1821(d)(13)(D)(i)-(ii) .......................................................................... 23

28 U.S.C. § 2679(a) ................................................................................................ 26

Cal. Fin. Code § 1406(c) ........................................................................................ 19

Cal. Fin. Code § 1406(d) ........................................................................................ 19

**Other Authorities**

2 BANKS & THRIFTS: GOVT ENFORCE & RECEIVERSHIP § 11.03(3)(c) (2024) ....................... 13

Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183, reprinted in 1989 U.S.C.C.A.N. 183 ("FIRREA") ................................................. *passim*

**Rules**

FED. R. CIV. P. 12(b)(1) ........................................................................................... 7

FED. R. CIV. P. 12(b)(6) ........................................................................................ 7, 8

FED. R. EVID. 201 ................................................................................................... 8

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**FDIC-R1 AND FDIC-R2'S NOTICE OF MOT. & MOT. TO DISMISS**
Case No. 5:24-cv-01321-BLF

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

On March 9, 2023, a bank run began against Silicon Valley Bank ("SVB"), a wholly-owned subsidiary of SVB Financial Group ("SVBFG"), precipitated by SVBFG's announcement of a $1.8 billion after-tax loss on the sale of securities and the failure of a proposal to raise capital. The run left SVB with insufficient reserves to pay its deposit liabilities. On March 10, 2023, the California Department of Financial Protection and Innovation ("CAFPI") closed SVB and appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver ("FDIC-R1"). In the wake of SVB's overnight collapse and without time to find a depository institution to acquire SVB's deposits, the FDIC created the Deposit Insurance National Bank of Santa Clara ("DINB") for payment of *insured* deposits only up to the $250,000 FDIC insurance limit.

When determining the resolution of a failed bank, the FDIC is ordinarily required to apply a least cost (to the Deposit Insurance Fund or "DIF") test. 12 U.S.C. § 1823(c)(4). An exception is when the Secretary of the Treasury ("Secretary"), upon the recommendation of the FDIC's Board of Directors and the Board of Governors of the Federal Reserve System, and after consultation with the President, determines that the application of the least cost test would have serious adverse effects on the country's economic conditions or financial stability and thus authorizes the "systemic risk exception" ("SRE") to the least cost test. 12 U.S.C. § 1823(c)(4)(G).

On March 12, 2023, the Secretary authorized the SRE, enabling the FDIC to provide exceptional assistance to resolve the simultaneous failures of SVB and Signature Bank. The FDIC exercised its discretion and implemented the SRE for SVB by taking the following steps: First, the FDIC organized a temporary, federally chartered bank, Silicon Valley Bridge Bank ("Bridge Bank"). Second, the FDIC (in its corporate capacity, "FDIC-C"), FDIC-R1 and the DINB rescinded the DINB purchase and assumption agreement which transferred the insured deposits to the DINB. Third, the FDIC-R1 transferred substantially all SVB's assets and deposit liabilities to Bridge Bank under a Transfer Agreement (as defined in the Complaint), thus protecting both *insured and uninsured deposits*. On Monday, March 13, 2023, three days after SVB's Friday failure, deposits were made accessible at Bridge Bank. Compl. ¶ 86; Dkt No. 1, Ex. 5 (press release).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 1 –

The transfers contemplated by the Transfer Agreement were not without limitations. As relevant here, the agreement required Bridge Bank to freeze any deposit account at FDIC-R1's direction and unconditionally (within six-months) permitted FDIC-R1 to rescind Bridge Bank's assumption of any deposit liability through issuance of a call notice. Upon recognizing that there were potential claims against SVBFG related to the failure of SVB, FDIC-R1 directed Bridge Bank to place a hold on SVBFG's deposit accounts and, two days after execution of the Transfer Agreement, issued a call notice rescinding Bridge Bank's assumption of SVBFG's deposit accounts.

In this litigation, SVBFG asserts an uninsured deposit claim against FDIC-R1 for $1.93 billion, the nominal balance of the SVBFG deposit liability that FDIC-R1 rescinded from Bridge Bank. The claim is a potential liability of FDIC-R1, subject to determination under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183, reprinted in 1989 U.S.C.C.A.N. 183 ("FIRREA"), including consideration by this Court of FDIC-R1's defenses and the statutory limit under 12 U.S.C. § 1821(i)(2). (SVBFG asserts the same uninsured deposit claim against the FDIC as receiver for Bridge Bank ("FDIC-R2" and together with FDIC-R1, the "FDIC-Rs"), although FDIC-R2 has no liability, contractual or statutory, on SVBFG's deposit claim.) Relying on press releases and other public statements – and a novel, unsupported interpretation of the systemic risk exception – SVBFG claims entitlement to full, immediate payment of the uninsured deposit liability, without regard to FDIC-R1's rights and the statutory limitation on liability. But SVBFG's theory runs counter to law. The broad discretion that Title 12 grants the FDIC when dealing with assets and liabilities of an insured deposit institution in receivership is unaffected by invocation of the SRE. And neither the Secretary's public statements nor the provisions of 12 U.S.C. § 1823(c)(4), governing the SRE, require FDIC-R1 or FDIC-R2 to pay SVBFG's uninsured deposit liability in full, without regard to any defenses, administrative procedures, or jurisdictional limits.

The Court should dismiss Count II (against FDIC-Rs), Count III (against FDIC-Rs), Count V (against FDIC-R1), Count VI (against FDIC-R2), Count VII (against FDIC-Rs) and Count VIII (against FDIC-Rs) for lack of subject matter jurisdiction. Subject to one exception, FDIC-R1 and FDIC-R2 respectfully move the Court to dismiss every claim against them in the Complaint in its

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

– 2 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

entirety for failure to state a claim. The only exception is that FDIC-R1 seeks to dismiss Count I (Breach of Contract) only to the extent it seeks prejudgment interest and lost earnings.

## BACKGROUND

### I.      The Collapse of Silicon Valley Bank and the Systemic Risk Exception

From 2000 through March 2023, SVBFG owned SVB. Compl. ¶ 42; Dkt. No. 1, Ex. 4. On March 10, 2023, CAFPI issued an order closing SVB and appointing FDIC-R1 as receiver. Compl. ¶ 48. That same day, the FDIC created DINB. Immediately thereafter, FDIC-C, FDIC-R1, and DINB entered into an agreement enabling DINB to pay all insured deposits (up to the $250,000 FDIC insurance limit) at SVB. *Id.* ¶ 51. As of March 10, 2023, SVBFG alleges that it had approximately $2.1 billion in three deposit accounts maintained at SVB. *Id.* ¶ 44.

On March 12, 2023, the Secretary, acting on the recommendation of the FDIC Board of Directors and the Board of Governors of the Federal Reserve System, and after consultation with the President, authorized the SRE pursuant to 12 U.S.C. § 1823(c)(4)(G). *Id.* ¶ 59; Dkt. No. 1, Ex. 8, ¶ 3. The Secretary's approval of the SRE exempted the FDIC from the statutory duty to resolve SVB in a manner that "is the least costly to the [DIF] of all possible methods" and provided the FDIC with broad discretion to take any action it deemed necessary to avoid or mitigate "serious adverse effects on economic conditions or financial stability." 12 U.S.C. §§ 1823(c)(4)(A)(ii) and (G)(i)(I)-(II). The FDIC's application of the SRE to SVB's receivership was novel. The SRE has rarely been invoked and had never been applied to a bank failure in which the FDIC was appointed as receiver.

After invocation of the SRE, FDIC-C, FDIC-R1, and DINB rescinded the DINB purchase and assumption agreement. To protect both insured and uninsured depositors, the FDIC organized Bridge Bank, to which FDIC-R1 transferred substantially all SVB's assets and deposit accounts under the terms of the Transfer Agreement. Compl. ¶¶ 66, 86-89; Dkt. No. 1, Ex. 5. Accordingly, by March 13, 2023, the FDIC-R1 had acted to protect depositors by facilitating the transfer of insured and uninsured deposits from SVB to Bridge Bank.

On March 27, 2023, the Office of the Comptroller closed Bridge Bank and named the FDIC as its receiver (*i.e.,* FDIC-R2). Compl. ¶ 102. On that same day, FDIC-R2 entered into a purchase and assumption agreement with First Citizens Bank & Trust Company, whereby First Citizens purchased

Bridge Bank's assets and assumed most of the remaining deposit liabilities. *Id*. First Citizens' assumption of liabilities did not include the SVBFG deposit liabilities. *Id*.

## II.     SVBFG's Deposits at SVB

As of March 10, 2023, SVBFG had approximately $2.1 billion in deposits at SVB. *Id*. ¶ 44. On March 13, 2023, Bridge Bank, operating under the Transfer Agreement, initially assumed liability for SVBFG's deposit accounts. *Id*. ¶¶ 67, 89. Over the next few days, SVBFG withdrew from Bridge Bank "approximately $180 million, *i.e.*, monies in excess of the $250,000 deposit insurance limit." *Id*. ¶ 90.

On March 15, 2023, FDIC-R1 exercised its right under the Transfer Agreement to call SVBFG's deposit liabilities back from Bridge Bank. *See id*. ¶ 96. As of March 16, 2023, FDIC-R1 had an uninsured deposit liability to SVBFG of approximately $1.93 billion. *See id*. ¶ 99. The liability gave rise to a potential second-priority claim in the SVB receivership, subject to FDIC-R1's defenses under the "Deposit Agreements" (as defined the Complaint), including the Deposit Agreement and Disclosure Statement dated May 31, 2020 (the "DA&DS"), which is incorporated into the Deposit Agreements, and applicable law, and the statutory limitation on the FDIC's liability. *See* 12 U.S.C. §§ 1821(d)(11), (d)(2)(A)(i), and (i)(2).

## III.     SVBFG's Submitted Claims in the FIRREA Claims Processes

On April 7 and 12, 2023, FDIC-R1 sent notices to SVBFG informing it that proofs of claim against FDIC-R1 were due on or before July 10, 2023. On May 2, 2023, FDIC-R2 similarly sent a notice to SVBFG informing SVBFG that proofs of claim against FDIC-R2 were due on or before July 10, 2023. *See* Compl. ¶¶ 5, 23.

On July 10, 2023, three months after receiving notice to file claims, SVBFG submitted its claims ("Claims"), including its deposit claim ("Deposit Claim"), to FDIC-R1 and FDIC-R2. *Id*. The Deposit Claim seeks payment from FDIC-R1 and FDIC-R2 of $1.93 billion. *Id*. ¶ 33. SVBFG's other claims relate to leases, vendors, employee obligations, and intercompany claims, without specifying any claim amounts. *See* Dkt. No 1, Exs. 8 and 9 (proofs of claim).

On January 5, 2024, FDIC-R1 and FDIC-R2 denied the Claims. *See* Compl. ¶ 24; Dkt. No. 1, Exs. 1 and 2. FDIC-R1, the only entity that had a deposit liability to SVBFG, denied the Deposit Claim

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

– 4 –

"due to the receiver's defenses." Dkt. No. 1, Ex. 1. (Notably, SVBFG complains that FDIC-R1 did not identify the particular defenses. Compl. ¶¶ 94 and 120. SVBFG has been aware that FDIC-R1 was investigating defensive claims and would assert defensive setoff rights. *Id.* SVBFG undoubtedly is now aware of the nature of FDIC-R1's affirmative setoff defenses, even if the time to assert those defenses in an answer has not yet come. *See* Order Striking Statement Regarding FDIC-R1's Defensive Setoff Rights, Dkt. 30.) FDIC-R2 denied the Deposit Claim because it was "not a liability" of FDIC-R2. Dkt. No. 1, Ex. 2. FDIC-R1 and FDIC-R2 denied the other, unquantified Claims as not proven to the receiver's satisfaction. Dkt. No 1, Ex. 1 and 2.

## IV.    SVBFG's Chapter 11 Case

On March 17, 2023, SVBFG petitioned for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* ("Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"). Compl. ¶ 20. On July 9, 2023, SVBFG commenced an adversary proceeding in the Bankruptcy Court against FDIC-R1, FDIC-R2, and FDIC-C, No. 23-01137 (Bankr. S.D.N.Y.). Compl. ¶ 23. The complaint asserted claims for turnover under section 542 of the Bankruptcy Code and for violation of the automatic stay (*i.e.*, the same claims asserted in Counts III and IV of the Complaint in this case). *Id.* On August 11, 2023, all three FDIC entities moved to dismiss the adversary proceeding. *Id.* ¶ 107. That same day, FDIC-R1 moved to withdraw the reference under 28 U.S.C. § 157(d). *Id.* ¶ 109. On December 13, 2023, Judge Cronan granted the motion to withdraw the reference. *Id.* On January 15, 2024, SVBFG requested that Judge Cronan stay the SDNY action while it pursues its claims in the litigation that are now before this Court. *Id.* ¶ 110. That stay request remains pending.

## STATEMENT OF ISSUES TO BE DECIDED

1.    Whether the Court lacks subject matter jurisdiction of Counts II (estoppel), III (turnover), V (California Financial Code), VI (National Bank Act), VII (declaratory judgment) and VIII ("takings" claim under the U.S. Constitution) because SVBFG failed to assert such claims in the FDIC-Rs' claim processes.

2.    Whether the Court lacks subject matter jurisdiction of Count VIII ("takings" claim) because the Federal Court of Claims has exclusive jurisdiction of such claim.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

3.    Whether Count I (breach of contract) fails to state a claim against (a) FDIC-R1 to the extent it seeks prejudgment interest and lost earnings and (b) FDIC-R2 in its entirety because FDIC-R2 has no liability for the Deposit Claim.

4.    Whether Count II (estoppel) fails to state a claim against the FDIC-Rs because (i) estoppel is not an independent cause of action, (ii) the FDIC has not waived its sovereign immunity, (iii) SVBFG cannot prevent the FDIC-Rs from exercising their duties under Title 12 of the U.S. Code, (iv) 12 U.S.C. § 1821(j) bars such relief, (v) the FDIC-Rs made no promise to pay the Deposit Claim without allowance, defensive setoffs, or application of the liability limitation in section 1821(i)(2), (vi) the Secretary of the Treasury's and the FDIC-C's statements or alleged promises are not binding on, or imputed to, the FDIC-Rs, and (vii) estoppel is inapplicable in light of the Deposit Agreements.

5.    Whether Count III (turnover) fails to state a claim because (i) the FDIC-Rs hold no property belonging to SVBFG, (ii) the Deposit Claim is disputed, and (iii) the Deposit Claim is subject to allowance, defensive setoff, and the liability limitation in 12 U.S.C. § 1821(i)(2).

6.    Whether Count IV (stay violation) fails to state a claim because (i) nonpayment of the disputed Deposit Claim does not violate the automatic stay, and (ii) the Deposit Claim is subject to the FIRREA claim processes, including with respect to allowance, defensive setoff, the liability limitation in 12 U.S.C. § 1821(i)(2), and the timing of payment.

7.    Whether Count V (California Financial Code) fails to state a claim because (i) sections 1406 and 681 do not create a private right of action, (ii) sections 1406 and 681 are irrelevant, and (iii) sections 1406 and 681 are pre-empted to the extent inconsistent with Title 12 of the U.S. Code.

8.    Whether Count VI (National Bank Act) fails to state a claim because (i) sections 91 and 194 do not create a private right of action, (ii) sections 91 and 194 are irrelevant, (iii) section 194's pro rata distribution requirement was superseded by 12 U.S.C. § 1821(i), and (iv) FDIC-R2 has no liability for the Deposit Claim.

9.    Whether Count VII (declaratory judgment) fails to state a claim because (i) the Declaratory Judgment Act does not provide an independent cause of action, (ii) the relief sought by SVBFG is moot, (iii) as a matter of law, the Claims are subject to the mandatory, exclusive FIRREA claims processes, and (iv) the request for declaratory relief violates 12 U.S.C. § 1821(j).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

10. Whether Count VIII ("takings" claim) fails to state a claim because (i) a takings claim must be asserted against the "United States," not the FDIC-Rs, and (ii) the FDIC-Rs did not, by declining SVBFG's payment demands, "take" any SVBFG property.

11. Whether Count IX (conversion) fails to state a claim because (i) it is duplicative of Count I, (ii) SVBFG, as a depositor, did not own the funds it deposited with SVB and, therefore, none of its property was converted, (iii) the Federal Tort Claims Act requires the conversion claim to be asserted against the United States, not the FDIC-Rs, and (iv) with respect to FDIC-R2, it never received deposits from SVBFG and has no liability on the Deposit Claim.

12. Whether Counts X (breach of contract), XI (implied-in-fact contract) and XII (breach of contract) fail to state a claim because (i) they are barred by 12 U.S.C. §§ 1821(d)(9)(A) and 1823(e), which require (among other things) the existence of a *written* agreement, and (ii) even if such written agreements existed, Counts X, XI, and XII fail to state plausible claims under California law.

## LEGAL STANDARDS

### A.   Lack of Subject Matter Jurisdiction

Rule 12(b)(1) provides for dismissal of claims due to lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). SVBFG bears the burden to show that the Court has subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.*

### B.   Failure to State a Claim Upon Which Relief May Be Granted

Rule 12(b)(6) recognizes the Court's power to dismiss a complaint for failure to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under *Twombly* and *Iqbal*, dismissal is proper "when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). Only a complaint

– 7 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

that alleges "enough facts to state a claim to relief that is plausible on its face" satisfies the test. *Twombly*, 550 U.S. at 570. A right to relief must rise "above the speculative level." *Id.* at 555. If a party does not "nudge[] [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570. A court ignores "mere conclusory statements" or "legal conclusions," which are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

In ruling on a Rule 12(b)(6) motion to dismiss, a court may consider documents relied upon but not attached to the complaint and matters of which the court can take judicial notice. *Lee v. Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *see* FED. R. EVID. 201. In Count I, SVBFG asserts a breach of contract claim against the FDIC-Rs but does not attach a copy of the underlying "Deposit Agreements" (as defined in paragraph 2 of the Complaint), including the DA&DS incorporated therein. Similarly, SVBFG makes allegations based on the Transfer Agreement (Compl. ¶¶ 89, 126), but also does not attach a copy of it. Accordingly, the Court should consider the actual text of the Deposit Agreements, including the DA&DS, and the Transfer Agreement, which are attached to the Declaration of Luis Mayorga in Support of the Motion to Dismiss (filed contemporaneously herewith), respectively, as Exhibits A, B and C.

## ARGUMENT

## I.   The Court Lacks Subject Matter Jurisdiction Over Counts II (Estoppel), III (Turnover), Count V (CFC), Count VI (NBA), Count VII (Declaratory Judgment), and Count VIII (Taking).

The Court lacks subject matter jurisdiction over SVBFG's claims for (i) estoppel (Count II) against FDIC-R1 and FDIC-R2; (ii) turnover under 11 U.S.C. § 542 (Count III) against FDIC-R1 and FDIC-R2; (iii) alleged violations of sections 1406 and 681 of the California Financial Code ("CFC") against FDIC-R1 (Count V); (iv) alleged violations of sections 91 and 194 of the National Banking Act ("NBA") against FDIC-R2 (Count VI); (v) declaratory judgment against FDIC-R1 and FDIC-R2 (Count VII) and (vi) for an alleged "taking" under the U.S. Constitution (Count VIII) against FDIC-R1 and FDIC-R2 because SVBFG waived those claims by failing to assert them in the Claims filed in the FDIC-Rs' claims processes. The Ninth Circuit "read[s] the claims bar date to be a jurisdictional requirement." *Intercontinental Travel Mktg. v. FDIC*, 45 F.3d 1278, 1284 (9th Cir. 1994). "Congress

– 8 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

expressly withdrew jurisdiction from all courts over any claim to a failed bank's assets that are made outside the procedure set forth in section 1821." *Collins Dev. v. Silver State Bank*, 2009 U.S. Dist. LEXIS 146433, *19 (D. Nev. Dec. 23, 2009). If the claim is not timely filed with the FDIC-R, FIRREA provides that the untimely claim "shall be disallowed and such disallowance shall be final." 12 U.S.C. § 1821(d)(5)(C)(i). No court has jurisdiction to hear a claim not submitted in the FIRREA claims process. *See Feigel v. FDIC,* 935 F. Supp. 1090, 1095 (S.D. Cal. 1996) ("the district courts do not have jurisdiction to hear claims that were not timely filed") (citing *Intercontinental Travel Marketing,* 45 F.3d at 1284). Thus, the Court should dismiss Counts V and VI for lack of subject matter jurisdiction.

Notably, with respect to Count VII, a claim for declaratory judgment is a "claim" within the meaning of FIRREA because the FDIC can provide declaratory relief. *See, e.g., Willner v. Dimon*, 849 F.3d 93, 107 (4th Cir. 2017). SVBFG, however, did not assert a request for declaratory judgment in the Claims.

With respect to Count VII for an alleged "taking" under the U.S. Constitution (the "Takings Claims"), this Court lacks jurisdiction because the claim was not asserted in the FDIC-Rs' claim processes. In addition, this Court lacks jurisdiction of such claim because, under the Tucker Act, the Court of Federal Claims has *exclusive jurisdiction* over any claim against the United States for money damages exceeding $10,000 that is "founded . . . upon the Constitution," including "[a] claim for just compensation under the Takings Clause." *See E. Enters. v. Apfel*, 524 U.S. 498, 520 (1998); *Deutsche Bank Nat'l Trust Co. v. FDIC*, 784 F. Supp. 2d 1142, 1169 (C.D. Cal. 2011) ("a claim for just compensation under the Takings Clause must be brought to the Court of Federal Claims in the first instance").

For the foregoing reasons, this Court lacks jurisdiction over Counts II, III, V, VI, VII and VIII.

**II.    Count I Fails to Allege a Plausible Claim (a) Against FDIC-R2 and (b) Against FDIC-R1 for Prejudgment Interest or Lost Profits.**

SVBFG alleges that both FDIC-R1 and FDIC-R2 breached the Deposit Agreements. But FDIC-R2 (receiver of Bridge Bank) is not liable for the Deposit Claims. Bridge Bank is not a party to

the Deposit Agreements between SVB and SVBFG. Unlike FDIC-R1, Bridge Bank, and therefore FDIC-R2, has no successor liability pursuant to the Deposit Agreements or by operation of law.

Nor can SVBFG assert that Bridge Bank or FDIC-R2 is liable for its Deposit Claim under the Transfer Agreement, which governed Bridge Bank's assumption of SVB's deposit liabilities. *See* Transfer Agr. § 2.2(a)(i). In the Transfer Agreement, FDIC-R1 reserved an unconditional right to issue a call notice rescinding Bridge Bank's assumption of any liability. *Id.* § 2.04. On March 15, 2023, two days after execution of the Transfer Agreement, FDIC-R1 exercised that right, issuing a call notice that rescinded Bridge Bank's assumption of the SVBFG deposit liabilities. *See* Compl. ¶ 96. This rescission, which ended Bridge Bank's agreement *with FDIC-R1* to pay SVBFG's deposit liabilities, was well before SVBFG filed any claim against Bridge Bank—thus undermining any basis for SVBFG's Deposit Claim against FDIC-R2.

SVBFG also cannot articulate a breach of contract claim based upon the Transfer Agreement as it is neither a party to, nor a third-party beneficiary of, that agreement. Transfer Agr. § 9.09. Even if SVBFG were a third-party beneficiary (it is not), longstanding California law recognizes that "parties to a third-party creditor beneficiary contract may rescind it at any time prior to the commencement of an action thereon by the beneficiary." *R.J. Cardinal Co. v. Ritchie*, 218 Cal. App. 2d 124, 149 (1963). In sum, Bridge Bank had no agreement with SVBFG. And any liability that Bridge Bank had for SVBFG's deposit claims was rescinded two days after it was assumed. Thus, long before Bridge Bank was placed in receivership, it ceased having any liability for SVBFG's deposit accounts. Because SVBFG has not provided any facts to support FDIC-R2's liability for the Deposit Claim, the Court must dismiss Count I as to FDIC-R2.

SVBFG seeks prejudgment interest and lost earnings in connection with the FDIC-Rs' alleged breach of the Deposit Agreements but is not entitled to those remedies as a matter of contract and law. "Whether prejudgment interest is permitted is a question of law[.]" *Battista v. FDIC*, 195 F.3d 1113, 1116 (9th Cir. 1999). As the Ninth Circuit held, prejudgment interest cannot be awarded against the FDIC because it "is not a commercial entity" and "Congress has not explicitly waived its immunity against interest." *Far West Fed. Bank, S.B. v. Off. of Thrift Supervision*, 119 F.3d 1358, 1367 (9th Cir. 1997); *Chemique Pharms., Inc. v. FDIC*, 2010 U.S. Dist. LEXIS 153384, *10 n.7 (C.D. Cal. Jan. 25,

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

2010). Two years after *Far West*'s decision, the court applied its holding to the FDIC in its capacity as receiver. *See Battista*, 195 F.3d at 1120-21.

SVBFG also is not entitled to lost earnings. As its heading states, Count I is a claim for breach of contract. The contracts at issue are the Deposit Agreements. Compl. ¶ 140. According to SVBFG, the FDIC-Rs breached the Deposit Agreements by failing to pay on demand. *Id.* ¶ 146. SVBFG asserts that the FDIC-Rs had no valid basis to reject its payment demands. *Id.* ¶ 144. SVBFG is, of course, wrong because FDIC-R1 asserts defensive setoff rights. Regardless, the Deposit Agreements preclude SVBFG's demand for lost earnings. *See* DA&DS, ¶ b, p. 27 of 49 ("WE ARE NOT LIABLE FOR CONSEQUENTIAL, INDIRECT, INCIDENTAL, PUNITIVE OR SPECIAL DAMAGES UNDER ANY CIRCUMSTANCES, INCLUDING LOST PROFITS AND/OR OPPORTUNITY."). That contractual limitation is enforceable under California law. *See Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal.App.4th 1118, 1126 (2012) ("With respect to claims for breach of contract, limitation of liability clauses are enforceable unless they are unconscionable, that is, the improper result of unequal bargaining power or contrary to public policy.").

Accordingly, the Court should dismiss SVBFG's request for prejudgment interest and lost earnings against the FDIC-Rs under Count I.

## III.   Count Two Against the FDIC-Rs Fails to State a Claim for "Estoppel."

There is a "long-standing tradition against estopping the government." *Jablon v. United States*, 657 F.2d 1064, 1068 (9th Cir. 1981). Although the FDIC, as receiver, steps into the shoes of an insolvent bank, the FDIC is a government agency. *Stevens v. FDIC*, 2011 U.S. Dist. LEXIS 100090, *9 n.3 (C.D. Cal. Aug. 25, 2011) (citing *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 86 (1994)). The FDIC, as receiver, acts "as an instrument of the federal government." *Marshack v. Tapager (In re Motivation Res.)*, 158 B.R. 184, 187 (Bankr. C.D. Cal. 1993). For the foregoing reasons, Count II fails to state a claim—whether based on equitable estoppel or promissory estoppel.

### A.   Equitable Estoppel Is Not an Independent Cause of Action.

Equitable estoppel is not an independent cause of action. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 659 (9th Cir. 1992) ("The district court also was correct in holding that equitable estoppel does not constitute an independent cause of action."); *Lawrence v. Wells Fargo Bank, N.A.*,

– 11 –

2014 U.S. Dist. LEXIS 81278, *39-40 (N.D. Cal. June 13, 2014) ("California does not recognize an independent cause of action for equitable estoppel."); *Moncada v. W. Coast Quartz Corp.*, 221 Cal. App. 4th 768, 782 (2013) ("A stand-alone cause of action for equitable estoppel will not lie as a matter of law" under California law).

**B.    Equitable and Promissory Estoppel Cannot Be Asserted Against the FDIC.**

The Ninth Circuit has not recognized an independent promissory estoppel cause of action against the government. *Jablon*, 657 F.2d at 1069 ("We have not discovered, and the parties have not cited, any precedent in this circuit for an independent cause of action against the government founded upon promissory estoppel."). As the Ninth Circuit recognized, the government has not waived its sovereign immunity with respect to promissory estoppel. *Id.* at 1070. Here, SVBFG is asking the Court to prevent the FDIC-Rs from exercising multiple powers and functions as receiver, including the assertion of defenses to which FDIC-R1 succeeded under 12 U.S.C. § 1821(d)(2)(A), administration of the claims process under 12 U.S.C. § 1821(d)(5), and exercise of its discretion to determine the timing and method of payment under 12 U.S.C. § 1821(d)(10). But Title 12 prohibits estoppel. *See* 12 U.S.C. § 1821(j). *See BKWSpokane, LLC v. FDIC*, 663 Fed. Appx. 524, 527 (9th Cir. 2016) ("Section 1821(j) prevents courts from granting any equitable relief against the FDIC").

Because § 1821(j) bars promissory estoppel and other equitable claims where FDIC exercised its authority under FIRREA, Count II should be dismissed to the extent it is based on equitable or promissory estoppel.

**C.    The Complaint Fails to State a Claim for Promissory Estoppel.**

Even if promissory estoppel were available against the FDIC-Rs (it is not), SVBFG fails to state such a claim because SVBFG alleges no promises made *by the FDIC-Rs*. SVBFG asserts the FDIC-C, along with the Secretary, "unambiguously assured the American public" that invoking the SRE would fully protect all depositors. *See* Compl. ¶¶ 60, 65, 73, 75, 79-81. SVBFG adds that FDIC-C issued press releases assuring that all depositors of SVB will be made whole. *See id.* ¶ 65, 87. Those press releases neither state nor imply that depositors would be paid in full without regard to claims and defenses under the deposit agreements or applicable law. Regardless, SVBFG cannot rely on purported promises of FDIC-C to estop the FDIC-Rs for four reasons.

– 12 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

First, alleged promises of the FDIC-C are not imputed to the FDIC-Rs. *See Fed. Sav. & Loan Ins. Corp. v. Musacchio*, 695 F. Supp. 1053, 1067 n.7 (N.D. Cal. 1988); *British Columbia Inv. Co. v. FDIC.*, 420 F. Supp. 1217, 1224 (S.D. Cal. 1976). As SVBFG concedes, "[t]he FDIC-C and the FDIC-R[s] are distinct juridical entities." See Compl. Exs. 7 & 8; Dkt. Nos. 1-8 and 1-9. "Because the FDIC-C and FDIC-R are separate legal entities, the FDIC-R is not responsible for the actions of the FDIC-C[.]" *FDIC v. Ching*, 2016 U.S. Dist. LEXIS 149910, *4 (E.D. Cal. Oct. 28, 2016). "Given this distinction, the FDIC-R did not authorize the FDIC-C . . . to make any statements regarding the Bank's failure." *Id.*

Second, contrary to SVBFG's allegations (Compl. ¶¶ 17, 60, 65, 68, 72), the Secretary did not "guarantee" immediate access to all deposits pursuant to the SRE. Regardless, the Secretary is not a party here and her words do not bind the FDIC-Rs. The role of the Secretary in the SRE is to determine that the FDIC's compliance with the least cost test "would have serious adverse effects on economic conditions for financial stability; and any action or assistance . . . would avoid or mitigate such adverse effects." 12 U.S.C. § 1823(c)(4)(G)(i). Once the Secretary has made that determination, the FDIC "*may* take other action or provide other assistance . . . for the purpose of winding up the insured depository institution for which the Corporation has been appointed receiver as necessary to avoid or mitigate such effects." 12 U.S.C. § 1823(c)(4)(G)(i); *see McKinley v. FDIC*, 807 F. Supp. 2d 1, 5 (D.D.C. 2011) (SRE "*authorizes* the FDIC to provide emergency assistance") (emphasis added); 2 BANKS & THRIFTS: GOVT ENFORCE & RECEIVERSHIP § 11.03(3)(c) (2024) ("The FDIC *may provide assistance* to a financial institution if the Secretary of the Treasury . . . conclude[s] that the failure of a particular depository institution would pose a systemic risk to the financial system."). Thus, the Secretary's determination to invoke the SRE authorizes, but does not direct, the assistance provided by the FDIC.

The FDIC provides SRE assistance that it deems appropriate in its *sole* discretion (in its corporate and receivership capacities). 12 U.S.C. §§ 1821(c)(3)(C), 1823(c)(4)(F), and § 1823(c)(1). As receiver, the FDIC enjoys broad discretion in exercising its rights, powers, and privileges under Title 12. Section 1821(c)(3)(C), provides that, "[w]hen acting as . . . receiver . . . the Corporation *shall not be subject to the direction or supervision of any other agency or department of the United States* . .

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

. . in the exercise of its rights, powers, and privileges." 12 U.S.C. § 1821(c)(3)(C) (emphasis added); *see also* 12 U.S.C. § 1821(c)(2)(C). Thus, the Secretary did not (and respectfully could not) direct FDIC-R1 to do anything.

Third, SVBFG's use of FDIC-R1's statements to the Bankruptcy Court to support its argument omit important qualifications to those arguments that undermine SVBFG's narrative. Compl. ¶¶ 22-23, 69-70, 77. These statements noted several limitations on payment of the Deposit Claim, including, most significantly, the requirement of a claim determination under 12 U.S.C. § 1821(d). *See, e.g., Compl. ¶ 22* (quoting FDIC-R1's counsel at the March 21, 2023 hearing: "[T]o the extent the debtor's claim -- deposit claim is *determined to be valid*, *to the extent not subject to setoff*, it will be paid") (emphasis added); *see Statement of the Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank, Pursuant to the Court's Direction at the April 26, 2023 Hearing* (the "Statement Regarding Setoff Rights") [Bankr. Ct. Dkt. No. 145], pp. 4-5 ("The FDIC has multiple sources of setoff rights. . . . One such right is to assert claims or causes of action that a failed [bank] could have asserted against its parent. . . . The FDIC-R thus succeeds to SVB's common law right of setoff with respect to all claims by and between SVB and SVBFG. . . . FDIC-R also succeeds to all SVB's contractual setoff rights against SVBFG, including without limitation, the setoff rights provided in [the Deposit Agreements]."), Statement Regarding Setoff Rights at 5 ("Set Off and Security Interest. We may charge or set off funds in your account . . . to the fullest extent permitted by law."). FDIC-R1 also made it clear that the validity of SVBFG's claim included consideration of the liability limitation imposed by section 1821(i)(2). *See id.* at 6. Accordingly, FDIC-R1 made no unconditional promise to pay the Deposit Claim without review, allowance, and offset. Consequently, SVBFG's claim for promissory estoppel fails as a matter of law.

Fourth, promissory estoppel is inapplicable where, as here, contracts exist—the Deposit Agreements. *FDIC v. San Diego Cmty. Hous. Corp.*, 2010 U.S. Dist. LEXIS 158724, *11 (S.D. Cal. March 3, 2010) ("Defendant's argument that justice requires this Court 'to hold FDIC accountable for its contractual obligations' is nonsensical, since promissory estoppel does not apply where a contract exists.").

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**IV.     Count III Against the FDIC-Rs Fails to State a Turnover Claim under Section 542 of the Bankruptcy Code.**

Count III fails to state a turnover claim because the FDIC-Rs hold no property owned by SVBFG. SVBFG has nothing more or less than the disputed Deposit Claim against FDIC-R1 on account of deposited funds. FDIC-R2 has no liability for that claim.

*SVBFG fundamentally mischaracterizes the nature of its property interests as a depositor of SVB.* SVBFG alleges that "[t]he *Account Funds* constitute property of SVBFG's estate under Section 541(a) of the Bankruptcy Code." Compl. ¶ 155 (emphasis added). It is wrong. A deposit account in a bank is not a "specific pile of cash in the bank's vault representing the customer's deposit." *Creasy v. McGarry (In re Abingdon Orthopedic Assocs., P.C.)*, 2012 Bankr. LEXIS 6282, *12 (W.D. Va. Oct. 11, 2012). Rather, as the Ninth Circuit has held, "[i]t is a well-settled principle of California law that the relationship between a bank and its depositor is one of debtor and creditor. Therefore, when funds are deposited, *title to those funds passes immediately to the bank*." *Crocker-Citizens Nat'l Bank v. Control Metals Corp.*, 566 F.2d 631, 637 (9th Cir. 1977) (emphasis added). As the United States Supreme Court also has recognized, "[a] bank account . . . consists of nothing more or less than a promise to pay, from the bank to the depositor." *Citizens Bank v. Strumpf*, 516 U.S. 16, 21 (1995); *Barnhill v. Johnson*, 503 U.S. 393, 398 (1992) ("A person with an account at a bank enjoys a claim against the bank for funds in an amount equal to the account balance."). Thus, SVBFG, as depositor, "did not own money gathering dust in [its] bank accounts. *Bernard v. Sheaffer (In re Bernard)*, 96 F.3d 1279, 1282 (9th Cir. 1996) (alteration added). "Instead of owning money sitting in [its] accounts, [SVBFG] owned claims against [its] bank," SVB. *Id.* at 1283 (alteration added); *see also Chang v. Redding Bank of Commerce*, 29 Cal. App. 4th 673, 681 (1994) ("As between a bank and the depositor such money becomes the *property of the bank* and the bank becomes the debtor of the depositor for the amount deposited.") (citation omitted) (emphasis added). *Thus, it is indisputable that the "Account Funds" belonged to SVB—not SVBFG.*

Moreover, a turnover action is not appropriate for a disputed contract claim that is not payable on demand. Bankruptcy Code Section 542(b) states "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the

– 15 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   order of, the trustee, except to the extent that such debt may be offset under [§] 553 of this title[.]" 11

2   U.S.C. § 542(b). "Turnover proceedings are not to be used to liquidate disputed contract claims . . . .

3   Clearly, Congress envisioned the turnover provision of [Section] 542 . . . to apply to tangible property

4   and money due to the debtor without dispute[.]" *In re Even St. Prods.*, 2020 U.S. Dist. LEXIS 141267,

5   *22 (C.D. Cal. Aug. 6, 2020) (quoting *In re Charter Co.*, 913 F.2d 1575, 1579 (11th Cir. 1990)).

6          The Deposit Claim is not payable on demand because, first and foremost, it is merely a claim

7   in a Title 12 receivership, where it is disputed and subject to both FDIC-R1's defensive setoff rights

8   and the limitations imposed by 12 U.S.C. § 1821(i)(2). No right to immediate payment exists. Further,

9   not even a judicial determination of the Deposit Claim will entitle SVBFG to immediate payment in

10  cash because FIRREA provides FDIC-R1 with discretion as to the timing of payment on claims. 12

11  U.S.C. § 1821(d)(10)(A) ("receiver may, in the receiver's discretion and to the extent funds are

12  available, pay creditor claims which are . . . determined by the final judgment of any court of competent

13  jurisdiction") and (B) ("receiver may, in the receiver's sole discretion, pay dividends on proved claims

14  at any time"). For the foregoing reasons, as a matter of law, SVBFG fails to state a valid turnover

15  claim under section 542 of the Bankruptcy Code. Accordingly, this Court should dismiss Count III.

16  **V.     Count IV Fails to State a Claim Against FDIC-Rs for Violation of the Automatic Stay.**

17         Bankruptcy Code Section 362(a)(3) operates as a stay of "any act to obtain possession of . . .

18  property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

19  SVBFG alleges that the FDIC-Rs violated the stay by failing to pay SVB "the Account Funds." Compl.

20  ¶ 166. SVBFG further alleges that, "[f]ollowing SVBFG's bankruptcy filing, the FDIC-Rs continued

21  to impede SVBFG's access to its deposit funds and reversed a $6.2 million payment owed to SVBFG

22  for an intercompany receivable, all of which constitute ongoing, continuing violations of the automatic

23  stay imposed pursuant to 11 U.S.C. § 362." *Id.* ¶ 21. SVBFG's allegations regarding the reversed $6.2

24  million payment are opaque. An allegation in a complaint must be pled with sufficient specificity.

25  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Because SVBFG failed to do so in regard to

26  the $6.2 million transaction, Count IV must be dismissed.

27         As discussed *supra,* from the moment SVBFG made a deposit at SVB, SVBFG did not own

28  any "Account Funds." SVBFG had nothing more than the Deposit Claim (*i.e.,* a cause of action). A

bank account is "nothing more or less" than a claim against the bank. *Strumpf*, 516 U.S. at 21. SVBFG's deposits established a debtor-creditor relationship between SVB (as debtor) and SVBFG (as creditor), not an ownership interest in a specific pile of cash in the bank's vault representing SVBFG's deposits. *Abingdon*, 2012 Bankr. LEXIS 6282, *12.

The Deposit Claim, the only property interest held by the SVBFG estate in connection with the uninsured bank deposits, has, at all times, remained within SVBFG's exclusive control. In fact, SVBFG asserted claims for the Deposit Claim and the intercompany receivable in the FDIC-Rs' administrative claims processes. The FDIC-Rs' refusal to pay the Deposit Claim is "neither a taking of possession of [the debtor's property] nor an exercising of control over it, but merely a refusal to perform [SVB's] promise." *Strumpf,* 516 U.S. at 21 (citing *Bank of Marin v. England*, 385 U.S. 99, 101 (1966)); *see also Mountaineer Coal Co. v. Liberty Mut. Ins. Co. (In re Mountaineer Coal Co.)*, 247 B.R. 633, 644 (W.D. Va. 2000) ("a party does not violate the automatic stay when its conduct is limited to its failure . . . to pay over to the debtor-in-possession or trustee a debt which it owes to the bankruptcy estate"). The FDIC-Rs' refusal to pay the Deposit Claim does not violate the stay.

For the same reason, the FDIC-Rs' refusal to pay the purported intercompany receivable does not violate the stay. As the Supreme Court held in the *City of Chi. v. Fulton*, 141 S. Ct. 585 (2021), even the retention of estate property after the filing of a bankruptcy petition (which did not occur here) does not violate 11 U.S.C. § 362(a)(3). *Id.* at 591-92; *see also United States v. Inslaw, Inc.*, 932 F.2d 1467, 1472 (D.C. Cir. 1992), *cert. denied*, 502 U.S. 1048 (1992) (automatic stay does not apply "[w]henever a party against whom the bankrupt holds a cause of action . . . acted in accord with his view of the dispute rather than that of the debtor-in-possession or bankruptcy trustee"); *Froman v. Fein (In re Froman)*, 566 B.R. 641, 656 (Bankr. S.D.N.Y. 2017). The automatic stay is a shield, not a sword for the Debtor to nullify or circumvent the FIRREA claims process—which the Debtor invoked as a claimant. *See Sternberg v. Johnston,* 595 F.3d 937, 948 (9th Cir. 2009) ("The stay is a shield, not a sword."); *Anchev v. 335 West 38th St. Coop. Corp. (In re Anchev)*, 2009 Bankr. LEXIS 906, *6 (Bankr. S.D.N.Y. Apr. 15, 2009). Again, SVBFG has disputed claims for payment. Nothing more.

SVBFG's position also ignores FDIC-R1's defensive setoff rights and the limitation imposed by 12 U.S.C. § 1821(i)(2), and its allegations run counter to Title 12, which leaves the timing of

– 17 –

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

payment on allowed claims (even those determined by court order) to the FDIC-R1's "sole discretion." 12 U.S.C. § 1821(d)(10)(A)-(B). The requested relief rests on SVBFG's continued mischaracterization of the Deposit Claim as an ownership interest in cash held by the FDIC-Rs, rather than simply a disputed, uninsured deposit liability claim that remains subject to FDIC-R1's setoff rights.

By the time SVBFG filed for bankruptcy protection, SVB had failed due to the lack of cash to pay its depositors and CAFPI had appointed the FDIC as receiver, tasked with resolving the failed bank under Title 12. The discretionary financial assistance authorized by the SRE did not change the nature of SVBFG's Deposit Claim. It remains a claim against FDIC-R1 for breach of contract, subject to the FDIC-R1's setoff rights and the limitations imposed by 12 U.S.C. § 1821(i)(2). According to SVBFG, the SRE requires the FDIC-Rs to obtain funding from FDIC-C to pay the Deposit Claim (seemingly without regard to the FDIC-Rs defenses to that claim). Compl. ¶¶ 27, 50. But SVBFG's allegations misconstrue the funding assistance provided under the SRE and the scope of the automatic stay. No provision of Title 12 or the Bankruptcy Code *requires* the FDIC-Rs to seek funding from the FDIC-C (or the DIF) to pay the disputed Deposit Claim, which remains subject to FDIC-R1's defensive setoff rights and the limitation imposed by 12 U.S.C. § 1821(i)(2). Therefore, Count IV fails to state a claim for violating the automatic stay under 11 U.S.C. § 362(a).

## VI. Count V Fails to State a Claim Against FDIC-R1 under Section 1406 or 681 of the CFC.

In Count V, SVBFG asserts a $1.7 billion claim against FDIC-R1 pursuant to the CFC for "a ratable distribution . . . up to the liquidation value of [its] claims, calculated as of the date SVB was placed in receivership." Compl. ¶¶ 174-75. Count V incorrectly assumes the allowance of its Deposit Claim in full, without regard to FDIC-R1's defenses. Regardless, it fails to state a claim because (i) section 1406(c) does not provide any right of payment, (ii) section 681 only applies to liquidations conducted by the CAFPI Commissioner —not liquidations conducted by the FDIC-R, (iii) sections 1406(c) and 681 do not create a private cause of action, and (iv) even if section 1406(c) or 681 were applicable and provided a private cause of action, those sections are pre-empted to the extent inconsistent with Title 12.

CFC Section 1406 prohibits banks from paying or granting security interests to creditors after committing an act of insolvency (or in contemplation of insolvency) with a view to preventing the

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

application of its assets in the manner provided in the CFC or with a view to the preference of one creditor to another. *See* Cal. Fin. Code § 1406(c). Payments or liens in violation of section 1406(c) are void. *See* Cal. Fin. Code § 1406(d). Section 1406(c) and (d) void payments and liens in favor of *other* creditors. Nothing in section 1406(c) or (d) provides for or authorizes payment to a depositor/creditor.

SVBFG fares no better under section 681 of the CFC, which governs liquidation of "uninsured" licensees. A federally insured bank like SVB is not an "uninsured" licensee. *Id.* § 609. And, section 681 addresses dividends paid by "the commissioner" "out of the funds remaining in his or her hands[.]" *Id.* § 681. The "commissioner" refers to the Commissioner of CAFPI. *Id.* § 125. Here, the Commissioner tendered liquidation of SVB to the FDIC as the "Federal Insurance Agency." *See id.* §§ 604, 620-21. Thus, the "commissioner" has *no* "funds remaining in his or her hands" as contemplated in section 681.

If section 1406(c) or 681 were relevant (neither is), they are pre-empted to the extent inconsistent with Title 12. *See* 12 U.S.C. §§ 1821(i)(2) and (i)(3) (providing for disparate treatment of creditors based on funds made available as a result of an SRE). The CFC expressly contemplates and acknowledges the effect of federal law pre-emption. *Id.* §§ 101 and 623. FIRREA "implicates uniquely federal concerns in that it governs resolution of the affairs of failed banks." *GECCMC 2005-C1 Plummer St. Off. Ltd. P'ship v. J.P. Morgan Chase Bank, Nat'l Assoc.*, 671 F.3d 1027, 1032 (9th Cir. 2012). "Accordingly, the Court applies federal law when deciding specific issues relating to FIRREA." *Multibank 2009-1 Res-ADC Venture, LLC v. Pinecrest at Neskowin, LLC*, 2013 U.S. Dist. LEXIS 51660, *5 (D. Ore. Apr. 10, 2013). To the extent California law would treat SVBFG's claim differently than it would be treated under Title 12, California law is pre-empted. *See, e.g., Battista*, 195 F.3d at 1120 (holding FIRREA preempted California law requiring payment of claims in cash); *CommoLoCo, Inc. v. Rivera-Polanco*, 2010 U.S. Dist. LEXIS 112452, *5 (D.P.R. Oct. 21, 2010) ("FIRREA's distribution scheme preempts Plaintiff's rights against the bank under Puerto Rico law").

Even if sections 1406(c) and 681 were applicable and not pre-empted, neither section confers a private cause of action upon SVBFG. SVBFG bears the burden of demonstrating a private right of action where none is explicitly established. *Opera Plaza Residential Parcel Homeowners Ass'n v. Hoang*, 376 F.3d 831, 835 (9th Cir. 2004). "Adoption of a regulatory statute does not automatically

– 19 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   create a private right to sue for damages resulting from violations of the statute. Such a private right

2   of action exists only if the language of the statute or its legislative history clearly indicates the

3   Legislature intended to create such a right to sue for damages." *Vikco Ins. Servs, Inc. v. Ohio Indem.*

4   *Co.*, 70 Cal. App. 4th 55, 62 (1999). "If the Legislature intends to create a private cause of action," the

5   legislature is presumed to "do so directly[,] . . . in clear, understandable, unmistakable terms[.]" *Id.* at

6   62-63 (internal quotations and citations omitted). Nothing in section 1406(c) or 681 suggests a private

7   cause of action. *See generally Balboa Cap. Corp. v. Shaya Med. P.C.*, 2021 U.S. Dist. LEXIS 246877,

8   *13 (C.D. Cal. Aug. 31, 2021) ("the California Financial Code does not create a private right of

9   action"); *Nathanson v. Cardtronics, Inc.*, 2009 U.S. Dist. LEXIS 136167, *2 (C.D. Cal. Mar. 26, 2009)

10  ("neither section 13080 nor the California Financial Code generally provides a private right of

11  action"); *see generally De La Torre v. CashCall, Inc.*, 854 F.3d 1082, 1085 (9th Cir. 2017) (California

12  Finance Lenders Law, which is part of the CFC, "does not create a private right of action"). For those

13  reasons, Count V fails to state claim against FDIC-R1.

14  **VII.    Count VI Against FDIC-R2 Fails to State a Claim under the NBA.**

15          In Count VI, SVBFG asserts a claim against FDIC-R2 for ratable distribution under sections

16  91 and 194 of the NBA. Count VI fails because it assumes, without legal or factual support, that FDIC-

17  R2 has liability for SVBFG's Deposit Claim. Because the Deposit Claim is not a liability to which

18  FDIC-R2 succeeds, either under contract or by operation of law, SVBFG has no right of distribution

19  in the Bridge Bank receivership. Count VI also fails to state a claim because (i) section 91 provides

20  no right of payment, (ii) section 91 does not create a private cause of action, (iii) section 194 only

21  applies when the Comptroller of the Currency has received funds from FDIC-R, and (iv) 12 U.S.C.

22  § 1821(i)(2) superseded section 194's ratable distribution requirement.

23          Like CFC section 1406(c), NBA section 91 prohibits certain transfers in contemplation of

24  insolvency. 12 U.S.C. § 91. There is no indication that Congress intended to create a private right of

25  action under section 91.

26          Section 194 is inapplicable because it merely requires the Comptroller of the Currency to make

27  a ratable dividend "of the money so paid over to him by such receiver" in liquidation of a bank on the

28  claims "proved to [the receiver's] satisfaction" or adjudicated in court. 12 U.S.C. § 194. Section

1   1821(d)(10)(A) of Title 12 governs what funds of the FDIC-Rs may pay over to the Comptroller.

2   Specifically, section 1821(d)(10)(A) provides that "[t]he receiver may, in the receiver's discretion and

3   *to the extent funds are available,* pay creditor claims which are allowed by the receiver . . . or

4   determined by the final judgment of any court of competent jurisdiction" (emphasis added). Section

5   194 of the NBA is irrelevant unless and until the FDIC-Rs make a payment to the Comptroller.

6          Count VI should also be dismissed because the ratable distribution requirement under the NBA

7   was superseded when Congress amended 12 U.S.C. § 1821(i), the provision governing SVBFG's

8   maximum claim amount. *See Vinton v. Trustbank Sav., F.S.B.*, 798 F.Supp. 1055, 1058 (D. Del. 1992)

9   ("With the enactment of § 1821(i)(2), Congress repealed . . . the ratable distribution requirements of

10  the NBA, and thereby effectively overruled prior inconsistent judicial decisions. As amended by

11  FIRREA, § 1821(i)(2) limits the FDIC's maximum liability to any person having a claim against the

12  receiver or the failed institution for which the FDIC is acting as receiver to the amount the person

13  would have received in a straight liquidation."); *see generally FDIC v. Hsing*, 2012 U.S. Dist. LEXIS

14  113193, *5-6 (N.D. Cal. Aug. 10, 2012) ("[T]he 'maximum liability' of the FDIC to any creditor of a

15  failed institution in receivership is limited to the amount that the creditor would have received upon

16  liquidation of the failed institution. *See* 12 U.S.C. § 1821(i)(2). 'In enacting [section 1821(i)(2)],

17  Congress unequivocally expressed its intent to limit the maximum liability of the FDIC to the amount

18  the claimant would have received in a liquidation under federal priority regulations' such that creditors

19  of a failed depository institution would 'look only to the assets of the institution for recovery of their

20  losses, and not to the taxpayers.'") (quoting *First Indiana Fed. Sav. Bank v. FDIC*, 964 F.2d 503, 507

21  (5th Cir. 1992)); *Battista,* 195 F.3d at 1118 (quoting 12 U.S.C. § 1821(i)(2)); *see also* 12 U.S.C.

22  § 1821(i)(3) (providing that federal law yields to Title 12 with respect to funds made available pursuant

23  to the SRE and the FDIC's in paying out such funds).

24          For those reasons, Count VI fails to state claim against FDIC-R2.

25  **VIII.   Count VII (Declaratory Judgment) Against the FDIC-Rs Fails to State a Claim.**

26          In Court VII, SVBFG requests the Court "declare" that SVBFG was not required to file an

27  administrative claim under the FIRREA claims process. Compl. ¶ 189. Count VII fails as a matter of

28  law because (i) the Declaratory Judgment Act, 28 U.S.C. § 2201, does not provide an independent

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 21 –

cause of action, (ii) the relief sought by SVBFG is moot, (iii) as a matter of law, the Claims are subject to the mandatory, exclusive FDIC-R1 and FDIC-R2 claims processes under FIRREA, and (iv) the request for declaratory relief violates section 1821(j) of Title 12

"The Declaratory Judgment Act does not provide an affirmative cause of action where none otherwise exists." *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022); *see also Chevron Corp. v. Naranjo*, 667 F.3d 232, 244-45 (2d Cir. 2012) ("[T]he DJA . . . does not create an independent cause of action."); *Rosenfeld v. JP Morgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010) ("declaratory and injunctive relief are not causes of action; rather, they are remedies."). Here, SVBFG erroneously asserts declaratory judgment as an independent cause of action.

Additionally, the relief sought by SVBFG is moot or would be merely advisory because SVBFG *already submitted its Claims against FDIC-R1 and FDIC-R2,* such claims have been disallowed by the FDIC-Rs, and SVBFG sought *de novo* review in this Court pursuant to 12 U.S.C. § 1821(d)(6). The proper time for SVBFG to have obtained declaratory relief would have been before SVBFG submitted the Claims to the FDIC-Rs.

Regardless, SVBFG's request for declaratory judgment that it was not required to submit its Claims in the FDIC-Rs' claims processes fails as a matter of law. The FIRREA claims process is "exclusive" and "mandatory." *See Intercontinental Travel Mktg.*, 45 F.3d at 1283 n. 9 ("mandatory"); *Frazier v. Colonial Bank*, 2011 U.S. Dist. LEXIS 22630, *7 (M.D. Ala. Feb. 16, 2011) ("exclusive and mandatory"); *see St. Paul Mercury Ins. Co. v. Montgomery Cnty. Bankshares, Inc.*, 2014 U.S. Dist. LEXIS 185050, *10 (Bankr. N.D. Ga. Dec. 30, 2014) ("exclusive"). Congress conferred the exclusive power to manage the comprehensive, mandatory FIRREA claims process on the FDIC-Rs. *See Joyce v. Devastey,* 2013 U.S. Dist. LEXIS 6392, *5 (E.D. Pa. Jan. 16, 2013).

Section 1821(d)(13)(D) requires exhaustion of the claims process before an appropriate court (as specified in section 1821(d)(6)) may exercise jurisdiction over any claim against SVB, Bridge Bank or the FDIC-Rs. It states, in part, that "*no court shall have jurisdiction over—(i) any claim or action for payment from*, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver*, including assets which the Corporation may acquire from itself as such receiver*" or "(ii) *any claim relating to any act*

– 22 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*or omission of such institution or the Corporation as receiver*." 12 U.S.C. § 1821(d)(13)(D) (emph. added); *see Waldron v. FDIC*, 935 F.3d 844, 849 (9th Cir. 2019) (quoting §1821(d)(13)(D)(i)-(ii)).

All of SVBFG's Claims fall under section 1821(d)(13)(D)(i)-(ii). SVBFG's assertion that the Secretary's action required immediate access to and payment of deposit funds without any "claim" (Compl. ¶ 121) is misguided: even if the Secretary's authorization of the SRE created an unconditional payment guaranty (it did not), the Deposit Claim, as it relates to the FDIC-Rs, remains unequivocally a claim under section 1821(d)(13)(D) because it (i) seeks payment from SVB's assets (including funds that could be made available to the FDIC-Rs by FDIC-C) and (ii) concerns alleged acts or omissions of the FDIC-Rs.

Now that the FDIC-Rs have disallowed the Claims and SVBFG has sought *de novo* review here—to the extent jurisdiction is not lacking due to SVBFG's failure to assert its declaratory judgment claim in the FDIC-Rs' claims processes—*this* Court alone has jurisdiction to resolve the claims under 12 U.S.C. § 1821(d)(6)(A); *MTB Enters. v. ADC Venture 2011-2, LLC*, 780 F.3d 1256, 1259 (9th Cir. 2015) (holding section § 1821(d)(6)(A) is jurisdictional). That includes jurisdiction over FDIC-R1's setoff defense. *See United States v. Kernen Constr.*, 349 F. Supp. 3d 988, 998 (E.D. Cal. 2018) ("Only where the court does not have jurisdiction over the claim would it not have jurisdiction over the related affirmative defense."); *First Nat'l Ins. Co v. Geo Grout, Inc.*, 2010 U.S. Dist. LEXIS 124997, *10 (N.D. Cal. Nov. 12, 2010) ("Setoff is an affirmative defense under [FRCP] 8(c).").

SVBFG's characterization of its Claims as "protective" is irrelevant. Attempts to file "protective" claims in the analogous bankruptcy claims process are ineffectual. *See S.G. Phillips Constructors, Inc. v. Burlington (In re S.G. Phillips Constructors, Inc.)*, 45 F.3d 702, 706 (2d Cir. 1995) ("The City . . . argue[s] that when a creditor files a proof of claim under protest in order to avoid losing its rights in bankruptcy, it does not consent to determination of its claims by the bankruptcy court, and it preserves its right to object to the bankruptcy court's jurisdiction. We find this argument unpersuasive."); *Travellers Int'l AG v. Robinson*, 982 F.2d 96, 100 (3d Cir. 1992) ("the equitable jurisdiction of the bankruptcy court is exclusive when its jurisdiction has been invoked by the filing of a claim. Where, as in this case, a creditor has filed a claim, even though the claim is couched in protective language …, that creditor has submitted to the bankruptcy court's equitable jurisdiction[.]").

– 23 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

The "protective" Claims filed in the FIRREA claims processes are equally ineffectual at avoiding jurisdiction under FIRREA. For the foregoing reasons, Count VII fails to state a claim.

Furthermore, SVBFG's request for declaratory relief is a thinly-veiled attempt to "restrain or affect the exercise of powers or functions of" the FDIC-Rs' to administer the Claims that SVBFG submitted to the FIRREA claims processes. *See, e.g., D-F Fund VIII, L.L.C. v. Valley Ranch Dev. Co.*, 1999 U.S. Dist. LEXIS 1777, *16 (N.D. Tex. Feb. 11, 1999) ("as a matter of law, Section 1821(j) of FIRREA prohibits this Court from granting VRDC's request for declaratory relief"). For the foregoing reasons, Count VII fails to state a claim.

## IX.   Count VIII Fails to Assert a Takings Claim Against FDIC-R1 and FDIC-R2.

Count VIII fails to state a claim because a takings claim must be asserted against the "United States," not its agents. *See Deutsche Bank*, 784 F. Supp. 2d at 1169 (holding that "[a] takings claim is properly brought against the United States, not against the agent whose actions give rise to the claim," and noting that plaintiff "cites no authority establishing that it can pursue a takings claim against the FDIC, as opposed to the United States").

The Takings Claim also fails for the obvious reason that the FDIC-Rs did not, by declining SVBFG's payment demands, "take" any SVBFG property. SVBFG still has its Deposit Claim, which, if not fully offset by FDIC-R1's affirmative defenses, will entitle it to payment. SVBFG's complaints about "due process" (Compl. ¶¶ 7, 33, 196) fail for similar reasons and because *de novo* review in this Court is due process. *See Metro Cty. Title v. FDIC*, 13 F.3d 883, 887 (5th Cir. 1994).

Because the SVBFG's takings claim is wholly implausible, Count VIII fails to state a claim.

## X.   Count IX Against the FDIC-Rs Fails to State a Claim for Conversion.

Count IX fails to state a claim for conversion against the FDIC-Rs because (i) it is duplicative of Count I, (ii) SVBFG, as a depositor, did not own the funds it deposited with SVB: instead, SVBFG merely held a contract claim against SVB (and now, FDIC-R1), (iii) FDIC-R2 never received the deposits and has no liability on the Deposit Claim, and (iv) the Federal Tort Claims Act, 28 U.S.C. Ch. 171 (the "FTCA") requires tort claims to be asserted against the United States, not its agencies.

A plaintiff cannot "recover for the tort of conversion for the breach of duties that merely restate contractual obligations." *Beluca Ventures LLC v. Aktiebolag*, 622 F. Supp. 3d 806, 814 (N.D. Cal.

– 24 –

2022) (quoting *Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047, 1058 (N.D. Cal. 2021)). If the failure to pay money owed constituted conversion, "the tort of conversion would swallow the significant category of contract claims that are based on the failure to satisfy mere contractual right[s] of payment." *Id.* (quoting *Voris v. Lampert*, 7 Cal. 5th 1141, 1151-52 (2019)). Here, SVBFG asserts a claim for breach of contract (Count I) and conversion (Count IX) that are duplicative. For that reason alone, Count IX should be dismissed for failure to state a claim.

Under California law, a conversion claim requires (among other things) "the plaintiff's ownership or right to possession of the property at the time of the conversion." *Bennett v. One W. Bank*, 2011 U.S. Dist. LEXIS 67459, *19 (S.D. Cal. June 23, 2011) (*citing Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010)). As discussed above, "[i]t is a well-settled principle of California law" that a bank and its depositor have a debtor-creditor relationship because, when funds are deposited, *"title to those funds passes immediately to the bank."* *Crocker-Citizens*, 566 F.2d at 637 (emphasis added); *see Strumpf*, 516 U.S. at 21; *Barnhill*, 503 U.S. at 398.

Based on this principle, the Ninth Circuit repeatedly has held that bank accounts cannot be the subject of conversion because "they are not specific money, but only an acknowledgment by the bank of a debt to its depositor." *Reliance Ins. Co. v. U.S. Bank, N.A.*, 143 F.3d 502, 506 (9th Cir. 1998); *Crocker-Citizens*, 566 F.2d at 637 ("Since the money thus becomes the literal property of the bank, it cannot be tortiously converted by the bank."); *Bodungen v. Bank of America*, 1992 U.S. App. LEXIS 28443, *14 (9th Cir. Oct. 28, 1992) ("It is well settled that a bank may not be sued for conversion of funds that are on deposit with the bank. The bank is considered to be the owner of funds that are deposited with it. Thus, it cannot be found tortiously to have converted those funds."). Courts in this District are in accord. *See Chie v. Citigroup, Inc.*, 2021 U.S. Dist. LEXIS 31554, *17 (N.D. Cal. Feb. 18, 2021) ("California law is well-settled in this area that a claim against the bank for conversion will not lie. Because title to a deposit passes immediately to the bank upon deposit, a depositor has no conversion claim against a bank under California law.") (internal quotations omitted).

Count IX fails to state a conversion claim against FDIC-R1 because, as depositor, SVBFG did *not* own any "funds" deposited with SVB. *See, e.g., Bernard*, 96 F.3d at 1282. SVBFG held only the Deposit Claim against SVB and now, FDIC-R1. *See id.* at 1283. With respect to FDIC-R2, SVBFG

– 25 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  has no plausible claim because SVBFG never made any deposit with FDIC-R2. Indeed, FDIC-R2 has

2  no contractual liability on the Deposit Claim as FDIC-R2 is the successor to Bridge Bank, not SVB.

3  Even if SVBFG could plausibly allege a claim for conversion, Count IX still fails to state a

4  claim. The FTCA Act requires a tort claim to be filed only against the United States, not an agency

5  thereof. *See FDIC V. Meyer,* 510 U.S. 471, 476 (1994) ("the FTCA remedy is 'exclusive' and the

6  federal agency cannot be sued 'in its own name'") (citing 28 U.S.C. § 2679(a)).

7  For each of these reasons, Count IX must be dismissed.

8  **XI.  Each of Counts X and XI against FDIC-R1 and Count XII against the FDIC-Rs Fails to**

9  **State a Claim for Breach of Contract.**

10  SVBFG cannot maintain breach of contract claims because they are barred by sections

11  1821(d)(9)(A) and 1823(e) of Title 12, which require (among other things) the existence of a *written*

12  agreement. Even if such written agreements existed, SVBFG's breach of contract claims in Counts X,

13  XI, and XII fail to state plausible claims under California law for multiple reasons.

14  **A.  Counts X, XI and XII Are Barred by 12 U.S.C. §§ 1821(d)(9)(A) and 1823(e).**

15  Counts X and XI of the Complaint assert causes of action against FDIC-R1 for breach of

16  express and implied-in-fact contracts regarding third-party claims listed on Schedule 1 (Lease

17  Agreement Claims), Schedule 2 (Vendor Contract Claims), and Schedule 3 (Employee Claims)

18  annexed to the Complaint, and certain purported Indemnity Claims. In Count X, SVBFG alleges that

19  it entered into an express agreement with SVB whereby the parties agreed to allocate fees and expenses

20  for goods and services. Compl. ¶¶ 209-13. But, SVBFG fails to attach the alleged agreement(s) to the

21  Complaint or to otherwise identify the contract and the terms giving rise to indemnification rights.

22  Count XI alternatively alleges an implied-in-fact contract. *Id.* ¶ 218. Count XII seeks reimbursement

23  for certain unidentified expenses according to "intercompany agreements that SVBFG and SVB

24  validly entered into." *Id.* ¶ 226. Once again, SVBFG fails to attach any purported intercompany

25  agreements or describe language in any agreement obligating SVB to reimburse SVBFG for the

26  amorphously-defined expenses it purportedly owes. SVBFG's failure to allege the existence of a

27  *written* agreement is fatal to Counts X, XI, and XII.

28

– 26 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    Upon SVB's failure, the FDIC-R1 succeeded by operation of law to SVB's rights, powers, and

2    privileges. *See* 12 U.S.C. § 1821(d)(2)(A)(i). However, not all claims enforceable against SVB prior

3    to its failure are enforceable against FDIC-R1. Title 12 is clear on this point: section 1821(d)(2) "places

4    the FDIC in the shoes of the insolvent [bank], to work out its claims under state law, except where

5    some provision in the extensive framework of FIRREA provides otherwise." *O'Melveny*, 512 U.S. at

6    87. FIRREA does provide otherwise and thus mandates dismissal of Claims X, XI, and XII.

7    FIRREA states "any agreement which does not meet the requirements set forth in section

8    1823(e) of this title shall not form the basis of, or substantially comprise, a claim against the receiver

9    or the [FDIC]". 12 U.S.C. § 1821(d)(9)(A). Section 1823(e) requires an agreement to be "in writing,"

10   executed by the bank and the party claiming thereunder, approved by the bank's board of directors as

11   reflected in its minutes, and a continuous official record of the bank since its execution. *See* 12 U.S.C.

12   § 1823(e)(1)(A)-(D). "All four of these requirements must be satisfied for an agreement to be

13   enforceable against" FDIC-R1. *Resol. Tr. Corp. v. Allen*, 16 F.3d 568, 574 (4th Cir. 1994);

14   *McCaughery v. Siffermann*, 772 F. Supp. 1128, 1135 (N.D. Cal. 1991) ("agreements under section

15   1823(e) must be in writing").

16   Nowhere in Counts X, XI or XII of the Complaint does SVBFG allege a *written* agreement

17   that comports with sections 1821(d)(9)(A) and 1823(e) regarding obligations under the Lease

18   Agreements, Vendor Contracts, Employee Claims, or Indemnity Claims. For that reason alone, Counts

19   X and XI against FDIC-R1 and Count XII against the FDIC-Rs fail to state a claim.

20   **B.      Counts X, XI and XII Also Fail to State a Claim under California Law.**

21   Even if Counts X, XI, and XII were not otherwise barred under Title 12 (they are), SVBFG

22   fails to plead facts supporting a plausible claim under California law. Under California law, a breach-

23   of-contract claim requires the plaintiff to allege: (1) a contract; (2) plaintiff's performance; (3) breach;

24   and (4) damages. *Hamilton v. Greenwich Invs. XXVI, LLC*, 195 Cal. App. 4th 1602, 1614 (2011). "An

25   implied-in-fact contract requires proof of the same elements necessary to evidence an express contract:

26   mutual assent or offer and acceptance, consideration, legal capacity and a lawful subject matter."

27   *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1050-51 (9th Cir. 2015); *Westron v.*

28   *Zoom Video Commc'ns, Inc.*, 2023 U.S. Dist. LEXIS 77292, *5-6 (N.D. Cal. 2023) (citation omitted).

– 27 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

The plaintiff "must identify the specific provision of the contract allegedly breached by the defendant." *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 930 (N.D. Cal. 2012); *see also Mersnick v. USProtect Corp.*, 2007 U.S. Dist. LEXIS 68686, *13 (N.D. Cal. Sept. 6, 2007) (dismissing claim where "plaintiff does not provide any factual allegations supporting the existence of an implied contract between plaintiff and defendant with the particular terms he alleges").

SVBFG's conclusory assertion in Count X that it entered into an agreement with SVB "under which SVB and SVBFG agreed to allocate fees and expenses for goods and services based on the extent to which the goods and services are attributable to each entity" (Compl. ¶ 209) lacks the "factual content" necessary to state a plausible claim. *Iqbal*, 556 U.S. at 678. The same holds true with respect to Count XII, in which SVBFG asserts that "SVB was contractually required to reimburse SVBFG pursuant to the terms of SVBFG and SVB's intercompany agreements that SVBFG and SVB validly entered into." Compl. ¶ 226. Based on those bare conclusory allegations, the Court cannot "ascertain the parties' obligations" and "determine whether those obligations have been performed or breached." *Oster v. Caithness Corp.*, 2017 U.S. Dist. LEXIS 140198, *18 (N.D. Cal. Aug. 30, 2017). The allegations of Count XII also leave unclear whether SVBFG received payment for the purported $6.2 million intercompany receivable or to what such intercompany receivables would relate if, in fact, SVBFG failed to receive payment due to some action of FDIC-R1 or Bridge Bank. Compl. ¶ 228.

The facts alleged in Counts X and XI also undermine the claims. For example, SVBFG asserts reimbursement claims against FDIC-R1 relating to former SVB employees and contract counterparties who asserted claims in SVBFG's chapter 11 case—which claims SVBFG does not allege to have paid. (See Compl., Schedules 1, 2, and 3, each noting the claims set forth "are current estimates based on unliquidated and undetermined claims filed in SVBFG's Chapter 11 bankruptcy proceeding . . . and are subject to the reconciliation process therein.") Additionally, the Lease Agreement Claims, Vendor Contract Claims, and Indemnity Claims relate to agreements executed *by SVBFG*, not SVB. Compl. ¶¶ 131, 135. The allegations fail to explain or provide support for an obligation to reimburse SVBFG for claims filed in its bankruptcy case on account of contracts to which SVB was not a party. Absent a binding, enforceable agreement to indemnify (which SVBFG has not identified), no such duty exists.

1    With respect to the inadequately plead Count XI, "[b]efore a court can find the existence of an

2   implied contract in fact, there must be an offer; there must be an acceptance; the acceptance must be

3   in the terms of the offer; it must be communicated to the offeror; there must be a mutual intention to

4   contract; [and] there must be a meeting of the minds of the parties." *Krottner v. Starbucks Corp.*, 406

5   Fed. App'x 129, 131 (9th Cir. 2010). Here, SVBFG merely alleges that an implied-in-fact contract

6   was created by the actions and conduct of SVB and SVBFG and otherwise "under the circumstances."

7   Compl. ¶ 220. That is not enough. Claim XI fails because SVBFG does not allege any *facts* showing

8   mutual assent (offer and acceptance) to agreed terms. *See Stanford Health Care v. Blue Cross Blue*

9   *Shield of N.C., Inc.*, 2022 U.S. Dist. LEXIS 11482, *20-21 (N.D. Cal. Jan. 21, 2022) (dismissing

10  breach of implied contract claim for failure to allege mutual assent).

11    Count XI also fails because SVBFG alleges in Count X the existence of an enforceable *express*

12  contract governing the *same* subject matter as the *implied* contract alleged in Count XI. "[I]t is well

13  settled that an action based on an implied-in-fact or quasi-contract cannot lie where there exists

14  between the parties a valid express contract covering the same subject matter." *O'Connor v. Uber*

15  *Techs., Inc.*, 58 F. Supp. 3d 989, 999 (N.D. Cal. 2014); *see also Hammerling v. Google LLC*, 615 F.

16  Supp. 3d 1069, 1095–96 (N.D. Cal. 2022) (implied contract claim failed because "Plaintiffs clearly

17  allege that they had an enforceable contract with Google"); *Be In, Inc. v. Google Inc.*, 2013 U.S. Dist.

18  LEXIS 147047, *16-21 (N.D. Cal. Oct. 9, 2013) (dismissing with prejudice implied contract claim

19  with prejudice because plaintiff asserted a "valid express contract" that "cover[s] the subject matter").

20  For the foregoing reasons, Counts X, XI, and XII must be dismissed in their entirety.

21                                          **<u>CONCLUSION</u>**

22    For lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), the Court should dismiss

23  Counts II (against FDIC-Rs), Count III (against FDIC-Rs), Count V (against FDIC-R1), Count VI

24  (against FDIC-R2), Count VII (against FDIC-Rs) and Count VIII (against FDIC-Rs). In addition, for

25  failure to state a claim, pursuant to Rule 12(b)(6), the Court should dismiss with prejudice (i) Count I

26  against FDIC-R1 to the extent it seeks prejudgment interest and lost earnings and in its entirety with

27  respect to FDIC-R2 (which is not a party to or liable on the Deposit Claim) and (ii) Counts II-XII with

28  respect to both FDIC-Rs.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 29 –

Dated: May 10, 2024

REED SMITH LLP


By: /s/ Raymond Cardozo
Raymond A. Cardozo

*Counsel to the Federal Deposit Insurance
Corporation, as Receiver for Silicon Valley Bank,
and the Federal Deposit Insurance Corporation,
as Receiver for Silicon Valley Bridge Bank, N.A.*