

**Driving progress
through partnership**
**Casey D. Laffey**
Direct Phone:  +1 212 549 0389
Email: claffey@reedsmith.com

Reed Smith LLP
599 Lexington Avenue
New York, New York 10022
+1 212 521 5400
Fax +1 212 521 5450
reedsmith.com

August 23, 2024

**By ECF**

Hon. Virginia K. DeMarchi
United States District Court,
Northern District of California, San Jose Division
Robert F. Peckham Federal Building
& United States Courthouse
280 South 1st Street, Room 2112
San Jose, CA 95113

**Re:**   *Silicon Valley Bank Financial Group v. Federal Deposit Insurance Corporation, as receiver for Silicon Valley Bank, et al.* **(Case No. 5:24-cv-01321-BLF)**

Dear Hon. DeMarchi:

We represent defendants Federal Deposit Insurance Corporation, as receiver for Silicon Valley Bank ("FDIC-R1") and as receiver for Silicon Valley Bridge Bank, N.A. ("FDIC-R2") (together, "Defendants" or "FDIC-R") and write jointly with counsel for plaintiff SVB Financial Group ("Plaintiff" or "SVBFG") pursuant to Section 4 of Your Honor's Standing Order for Civil Cases.

**I.    SUMMARY OF DISPUTE**

Upon Silicon Valley Bank's ("SVB's") failure, FDIC-R1 succeeded by law to all rights of SVB. SVB was the wholly owned subsidiary of SVBFG.  Presently, FDIC-R1 possesses documents SVBFG believes are subject to SVBFG's attorney-client privilege ("Documents").  FDIC-R1 argues that, to the extent any Documents are privileged, SVB jointly held the privilege with SVBFG or, alternatively, that SVBFG has waived any claim to attorney-client privilege.  SVBFG maintains the dispute is not properly before the Court because it involves matters unrelated to this case belonging in the Bankruptcy Court and, independently, no discovery requests are at issue.  Regardless, SVBFG disputes FDIC-R1's contentions.

**II.    THE PARTIES' POSITIONS**

**a.    Defendant FDIC-R's Position**

FDIC-R1 succeeded to all rights and privileges of SVB, including all rights to its documents.  12 U.S.C. §§ 1821(d)(2)(A), (B), and (D). After FDIC-R1 began processing SVB Documents, SVBFG asserted that SVBFG's files were commingled with SVB's and belatedly sought to clawback all files and block FDIC-R1 from viewing **the Bank's records** due to SVBFG's supposed "exclusive privilege." FDIC-R1 has, at all times, disputed SVBFG's assertion of exclusive privilege over *any* of the Documents hosted among SVB's files and/or on platforms to which SVB had equal access, but, prior to this litigation,



Hon. Virginia K. DeMarchi
August 23, 2024
Page 2

nonetheless (without waiver) cooperated with SVBFG to provide SVBFG millions of documents in advance for SVBFG to identify purportedly privileged documents. SVB failed almost 18 months ago, but SVBFG is withholding "permission" for FDIC-R1 to review folders containing millions of **SVB** documents, which FDIC-R1 believes are relevant to its defenses and which SVBFG will never assert privilege over. At a minimum, FDIC-R should be permitted to review these documents subject to clawback. SVBFG refuses that practical approach to expedite review. FDIC-R1 remains captive to SVBFG's threats to disqualify SVB's counsel if it views the Documents. As to the 400,000+ documents over which SVBFG has asserted privilege expressly, SVBFG has not produced a proper privilege log.

FDIC-R seeks an order authorizing FDIC-R1 to view the Documents, which are already in FDIC-R1's possession, and use them for the defense of this lawsuit—which includes reviewing and producing documents and identifying documents supportive of FDIC-R1's forthcoming affirmative defenses. FDIC-R1 is entitled to view the Documents on two independent grounds: (1) if any attorney-client privilege exists, SVB—and therefore FDIC-R1—necessarily was included within its scope; and/or (2) if the Court finds that SVBFG held exclusive privilege over the Documents, SVBFG waived that privilege as to SVB and FDIC-R1 by commingling the Documents with SVB's files. FDIC-R is not conceding the Documents are privileged, nor is it advocating that the Documents should be freely accessible by third parties and/or the public. Rather, FDIC-R is seeking a ruling from the Court that FDIC-R1 is equally entitled to view the Documents that FDIC-R1 collected from **SVB**—that SVBFG already has been reviewing for nearly a year. This imbalance in the parties' ability to review relevant documents is highly prejudicial to FDIC-R1.

FDIC-R does not seek an "advisory opinion," but an order permitting FDIC-R1 to review a discrete set of documents properly part of the discovery record, which FDIC-R1 already possesses. Likewise, SVBFG's claim that the Bankruptcy Court has sole jurisdiction to resolve this dispute is flatly contradicted by that court's recent decision, holding that SVBFG's claims and FDIC-R's setoff defenses should be heard in this Court. *See In re SVB Financial Group* (Bk. S.D.N.Y. Case No. 23-10367) (Dkt. No. 1380). All discovery disputes relating to such claims and defenses must be heard here.

It is critical that the privilege dispute be promptly resolved to avoid further prejudice to FDIC-R1's defense of this litigation. With a document discovery deadline only five months away, this issue needs to be resolved now. Additionally, the Documents are critical to determining whether S&C should be disqualified due to a conflict of interest. FDIC-R has reason to believe that S&C, which previously represented both SVBFG and SVB, has a serious conflict of interest that prevents it from acting as counsel in this proceeding. FDIC-R requires immediate access to ascertain the scope of S&C's conflict and, if needed, to bring the details of this conflict to the Court's attention for immediate resolution.

### 1) SVB Jointly Held Attorney-Client Privilege with SVBFG

All the undisputed facts establish that SVB and SVBFG were effectively one client for purposes of attorney-client privilege, and thus any privilege was held jointly.

It is undisputed that SVBFG had *no employees* of its own. Rather, all board members, directors and officers of SVBFG were *SVB* employees providing services to SVBFG pursuant to a written Master Intercompany Services Agreement, dated July 19, 2022 ("MISA"). The entities shared a single legal



department and the composition of the boards for both SVB and SVBFG were identical—each director served dual roles for both entities. SVB's and SVBFG's documents were stored together in a joint document depository, without separation denoting whether the files pertain to SVB or SVBFG. Furthermore, all board meetings were held on a joint basis, with a single set of meeting minutes generated from each such meeting.

For determining the scope of privilege, this complete unity of corporate governance means that SVB was deemed part of the attorney-client relationship that gave rise to the privilege that SVBFG now asserts over the Documents. *See Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 105 F. Supp. 3d 1100, 1110 (E.D. Cal. 2015) ("parent's ownership of the subsidiary would not alone equate the two for conflict purposes, but ***if they share management and a legal department, they may be one client***.") (emphasis added); *Teradyne, Inc. v. Hewlett-Packard Co.*, No. C-91-0344 MHP, ENE, 1991 U.S. Dist. LEXIS 8363, at *10 (N.D. Cal. June 6, 1991) (relevant factors include "the separateness of the entities involved, whether corporate formalities are observed, the extent to which each entity has distinct and independent managements and board of directors and whether, for legal purposes, one entity could be considered the alter ego of the other.").

S&C's conduct during its joint representation of both SVB and SVBFG further demonstrates why any privilege that may attach to the Documents is shared between the entities. The record shows that S&C frequently advised both SVB and SVBFG simultaneously including at 21 joint board meetings in which board members acted in their capacities as both SVB and SVBFG representatives. S&C also evaluated and provided advice regarding the conduct of the Board members of both SVB and SVBFG according to the minutes. Under California law, an attorney-client relationship does not require a written contract. *Glenn v. Hyundai Motor Am.*, No. 8:15-cv-02052-DOC (KESx), 2017 U.S. Dist. LEXIS 235691, at *18 (C.D. Cal. Dec. 13, 2017). Rather, "whether an attorney-client relationship exists is a question of law, and it depends on 'how the situation appears to a reasonable person in the client's position' under the 'totality of the circumstances.'" *Id.*; *see also* Restatement (Third) of the Law Governing Lawyers § 14 ("The client's intent may be manifest from surrounding facts and circumstances . . . . No written contract is required."). Here, SVB reasonably understood there to be an attorney-client relationship with S&C, and SVBFG is estopped from claiming that SVB was not within the scope of its attorney-client privilege when even its outside counsel treated the two entities as a single client.

Contrary to SVBFG's claim, FDIC-R is not arguing that all parents and subsidiaries must be treated as a single entity for privilege purposes. Rather, the undisputed facts of how SVB and SVBFG operated demonstrate SVB and SVBFG were one client—and therefore shared attorney-client privilege.

### 2) SVBFG Waived Privilege as to SVB

If the Court finds that SVB was not included in the scope of attorney-client privilege attaching to the Documents at the time of their creation, SVBFG waived any such privilege as to SVB by SVBFG's commingling its files with SVB's without any protections or separations. Attorney-client privilege may be waived where the communications are disclosed to third parties. *Griffith v. Davis*, 161 F.R.D. 687, 698 (C.D. Cal. 1995). By failing to maintain any distinction between SVBFG's and SVB's files, SVBFG voluntarily disclosed the Documents to SVB's 6,000-plus employees and waived any privilege it might have held, at least as to SVB and therefore FDIC-R1.

Hon. Virginia K. DeMarchi
August 23, 2024
Page 4



SVBFG incorrectly relies on the MISA and similar contracts to argue that it did not waive exclusive privilege over the Documents.  *First*, that agreement, which was dated July 19, 2022, is not relevant to any pre-2022 Document.  A privilege, once waived, cannot later be reasserted.  *See Hipschman v. Cty. of San Diego*, No. 3:22-cv-0903 AJB (BLM), 2024 U.S. Dist. LEXIS 140171, at *23 (S.D. Cal. July 31, 2024) (if a party voluntarily discloses privileged material "the privilege is gone, and the litigant may not thereafter reassert it to block discovery of the information and related communications by his adversaries.").

*Second*, as SVBFG concedes, the agreement is entirely silent as to privilege.  At most, the MISA provides that SVBFG did not agree to waive ***confidentiality*** over documents with respect to third parties and set limits on SVB's use of such information.  *See, e.g.*, MISA ¶¶ 3.2.2, 4.2.2.  Even then, "Confidential Information" does not refer to privileged material, and the MISA expressly contemplates that at least some SVB employees would have access to the Documents.  MISA ¶ 4.4.2 (permitting SVB employees "with a need to know such Confidential Information for the performance of its obligations and exercise of its rights under [the MISA]" to view documents without requiring consent from SVBFG).

*Third*, confidentiality restrictions fail to counteract the disclosure of allegedly privileged documents to third parties.  *See Griffith,* 161 F.R.D. at 698.  No reasonable interpretation of the MISA saves SVBFG from its waiver of any privilege that may have existed.

### b.  Plaintiff SVBFG's Position

#### 1)    FDIC-R1 Seeks an Improper Advisory Opinion

FDIC-R1's request for an advisory opinion vitiating SVBFG's attorney-client privilege is improper, premature and based on a false recitation of facts.  This litigation involves FDIC-R's refusal to return SVBFG's $1.9 billion in account funds following SVB's closure on March 10, 2023.  The dispute FDIC-R1 raises is not part of this litigation and beyond the Court's jurisdiction, and involves discussions that began 18 months ago about the disposition of documents possessed by SVBFG, SVB and First Citizens Bank ("FCB").  The issue of ownership and provision of documents has been before the Bankruptcy Court overseeing SVBFG's bankruptcy since March 2023.  Any dispute concerning Debtor property, including these documents, belongs there.  The Bankruptcy Court's decision regarding FDIC-R1's setoff defense—which it hasn't even asserted yet—is irrelevant to the question here of who owns the documents at issue.  Independently, FDIC-R seeks an improper advisory opinion, because no discovery requests or responses in this litigation are at issue.

SVBFG was the parent company of—and a legal entity distinct from—SVB, with its own business and legal concerns.  These include managing SVB (its former bank) or other subsidiaries (like its investment bank or venture capital business), and dealing with its distinct regulatory and public disclosure issues.  When FDIC-R1 became receiver of SVB, it prevented SVBFG from accessing SVBFG's own information, which was maintained at SVB pursuant to agreements protecting confidentiality and, as applicable, privileges.  Immediately thereafter, SVBFG asserted its entitlement to its attorney-client privilege.



On March 27, 2023, FCB purchased SVB's assets and liabilities, and acquired or retained possession of certain records held at the former SVB.  On May 2, 2023, in connection with its bankruptcy case, SVBFG entered into a document sharing/turnover agreement with FCB to separate the assets and operations of SVBFG and SVB; "identify[] and protect[] the confidential and privileged materials" of FCB, FDIC-R and SVBFG; and provide for the transfer of such materials.  FDIC-R1 approved that agreement prior to its execution, yet thereafter FDIC-R1 blocked FCB from transferring certain SVBFG information to SVBFG, and refused SVBFG's requests to transfer the information.

For seven months, FDIC-R1 refused wholesale to return or permit the return of SVBFG's documents.  Then, in November 2023, FDIC-R1 began sending SVBFG (unannounced) millions of documents for review but asserted that SVBFG must respond within weeks to preserve privilege.  SVBFG has since received nearly 24 million documents, unlimited by time or subject matter.  SVBFG provisionally asserted "sole" (rather than "joint") privilege over roughly 400,000 documents—under 1.7% of the total—and continues to reduce that population.  FDIC-R1 also recently identified folders of documents—many of which relate exclusively to non-SVB subsidiaries on their face—and requested that SVBFG advise whether it asserts privilege over those documents (but has not provided SVBFG with any documents to review).

Unsatisfied, FDIC-R1 seeks to involve the Court in its effort to obliterate SVBFG's right to claim privilege in every circumstance over every subject matter, without any connection to this litigation—and notwithstanding Judge Freeman's admonition that any privilege dispute raised by FDIC-R1 must follow the usual course of "discovery with the privilege log and then you litigate the privilege log."  Transcript at 20:6-21:5, *SVB Financial Grp.* v. *FDIC*, *et. al.*, No. 5:24-cv-01321 (June 13, 2024).  FDIC-R1 identifies <u>no</u> discovery at issue, as required under applicable law and the Court's Standing Order.  *See*, *e.g.*, *Fynn* v. *Love*, 2023 WL 2744493 at *2 (D. Nev. Mar. 30, 2023).  Rather, it seeks an advisory opinion permitting it to review documents obtained outside of this litigation.  Passing whether FDIC-R1 could resolve this dispute through discovery in this case given the breadth of the ruling it seeks, FDIC-R1's current request is improper.

### 2)    SVBFG May Claim Attorney-Client Privilege

FDIC-R1 argues that, because SVB is a subsidiary of SVBFG with overlapping officers and directors, SVB unilaterally holds SVBFG's attorney-client privilege.  This distorts basic corporate law: "directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately. . . ."  *United States* v. *Bestfoods*, 524 U.S. 51, 69 (1998).  Each company has its own legal privilege; sometimes their interests overlap (and the privilege is "joint"); sometimes they relate to matters of principal concern to only one, rendering the privilege "sole."  Some of SVBFG's activities relate exclusively to SVBFG, including issuing securities, making SEC filings and conducting activities of non-bank SVBFG subsidiaries, including SVB Capital and SVB Securities.  None of this constitutes work done for SVB.

FDIC-R1 concedes that SVB provided services to SVBFG pursuant to terms documented in a Master Intercompany Services Agreement ("MISA").  SVB and SVBFG also executed a Service Level Agreement ("SLA").  These arms'-length agreements memorialize the reasonable precautions SVBFG took to preserve its attorney-client communications and other confidential information.  The MISA



required SVB to keep SVBFG's confidential information confidential and prohibited its disclosure other than to SVB employees, affiliates, officers or directors with a "need to know" the information to perform their contractual MISA undertakings.  (MISA ¶¶ 4.4.2, 4.4.4.)  The MISA provided that SVBFG's confidential information is and would remain <u>SVBFG's sole and exclusive property</u>, notwithstanding the disclosure to SVB.  (*Id.* ¶ 4.4.6.)  And, the MISA required SVB to return SVBFG's confidential information to SVBFG upon the MISA's termination.  (*Id.*)  FDIC-R1 breached this obligation.

Furthermore, SVB employees were required to follow SVBFG's enterprise records management and data policies, which provided additional protections to preserve the confidentiality of SVBFG's records, and restrict their use to proper business purposes. (*Id.*; SLA ¶ 5.)  They also followed a Regulation W Policy, which required employees to allocate time spent working for SVBFG and pursuant to which SVBFG compensated SVB for such work.

FDIC-R1 elides these contractual provisions and distinctions, urging the Court instead hold that the overlap in SVB and SVBFG's officers and directors is dispositive.  This does not establish categorical privilege over SVBFG's documents.  *E.g.*, *Bestfoods*, 524 U.S. 51, 69-70; *Ahlstrom* v. *DHI Mortg. Co., Ltd., L.P.*, 21 F.4th 631, 636 (9th Cir. 2021) ("Courts adhere to the fundamental principle that corporations, including parent companies and their subsidiaries, are treated as distinct entities."); *United States* v. *Bennett*, 621 F.3d 1131, 1137-38 (9th Cir. 2010) (Congress did not "instruct[] us to ignore corporate law principles by considering FDIC-insured banks and their subsidiaries as one and the same . . . .").

FDIC-R1's false assertions concerning S&C's representation of SVBFG also do not establish categorical privilege over SVBFG's documents.  Even ignoring FDIC-R's misrepresentations of the board minutes, S&C's presence at 21 board meetings—out of 600 meetings in the ten years before SVB was closed—does not establish a joint privilege for all matters.

FDIC-R1's authorities are unavailing.  FDIC-R1's citation to the Court's quotation of the "ABA's opinion" in *Lennar Mare Island, LLC* v. *Steadfast Ins. Co.* is inapposite because it does not concern attorney-client privilege.  *See* 105 F. Supp. 3d 1100, 1110 (E.D. Cal. 2015).  *Teradyne, Inc.* v. *Hewlett-Packard Co.*, likewise does not discuss attorney-client privilege.  1991 U.S. Dist. LEXIS 8363 (N.D. Cal. June 6, 1991).  And the Court in *Glenn* v. *Hyundai Motor Am.* found the material at issue privileged without analyzing a parent-subsidiary relationship governed by arms-length contracts and formal written policies.  *See* 2017 U.S. Dist. LEXIS 235691, at *13-20 (C.D. Cal. Dec. 13, 2017).

### 3)      SVBFG Did Not Waive Attorney-Client Privilege

FDIC-R1's argument that SVBFG waived attorney-client privilege relies on assertions of "commingling" and voluntary disclosure to "third parties," including the absurd contention that SVB utilized no network or email password or other protections and therefore SVBFG disclosed its privileged information to every one of SVBFG's 6,000+ employees  The course of dealing and contractual relationship between SVBFG and SVB, applicable data protection policies and procedures, and basic common sense, reveal these assertions are unfounded.

FDIC-R1 attacks the MISA's protections on two erroneous grounds: (1) the MISA is dated July 19, 2022; and (2) the MISA does not address "privilege."  FDIC-R1 nowhere elucidates why the MISA's

Hon. Virginia K. DeMarchi
August 23, 2024
Page 7



execution date destroys privilege in light of the same or similar protections covering documents that predated it. And, FDIC-R1's own authorities support finding SVBFG did not waive attorney-client privilege based on the MISA's confidentiality protections and SVBFG's data protection policies and practices. *Griffith* v. *Davis* recognized that "[o]ne of the essential elements of the attorney-client privilege is the intent that the communication be kept confidential." 161 F.R.D. 687, 694 (C.D. Cal. 1995). Further, "whether or not a given communication is 'confidential' within the meaning of the [attorney-client] privilege is determined from the perspective of the client" – here, SVBFG. *Id.*

Finally, FDIC-R1 asserts it seeks only to view the Documents subject to "clawback rights." FDIC-R1's refusal to recognize SVBFG's right to any attorney-client privilege renders the offer illusory. And the recent disqualification of FDIC-R—including a lawyer who is seeking to review SVBFG's privileged information—indicates that SVBFG must ensure its privileged information is protected to avoid inundating the Court with ancillary litigation seeking remediation. *See Fed. Deposit Ins. Corp.* v. *Ernst & Young LLP*, 2023 WL 4027886, at *6 (E.D. La. June 15, 2023).

### III.    HEARING REQUEST

#### a.  Defendant FDIC-R's Position

FDIC-R respectfully requests a conference or oral argument on this dispute and believes that it would assist the Court in resolving this dispute and allow the parties to answer any questions that the Court may have.

#### b.  Plaintiff SVBFG's Position

SVBFG agrees with FDIC-R1 that a conference or oral argument on this dispute would assist the parties in resolving the present dispute regarding SVBFG's privileged documents, and respectfully requests a hearing on the matter. If briefing from the parties on this issue would be helpful to the Court, SVBFG would propose each side submit simultaneous briefs supporting their positions not to exceed ten (10) pages, or another length as is preferable to the Court.

### IV.    RELEVANT DISCOVERY DEADLINES

Party document discovery is scheduled to close on January 31, 2025.

### V.    COMPLIANCE WITH LEAD COUNSEL CONFERENCE REQUIREMENT

Lead counsel conferred via videoconference on August 2, 2024. SVBFG counsel, Diane McGimsey, Adam Paris and Robert Sacks of S&C, and FDIC-R counsel, Casey Laffey of Reed Smith and Stephen Sorenson of Bailey & Glasser, participated. Counsel conducted a second videoconference to further confer on August 22, 2024.

We thank the Court for its attention to this matter.

Hon. Virginia K. DeMarchi
August 23, 2024
Page 8

**ReedSmith**

Respectfully submitted,


Dated:  August 23, 2024


*/s/ Robert A. Sacks*
Robert A. Sacks (SBN 150146)
Adam S. Paris (SBN 190693)
Diane L. McGimsey (SBN 234953)
**SULLIVAN & CROMWELL LLP**
1888 Century Park East
Los Angeles, California 90067
Telephone:     (310) 712-6600
Facsimile:     (310) 712-8800


Sverker K. Hogberg (SBN 244640)
**SULLIVAN & CROMWELL LLP**
550 Hamilton Avenue
Palo Alto, California 94301
Telephone:     (650) 461-5600
Facsimile:     (650) 461-5700


*Counsel for Plaintiff SVB Financial Group*

*/s/ Casey D. Laffey*
Casey D. Laffey, Esq. (admitted *pro hac vice*)
Kurt F. Gwynne, Esq. (admitted *pro hac vice*)
**REED SMITH LLP**
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
E-mail: claffey@reedsmith.com
E-mail: kgwynne@reedsmith.com

Stephen Sorensen, Esq. (admitted *pro hac vice*)
**BAILEY & GLASSER, LLP**
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007
Telephone: (202) 445-7266
Email: ssorensen@baileyglasser.com


*Counsel to the Federal Deposit Insurance
Corporation, as Receiver for Silicon Valley Bank
and Silicon Valley Bridge Bank, N.A.*