**BAILEY GLASSER** LLP

1055 Thomas Jefferson St. NW
Suite 540
Washington, DC 20007
Tel: 202.463.2101
Fax: 202.463.2103

STEPHEN SORENSEN
ssorensen@baileyglasser.com

October 2, 2024

**By ECF**

Hon. Virginia K. DeMarchi
United States Magistrate Judge
United States District Court
  for the Northern District of California
280 South 1st St., Room 2112
San Jose, CA  95113

**Re:**   *Silicon Valley Bank Financial Group v. Federal Deposit Insurance Corporation, as receiver for Silicon Valley Bank, et al.* **(Case No. 5:24-cv-01321-BLF-VKD)**

Dear Judge DeMarchi,

The Court Order of September 17, 2024 (Dkt. 75) ("Order") directed, in part:

> 4. By October 1, 2024, the parties must file a joint report identifying the number of documents SVBFG is still reviewing for privilege and the parties' agreed or respective proposals for the application of search terms or other methodologies to expedite SVBFG's privilege review of the document (including Teams chat messages) most likely to be relevant to a claim or anticipated defense.  The proposal(s) shall also include proposed dates for: (1) release of documents (including Teams chat messages for FDIC-R review); and (2) service of a privilege log or logs documenting SVBFG's assertion of privilege, if any.

**I.   SUMMARY OF PROGRESS**

**a.  Custodial Documents**

On September 20, 2024, SVBFG provided FDIC-R with lists of: (1) 23,269,763 custodial documents to which it does not object to FDIC review; and (2) 302,885 custodial documents that SVBFG is still reviewing for privilege ("Reserved Documents").  SVBFG provided FDIC-R with a tentative list of custodians who have documents among the Reserved Documents (but without document counts).

On September 20, 2024, FDIC-R provided SVBFG with an informal, topical description of the claims and anticipated defenses that it presently expects will define the scope of discovery in this action.  It also provided proposed search terms for application to the approximately 300,000 documents SVBFG is still reviewing for privilege, and it provided a proposed prioritization for review by custodian.

On September 30, 2024, SVBFG provided FDIC-R with hit counts on the Reserved Documents based on the proposed search terms sent with FDIC-R's September 20 letter.

The parties have been unable to reach agreement on "a plan for SVBFG's efficient completion of its privilege review of the remaining approximately 300,000 documents, including prioritization of documents from certain custodians." *See* Order at 2.

### b. Non-Custodial Documents

On September 19, 2024, FDIC-R delivered to SVBFG a "technical data overlay" to facilitate review of Microsoft Teams chat entries. On September 26, SVBFG responded that its vendor has assessed the additional data and that SVBFG believes that the data overlay was not sufficient to enable SVBFG to review the content in a "usable format" and that based on a preliminary review of the data, the additional information provided by FDIC-R appeared to be inconsistent and unreliable. The parties are continuing to meet and confer on a review mechanism and concomitant timing and propose to report back to the Court by October 15, 2024.

FDIC-R and SVBFG also continue to exchange information about file share location collections. The parties propose to continue to seek agreement on timing for FDIC-R to complete its provision of information to SVBFG for review and a review mechanism and concomitant timing, reporting back to the Court by October 15, 2024.

FDIC-R and SVBFG also continue to discuss protocols that would guide exclusive privilege review for any future collections. Although FDIC-R has not concluded its collection process, no particular collections are anticipated by counsel at this time.

### II. THE PARTIES' POSITIONS

#### a. Defendant FDIC-R's Position

Defendant FDIC-R understands the Court's direction to require proposals for: (1) schedule of SVBFG's exclusive privilege review and logging of the Reserved Documents, and (2) prioritization of that review.

At a Meet & Confer on September 27, 2024, SVBFG offered to commit to exclusive privilege review of 5,000 documents per week. Although that rate—even assuming use of the current week and no holiday carveouts—is less than a third of what would be necessary to complete review of the Reserved Documents by the document discovery deadline of January 31, 2025, it is a plausible place to start.[1] FDIC-R proposes weekly releases, with privilege logs for any withheld documents contemporaneously provided with weekly releases.

---

[1] Although SVBFG has expressly reserved only 302,885 custodial documents, roughly another 300,000 custodial documents are likewise unavailable to FDIC because they are family-connected (e.g., an attachment to an e-mail reserved for privilege review). It would be expensive and time-consuming for FDIC to convert these family-connected documents into reviewable format while ensuring they do not unintentionally make the expressly reserved information

The parties have been unable, however, to agree on prerogative for prioritizing review of the Reserved Documents. At a Meet & Confer on September 27, 2024, FDIC-R proposed two approaches that SVBFG rejected:

First, FDIC-R proposed to direct its existing clean team (attorneys at Hughes Hubbard, which has no other role in this case) to identify a sample of relevant documents to submit directly to Sullivan & Cromwell ("S&C"), as counsel for SVBFG, for immediate priority review.[2] The FDIC-R clean team would select these documents drawing on general information about the case and the summary of anticipated setoff defenses provided by FDIC-R to SVBFG on September 20, 2024. More specifically, FDIC-R proposed a trial of this process with an initial 1,500 documents to be reviewed by S&C in three business days so that the parties could begin to directly resolve, or prepare to return to the Court with, concrete privilege disputes.

Second, in addition or in the alternative, FDIC-R proposed to select search terms for prioritizing review by SVBFG. FDIC-R acknowledged that the initial search terms it provided on September 20 hit on nearly all of the Reserved Documents such that the term set could not alone provide guidance for where SVBFG's review would start. But SVBFG rejected the prospect of FDIC-R choosing the prioritized search terms, insisting that it knew the documents and the case better than FDIC-R's counsel and would provide its own recommended search terms to FDIC-R. SVBFG sent its recommended search terms following the meeting, and FDIC-R insisted on receiving hit counts for the proposed terms FDIC-R had identified on September 20 pursuant to the Court's Order (as FDIC-R had requested in its September 20 letter).

After finally receiving the hit counts on its own search terms on September 30, 2024, FDIC-R followed up on October 1 with a specific proposal for SVBFG to prioritize review on slightly under 4,000 hits on four search terms, with releases and exclusive privilege claims to be provided within a week. SVBFG rejected this proposal. In the hearing on September 17, counsel for SVBFG had said: "if [FDIC-R] would give us search terms so we could prioritize it, that would assist us in getting through it much, much faster." Tr., Sept, 17, 2024, Dkt. 76, at 47. FDIC-R has been responsive to that request, yet SVBFG insists on retaining control over prioritization.

FDIC-R therefore requests an order directing SVBFG to proceed apace with its exclusive privilege review with contemporaneous privilege logging, following prioritization at FDIC-R's discretion, starting at the minimum review rate of 5,000 documents per week that SVBFG offered.[3] FDIC-R has attached a proposed order to this report.

---

available; therefore, they are effectively also unavailable to FDIC-R at this time based on SVBFG's reservations for review.

[2] This proposal followed from the Court's own suggestion at the hearing on September 17. Tr., Dkt. 76, at 16 ("[I]s there a way for some subset of clean teams to communicate with each other about things that could be released versus not released, to crystallize what the disputes are?").

[3] SVBFG declined to tell FDIC-R in the course of preparing this Joint Status Report how many documents SVBFG has reviewed for exclusive privilege since the September 20

### b. Plaintiff SVBFG's Position

As directed by the Court's September 17, 2024 Order, on September 20, 2024, SVBFG provided to the FDIC-R a list of 23,269,763 documents that have been released for FDIC-R review and use, and the 302,885 documents that SVBFG was still reviewing for privilege (the Reserved Documents) identified by Document ID number, together with the custodians of the documents SVBFG is still reviewing for privilege.[4]  We note that of the 302,885 Reserved Documents, there are only **161,457** documents dated after January 1, 2020 that are not custodial to Jennifer Albrecht, Steven Heineman, Emily Hill, Christie Ma, and Stuart Nayman, all of whom were attorneys at subsidiaries of SVBFG <u>other than</u> Silicon Valley Bank.[5]  In short, over **99.5%** of the documents delivered to SVBFG are available to FDIC-R for review and production, as are millions of other custodial and other documents not the subject of this dispute.

The FDIC-R sent SVBFG proposed search terms to identify documents for prioritized privilege review on September 20, 2024.  The FDIC-R's proposed terms were expansive and not limited to the subject matter of the FDIC-R's potential setoff defenses, which—per FDIC-R's most recent articulation—relate to (1) aiding and abetting breaches of fiduciary duty by Silicon Valley Bank directors and officers with respect to Silicon Valley Bank's management of its held-to-maturity securities portfolio, (2) aiding and abetting breaches of fiduciary duty by Silicon Valley Bank directors and officers with respect to Silicon Valley Bank's management of its available-for-sale securities portfolio, and (3) payment of a dividend from Silicon Valley Bank to SVBFG in December 2022.  Yet the FDIC-R's proposed terms included terms such as "compensation," "governance," "board," "Federal Reserve," "venture capital, "award," and "equity," and the names of individual SVBFG lawyers (e.g., "Loo," "Zuckert," "Chester Te") without any time limits or exclusionary terms to narrow results to potentially relevant documents.  These indiscriminate search terms captured 268,041 of the 302,885 total documents—a proposed "prioritization" rate of **88.5%**.

Despite several meet-and-confer discussions over the past week, the parties have been unable to agree on revised search terms or a prioritization process for the review of potentially privileged documents relevant to FDIC-R's setoff defenses.  The main dispute between the parties appears to be whether the search terms used to identify priority documents must be designed to identify documents that are relevant to FDIC-R's potential setoff defenses in this case or if, instead, the Court could somehow rule on SVBFG's assertion of privilege in a

---

Reserved Documents list was transmitted, how those materials were selected, and when a release list (and/or privilege log) will be provided to FDIC-R.  SVBFG provided only a representation that it was "continuing to review that population" of Reserved Documents, "and will continue to send over additional documents that can be removed from the restricted list on a rolling basis as the parties try to resolve this dispute."

[4]  The total number of Reserved Documents plus attachments is 426,262.  SVBFG has requested that the parties meet and confer regarding how to treat attachments to the Reserved Documents over which SVBFG has not made any assertion of an exclusive privilege.

[5]  The number of these documents, including families, is 230,187.

vacuum, without context and including documents and subject matters not relevant to (or within) the scope of discovery in this litigation. FDIC-R takes the position that if a search term hits on what it views as a reasonable number of documents, SVBFG is required to review and potentially log those documents even if they have nothing to do with SVBFG's setoff defenses. Further, although FDIC-R has taken the position that SVBFG must provide it with proposed search terms and custodians in order for FDIC-R to respond to discovery requests concerning FDIC-R's setoff defenses, for purposes of this privilege review FDIC-R has taken the position that it must be able to select search terms without any input from, or discussion with, SVBFG. In light of FDIC-R's continued selection of search terms that are not reasonably related to its articulated setoff defenses, mutual agreement on search terms is necessary to ensure the parties target documents relevant to this dispute.

SVBFG made five different proposals in an effort to find a way to expedite the privilege review of documents that may potentially be relevant to this litigation (*e.g.*, responsive documents)—which are the only documents that would normally be subject to logging on a privilege schedule. SVBFG remains amenable to any of these approaches.

*First*, after receiving the hits counts on FDIC-R's proposed terms, SVBFG proposed a narrower set of terms to identify documents that are potentially relevant to the case. SVBFG derived these terms using FDIC-R's original proposed terms as a starting point, but then added term limiters to exclude subject matters not relevant to FDIC-R's setoff defenses, such matters relating to non-bank SVBFG subsidiaries and SVBFG's SEC periodic SEC filings. SVBFG also invited FDIC-R to identify key terms not included in SVBFG's proposed terms, but FDIC-R declined to do so. SVBFG's revised search terms resulted in 25,047 hits. SVBFG proposed to review approximately 5,000 relevant documents per week from the priority documents, based on the revised terms, and provide a log for any relevant priority documents within 6-8 weeks (by approximately November 26, 2024), and for the remaining priority documents (*i.e.*, additional documents that hit on the terms, but are not relevant to FDIC-R's setoff defenses) within 10 weeks (by approximately December 10, 2024).[6] SVBFG proposed that the parties also continue to meet and confer regarding the most efficient way to identify and review the remaining non-priority documents that may potentially be relevant to this case, as well as the documents that are not relevant to this case and therefore could not be within the scope of any Court-ordered review process.

*Second*, SVBFG proposed as an alternative taking the 25,047 documents hitting on SVBFG's proposed narrower terms and prioritizing a random sample of those documents (such as every 15th document) for privilege review. Under this proposal, SVBFG would provide a log of potentially relevant documents within two weeks, and a log of all documents in the sample within three weeks.

*Third*, as another alternative, SVBFG agreed to adopt FDIC-R's prior suggestion to use a "clean team" process to review the documents, and proposed that an FDIC-R "clean team" assess all potentially privileged documents with the following parameters:

---

[6] Because the at-issue documents are not currently in a review database, SVBFG first requires machine time to process these documents to put them into a reviewable form.

- FDIC-R will run mutually agreed search terms, relevant to its potential setoff defenses, over the population of 302,885 restricted documents;
- FDIC-R's clean team will review the documents and categorize each document as privileged or not privileged, and every ten business days the FDIC-R's clean team will provide SVBFG with the document IDs for the populations categorized as privileged and not privileged (the "Clean Team Designations");
- SVBFG will then review the documents and inform FDIC-R's clean team (1) whether it intends to assert privilege over any of the documents designated as not privileged and (2) whether it intends to assert an exclusive SVBFG privilege over any of the documents designated as privileged;
- SVBFG will inform FDIC-R of its privilege determinations within ten business days if the FDIC-R's Clean Team Designations delivered at one time contain 5,000 or fewer documents and SVBFG will be afforded five additional business days for each additional 2,500 documents (or any fraction thereof) identified in a Clean Team Designation; and
- In its responses, SVBFG will identify any documents over which it intends to asset an exclusive privilege or that SVBFG contends are not relevant to this litigation, so that the parties can discuss whether those documents should be included among any disputed documents to be presented to the Court.

*Fourth*, as yet another alternative, SVBFG indicated that it was willing to consider FDIC-R's proposed "clean team" process whereby the FDIC-R clean team would select a sample of 1,500 documents for review, provided that the parties mutually agree on search terms to identify documents potentially relevant to the FDIC-R's potential setoff defenses. SVBFG explained to FDIC-R that mutual agreement on the search terms was necessary because the clean team ostensibly has no role in this case and therefore no understanding of the issues relevant to FDIC-R's setoff defenses, and the statement of FDIC-R's setoff defenses set forth in its September 20, 2024 letter lacked sufficient detail to design appropriately targeted search terms. Without appropriate search terms, this process would only delay, not expedite, the review of documents relevant to this case.

*Fifth*, in response to the latest proposal from FDIC-R—first made this morning—that SVBFG review document hits and family-connected documents for four search terms identified by FDIC-R, SVBFG accepted FDIC-R's proposal in concept but proposed revisions to the search terms to limit the documents to matters relevant to this case, and to provide sufficient time to review the documents that reasonably accounts for the Rosh Hashanah and Yom Kippur holidays. SVBFG proposed that:

- SVBFG will review document hits and family-connected documents for the following four search terms: (1) Trevino AND (evaluation* OR interview* OR assessment* OR "effective challenge") AND NOT (proxy OR activism); (2) "EVE-at-risk"; (3) "peer practice" AND (governance OR AFS OR HTM OR "available for sale" OR "held to maturity" OR "interest rate risk" OR "liquidity risk" OR "risk appetite" OR "risk management" OR "risk metric" OR "Treasury risk" OR (duration w/2 risk) OR liquidity OR board); and (4) Curinos.

6

- If the FDIC-R1 prefers to start with a sample set of approximately 4,000 documents and the search terms above, together with families, do not result in 4,000 document hits, SVBFG would agree to include additional terms from FDIC-R1's proposed search term list, provided that the sample set is capped at 4,000 documents to meet the time frame set for the review.  SVBFG suggests using targeted terms to increase the likelihood of identifying documents relevant to FDIC-R1's setoff defenses, such as "contingency funding plan", "economic value of equity", or "(interest rate" w/3 risk) w/3 management".
- If FDIC-R agrees to this proposal by October 2, 2024, SVBFG will complete its review of the sample set of documents by October 18, 2024.
- By October 21, 2024, SVBFG will provide a privilege log for any documents relevant to FDIC-R1's setoff defenses over which SVBFG claims an exclusive privilege, if any, as it would were it responding to a proper document request.
- The parties will meet and confer on October 22, 2024 and submit a joint status report to the Court on October 23, 2024.
- SVBFG and FDIC-R1 will meet and confer to discuss how to deal with documents over which SVBFG asserts an exclusive privilege but that are not relevant to the claims or defenses in the case.

The principal dispute between SVBFG and FDIC-R appears to be whether the priority documents should be (1) limited to documents relevant to FDIC-R's anticipated setoff defenses and proportional to the needs of the case (as such defenses have been articulated by FDIC-R counsel), and (2) whether SVBFG has any input in the search terms used to identify such documents.  As Your Honor will recall, issues involving these documents involve matters beyond the scope of this litigation, originally involved more than 23 million documents, and have been the subject of ongoing discussion and review between the FDIC-R, First Citizen's Bank and SVBFG for more than 18 months.  Documents subject to consideration in this review process should be relevant to this litigation; if FDIC-R wants to address broader issues with other documents, it should go to a court that has jurisdiction over issues beyond those involved in this litigation –*i.e.*, the bankruptcy court.

SVBFG continues to believe that the parties should be able to identify mutually agreeable search terms for the priority set of documents—as parties routinely do in discovery—which will enable the parties most efficiently to address any privilege disputes without also needing to resolve relevance disputes at the same time.  Any of SVBFG's proposals would accomplish this goal.  SVBFG has attached proposed orders reflecting its proposals to this report.

### III.   NEXT STEPS

The parties request a ruling on the papers, a telephonic / video status conference, or an in-person hearing at the Court's earliest available date.

We thank the Court for its attention to this matter.

Respectfully submitted,

Dated: October 2, 2024

| | |
|---|---|
| */s Robert A. Sacks* | */s Stephen Sorensen* |
| Robert A. Sacks (SBN 150146) | Stephen Sorensen (SBN 199408) |
| Adam S. Paris (SBN 190693) | Elliot McGraw (SBN 275613) |
| Diane L. McGimsey (SBN 234953) | Michael L. Shenkman (admitted *pro hac vice*) |
| **SULLIVAN & CROMWELL LLP** | **BAILEY & GLASSER LLP** |
| 1888 Century Park East | 1055 Thomas Jefferson St., NW, Suite 540 |
| Los Angeles, CA  90067 | Washington, DC  20007 |
| Tel:     (310) 712-6600 | Tel:     (202) 445-7266 |
| Fax:    (310) 712-8800 | Fax:    (202) 463-2103 |
| | |
| Sverker K. Högberg (SBN 244640) | Lawrence H. Heftman (admitted *pro hac vice*) |
| **SULLIVAN & CROMWELL LLP** | David C. Giles (admitted *pro hac vice*) |
| 550 Hamilton Ave. | **ARENTFOX SCHIFF** |
| Palo Alto, CA  94301 | 233 S. Wacker Dr., Suite 7100 |
| Tel:     (650) 461-5600 | Chicago, IL  60606 |
| Fax:    (650) 461-5700 | Tel:     (312) 258-5500 |
| | Fax:    (312) 258-5600 |
| *Counsel for Plaintiff SVB Financial Group* | |
| | *Counsel to the Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank* |
| | |
| | Casey D. Laffey (admitted *pro hac vice*) |
| | Kurt F. Gwynne (admitted *pro hac vice*) |
| | **REED SMITH LLP** |
| | 599 Lexington Ave. |
| | New York, NY  10022 |
| | Tel:     (212) 521-5400 |
| | Fax:    (212 521-5450 |
| | |
| | Raymond A. Cardozo (SBN 173263) |
| | Emily F. Lynch (SBN 324055) |
| | **REED SMITH LLP** |
| | 101 Second St., Suite 1800 |
| | San Francisco, CA  94105 |
| | Tel:     (415) 543-8700 |
| | Fax:    (415) 391-8269 |
| | |
| | *Counsel to the Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank and Silicon Valley Bridge Bank, N.A.* |

**CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2024, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all counsel of record registered in the CM/ECF system.

DATED: October 2, 2024                    */s/ Stephen Sorensen*
                                          Stephen Sorensen

**FILER'S ATTESTATION**

I, Stephen Sorensen, am the ECF User whose ID and password are being used to file this document. In compliance with Civil L.R. 5-1(h)(3), I hereby attest that all counsel listed above have concurred in this filing.

DATED: October 2, 2024                    */s/ Stephen Sorensen*
                                          Stephen Sorensen