November 20, 2024

<u>Via E-mail</u>

Hon. Virginia K. DeMarchi,
    United States District Court,
        Northern District of California, San Jose Division,
            Robert F. Peckham Federal Building & United States Courthouse,
                280 South First Street, Room 2112
                San Jose, CA 95113.

        Re:    *SVB Financial Group* v. *FDIC, in its capacity as receiver for Silicon Valley Bank, et al.*, Case No. 5:24-cv-01321-BLF

Dear Hon. Judge DeMarchi:

        Pursuant to Section 4 of Your Honor's Standing Order for Civil Cases, counsel for plaintiff Silicon Valley Bank Financial Group ("Plaintiff" or "SVBFG") writes jointly with counsel for defendants Federal Deposit Insurance Corporation ("FDIC"), as receiver for Silicon Valley Bank ("FDIC-R1") and as receiver for Silicon Valley Bridge Bank, N.A. ("FDIC-R2") (together, "Defendants" or "FDIC-R") to seek the Court's intervention on a discovery dispute between the parties. Plaintiff contends that the parties have reached an impasse on the distinct issue described below, the FDIC-R believes the issue is premature and the parties should meet and confer regarding application of search terms, and the parties submit this joint letter to the Court respectfully to request the Court's assistance.

## I.    Summary of Dispute

        The parties are unable to finalize a stipulation regarding discovery of electronically stored information ("ESI") due to a disagreement regarding whether FDIC-Rs are required, under the Federal Rules of Civil Procedure, to respond to SVBFG's Rule 34 discovery requests by conducting a manual review of potentially responsive documents rather than using search terms to identify responsive documents among the approximately 24 million custodial files previously delivered by FDIC-R1 to SVBFG ("Previously Provided ESI"). (*See* Ex. A (draft stipulated ESI order).)

## II.    The Parties' Positions

### A.    Plaintiff SVBFG's Position

        This dispute concerns FDIC-R's FRCP 34 obligation to identify information responsive to document discovery served by SVBFG. SVBFG has served two sets of Rule 34 document requests ("Requests"), which seek, in part, the information that FDIC-R1 believes supports its potential setoff defenses. FDIC-R need not re-produce responsive documents within

the 24 million "shared" documents formerly held by Silicon Valley Bank, but must identify to SVBFG what documents are responsive to SVBFG's Requests. FDIC-R instead proposes that the parties agree on search terms for SVBFG to run over the 24 million documents. Then, SVBFG must sift through the millions of hits and guess which documents actually are responsive to its Requests.

This is improper: given the enormous volume of Previously Provided ESI, even narrowly tailored search terms will return millions of documents—most of which will have nothing to do with this litigation. It is FDIC-R's obligation to identify responsive information. It is not SVBFG's burden to 'figure it out' by guessing which documents among millions are responsive. (Ex. A at 3 ¶ 6; 7 ¶ 20.)

In *FDIC* v. *Appleton*, 2012 WL 10245383 (C.D. Cal. 2012), the court rejected FDIC's identical proposal. There, FDIC provided the defendant with access to a database containing documents that hit on search terms intended to identify responsive documents. FDIC argued that this satisfied its Rule 34 obligations because the documents were identified by running search terms, and "[a]ny extraneous documents in the database are a result of providing electronic discovery based on key word searches." *Id*. at *2.

The *Appleton* court found that FDIC had not established that the documents were provided "as they were kept in the ordinary course of the Bank's business" because this manner of production "presupposes that there is some sort of organization that will be maintained throughout the production." *Id.* at *3. Without such organization, "ordinary course of business" production was unavailable to FDIC. *Id*. Accordingly, the court ordered FDIC to identify responsive documents by providing "an index indicating which of those documents correlate with which of defendants' Requests," or by placing responsive documents in a file on the electronic database. *Id*. at *4-5 (distinguishing FDIC's principal authority because it involved a manner of production "'sufficient to allow [the receiving party] to use the material *and determine which documents were responsive to its requests*.'" (alteration and emphasis in original)). The Court should order the same thing here.

FDIC-R1 argues *Appleton* is inapplicable because the database in *Appleton* included information from other banks and the Previously Produced ESI has metadata that can be searched. Neither of these distinctions overcomes *Appleton*'s holding that a party may not utilize Rule 34's "ordinary course of business production" if the documents are not organized in such a manner to enable the receiving party to identify responsive information. *Id.* at *3. "Rule 34 "does not contemplate that [FDIC-R] may pass off its responsibility to search the ESI and to provide ESI organized and labeled in conformity with the requests." *F.D.I.C.* v. *Baldini*, 2014 WL 1302479, at *8 (S.D.W. Va. Mar. 28, 2014); *id.* at *9 (ordering FDIC-R to "take[] steps initially to locate ESI responsive to each of [opposing party's] requests" and ultimately "upload [the ESI] to Relativity organized and labeled" *after* search terms "culled out [non-responsive] ESI").

Additionally, "many courts have held that it is not enough for a party who produces documents as they are kept in the ordinary course of business to simply invite the requesting party to sift through its file cabinets in an effort to locate those documents that are responsive to its requests, or to engage in a wholesale 'document dump' with an instruction to

the requesting party to 'go fish.'" *Henderson* v. *Holiday CVS, LLC*, 2010 WL 11505168, at *2 (S.D. Fla. Aug. 11, 2010) (cleaned up). "Instead, a producing party must direct the requesting party to the location or locations within its files where documents responsive to each of their specific requests may be found…." *U.S. Commodity Futures Trading Commission* v. *American Derivatives Corp.*, 2007 WL 1020838 (N.D. Ga. Mar. 30, 2007).

Moreover, "[a] producing party fails to meet its Rule 34 obligations by producing a mass of undifferentiated documents for the responding party to inspect" that obfuscates the responsive information. *City of Colton* v. *Am. Promotional Events, Inc.*, 277 F.R.D. 578, 584-85 (C.D. Cal. 2011) ("A producing party fails to meet its Rule 34 obligations by producing a mass of undifferentiated documents for the responding party to inspect.") (quoting *Armor Screen Corp.* v. *Storm Catcher, Inc.*, 2009 WL 291160, at *5 (S.D. Fla. 2009)); *Coury* v. *Air & Liquid Sys. Corp.*, 2019 WL 13241468, at *3 (D. Or. June 13, 2019) (same); *Source Network Sales & Mktg., LLC* v. *Jiangsu Mega Motor Co.*, 2017 WL 7596913, at *5 (N.D. Tex. May 15, 2017) (referring to 6,000 pages with "high" probability of containing non-responsive documents "violate[d] the core purpose of Rule 34(b)(2)(E) and enable[d] [party] to obscure the significance of potentially critical documents"); *Rothman* v. *Emory Univ.,* 123 F.3d 446, 455 (7th Cir. 1997) (affirming sanctions on party that "blatantly (and repeatedly) rebuffed [their] obligation to sort through the documents and produce only those responsive to [counterparty's] request").

FDIC-R's proposal fails to meet its Rule 34 burden. The set of documents that will hit on FDIC-R's terms is likely exceed the millions and include hundreds of thousands of irrelevant and non-responsive documents. For example, running FDIC-R1's setoff search terms over the 300,000 potentially privileged documents that SVBFG is reviewing yielded approximately 30,000 documents. Extrapolating this conservative 10% hit rate to 24 million documents would generate millions of hits (without attachments). Requiring SVBFG to guess which documents among millions are actually relevant and responsive would cause SVBFG severe prejudice, slow discovery to a crawl by preventing SVBFG from obtaining useful deposition testimony and extending disputes over production of responsive information, and result in trial by surprise.

FDIC-R relies on nonbinding, unpersuasive supporting authorities. *Trench Tech Int'l, Inc.* v. *Tech Con Trenching, Inc.* did not even address Rule 34, and instead involved only the question whether Rule 26 requires a party to produce to another party "documents that are already in the possession, custody, and control of all parties in [a] case." 2021 WL 9095769, at *3 (N.D. Tex. Sept. 30, 2021) (boldface removed).

Both *FDIC* v. *Giannoulias* and *FDIC* v. *Boggus* are distinguishable. *Giannoulias* concerned 150,000 documents, and the court found that "the risk that important documents will be obscured … appears slim" where the "vast majority" of them were likely to be relevant to the defendants' 242 requests. 2013 WL 5762397, at *2-3. Similarly, in *Boggus*, the court estimated that the search terms would yield far fewer than 150,000 documents in total. 2015 WL 11457700, at *2 (N.D. Ga. May 13, 2025). Conversely, here, the exclusive-privilege review using FDIC-R's hand-picked terms establishes that only a fraction of documents hits will likely be relevant.

Moreover, in both *Giannoulias* and *Boggus*, the FDIC's complaints provided factual detail about their claims, including identifying specific loans at issue, to assist defendants in identifying information relevant to the case. Here, FDIC-R has not yet asserted its setoff defense, much less provided sufficient factual details to enable SVBFG to assess what may be relevant. Neither FDIC-R's "summary" of its setoff defenses—which the Court has *struck*—nor its supplemental interrogatory response provides any detail about FDIC-R's setoff defenses.

FDIC-R cites *In re Viagra Products Liab. Litig.*, 16-MD-02691-RS (SK), 2016 WL 7336411 (N.D. Cal. Oct. 14, 2016) and *Hyles* v. *New York City*, 10CIV3119ATAJP, 2016 WL 4077114 (S.D.N.Y. Aug. 1, 2016) for the proposition that SVBFG cannot "compel" FDIC-R to use a particular review methodology. But that is not what SVBFG is asking — SVBFG asks only that FDIC-R identify *relevant* documents and not dump hundreds of thousands of irrelevant documents on SVBFG. Both *In re Viagra* and *Hyles*, moreover, did not involve Rule 34 and concerned only whether to use keyword searches or TAR. There was no dispute that the producing party must produce only "ESI *responsive* to the discovery requests" and in both cases the producing party agreed to "*review[]* the documents for responsiveness" before producing them. *In re Viagra*, 2016 WL 7336411, at *1 (emphases added); *Hyles*, 2016 WL 4077114, at *2 & n.2. And, contrary to FDIC-R's mischaracterizations, neither *In re Viagra* nor *Hyles* proposed or suggested using search terms *without* conducting a responsiveness review.

Finally, the burden on FDIC-R to fulfill its discovery obligations by producing *only responsive* documents to SVBFG provides no basis for FDIC-R to shift that burden to SVBFG—especially where SVBFG can only guess at which documents support FDIC-R's unpleaded setoff defenses. And FDIC-R's burden to review documents for responsiveness is nowhere close to SVBFG's burden in assessing complex exclusive privilege questions as part of its ongoing review.

SVBFG respectfully requests that the Court enter SVBFG's proposed ESI protocol (attached as Ex. A), which would require FDIC-Rs to identify by Document ID information in Previously Provided ESI responsive to SVBFG's Requests concerning setoff.

**B.    FDIC-R's Position**

Already having full access to the documents at issue, SVBFG nonetheless seeks to impose a highly burdensome and unnecessary manual review on FDIC-R to identify the potentially hundreds of thousands, if not millions, of responsive documents to SVBFG's expansive document requests. FDIC-R's proposal to apply mutually agreed search terms to commonly held ESI is a standard, efficient, and practical way to conduct discovery. Contrary to SVBFG's characterization, FDIC-R will identify a list of documents by DocID responsive to SVBFG's requests regarding FDIC-R's defenses based on search terms. Using targeted search terms to identify responsive documents within the commonly held ESI satisfies FDIC-R's discovery obligations. In contrast, SVBFG's request that the Court impose a manual document-by-document review obligation on FDIC-R is disproportionate, is unduly burdensome, and would substantially delay discovery when SVBFG already possesses these very documents and itself would be unable to meet the burden it seeks to place on FDIC-R, as shown by its professed inability to review more than 5,000 documents a week for privilege.

After SVB's failure, FDIC-R collected various SVB ESI.  That ESI includes approximately 24 million documents ("Shared ESI").  Shared ESI was processed with common e-discovery procedures and contains standard metadata making the documents readily searchable, sortable, and reviewable by author, date, and other organizing fields.  Shared ESI largely consists of SVB email accounts for individuals, including some SVBFG officers. SVBFG demanded that FDIC-R not review SVB's own records under threat of disqualification and insisted that FDIC-R provide the Shared ESI to SVBFG for a privilege review.  FDIC-R began producing the Shared ESI to SVBFG in November 2023.  As a result, both parties have the Shared ESI, although SVBFG has had unfettered access to these materials for a year and FDIC-R's access remains restricted.

The scope of discovery will be broad and encompass a substantial volume of documents regarding SVB and SVBFG's financial condition, operations, and communications. SVBFG inaccurately claims that its requests are limited to a contention request for documents FDIC-R will use to support its setoff defenses, but SVBFG requested, for example, "all Documents concerning [broadly defined to include, "pertaining to," "alluding to," "regarding," "supporting, " "contradicting," having a relationship to, or in any way being factually, legally or logically connected to, in whole or in part, the stated subject matter,"] the factual basis for FDIC-R1's assertion that SVBFG 'aided and abetted and conspired in breaches of fiduciary duties' by SVB's directors and officers with respect to (i) Held-to-Maturity securities portfolio mismanagement, (ii) Available-for-Sale securities portfolio mismanagement, (iii) payment of improper dividends[.]"  (SVBFG RFP No. 56.)  While not pleaded yet,[1] these defenses will relate to, among other things, SVB's securities portfolio, SVB and SVBFG's mismanagement of interest rate and liquidity risk, portfolio duration, breaches of risk thresholds, interest rate swaps, dividends, capital, hedging, risk management, regulatory examinations, advisors, and joint SVB and SVBFG committees, meetings, and policies.  Search terms targeted to these subjects, which pertain to the defenses, are a reasonable and targeted method to identify responsive documents. That these searches will produce a substantial volume of documents is not a flaw, but an indicator of the breadth of issues in this significant litigation.  Application of search terms will nonetheless substantially narrow the documents in the parties' shared possession and create a defined scope of responsive documents.[2]

Production of documents generated by search terms in the manner in which those documents were maintained by SVB satisfies FDIC-R's obligations under Rule 34.  A party is not required to identify which documents correspond to which request for production provided the documents are produced as they were kept in the "ordinary course of business."  FRCP

---

[1] FDIC-R provided a summary of the defenses pursuant to Court order (Dkt. 75, at ¶2) and answered and supplemented an interrogatory response to provide further advance notice of FDIC-R's defenses before filing its answer.

[2] SVBFG likewise has to produce documents pertaining to its forthcoming factual responses to FDIC-R's setoff defenses.  (FDIC-R1's RFP No. 37.)  It would be inefficient and purposeless for both parties to manually review and identify each document that pertains to the factual issues concerning the defenses when both parties possess the documents already and are each capable of searching them.

34(b)(2)(E). Shared ESI was produced as it was kept in the ordinary course of business with author, recipient, date, and other standard metadata fields so SVBFG can sort, organize, and search these documents. FDIC-R's production of SVB records with metadata is in the ordinary course of business and materially indistinguishable from how SVB would produce them. That satisfies Rule 34(b).

Courts have held that FDIC-R's production of documents in the way the bank maintained them after applying search terms is consistent with Rule 34(b) and does not require request by request identification. For example, in *FDIC-R v. Giannoulias*, the court rejected a demand that FDIC-R organize documents by request because FDIC-R's production with metadata satisfied Rule 34(b). The court also rejected a demand that FDIC-R conduct a manual responsiveness review because search terms and filtering were sufficient, particularly given the burden relative to the minimal benefit. 12-C-1665, 2013 WL 5762397, at *3 (N.D. Ill. Oct. 23, 2013). *See also FDIC v. Boggus*, No. 2:13-CV-00162-WCO, 2015 WL 11457700, at *2 (N.D. Ga. May 13, 2015) (rejecting that "FDIC must conduct a responsiveness review and that a production based solely on search terms would be an abdication of plaintiff's obligations under the Federal Rules" because "a manual review following the application of mutually agreed–upon search terms to the ESI database is not necessary"). SVBFG's request to impose a highly burdensome and time-consuming review on FDIC-R is particularly unwarranted given it already has these documents and greater knowledge of the documents than FDIC-R due to SVBFG's role in operating SVBFG. *See, e.g.*, *Trench Tech Int'l, Inc. v. Tech Con Trenching, Inc.*, 4:19-CV-201-O, 2021 WL 9095769, at *3 (N.D. Tex. Sept. 30, 2021). SVBFG's reliance upon *Baldini* is misplaced as the court ordered an iterative search term process and the production of documents hitting on those search terms without manual responsiveness review. *F.D.I.C.* v. *Baldini*, 2014 WL 1302479, at *9.

Search terms are a well-recognized method to identify and produce responsive documents, and SVBFG has no basis to compel FDIC-R to use SVBFG's preferred methodology. *See In re Viagra (Sildenafil Citrate) Products Liab. Litig.*, 16-MD-02691-RS (SK), 2016 WL 7336411, at *2 (N.D. Cal. Oct. 14, 2016) (denying request to require particular method of review, "especially in the absence of any evidence that [the responding party's] preferred method would produce, or has produced, insufficient discovery responses"); *Hyles v. New York City*, 10CIV3119ATAJP, 2016 WL 4077114, at *3 (S.D.N.Y. Aug. 1, 2016) ("it is not up to the Court, or the requesting party ... to force the ... responding party to use TAR when it prefers to use keyword searching"). Contrary to SVBFG's suggestion, neither of these cases holds that a manual document review is required. Instead, *In re Viagra* notes that the responding party proposed an iterative keyword selection process and *Hyles* merely contains a footnote stating there would be document review work performed by in-house counsel.

*FDIC* v. *Appleton*, 2012 WL 10245383 (C.D. Cal. 2012), on which SVBFG principally relies, is readily distinguishable. In *Appleton*, FDIC had created a Relativity database populated with data from "multiple banks around the nation," (*id.* at *3), which is not the case with the Shared ESI, which is limited to SVB data. And there was no sort of "internal organization" to the documents in the *Appleton* database, no date information, and no clear custodial information. *Id.* at *1. That is not the case here. The database has metadata and can be readily searched and sorted. Further, FDIC-R has proposed to apply search terms targeted to SVBFG's document requests to generate responsive documents whereas no search terms were

employed in *Appleton*; FDIC instead offered to make the database available for review without targeted searches. *Id.* at *3 and n.3.

An iterative process of exchanging search terms and hit reports to reach agreed terms is the practical solution. SVBFG's contention that manual review is required because search terms are inevitably going to misidentify millions of non-responsive documents as responsive is unsupported speculation. SVBFG has unreasonably refused to work through search terms which it is equally capable of running. A document-by-document review should be rejected because it places on FDIC-R an unnecessary, cost prohibitive, and unreasonable burden that is not warranted by Rules 26 and 34 and would substantially delay completion of document discovery. In demanding FDIC-R manually review at least one million documents, rather than using search terms as is standard practice, SVBFG seeks to require FDIC-R to meet a far more demanding review schedule than the 5,000 documents per week privilege review SVBFG claimed was infeasible. FDIC-R's proposal enables discovery to move forward with fair notice to SVBFG of the documents FDIC-R has determined are responsive to SVBFG's discovery requests.

SVBFG's ESI Protocol should be rejected, and FDIC-R's ESI Protocol (Exhibit B) should be entered. Exhibit C shows the differences between the parties' ESI protocols.

## III.    Hearing Request

### A.    Plaintiff SVBFG's Position

SVBFG respectfully requests a video or in-person status conference on the matter at the Court's earliest convenience.

### B.    FDIC-R's Position

FDIC-R welcomes a video or in-person status conference if the Court would find it helpful to resolve this dispute. FDIC-R believes that the parties should instead continue to confer on application of search terms to define a reasonable subset of the Shared ESI for use in discovery in lieu of a hearing.

## IV.    Relevant Discovery Deadlines

Party document discovery is scheduled to close on January 31, 2025.

## V.    Compliance with Lead Counsel Requirement

Lead counsel conferred via videoconference on October 28, 2024. SVBFG counsel (Robert Sacks, Adam Paris, and Diane McGimsey of Sullivan & Cromwell), and FDIC-Rs counsel (Stephen Sorenson and Michael Shenkman of Bailey & Glasser, Lawrence H. Heftman of ArentFox Schiff and Zachary Kaye of Reed Smith), participated.

\* \* \* \*

We thank the Court for its attention to this matter as well as its continued assistance to the parties.

Respectfully submitted,

[*Signatures on Next Page*]

(Enclosures)

cc:    All Counsel

/s/ Robert A. Sacks
Robert A. Sacks (SBN 150146)
Adam S. Paris (SBN 190693)
Diane L. McGimsey (SBN 234953)
**SULLIVAN & CROMWELL LLP**
1888 Century Park East
Los Angeles, CA  90067
Tel:    (310) 712-6600
Fax:    (310) 712-8800

Sverker K. Högberg (SBN 244640)
**SULLIVAN & CROMWELL LLP**
550 Hamilton Ave.
Palo Alto, CA  94301
Tel:    (650) 461-5600
Fax:    (650) 461-5700

*Counsel for Plaintiff SVB Financial Group*

/s/ Stephen Sorenson
Stephen Sorensen (SBN 199408)
Elliott McGraw (SBN 275613)
Michael L. Shenkman (admitted *pro hac vice*)
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson St., NW, Suite 540
Washington, DC  20007
Tel:    (202) 445-7266
Fax:    (202) 463-2103

Lawrence H. Heftman (admitted *pro hac vice*)
David C. Giles (admitted *pro hac vice*)
**ARENTFOX SCHIFF LLP**
233 S. Wacker Dr., Suite 7100
Chicago, IL  60606
Tel:    (312) 258-5500
Fax:    (312) 258-5600

*Counsel to the Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank*

Casey D. Laffey (admitted *pro hac vice*)
Kurt F. Gwynne (admitted *pro hac vice*)
**REED SMITH LLP**
599 Lexington Ave.
New York, NY  10022
Tel:    (212) 521-5400
Fax:    (212) 521-5450

Raymond A. Cardozo (SBN 173263)
Emily F. Lynch (SBN 324055)
**REED SMITH LLP**
101 Second St., Suite 1800
San Francisco, CA  94105
Tel:    (415) 543-8700
Fax:    (415) 391-8269

*Counsel to the Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank and Silicon Valley Bridge Bank, N.A.*