# EXHIBIT B

Raymond A. Cardozo, Esq. (Bar No. 173263)
Emily F. Lynch, Esq. (Bar No. 324055)
**REED SMITH LLP**
101 Second Street, Suite 1800
San Francisco, CA 94105
Telephone: (415) 543-8700
Facsimile: (415) 391-8269
E-mail: rcardozo@reedsmith.com
E-mail: elynch@reedsmith.com

Derek J. Baker, Esq. (admitted *pro hac vice*)
**REED SMITH LLP**
Three Logan Square,
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420
E-mail: dbaker@reedsmith.com

Casey D. Laffey, Esq. (admitted *pro hac vice*)
Kurt F. Gwynne, Esq. (admitted *pro hac vice*)
**REED SMITH LLP**
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
E-mail: claffey@reedsmith.com
E-mail: kgwynne@reedsmith.com

Lawrence Heftman (admitted *pro hac vice*)
David Christopher Giles (admitted *pro hac vice*)
**ARENTFOX SCHIFF LLP**
233 S. Wacker Dr., Suite 7100
Chicago, IL 60613
Telephone: (312) 258-5500
Facsimile: (312) 258-5600
E-mail: lawrence.heftman@afslaw.com
E-mail: david.giles@afslaw.com

*Counsel to the Federal Deposit Insurance Corporation,*
*as Receiver for Silicon Valley Bank and the*
*Federal Deposit Insurance Corporation, as*
*Receiver for Silicon Valley Bridge Bank, N.A.*

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| SVB FINANCIAL GROUP, | Case No. 5:24-cv-01321-BLF |
| Plaintiff, | **[proposed] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |
| v. | |
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Silicon Valley Bank and Silicon Valley Bridge Bank, N.A., | The Honorable Beth Labson Freeman |
| Defendant. | |

**ESI PROTOCOL GOVERNING PRODUCTION OF DOCUMENTS**

Pursuant to Fed. R. Civ. P. 26 and the Local Rules of this Court, it is ORDERED that the Plaintiff, SVB Financial Group ("SVBFG") and Defendant, Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank and Silicon Valley Bridge Bank, N.A. ("FDIC-R", together with SVBFG, the "Parties") and their respective counsel shall be governed by the terms and conditions concerning the production of electronically stored information ("ESI") and documents as follows:

1.      This Protocol applies to the ESI provisions of Fed. R. Civ. P. 16, 26, 33, 34, and 37, and governs the production of ESI in this Action in response to any discovery request served under the Federal Rules of Civil Procedure, and, insofar as it relates to ESI, this Protocol applies to Fed. R. Civ. P. 45 in all instances where the provisions of Fed. R. Civ. P. 45 are the same as, or substantially similar to, Fed. R. Civ. P. 16, 26, 33, 34, or 37.  Nothing contained herein modifies Fed. R. Civ. P. 45 and, specifically, the provision of Rule 45(d)(2)(B) regarding the effect of a written objection to inspection or copying of any or all of the designated materials or premises.  Compliance with this Protocol shall satisfy and discharge the Parties' obligations to respond to the requests for production of documents unless otherwise agreed to by the Parties or ordered by the Court.

2.      In this Protocol, the following terms have the following meanings:

   a.  "**Action**" means this lawsuit: *SVB Financial Group* v. *Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank and Silicon Valley Bridge Bank, N.A.*, Case No. 5:24-cv-01321 (BLF) (N.D. Cal.).

   b.  "**Metadata**" means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system; and (iii) information created by the processing of a file into the format used by a reviewable database (e.g., BegBates, BegAttach). Metadata is a subset of ESI.

   c.  "**Native File(s)**" means ESI in the electronic format of the application in which such ESI is normally created, viewed, and/or modified.  Native Files are a subset of ESI.

d. "**Static Image(s)**" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems. In the absence of agreement of the Parties or order of the Court, a Static Image should be provided in Tagged Image File Format (TIFF, or .TIF files). If a TIFF or .TIF file cannot be created, then the Static Image should be provided in Portable Document Format (PDF). If load files or OCR text files (Optical Character Recognition files) were created in the process of converting Native Files to Static Images, or if load files may be created without undue burden or cost, load files shall be provided as set forth in Exhibit A.

e. "**Load File(s)**" means the file necessary to load data into a reviewable database. A load file can, for example, specify what individual pages belong together as a document, what attachments are included with a document, where a document begins and ends, and what metadata is associated with a document.

f. "**Party**" or "**Parties**" means the FDIC-R and SVBFG.

g. "**Other Party**" or "**Other Parties**" means any party to this Action other than SVBFG and FDIC-R including any person or entity that is served with a subpoena pursuant to Fed. R. Civ. P. 45 and opts-in to the Protocol.

h. "**Producing Party**" shall mean the party that produced the data or documents at issue.

i. "**Receiving Party**" shall mean the party that received the data or documents at issue.

j. "**Previously Provided ESI**" shall mean that ESI previously provided to SVBFG by the FDIC-R for SVBFG's review of such ESI and assertion of any purportedly applicable SVBFG-only attorney-client privilege, attorney work product, or any other applicable privilege or ground for withholding production.

3. The provisions set forth in Attachment "A" shall govern the production of ESI for all the Parties.

4. The Parties may agree in writing (including by email) to modify, delete, or add to any of the provisions of this Protocol at any time, without the necessity of Court intervention.

5.      The Parties agree that the Agreed Protective Order filed with this Court (the "Protective Order") on _____ Dkt. __, constitutes a Federal Rule of Evidence 502(d) order.  Accordingly, none of the Parties shall be subject to the requirements outlined in Federal Rule of Evidence 502(b).  Pursuant to Rule 502(d) and the Protective Order, no applicable attorney-client privilege, attorney work product, or any other applicable privilege or ground for withholding production (hereinafter, "**Privilege**") is waived by production of documents or disclosure of information pursuant to this Protocol except as otherwise set forth in the Protective Order, in which event the disclosure is also not a waiver in any other federal or state proceeding.

6.      Nothing in this Protocol requires the Parties to produce Previously Provided ESI; provided, however, the Parties still shall be obligated to (1) search the Previously Provided ESI in response to requests for production of documents, and (2) identify by "DOC ID" any Previously Provided ESI that is responsive to requests for production of documents.  The Parties may satisfy their production obligations with respect to the Previously Provided ESI and Agreed Fileshares and SharePoint Sites by using search terms to identify documents responsive to the requests for production without performing a manual document review.  In addition, to the extent any Party seeks to use any Previously Provided ESI in this action, including in any deposition, court filing or at trial, the Party shall affix the unique DOC ID to the document prior to use.

## A.  **FDIC-R's ESI**

7.      If the FDIC-R is in possession of certain ESI, excluding Previously Provided ESI, that is responsive to discovery requests propounded by the Plaintiff, and it would not be unduly burdensome or otherwise objectionable to produce such ESI, including without limitation, e-mail and documents of various types, subject to the terms of this Protocol and the Protective Order, the FDIC-R shall produce non-privileged ESI, excluding Previously Provided ESI, to the Plaintiff that is responsive to any request for production of documents.  Whether any production of ESI, excluding Previously Provided ESI, is unduly burdensome or objectionable pursuant to this paragraph shall be reviewable by the Court.

8.      The FDIC-R maintains ESI on its network and within enterprise systems designed for use in day-to-day business applications.   Those enterprise systems include various Microsoft 365 business

applications, including Microsoft Outlook, SharePoint, OneDrive, and Teams.    FDIC-R uses the Microsoft Purview Advanced E-Discovery tool to search, collect, and preserve potentially responsive materials.    The FDIC-R also uses the commercially available Relativity platform for review, analytics, and production of ESI in response to discovery and subpoena requests.    The FDIC-R has an archive platform, CloudLocker, for email older than 2017, and other division-level repositories for certain examination and supervision ESI gathered in the normal course of business.

9.    The FDIC-R maintains ESI that the FDIC-R or its contractors (1) obtained from the computers, servers, and other data storage systems of Silicon Valley Bank ("the Bank"), or (2) created by scanning hard-copy records of the Bank (collectively, the "Processed SVB Data").  The Processed SVB Data is maintained by the FDIC-R in its FDIC Business Data Services ("FBDS") databases.

10.    Some of the SVB ESI was either collected but not processed, or was not collected by the FDIC, including certain Fileshares and SharePoint sites, and data for custodians that were not collected, including email, and data stored on electronic devices (excluding the Agreed FileShares and SharePoint Sites, the "Unprocessed SVB Data").  FDIC-R has provided a list of the Fileshares and SharePoint sites to Plaintiff, and the Parties have agreed on a list of Fileshares and SharePoint sites that will be processed and searched for responsive documents ("Agreed Fileshares and SharePoint Sites").  If Plaintiff takes the position that text-based searches of any of the Unprocessed SVB Data are required, the FDIC-R and SVBFG will discuss and attempt to reach an agreement regarding the collection and processing of the data required to make such data text-searchable.  If FDIC-R and Plaintiff are unable to reach an agreement, either Party will have the right to address issues, including cost-sharing, relating to the Unprocessed SVB Data with the Court.  In the event that FDIC-R, in connection with this Action, processes, searches, reviews or seeks to use any Unprocessed SVB Data, however, all of that particular Unprocessed SVB Data shall be treated as Processed SVB Data under the terms of this ESI Protocol and FDIC-R shall be required to process and search all such Unprocessed SVB Data and produce to SVBFG non-privileged documents within that particular Unprocessed SVB Data responsive to SVBFG's requests for production.

11.    The FDIC-R need not re-provide responsive documents that it has already provided to Plaintiff in connection with any other litigation or proceeding, or re-provide Previously Provided ESI,

provided that the FDIC-R has provided Plaintiff with written confirmation that such documents may be used in this proceeding notwithstanding any restrictions to the contrary in any protective order applicable to the litigation or proceeding in which the documents were produced, or any prior restrictions on the Previously Provided ESI.  Notwithstanding the foregoing, nothing herein shall relieve FDIC-R from its obligation to (1) search the Previously Provided ESI in response to Plaintiff's requests for production of documents, and (2) identify to Plaintiff by "DOC ID" any Previously Provided ESI that is responsive to Plaintiff's requests for production of documents.  The FDIC-R may satisfy its production obligations with respect to the Previously Provided ESI by using search terms to identify documents responsive to the requests for production without performing a manual document review.  Furthermore, the Plaintiff reserves the right to request re-production of certain documents, including Previously Provided ESI, where circumstances may reasonably warrant, and the FDIC-R reserves the right to object to any such request, with any disputes to be resolved by the Court.

**B.  Plaintiff's ESI**

12.    If Plaintiff is in possession of certain ESI that is responsive to discovery requests propounded by the FDIC-R, and it would not be unduly burdensome or otherwise objectionable to produce such ESI, including without limitation, e-mail and documents of various types, subject to this Protocol and the Protective Order, Plaintiff shall produce non-privileged ESI to the FDIC-R that is responsive to any request for production of documents.  Plaintiff reserves the right to make physical paper documents available for the FDIC-R's inspection to the extent permitted by Federal Rule of Civil Procedure 34.

13.    Plaintiff need not re-produce responsive documents that have already been produced to the FDIC-R in connection with any other litigation or proceeding, provided that Plaintiff has provided the FDIC-R with written confirmation that such documents may be used in this proceeding notwithstanding any restrictions to the contrary in any protective order applicable to the litigation or proceeding in which the documents were produced.  Notwithstanding the foregoing, the FDIC-R reserves the right to request re-production of certain documents where circumstances may reasonably warrant, and Plaintiff reserves the right to object to any such request, with any disputes to be resolved by the Court.

**C.  General**

14.    The Parties agree search terms will assist in identifying documents that are potentially responsive to another Party's requests for production.

15.    Plaintiff and the FDIC-R shall meet and confer as necessary in a collaborative effort to develop a proposed set of search terms that each Party will use in a search of ESI.  The Producing Party shall apply the initial search terms to the ESI and shall identify for each searchable database: (i) the number of unique documents without families (i.e., attachments) triggered by each identified search term in the set of proposed search terms; and (ii) the number of unique documents with families triggered by each identified search term in the set of proposed search terms.  Plaintiff and the FDIC-R shall negotiate in good faith to establish agreed-upon search terms, taking into account the approximate volume of data and "hit" counts from the previous iteration of searching.  Each Party reserves the right to contest the other Party's proposed search terms and requests, including objections based upon burdensomeness or cost. Plaintiff and the FDIC-R will confer in good faith to resolve any disagreement regarding any proposed search terms or any other part of the search term procedure.  If Plaintiff and the FDIC-R are unable to agree upon any of the other Party's proposed terms, any Party may within a reasonable time raise the issue with the Court, provided that any disputes shall be limited only to any at-issue terms and shall not delay the review and production of documents using any agreed-upon search terms.  After Plaintiff and the FDIC-R have agreed upon search terms, or established search terms with the assistance of the Court, the Plaintiff and the FDIC-R shall apply the search terms to their respective ESI in order to create a production set of files.  The FDIC-R's files will be produced, subject to the FDIC-R's search for material protected by the Bank Secrecy Act or other laws, regulations, or protections preventing the disclosure of particular information, in the format established by Exhibit A hereto.

16.    Each party is responsible for taking reasonable and proportional steps to preserve potentially relevant ESI within its custody or control.

17.    To the extent reasonably possible, the Parties will collect and preserve ESI in a manner that preserves Metadata.  As provided for herein, each party should reasonably endeavor to remove duplicates from all ESI productions in a consistent and defensible manner that does not break up document families (such as emails and attachments).  However, the Parties should preserve any duplicate ESI that is not

produced according to applicable retention and destruction policies.

18.    The Parties will discuss in good faith any preservation issues that arise during the course of discovery, with any disputes to be resolved by the Court.

19.    When searching for, reviewing, and/or producing responsive ESI, each Party may apply the following reasonable cost-saving measures:  clustering or concept searching, de-duplication and near de-duplication (subject to the specifications in Attachment A), e-mail thread suppression, file-type culling, and/or technology-assisted review or computer-assisted review.

20.    Notwithstanding the provisions of this Protocol, each Party shall produce any and all ESI, excluding Previously Provided ESI, that it intends to rely upon in support of any claim or defense with respect to this case.

21.    If, after reviewing a Producing Party's production, the Receiving Party believes additional responsive documents exist but have not been produced or have not been identified by the Producing Party within the Previously Provided ESI, the Parties shall meet and confer in good faith and attempt to reach an agreement regarding any additional steps to be taken to locate and produce such documents and information, including but not limited to, additional means to identify documents, additional custodians to search, and the costs involved in taking such steps and any subsequent production.  If the Parties are unable to reach an agreement, they may address this issue with the Court on an expedited basis.

22. Upon demand, the Receiving Party shall return or destroy any paper copies to the Producing Party and delete or render inoperable all electronic copies of ESI that the Producing Party believes to be privileged or otherwise protected from disclosure. Confidential material saved on back-up media in an electronically stored format will be deemed to comply with the provision if the Receiving Party has taken steps to ensure that the data destruction policy for the back-up media will result in the eventual destruction or overwriting of the requested information. In the event of a dispute regarding the claim of privilege, the receiving party may retain a copy of the material for in camera review in support of the appropriate discovery motion. Similarly, consistent with the ethical duties imposed by California Rules of Professional Conduct 4.4, if during the review of any material produced in this action the Receiving Party becomes aware of any material that the Receiving Party has reason to believe is privileged, the Receiving Party shall in good faith take reasonable steps to promptly notify the Producing Party and sequester the material until the Producing Party has had a reasonable opportunity to determine whether it wishes to claim that the information is subject to a claim of privilege. To be clear, FDIC-R maintains that there is no exclusive holding company attorney-client privilege applicable to this case and that, even if there were, it has been waived.

23. The return or destruction of a document or materials over which the Producing Party has asserted a claim of Privilege as set forth above shall be without prejudice to the Receiving Party's right to contest the claim of Privilege, including seeking an order from the Court directing the production of the document on the ground that the claimed Privilege is invalid or inapplicable; provided, however, that mere production of the document or information in the course of this action, or provision as part of the Previously Provided ESI, shall not constitute grounds for asserting waiver of the Privilege.

24. If the Parties disagree over the application of these principles or challenge the privileged nature of produced ESI or Previously Provided ESI, the Receiving Party shall not make use of the ESI or Previously Provided ESI in question until the matter is resolved by the Court.

25. If a Party withholds any file on the basis of Privilege, it shall provide a privilege log. The Parties agree that the FDIC-R is not required to provide any kind of identification of the documents withheld from production as protected by the Bank Secrecy Act.

26.     All ESI, Previously Provided ESI, and all paper documents produced pursuant to this Protocol are subject to the Protective Order.  Any person in possession of Confidential Material or Highly Confidential Material shall maintain a written information security program that includes reasonable administrative, technical, and physical safeguards to protect the security and confidentiality of such Confidential Material or Highly Confidential Material, protect against any reasonably anticipated threats or hazards to the security of such Confidential Material or Highly Confidential Material, and protect against unauthorized access to Confidential Material or Highly Confidential Material.  To the extent a party or person does not have an information security program, they may comply with this provision by having the Confidential Material or Highly Confidential Material managed by and/or stored with eDiscovery vendors that maintain such an information security program.  If a Receiving Party or Authorized Recipient discovers any loss of Confidential Material or Highly Confidential Material (including any loss of data as a result of a ransomware incident) or a breach of security, including any actual unauthorized access with respect to such material, relating to another Party's Confidential Material or Highly Confidential Material, the Receiving Party or Authorized Recipient shall: (1) promptly provide written notice to the Producing Party of such breach; (2) investigate and make reasonable efforts to remediate the effects of the breach, and provide the Producing Party with assurances reasonably satisfactory to the Producing Party that such breach shall not recur; and (3) provide sufficient information about the breach that the Producing Party can reasonably ascertain the size and scope of the breach and/or security incident.  The Receiving Party or Authorized Recipient agrees to cooperate with the Producing Party and/or law enforcement in investigating any such security incident.  In any event, the Receiving Party or Authorized Recipient shall promptly take all necessary and appropriate corrective action to terminate the unauthorized access.

27.     Nothing in this Protocol shall waive or otherwise prejudice the Parties' rights to object to opposing party's requested search terms on grounds provided by the Federal Rules of Evidence, the Federal Rules of Civil Procedure, or other controlling law.  As such, the Parties reserve the right to contest and object to opposing party's requested search terms based upon burdensomeness, cost, any applicable privilege, or any other applicable protection from disclosure.

[PROPOSED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION
CASE NO. 5:24-CV-01321-BLF

**IT IS SO ORDERED.**

Dated: _____

_____
VIRGINIA K. DEMARCHI
UNITED STATES MAGISTRATE JUDGE

1

2

**ATTACHMENT A: ELECTRONICALLY STORED INFORMATION (ESI) AND IMAGES SPECIFICATIONS**

3

**1.**     **Production Format Of Native ESI**

4

5

Generally, to the extent practicable, all ESI should be produced as Native Files with Load Files (DAT/OPT) that can be loaded into a document review platform such as Relativity, Casepoint, Everlaw, Veritas, etc.  The Load Files should use the format found at subsections 2(B)-2(E).

6

The following categories of ESI must be produced natively whenever possible:

7

8

**A.**     **Spreadsheets and Presentation Files (*e.g.*, Excel (.xls), .csv, PowerPoint (.ppt))**

9

**B.**     **Emails and Email Repositories (*e.g.*, Outlook .MSG/.PST, Google Takeout, Lotus NSF, etc.):**

10

11

12

i.     Native email will be produced to the extent that the entire email family – email and all attachments – is responsive, relevant and not privileged.  To the extent that an email or one or more attachments are privileged or non-responsive, the entire family will be produced only as images (see also section 2 below).

13

14

ii.     With advance notice to eDG, Outlook .PST, Google Takeout, and Lotus Notes .NSF email files may be produced to the FDIC in native (i.e., container) format. A separate production folder should be provided for each custodian.

15

16

**C.**     Structured Data:  Data produced from Structured Databases will be produced in .csv or .xls/.xlsx format.

17

18

**D.**     All Other ESI (*i.e.*, Word, Google Docs, PDF, JSON, Apple-type files, etc.):  All other types of ESI, whether produced as Native Files or Static images, shall be produced with an accompanying load file complete with full text extracts and the fields of metadata listed in Attachment B, to the extent the metadata is available.

19

20

21

22

**E.**     Other Potentially Relevant Sources of ESI:  Any potentially responsive ESI and any other file formats that may require special handling, processing, or delivery methods whether produced as Native Files or Static images shall be produced with an accompanying load file complete with full text extracts and the fields of metadata listed in Attachment B and C, to the extent the metadata is available.  If there are issues producing other responsive ESI, parties should confer with FDIC eDG.  Below are some examples of other potentially relevant ESI:

23

24

i.     Instant messenger (IM), Voicemail Data, audio Data, video data, etc. (e.g., GoTo Meeting, WebEx, Teams, Zoom, WhatsApp, etc.);

25

26

ii.     Social media (e.g., Twitter, Facebook, Google+, LinkedIn, Instagram, TikTok, Snapchat, Pinterest, etc.)

27

iii.     Mobile data, including resident SMS and third party chats, audio, video and documents on the mobile device, etc.

28

iv.    Collaboration platform data, including MS365 Teams, JSON, CRM, Discord, etc.

**2.    Production Format Of Images**

Responsive images should be produced in the format outlined below.  Items to be produced in imaged format (*e.g.*, TIFF/PDF) may include, among others, scanned hard copies and email families.  In the case of email, privileged or non-responsive items will be either redacted in part, or replaced by a slipsheet if withheld in its entirety.  The entire email family must then be produced as images.

**A.  Image File Format:**  All images, paper documents scanned to images, or image-rendered ESI, should be produced as 300 dpi single-page TIFF files, CCITT Group IV (2D Compression) in black and white. Images should be uniquely and sequentially Bates- numbered and unless otherwise specified, Bates numbers should be branded into each and every image.i.      All TIFF file names shall include the unique Bates number burned into the image. All TIFF image files will be stored with the ".tif" extension.

ii.    All must be OCR'd and the resulting document-level text files produced, with the link to the text file for a given record within the accompanying DAT load file (see subsection 2(D) below).

iii.    All documents will be produced in black and white TIFF format. Where the original of a produced document is in color, and color is material to the interpretation of the document, the document may be produced in color (whether in ESI or hard copy paper format). Images identified as requiring color will be produced as color 300 dpi single-page JPEG files.

iv.    Alternatively, the Static Image can be provided in Portable Document Format (PDF).  The same production format requirements apply to PDF files as applied to TIFF files in this section (i.e., subsections 2(A)(i), 2(A)(ii), 2(A)(iii), 2(B)-2(F).  If the producing party wants to produce PDF files with embedded text ("Searchable PDFs"), this must be discussed with and approved by the FDIC's eDG.

**B.  Concordance Image Cross Reference file (*i.e.*, .OPT):**  Images must be accompanied by a Concordance Image Cross Reference file that associates each unique identification number with its corresponding single-page TIFF image file. The Cross-Reference file should also contain the image file path for each unique identification number. Image Cross Reference Sample Format:Unique DOCID,Volume,.\Volume\Images\IMG001\Unique DOCID.TIF,Y,,,

Unique DOCID-001,Volume,.\Volume\Images\IMG001\Unique DOCID-

001.TIF,Y,,,

Unique DOCID-002,Volume,.\Volume\Images\IMG001\Unique DOCID002.TIF,Y,,,

**C.  Concordance Load File (*i.e.*, DAT):**  Images should also be accompanied by a "text load file" containing delimited text that will populate fields in a searchable, flat database environment.

    i.  Text delimited load files are defined using the standard Concordance delimiters. For example:

| | |
|---|---|
| *Field Separator* | ¶ *or Code 020* |
| *Text Qualifier* | þ *or Code 254* |

    ii.  This load file should also contain links to applicable Native Files for Microsoft Excel or PowerPoint files.

    iii.  There should be one line for every item in a production.

**D. Extracted/OCR Text:** Text should be provided for each document as a separate single text file. The file name should match the unique identification number for that specific record and be accompanied by the .txt extension. A link to the text file for every record should be provided in the TEXTLINK field in the DAT file.

**E. Bates Numbering Convention:**

    i.  All images must be assigned unique identification numbers prior to production. Each unique identification number will be uniform, include leading zeros in the number, and be unique for each produced page. Numbers should be endorsed on the actual images at a location that does not obliterate, conceal, or interfere with any information from the source document.

    ii.  Native Files should be assigned a single unique identification number for the entire file which will represent the native document in the load file. The load file will include a reference to the Native File path and utilize the NATIVELINK metadata field.

**F. Document Unitization:** All imaged hard copy materials should reflect accurate document unitization, including all attachments. i.    Unitization in this context refers to identifying and marking the boundaries of documents within the collection, where a document is defined as the smallest physical fastened unit within a bundle – *i.e.*, physical boundary (*e.g.*, staples, paperclips, rubber bands, folders, or tabs in a binder).

**3.**    **Directory and Folder Structure:** The directory structure for productions should be:

\\*CaseName*\\**LoadFiles**
\\*CaseName*\\**Images** < For supporting images (can include subfolders as needed, should not include more than 5,000 files per folder)
\\*CaseName*\\**Natives** <Native Files location (can include subfolders as needed, should not include more than 5,000 files per folder)
\\*CaseName*\\**Text** <Extracted Text files location (can include subfolders as needed, and up to 5,000 files per folder)

**4.**    **Other Specifications**

**A. De-Duplication:** To avoid the production of more than one copy of a particular unique item, producing parties will use industry standard MD5 (or SHA-1) hash values at the parent level within (1) all emails identified for production, and (2) all loose electronic files identified for production. De-Duplication shall not break family

and shall be performed at a family level. The producing party will not de-duplicate attachments to emails against loose electronic files. **B. Embedded Files:** If a document has information from another document embedded in it, (*e.g.*, a Word **document** that has an Excel (.xls) spreadsheet embedded in it), the Producing Party shall make reasonable efforts to produce embedded file(s) in the original document(s) pursuant to the specifications herein. Non-substantive, graphic objects embedded in emails such as logos, letterheads, signature blocks, or backgrounds must remain as part of the email and not be extracted as separate attached documents.

C. **Cloud Attachments, Hyperlinked Files, "Modern Attachments," or Linked Attachments**: A pointer in a document—usually appearing as an underlined or highlighted word or picture—that, upon selection, sends a user to another location either within the current document **or** to another location accessible on the network (*e.g.*, OneDrive, SharePoint, Google Drive, etc.) or internet. To the extent a response to discovery requires production of these files, Parties agree to meet and confer regarding the process and form of production.

D. **Media Formats for Delivery of Production Data:** Electronic documents and data will be delivered via Secure FTP upload unless the size of the data requires external media. Please confer prior to delivery with FDIC eDG on volume limits for SFTP. The parties should discuss options for physical media for large volume data deliveries. Media should be labeled with the case caption or case name, date of the production, complete Bates range, and name of the producing party.

E. **Use of Native Documents as Exhibits.** Unless otherwise agreed upon between the Parties, the first party to enter a native-produced document as a deposition, trial, and/or other demonstrative exhibit will Bates-number the document on the page level with the unique identification number, sequentially numbered, and produce it to the other Party prior to entry as an exhibit in the underlying matter.

## ATTACHMENT B: METADATA/DATABASE FIELDS

A "✓" denotes that the indicated field should be present in the load file produced. Metadata should be included, to the extent available, and left empty if unavailable.

| Field name | Field Description | Hard Copy | Email | Other ESI |
|---|---|---|---|---|
| NATIVEID / DOCID | Unique document Bates # or populate with the same value as Start Bates (DOCID = BEGDOC#) | ✓ | ✓ | ✓ |
| BOX # | Scanned box # record is from | ✓ | | |
| BEGBATES | Start Bates (including prefix) - No spaces | ✓ | ✓ | ✓ |
| ENDBATES | End Bates (including prefix) - No spaces | ✓ | ✓ | ✓ |
| GROUP IDENTIFIER | Contains the Group Identifier for the family, in order to group files with their attachments | ✓ | ✓ | ✓ |
| PARENTID | Contains the BEGBATES of an attachment's parent (populated ONLY in child records). | ✓ | ✓ | ✓ |
| BEGATTACH | Start Bates number of parent | ✓ | ✓ | ✓ |
| ENDATTACH | End Bates number of last attachment | ✓ | ✓ | ✓ |
| CUSTODIAN | Custodian/Source - format: Last, First or ABC Dept. | ✓ | ✓ | ✓ |
| AUTHOR | Creator of the document | | ✓ | ✓ |
| FROM | Sender of an email | | ✓ | |
| TO | Recipient - format: Last name, First name | | ✓ | ✓ |
| CC | Carbon Copy Recipients - format: Last name, First name | | ✓ | ✓ |
| BCC | Blind Carbon Copy Recipients - format: Last name, First name | | ✓ | ✓ |
| TITLE | Document Title | | ✓ | ✓ |
| SUBJECT | Subject line | | ✓ | ✓ |
| DOCDATE | Last Modified Date for files and Sent date for email (this field inherits the date for attachments from their parent) | | ✓ | ✓ |
| SENTDATE | Date Sent | | ✓ | |
| SENTTIME | Time Sent (use GMT time zone) | | ✓ | |
| CREATEDATE | Date Created | | ✓ | ✓ |
| CREATEDTIME | Time Created (use GMT time zone) | | ✓ | ✓ |
| MODDATE | Date Last Modified. | | ✓ | ✓ |
| FILEPATH / COMPPATH | The original location of the file in the file system | | ✓ | ✓ |
| FILENAME | File name - name of file as it appeared in its original location | | ✓ | ✓ |
| FILE EXTENSION | .xls, .pdf, .wpd, etc. | | ✓ | ✓ |
| DOCTYPE | Email, attachment, edoc, etc. | | ✓ | ✓ |
| RECTYPE / APPLICATION | Application used to create or transmit the original native files, document, message, appointment (*e.g.*, WhatsApp, Excel, Slack, Outlook, Snapchat, Word, Twitter, Gmail, Tango) | | ✓ | ✓ |

| Field name | Field Description | Hard Copy | Email | Other ESI |
|---|---|---|---|---|
| MD5 HASH | MD5 Hash value (used for deduplication or other processing) (email hash values must be run with the email and all of its attachments) | | ✓ | ✓ |
| GROUP CUSTODIAN | Name(s) of custodian(s) with exact copy of file before de-duplication | | ✓ | ✓ |
| REDACTED | User-generated field that will indicate redactions with the words "Has Redactions". Otherwise, blank.  Identification of redacted documents does not apply to documents protected by the Bank Secrecy Act. | ✓ | ✓ | ✓ |
| CONFIDENTIALITY | User-generated field that will indicate confidentiality designation(s), if any | ✓ | ✓ | ✓ |
| STARTDATE | Start date and time of calendar appointments, voice messages, chats, text message conversations.  Format: MM/DD/YYYY HH:MM:SS (use GMT time zone) | | | ✓ |
| ENDDATE | End date and time of calendar appointments, voice messages, chats, text message conversations.  Format: MM/DD/YYYY HH:MM:SS (use GMT time zone) | | | ✓ |
| TEXTLINK | file path to load the text file of the extracted text or the OCR text for each record | ✓ | ✓ | ✓ |
| NATIVELINK | file path to the load the Native File for each record | | ✓ | ✓ |

+ Any other fields considered relevant by the producing party.

[PROPOSED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION
CASE NO. 5:24-CV-01321-BLF

### ATTACHMENT C: OTHER SOURCES OF ESI - CHAT TOOLS, SOCIAL MEDIA, AND ELECTRONIC PHONE RECORDS METADATA/DATABASE FIELDS

Metadata should be included to the extent available and left empty if unavailable.

| Field name | Field Description |
|---|---|
| STARTDATE | Start date and time of calendar appointments, voice messages, chats, text message conversations. Format: MM/DD/YYYY HH:MM:SS (use GMT time zone) |
| ENDDATE | End date and time of calendar appointments, voice messages, chats, text message conversations. Format: MM/DD/YYYY HH:MM:SS (use GMT time zone) |
| ACCOUNT NUMBER | Unique account ID or MSISDN of source mobile device. |
| DEVICE IMEI | IMEI number of mobile device. Does not apply to non-mobile data. |
| DEVICE IMSI | Phone number of mobile device. Does not apply to non-mobile data. |
| DEVICE SERIAL | Serial number of mobile device. Does not apply to non-mobile data. |
| DEVICE TYPE | Type of device. E.g. Apple iPhone XR, Samsung Galaxy |
| DIRECTION | Direction of messages/calls i.e. Incoming or Outgoing. |
| DURATION | The elapsed time of the audio, phone call, video, voice message. Format HH:MM:SS |
| BODY | Body of text messages, instant messages, notes or chats. Do not populate for emails or calendar items. |
| MESSAGE STATUS | Status of messages/calls i.e. Read, Unread, Completed Call, Missed Call. |
| PARTICIPANTS | List of participant names and/or telephone numbers. |
| ROOM NAME | Name of the room for channel groups, WhatsApp groups etc. |
| TEXT TYPE CODE | Type of text message (sent SMS, MMS, or other). |
| THREAD ID | A relational ID applied to all messages from the same thread and their attachments |
| TO NUMBER(S) | Who received the call or text, if applicable. |

+ Any other fields considered relevant by the producing party.