1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

|  |  |
|---|---|
| SVB FINANCIAL GROUP,<br><br>        Plaintiff,<br><br>   v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR SILICON VALLEY BANK, et al.,<br><br>        Defendants. | Case No.  5:24-cv-01321-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>[Re:  ECF No. 33] |

Two press releases tell the story of a tumultuous weekend in March 2023.  On Friday, March 10, the California Department of Financial Protection and Innovation closed Silicon Valley Bank ("SVB") and appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver. ECF No. 1 ("Compl."), Ex. 3 at 1.  All insured deposits were immediately transferred to the Deposit Insurance National Bank of Santa Clara.  *Id.*  By Monday, March 13, however, it was determined that "all deposits—both insured and uninsured—and substantially all assets" of the former SVB should instead be transferred "to a newly created, full-service FDIC-operated 'bridge bank' in an action designed to protect all depositors of Silicon Valley Bank."  Compl., Ex. 5 at 1. This transfer was deemed necessary to mitigate serious adverse effects on the economy, pursuant to a "systemic risk exception" approved on Sunday, March 12, by Treasury Secretary Janet Yellen.  Compl. ¶¶ 3, 58–59; Ex. 5 at 1.

Plaintiff SVB Financial Group ("SVBFG") owned Silicon Valley Bank prior to its closure and kept billions of dollars on deposit at SVB.  Compl. ¶¶ 42–44.  Shortly after the closure, however, SVBFG alleges that a hold was placed on its deposits at the successor banks, rendering it unable to access its funds.  *Id.* ¶¶ 90–95.  SVBFG's subsequent proofs of claim filed with the FDIC to recover the deposits were denied, *id.* ¶¶ 117–19, and SVBFG brought the present action

in an effort to reclaim the deposits.

Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint. ECF No. 33 ("Mot."). Plaintiff filed an Opposition to the motion, ECF No. 64 ("Opp."), and Defendants filed a Reply Brief in Support of FDIC-R1's and FDIC-R2's Motion to Dismiss, ECF No. 77 ("Reply"). The Court heard oral argument on the motion on October 10, 2024. *See* ECF No. 90. For the following reasons, the Court hereby GRANTS IN PART AND DENIES IN PART Defendants' Motion to Dismiss.

## I.    BACKGROUND

Typically, when a bank fails, the Federal Deposit Insurance Corporation insures depositors up to a limit of $250,000. Compl. ¶ 49. Those insurance funds are generally made available to depositors within a few days after the failure, and thereafter the FDIC resolves the assets of the bank and the claims against it. *Id.* Depositors with funds exceeding the insurance maximum may or may not eventually recover all of their funds, but the FDIC is empowered to distribute payments on claims for uninsured deposits as dividends prior to completing the process of liquidating all of the failed bank's assets. *Id.* ¶¶ 49–50.

Usually, the FDIC is required to use the method that would be least costly to the Deposit Insurance Fund to complete its resolution of a failed bank. *Id.* ¶ 53; 12 U.S.C. § 1823(c)(4). However, the Treasury Secretary may invoke the "systemic risk exception" to the least-cost resolution rule at the written recommendation of at least two-thirds of the Board of Governors of the Federal Reserve System and the Board of Directors of the FDIC, and after consulting with the President. Compl. ¶ 54. This exception applies where the least-cost resolution method "would have serious adverse effects on economic conditions or financial stability," and where the Secretary's adopted responsive action "would avoid or mitigate such adverse effects." *Id.* ¶¶ 54–55; 12 U.S.C. § 1823(c)(4)(G)(i)(I)–(II).

Plaintiff SVB Financial Group owned Silicon Valley Bank from 2000 until March 2023. Compl. ¶ 42. On March 10, 2023, however, the California Department of Financial Protection and Innovation ("DFPI") closed SVB and placed it in a receivership, appointing the Federal Deposit Insurance Corporation as receiver ("FDIC-R1"). *Id.* ¶ 48. At the time SVB closed, SVBFG had

approximately $2.1 billion on deposit at SVB in three deposit accounts. *Id.* ¶ 44. Those deposit accounts were maintained pursuant to Deposit Agreements between SVB and SVBFG. *Id.* ¶ 43.

The day that it was appointed receiver for SVB, FDIC created the Deposit Insurance National Bank of Santa Clara ("DINB") and transferred all insured deposits of SVB to the DINB. *Id.* ¶ 51. It also announced that "[a]ll insured depositors [would] have full access to their insured deposits no later than Monday morning, March 13, 2023." *Id.* FDIC planned to issue advance dividends for a portion of each depositor's uninsured deposits as well. *Id.* ¶ 52. Over the weekend, however, FDIC became concerned that uninsured depositors, upon learning that uninsured funds might not be recoverable, would respond by rapidly withdrawing funds from other banks, expanding the bank run that started at SVB. *Id.* ¶¶ 57–58. The FDIC and the Federal Reserve independently concluded that ensuring access to all uninsured deposits at SVB and Signature Bank would mitigate serious adverse effects on the economy. *Id.* ¶ 58. Thus, on Sunday, March 12, 2023, both boards unanimously recommended to Treasury Secretary Janet Yellen that she invoke the systemic risk exception. *Id.* ¶ 59. Secretary Yellen concurred in this conclusion and, after consulting with the President, she invoked the systemic risk exception to guarantee that all deposits at SVB, regardless of insurance status, would be paid in full and that depositors would have immediate access to their funds. *Id.*

The FDIC, the Federal Reserve, and Secretary Yellen made various public statements related to the planned resolution of SVB's failure. For example, SVBFG alleges that a joint statement released by Secretary Yellen, Federal Reserve Board Chair Jerome Powell, and FDIC Chairman Martin Gruenberg explained that the Secretary's action was intended to fully protect "all depositors" by providing them "access to all of their money starting Monday, March 13." *Id.* ¶¶ 11–12. Then, on March 13, the FDIC in its corporate capacity ("FDIC-C") issued a press release asserting that "all deposits—insured and uninsured" were being transferred to a temporary bank "in an action designed to protect all depositors of Silicon Valley Bank," and that "[a]ll depositors of the institution w[ould] be made whole." *Id.* ¶ 14.

On Monday, March 13, 2023, all insured and uninsured deposits were transferred to the newly formed Silicon Valley Bridge Bank ("Bridge Bank") via a Transfer Agreement. *Id.* ¶¶ 67,

89. Early that week, SVBFG conducted eight wire transfers withdrawing $180 million in account funds from Bridge Bank. *Id.* ¶ 90. However, on March 16, Bridge Bank began rejecting SVBFG's wire transfers pursuant to an instruction from FDIC-R1 that Bridge Bank should place a hold on SVBFG's accounts at Bridge Bank. *Id.* ¶ 91. FDIC-R1 further directed Bridge Bank to assign SVBFG's deposit accounts to FDIC-R1. *Id.* ¶ 95. The next day, SVBFG filed a Chapter 11 bankruptcy petition in the Southern District of New York. *See id.* ¶ 100. SVBFG alleges that one $6.2 million payment previously initiated to SVBFG was reversed following the bankruptcy filing. *Id.* ¶¶ 21, 101.

Bridge Bank closed on March 27, 2023, after a purchase and assumption transaction between Bridge Bank and First Citizens Bank. *Id.* ¶ 102. FDIC-R2 was appointed as receiver for Bridge Bank. *Id.* Approximately three months later, SVBFG filed an Adversary Proceeding in bankruptcy court against FDIC-C and both FDIC-Rs. *Id.* ¶ 105. The defendants collectively moved to dismiss the Adversary Proceeding, and FDIC-R1 simultaneously moved to withdraw the reference to bankruptcy court. *Id.* ¶¶ 107–09. FDIC-R2 and FDIC-C filed non-substantive joinders to FDIC-R1's motion to withdraw shortly thereafter. *Id.* ¶ 109. The motion to withdraw was granted on December 13, 2023. *Id.*

Meanwhile, SVBFG had filed proofs of claim with each FDIC-R1 and FDIC-R2 on July 10, 2023, asserting—among other things—a claim against each FDIC-R for account funds totaling $1,933,805,708.13 plus interest. *Id.* ¶ 117. Each FDIC-R notified SVBFG that it was disallowing the claims on January 5, 2024. *Id.* ¶ 119. SVBFG then requested that the U.S. District Court for the Southern District of New York stay the Adversary Proceeding while SVBFG pursued this action in the Northern District of California. *Id.* ¶ 110.

On March 5, 2024, SVBFG filed the present suit against the FDIC-Rs, asserting twelve claims for relief: (1) Breach of Contract, *id.* ¶¶ 139–149; (2) Estoppel, *id.* ¶¶ 150–153; (3) Turnover of the Account Funds Pursuant to Section 542 of the Bankruptcy Code, *id.* ¶¶ 154–163; (4) Violation of the Automatic Stay Under Section 362(a) of the Bankruptcy Code, *id.* ¶¶ 164–167; (5) Claim Under Sections 1406 and 681 of the California Financial Code (against FDIC-R1 only), *id.* ¶¶ 168–175; (6) Claim Under Sections 91 and 194 of the National Bank Act

United States District Court
Northern District of California

(against FDIC-R2 only), *id.* ¶¶ 176–181; (7) Declaratory Judgment Under 28 U.S.C. § 2201 *et seq.*, *id.* ¶¶ 182–189; (8) Violation of SVBFG's Fifth Amendment Rights Under the United States Constitution, *id.* ¶¶ 190–199; (9) Conversion, *id.* ¶¶ 200–207; (10) Breach of Contract (against FDIC-R1 only), *id.* ¶¶ 208–216; (11) Breach of Implied Contract (against FDIC-R1 only), *id.* ¶¶ 217–224; and (12) Breach of Contract (against both FDIC-Rs), *id.* ¶¶ 225–231.  SVBFG had previously filed a lawsuit against FDIC-C on December 19, 2023, *see SVB Financial Group v. Federal Deposit Insurance Corporation*, No. 23-cv-06543-BLF (N.D. Cal. filed Dec. 19, 2023), and the present suit was ordered related to the earlier-filed suit on March 21, 2024, *see* ECF No. 17.  On August 8, 2024, the Court granted in part and denied in part FDIC-C's motion to dismiss SVBFG's complaint in Case No. 23-cv-06543-BLF.  *SVB Fin. Grp. v. Fed. Deposit Ins. Corp.*, No. 23-CV-06543-BLF, 2024 WL 3745009 (N.D. Cal. Aug. 8, 2024).

## II.    LEGAL STANDARD

### A.  Rule 12(b)(1)

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  A party may challenge the Court's subject matter jurisdiction by bringing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial attack, the movant asserts that the lack of subject matter jurisdiction is apparent from the face of the complaint.  *Id.*  "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Id.*  When resolving the latter type of attack on subject matter jurisdiction, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."  *Id.*

### B.  Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads facts

United States District Court
Northern District of California

that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts generally do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570. However, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

**C.  Leave to Amend**

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1051–52. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* at 1052. However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

1   **III.     DISCUSSION**

2        **A.  Rule 12(b)(1)**

3        In the motion to dismiss, Defendants argue that the Court lacks subject matter jurisdiction

4   over Counts II, III, V, VI, VII, and VIII of the Complaint "because SVBFG waived those claims

5   by failing to assert them in the Claims filed in the FDIC-Rs' claims processes."  Mot. at 8.  In

6   response, Plaintiff argues that the administrative claims process does not apply to SVBFG's

7   efforts to access its account funds and that, even if it did, Plaintiff's claims have been

8   administratively exhausted.  Opp. at 8–9.  Plaintiff's position is that its administratively presented

9   claims need only give "adequate notice" of the claims later raised in the lawsuit, rather than

10  requiring both sets of claims to mirror one another.  *Id.* at 8.  Because "[t]he proofs of claim make

11  the same allegations that comprise" the challenged counts of the Complaint, SVBFG asserts that

12  the FDIC-Rs had notice of all claims in the Complaint.  *Id.* at 9–10.  On reply, Defendants insist

13  that a plaintiff's legal theories asserted in a later-filed complaint must match those claims asserted

14  in the administrative claims process.  Reply at 1–2.

15       Assuming without deciding that the administrative claims process applies to SVBFG's

16  efforts to recover its deposit funds, Defendants' arguments about Plaintiff's purported waiver fail.

17  It is true that FIRREA empowers the FDIC, acting in its capacity as a receiver, to determine

18  claims against a failed bank, and that claimants generally must follow certain procedures to assert

19  those claims.  *See* 12 U.S.C. §§ 1821(d)(3)(A), 1821(d)(5)–(8).  Failure to exhaust the

20  administrative process is a bar to district court jurisdiction.  *Intercontinental Travel Mktg., Inc. v.*

21  *Fed. Deposit Ins. Corp.*, 45 F.3d 1278, 1282 (9th Cir. 1994); *see Feigel v. Fed. Deposit Ins. Corp.*,

22  935 F. Supp. 1090, 1096 (S.D. Cal. 1996) ("Failure to timely exhaust administrative remedies

23  results in the loss of jurisdiction over certain claims which otherwise could be raised in district

24  court.").  However, Plaintiff is correct that the FIRREA exhaustion requirement does not "limit a

25  plaintiff's district court case to the *causes of action* alleged during the administrative process."

26  *Jafari v. Fed. Deposit Ins. Corp.*, No. 12-CV-2982, 2015 WL 3604443, at *3 (S.D. Cal. June 8,

27  2015) (emphasis added).  Rather, what matters is "whether the administratively presented claims

28  provide[d] the FDIC with adequate notice of the claims" later brought in the lawsuit.  *Id.*

Here, the Court concludes that SVBFG's administrative claims did provide adequate notice of the later legal claims. The administrative claims included detailed factual allegations, including that (1) SVBFG was formerly the holding company of SVB, which was closed on March 10, 2023; (2) Secretary Yellen authorized the systemic risk exception on March 12, 2023, and she, Federal Reserve Board Chair Jerome Powell, FDIC Chairman Martin Gruenberg, and FDIC-C made various representations indicating that all SVB depositors would be fully protected; (3) SVBFG had access to its funds at Bridge Bank until March 16, 2023, but then its accounts were placed on hold and any further wire transfers were rejected; (4) SVBFG commenced a Chapter 11 case on March 17, 2023; and (5) FDIC-Rs (and FDIC-C) declined SVBFG's demands for return of the approximately $1.93 billion on deposit at Bridge Bank at the time the accounts were placed on hold, while permitting other depositors to access their deposits. Compl., Exs. 7 (ECF No. 1-8) & 8 (ECF No. 1-9). These facts are sufficient to give notice of the counts alleged in Plaintiff's Complaint for estoppel, turnover, violation of the automatic stay, California Financial Code and National Bank Act violations, declaratory judgment, and a Fifth Amendment takings claim. The Court therefore DENIES Defendants' motion to dismiss Counts II, III, V, VI, VII, and VIII of the Complaint based on Defendants' waiver argument.

### B.  Rule 12(b)(6)

#### 1.  Count I

Regarding Count I of the Complaint, Defendants argue that Plaintiff fails to allege a plausible breach of contract claim against FDIC-R2, because FDIC-R2 "is not liable for the Deposit Claims," since "Bridge Bank is not a party to the Deposit Agreements between SVB and SVBFG." Mot. at 9–10. Further, Defendants assert that FDIC-R1 had "reserved an unconditional right to issue a call notice rescinding Bridge Bank's assumption of any liability," including on SVBFG's deposits, and that it did so with regard to Bridge Bank's assumption of SVBFG's deposits on March 15, 2023, prior to SVBFG's filing of any claim against Bridge Bank. *Id.* at 10. Defendants also argue that SVBFG is not entitled to prejudgment interest and lost earnings remedies against either FDIC-R, because the FDIC has sovereign immunity against prejudgment interest, and because FDIC-R1—the only FDIC-R Defendants believe could be liable for the

Deposit Claims—had a valid basis to reject SVBFG's demands for payment. *Id.* at 10–11. Additionally, Defendants argue that "the Deposit Agreements preclude SVBFG's demand for lost earnings." *Id.* at 11. SVBFG responds that its claim for breach of contract against FDIC-R2 is plausible because it has alleged that SVBFG's deposits at Bridge Bank "were governed by the Deposit Agreement" and "Bridge Bank could not transfer liability for SVBFG's deposit accounts to FDIC-R1 without SVBFG's consent." Opp. at 10–11. In addition, SVBFG argues that courts may award prejudgment interest against the FDIC acting as a receiver, even if they may not do so against the FDIC acting in its corporate capacity. *Id.* at 11–12.

The Court's review takes as true all well-pled allegations in the Complaint and construes them in the light most favorable to the Plaintiff. *Reese*, 643 F.3d at 690; *AI-Daiwa, Ltd. v. Apparent, Inc.*, No. 13-CV-4156, 2014 WL 988924, at *2 (N.D. Cal. Mar. 10, 2014). As Plaintiff correctly notes, Defendants' arguments depart from that applicable standard of review. The Complaint clearly states Plaintiff's allegation that "Bridge Bank agreed . . . 'to discharge . . . the duties and obligations of the Failed Bank with respect to the Assumed Deposit balances due and owing to the depositors of the Failed Bank.'" Compl. ¶ 89. As Plaintiff's counsel explained at the hearing, Plaintiff's theory is that the Deposit Agreements permit successors to step into the shoes of SVB for purposes of the failed bank's duties and obligations under the Deposit Agreements. *See* ECF No. 94 ("MTD Hr'g Tr.") at 36:11–41:11; Declaration of Luis Mayorga in Support of FDIC-R1 and FDIC-R2's Notice of Motion and Motion to Dismiss ("Mayorga Decl."), Ex. B at 49 (ECF No. 33-3). Based on this theory, Plaintiff alleges that its deposits that were transferred to Bridge Bank were governed by the Deposit Agreements that it originally executed with Silicon Valley Bank, because the terms of that agreement were assigned to Bridge Bank by operation of law when the deposit accounts were transferred. *See* Compl. ¶¶ 89–90; 95; 139–49. It further alleges that liability for those deposit accounts could not be transferred back to FDIC-R1 without SVBFG's consent—such that Bridge Bank was still liable for those accounts when SVBFG demanded its funds—and that therefore Bridge Bank breached the Deposit Agreement when it refused to honor SVBFG's demands. *Id.* ¶ 95. These allegations are bolstered by the further allegations that: (1) SVBFG was not informed of the alleged transfer back from Bridge Bank to

9

1    FDIC-R1 until that information was disclosed during discovery in the bankruptcy proceeding, *id.*

2    ¶ 97; and (2) SVBFG's deposit accounts were expressly carved out in the Purchase and

3    Assumption Agreement executed when Bridge Bank sold its assets to First Citizens Bank & Trust

4    Company, suggesting that those deposits remained at Bridge Bank, *id.* n.5.

5          In other words, regardless of whether FDIC-R1 had "reserved an unconditional right to

6    issue a call notice rescinding Bridge Bank's assumption of any liability" through the Transfer

7    Agreement, Mot. at 10, there remains uncertainty over whether such a rescission was, in fact,

8    effectuated.  This uncertainty also infects Defendants' argument that "[e]ven if SVBFG were a

9    third-party beneficiary [of the Transfer Agreement] . . . 'parties to a third-party creditor

10   beneficiary contract may rescind it at any time prior to the commencement of an action thereon.'"

11   *Id.* (quoting *R.J. Cardinal Co. v. Ritchie*, 218 Cal. App. 2d 124, 149 (1963)).  Plaintiff has

12   adequately alleged that liability on its deposits was assumed by Bridge Bank (and thus by FDIC-

13   R2) and was not effectively transferred back to FDIC-R1, such that *both* FDIC-Rs remain

14   potentially liable for breach of contract.

15         The Court acknowledges the FDIC-Rs' position that a particular provision of the Transfer

16   Agreement appears to indicate that the Deposit Agreements were retained by FDIC-R1 and not

17   assigned along with the transferred assets.  *See* MTD Hr'g Tr. at 63:22–65:23; Mayorga Decl., Ex.

18   C (ECF No. 33-4) § 2.03(b)(xi).  But the Court disagrees that the relevant issue has already been

19   determined in the bankruptcy case.  In fact, Judge Glenn expressly concluded that "whether the

20   Bridge Bank was liable to depositors *in addition* to the FDIC-R1 [wa]s immaterial" for purposes

21   of resolving whether there was mutuality "between the Debtor and the FDIC-R1," because various

22   factors demonstrated that "FDIC-R1 remained liable to depositors throughout the process."  *In re*

23   *SVB Fin. Grp.*, 662 B.R. 53, 69, 71 (Bankr. S.D.N.Y. 2024) (emphasis added).  Judge Glenn's

24   opinion, then, acknowledges—but does not decide—that *both* FDIC-Rs might be liable to Plaintiff

25   for its deposits.  And on a motion to dismiss, this Court will not decisively determine the meaning

26   of the Transfer Agreement.  Construing the Complaint in the light most favorable to Plaintiff,

27   Bridge Bank assumed the Deposit Agreements and there was not an effective rescission of that

28   transfer of liability on SVBFG's deposit accounts to Bridge Bank.  Accordingly, Plaintiff has

United States District Court
Northern District of California

pleaded facts sufficient to state a claim for relief for breach of contract against FDIC-R2.

However, Plaintiff fares differently on its arguments regarding its claim for prejudgment interest and lost earnings damages.  Regarding prejudgment interest, this Court is bound by the Ninth Circuit's holding in *Battista v. Fed. Deposit Ins. Corp.*, 195 F.3d 1113 (9th Cir. 1999), that Congress has not waived the FDIC's sovereign immunity against an award of prejudgment interest, even when it is operating in its capacity as a receiver.  *Id.* at 1120–21.  Plaintiff's citations to out-of-circuit authority are not persuasive in light of this Circuit's clear holding.  *See* Opp. at 12 (citing *Waterview Mgmt. Co. v. Fed. Deposit Ins. Corp.*, 257 F. Supp. 2d 31 (D.D.C. 2003), *Condus v. Howard Sav. Bank*, 999 F. Supp. 594 (D. Conn. 1998), *and Fed. Deposit Ins. Corp. v. Maxxam, Inc.*, 523 F.3d 566 (5th Cir. 2008)).

Similarly, Defendants are correct that the Deposit Agreement between SVB and SVBFG—which is incorporated by reference into the Complaint—expressly precludes liability for lost earnings.  *See* Mot. at 11; ECF No. 33-3 at 28 ("WE ARE NOT LIABLE FOR CONSEQUENTIAL, INDIRECT, INCIDENTAL, PUNITIVE OR SPECIAL DAMAGES UNDER ANY CIRCUMSTANCES, INCLUDING LOST PROFITS.").  Plaintiff fails to respond to this argument regarding lost earnings in its Opposition.  Since the Court need not "accept as true allegations that contradict matters properly subject to judicial notice," *In re Gilead Scis. Sec. Litig.*, 536 F.3d at 1055, and since Plaintiff has offered no reason for the Court to disregard the express terms of the Deposit Agreement, the Court finds that Count I of Plaintiff's Complaint does not properly plead a claim for lost earnings.

The Court hereby DISMISSES Plaintiff's request for prejudgment interest WITHOUT LEAVE TO AMEND since, in light of *Battista*, amendment would be futile.  The Court likewise DISMISSES WITHOUT LEAVE TO AMEND Plaintiff's request for lost earnings, since Plaintiff appears to have conceded the issue by declining to respond to Defendants' arguments.

### 2.  Count II

Next, Defendants argue that (1) equitable estoppel is not an independent cause of action; (2) the Ninth Circuit has not recognized an independent promissory estoppel cause of action against the government; and (3) in any case, SVBFG fails to allege any promises made by

Defendants to which they may be bound.  Mot. at 11–12.  On the third point, Defendants elaborate that FDIC-C's promises are not imputed to the FDIC-Rs and that the Treasury Secretary only "authorize[d], but [did] not direct" specific assistance to be provided by the FDIC.  *Id.* at 13.  In addition, Defendants argue that SVBFG omits certain relevant qualifications in quoting FDIC-R1's statements on which it attempts to base its estoppel claim, and that the existence of the Deposit Agreements renders promissory estoppel inapplicable.  *Id.* at 14.  In response, SVBFG argues that it can assert a promissory estoppel claim against the FDIC-Rs because there is a general waiver of the FDIC's sovereign immunity.  Opp. at 12–13.  SVBFG also argues that the FDIC-Rs "cannot seriously argue that they can disavow the actions of the Chair or Board" since they are subject to those authorities, and that in any event Defendants "adopted" the guarantee that all depositors would be able to access all of their funds through Bridge Bank.  *Id.* at 14.

The Complaint is ambiguous as to whether Plaintiff asserts a claim for equitable estoppel or promissory estoppel.  *See* Compl. ¶¶ 150–53.  However, Plaintiff's Opposition brief discusses only promissory estoppel, so the Court understands promissory estoppel to be the basis for Plaintiff's Count II.  *See* Opp. at 12–16.

Plaintiff's promissory estoppel claim is properly asserted.  Contrary to Defendants' arguments, there "is a general waiver of sovereign immunity from claims brought against the FDIC" based upon the "sue-and-be-sued" language of 12 U.S.C. § 1819(a).  *Woodbridge Plaza v. Bank of Irvine*, 815 F.2d 538, 542–43 (9th Cir. 1987).  And as this Court already determined in the related case between SVBFG and the FDIC acting in its corporate capacity, "promissory estoppel claims are meant to reach the FDIC."  *SVB Fin. Grp.*, 2024 WL 3745009, at *17 (citing *Ascom Hasler Mailing Sys., Inc. v. U.S. Postal Serv.*, 815 F. Supp. 2d 148, 159–60 (D.D.C. 2011)).  Nor is the Court persuaded that section 1821(j) bars Plaintiff's promissory estoppel claim.  Plaintiff alleges—though, of course, it remains to be proven—that the FDIC-Rs were "assert[ing] authority beyond that granted to" them insofar as they allegedly "ignore[d] their express promises" and directives under the systemic risk exception.  Opp. at 13–14.  Since FIRREA "does not permit the FDIC to breach contracts at will," and since section 1821(j) "does not extend to situations in which the FDIC as receiver asserts authority beyond that granted to it as a receiver," *Sharpe v.*

United States District Court
Northern District of California

1    *Fed. Deposit Ins. Corp.*, 126 F.3d 1147, 1155 (9th Cir. 1997), the Court finds on the facts alleged

2    that section 1821(j) does not prohibit Plaintiff's cause of action for promissory estoppel.

3        Moreover, Count II is adequately pled.  It may be the case that "[b]ecause the FDIC-C and

4    FDIC-R are separate legal entities, the FDIC-R is not responsible for the actions of the FDIC-C,

5    and vice versa," *Fed. Deposit Ins. Corp. v. Ching*, No. 13-CV-01710, 2016 WL 8730685, at *1

6    (E.D. Cal. Oct. 28, 2016), particularly given the express statutory language that "[w]hen acting as

7    . . . receiver . . . the Corporation shall not be subject to the direction or supervision of any other

8    agency or department of the United States," 12 U.S.C. § 1821(c)(3)(C).  But the Court need not

9    resolve the imputation issue now, because Plaintiff has *also* alleged that the FDIC-Rs "adopted"

10   the statements of FDIC-C, the Treasury Secretary, and the Federal Reserve through their own

11   public announcements on March 13, 2023 and afterward, as well as through their actions in

12   accordance with those public announcements.  *See* Opp. at 14; Compl. ¶ 88.  On those facts,

13   Plaintiff sufficiently alleges that FDIC-Rs themselves made promises to pay depositors, including

14   SVBFG, on which a claim for promissory estoppel may be brought.

15       This conclusion is unaltered by Defendants' argument that various statements made by

16   FDIC-R1 to the Bankruptcy Court undermine Plaintiff's narrative, because—taken in context—

17   they reveal that the promise to pay was qualified by the claim determination process and any

18   available setoff defense.  Mot. at 14.  For one, the Court observes that all of those statements to the

19   Bankruptcy Court occurred subsequent to the alleged adoptive statements and actions during the

20   week of March 13, 2023.  *See id.*; Compl. ¶ 22.  Besides, as Plaintiff points out, the availability of

21   a potential defense does not render a claim inadequately pled, *see* Opp. at 14, so the Court finds

22   this argument insufficient to justify dismissal.

23       Finally, Defendants' argument that promissory estoppel is inapplicable due to the existence

24   of the Deposit Agreements is also off-point.  The promises underlying Plaintiff's promissory

25   estoppel claim pertain to the course of action FDIC took to resolve SVB's failure, and those

26   circumstances are beyond the scope of the Deposit Agreements originally executed between SVB

27   and SVBFG to govern the deposit accounts.

28       Accordingly, Defendants' motion to dismiss Count II of the Complaint is DENIED.

13

### 3. Count III

Regarding Plaintiff's turnover claim, Defendants argue that "the FDIC-Rs hold no property owned by SVBFG" that can be subject to turnover. Mot. at 15. This is because title to deposited funds "passes immediately to the bank," leaving the depositor with only a "promise to pay" from the bank. *Id.* (citing *Crocker-Citizens Nat'l Bank v. Control Metals Corp.*, 566 F.2d 631, 637 (9th Cir. 1977), *abrogated on other grounds by Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564 (9th Cir. 1990), and *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 21 (1995)). In addition, Defendants argue that turnover claims are "not appropriate for a disputed contract claim." *Id.* SVBFG responds that plentiful authorities establish that bank deposits are subject to turnover under section 542(b) of the Bankruptcy Code, and that "disputed debt[s] can be subject to a turnover action." Opp. at 16.

As a preliminary matter, the Court rejects—as it did in the related case *SVB Financial Group v. Federal Deposit Insurance Corporation*, No. 23-cv-06543-BLF (N.D. Cal. filed Dec. 19, 2023)—the argument that deposit liabilities held by a bank cannot be the subject of a turnover claim. *See SVB Fin. Grp. v. Fed. Deposit Ins. Corp.*, No. 23-CV-06543, 2024 WL 3745009, at *11 (N.D. Cal. Aug. 8, 2024). Courts have explained that the property of the estate for purposes of a turnover claim includes "all legal or equitable interests of the debtor," a definition that encapsulates "the money owed [it] by the bank by virtue of [a deposit] account." *In re Calvin*, 329 B.R. 589, 595 (Bankr. S.D. Tex. 2005) (quoting *In re U.S.A. Diversified Prods., Inc.*, 100 F.3d 53, 55 (7th Cir. 1996)). Thus, it makes no difference that, as a technical matter, "when funds are deposited, title to those funds passes immediately to the bank." *Crocker-Citizens Nat. Bank*, 566 F.2d at 637; *accord Barnhill v. Johnson*, 503 U.S. 393, 398 (1992) ("A person with an account at a bank enjoys a claim against the bank for funds in an amount equal to the account balance.").

Furthermore, this Court has already considered and aligned itself with the recent line of case law establishing that a debt need not be undisputed in order for a plaintiff to bring a turnover claim. *SVB Fin. Grp. v. Fed. Deposit Ins. Corp.*, No. 23-CV-06543, 2024 WL 3745009, at *10 (N.D. Cal. Aug. 8, 2024); *see In re Keese*, 671 F. Supp. 3d 1053, 1058 n.1 (C.D. Cal. 2023) ("California bankruptcy courts . . . have . . . found that the plain language of 11 U.S.C. § 542 does

14

1    not contain such a limitation.").  Defendants' citations in the present motion once again go to a

2    different issue: namely, that "a plaintiff cannot disguise a breach of contract claim as a turnover

3    claim."  *See SVB Fin. Grp.*, 2024 WL 3745009, at *10 (citing *In re Charter Co.*, 913 F.2d 1575,

4    1579 (11th Cir. 1990)); *In re Even St. Prods. Ltd.*, No. LACV 17-1756, 2020 WL 4559511, at *8

5    (C.D. Cal. Aug. 6, 2020) ("Underlying the extensive litigation surrounding these Royalties are

6    contract disputes . . . .  Turnover is the incorrect method to decide such disputes.").  And finally,

7    unlike in the related case, SVBFG has here adequately pled that the FDIC-Rs are "in possession,

8    custody, or control" of its property, 11 U.S.C. § 542, stating that the deposit accounts were

9    transferred to FDIC-R1 and then to Bridge Bank, the predecessor in interest to FDIC-R2.  Compl.

10   ¶¶ 48, 51, 66–67.

11           Plaintiff encounters a new issue in Defendants' Reply brief.  There, Defendants argue that

12   12 U.S.C. § 1821(j) "strips this Court of jurisdiction to order equitable relief, such as 'turn over,'

13   against the FDIC-Rs because such relief would 'restrain or affect' the FDIC-Rs' exercise of their

14   powers."  Reply at 10.  As with Count II, thought, the Court disagrees that section 1821(j)

15   precludes Plaintiff's turnover claim.  That provision's admonition that "no court may take any

16   action . . . to restrain or affect the exercise of powers or functions of the Corporation as a

17   conservator or a receiver" has been interpreted as "a sweeping ouster of courts' power to grant

18   equitable remedies" against the FDIC.  *Harrington v. Fed. Deposit Ins. Corp.*, No. 23-CV-06296,

19   2024 WL 3406990, at *2 (N.D. Cal. July 12, 2024) (quoting *Freeman v. Fed. Deposit Ins. Corp.*,

20   56 F.3d 1394, 1399 (D.C. Cir. 1995)).  Yet this prohibition has no effect where the FDIC has

21   "acted or proposed to act beyond, or contrary to, its statutorily prescribed, constitutionally

22   permitted, powers or functions," *id.* (quoting *Nat'l Tr. for Historic Pres. v. Fed. Deposit Ins.*

23   *Corp.*, 21 F.3d 469, 471 (D.C. Cir. 1994) (Wald & Silberman, JJ., concurring)), and Plaintiff's

24   Complaint alleges that FDIC-Rs were acting lawlessly, *see, e.g.*, Compl. ¶ 33.

25           Accordingly, Defendants' motion to dismiss Count III of the Complaint is DENIED.

26                       **4.  Count IV**

27           Defendants challenge Count IV—violation of the automatic stay under section 362(a)(3) of

28   the Bankruptcy Code—as pled without adequate specificity and as irrelevant due to the unique

United States District Court
Northern District of California

property status of deposited funds.  Mot. at 16–17.  Defendants' latter point is that Plaintiff's deposit claim, "the only property interest held by the SVBFG estate in connection with the uninsured bank deposits," remained within SVBFG's control at all times, and that the FDIC-Rs' refusal to pay did not amount to "exercising . . . control" over property of the bankruptcy estate. *Id.* at 17.  Furthermore, Defendants believe that FDIC-R1 has defensive setoff rights and "sole discretion" to decide the timing of payment on allowed claims.  *Id.* at 17–18.  For its part, SVBFG argues that, at a minimum, the Complaint states a claim for violation of the automatic stay with regard to the reversal of a $6.2 million transaction initiated by SVBFG from Bridge Bank.  Opp. at 18.  (SVBFG voluntarily withdraws Count IV with regard to Defendants' continued refusal to pay the Account Funds.  *Id.*)  The crux of Plaintiff's argument is that "FDIC-Rs affirmatively *reversed* the intercompany receivable in SVBFG's account *after* the automatic stay went into effect," which effectively seized estate property.  *Id.* (emphasis in original).

Section 362 of the Bankruptcy Code effects an automatic stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).  "It is designed to effect an immediate freeze of the status quo by precluding and nullifying post-petition actions, judicial or nonjudicial, in nonbankruptcy fora against the debtor or affecting the property of the estate."  *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 585 (9th Cir. 1993).  That said, "mere retention of property does not violate § 362(a)(3)."  *City of Chicago v. Fulton*, 592 U.S. 154, 156 (2021).  Based on this rule and this Court's reasoning in its August 8, 2024 order in the related case*, see SVB Fin. Grp.*, 2024 WL 3745009, at *13–14, Plaintiff has voluntarily withdrawn "Count IV to the extent it is based on FDIC-Rs' continued refusal to pay the Account Funds."  Opp. at 18.  However, Plaintiff maintains Count IV insofar as it is based on the March 17, 2023 reversal of a $6.2 million transaction to SVBFG by FDIC-R1.  *Id.*

The Court agrees that the March 17, 2023 transaction is distinguishable from the *Fulton* case.  The Complaint alleges that the automatic stay went into effect *after* the $6.2 million transaction commenced but *before* the FDIC-Rs clawed the funds back.  *See* Compl. ¶ 21 ("Following SVBFG's bankruptcy filing, the FDIC-Rs . . . *reversed* a $6.2 million payment owed

16

1    to SVBFG.") (emphasis added); *see also id.* ¶ 101.  In contrast, in the *Fulton* case, the debtor's

2    property was already in the possession of the defendant at the time the automatic stay went into

3    effect, so it did not change hands following the invocation of the stay.  *Fulton*, 592 U.S. at 157.

4    Given this critical timing difference, the Court finds that Plaintiff has adequately alleged an effort

5    to "obtain" or "exercise control over" property formally in the hands of the estate after the time at

6    which the automatic stay went into effect.  As a result, the Court DENIES Defendants' motion to

7    dismiss Count IV as far as the $6.2 million transaction is concerned.

             **5.  Counts V and VI**

9        In light of the overlap between the issues on each claim, the Court addresses Counts V and

10   VI—both of which assert demands for a "ratable distribution" up to the liquidation value of

11   SVBFG's claims filed with the FDIC-Rs—together.

12       Regarding Plaintiff's California Financial Code ("CFC") cause of action, Defendants argue

13   that CFC section 1406(c) does not provide a right of payment to SVBFG and that section 681

14   applies only to liquidations handled by the CAFPI Commissioner, rather than those handled by the

15   FDIC.  Mot. at 18–19.  The point of section 1406(c), Defendants claim, is to prevent preferential

16   payments to *other* creditors by voiding them—not to permit a given creditor to claim a particular

17   payment.  *Id.*  Section 681, on the other hand, applies to "liquidation of 'uninsured' licensees," a

18   group to which SVBFG does not belong, and applies to liquidations handled by the CAFPI

19   Commissioner, which is not the case here.  *Id.* at 19.  Besides, Defendants say, the cited provisions

20   of the California Financial Code are preempted to the extent that they are inconsistent with the

21   federal Title 12 governing this liquidation, and they do not confer a private cause of action on

22   SVBFG.  *Id.*

23       Defendants' arguments related to Plaintiff's Count VI (which is brought against FDIC-R2)

24   generally parallel those related to Count V (which is brought against FDIC-R1).  Specifically,

25   Defendants say that section 91 of the National Bank Act ("NBA") does not provide a right of

26   distribution against FDIC-R2 and does not create a private cause of action.  Mot. at 20.  In

27   addition, Defendants argue that section 194 applies only when the "Comptroller of the Currency

28   has received funds from FDIC-R," which hasn't occurred here.  *Id.* at 20–21.  Finally, Defendants

United States District Court
Northern District of California

argue that the ratable distribution requirement set out in the National Bank Act was superseded by FIRREA. *Id.* at 21.

In response, Plaintiff starts by emphasizing its position that both sets of provisions impose a requirement that a bank's assets are distributed to its creditors on a pro-rata basis. Opp. at 20–21. And Plaintiff explains that it is each *pair* of provisions, together, that creates a right of action for SVBFG. *Id.* at 22, 24. Besides, Plaintiff claims to have adequately pled breach of fiduciary duty based on Defendants' purported violations of the federal and state statutory schemes, which Plaintiff believes independently creates a private right of action. *Id.* at 23–24. Plaintiff also argues that: (1) section 681 of the CFC is not limited in application only to uninsured licensees, (2) the Commissioner's appointment of the FDIC as receiver for a California-chartered bank renders the FDIC subject to the same distribution requirements as would be applicable directly to the Commissioner, (3) there is no preemption issue because the federal and state schemes are "substantially analogous," and (4) the Comptroller's duty to ratably distribute is "delegated" to the FDIC when it acts as a receiver. *Id.* at 22–25. Finally, Plaintiff reiterates that the uncertainty over whether FDIC-R2 validly transferred SVBFG's deposits back to FDIC-R1 precludes dismissal based on FDIC-R2's argument that "SVBFG has no right of distribution in the Bridge Bank receivership." *See* Mot. at 20; Opp. at 26.

As a preliminary matter, it is true that FIRREA modified how the National Bank Act's ratable distribution requirement applies to the FDIC. Specifically, "Congress repealed former § 2[11](d) of the FDIA, which subjected the FDIC to the ratable distribution requirements of the NBA, and thereby effectively overruled prior inconsistent judicial decisions." *Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. Fed. Deposit Ins. Corp.*, 749 F. Supp. 758, 773 (N.D. Tex. 1990). The amended provision, 12 U.S.C. § 1821(i)(2), "limits the FDIC's maximum liability to any person having a claim against the receiver or the failed institution for which the FDIC is acting as receiver to the amount the person would have received in a straight liquidation." *Id.* But the Court agrees with Plaintiff that this alteration does not eliminate applicability of the ratable distribution requirement to any distributions that fall *within* the liquidation value of creditors' claims. *See* Opp. at 25.

Plaintiff is likewise correct that section 194 of the NBA and section 681 of the CFC lay out duties of the Comptroller of the Currency and the Commissioner of the California Department of Financial Protection and Innovation ("DFPI") that are effectively "delegated" to the FDIC when it acts as a receiver for a failed bank. Under the NBA, a receiver, having "assumed the role of [an] insolvent bank" takes on the "duty to ratably distribute . . . in conformity with the provisions of law relating to the liquidation of closed national banks." *Dababneh v. Fed. Deposit Ins. Corp.*, 971 F.2d 428, 432 (10th Cir. 1992); *accord Citizens State Bank of Lometa v. Fed. Deposit Ins. Corp.*, 946 F.2d 408, 411 (5th Cir. 1991) ("FDIC is responsible for marshalling the bank's assets and distributing them ratably 'on all such claims as may have been proved to [the receiver's] satisfaction.'"). Plaintiff's citation to section 620 of the California Financial Code is not directly on point, since it discusses only "powers" conferred on the FDIC when it is appointed by the commissioner as receiver of a licensee bank, *see* Cal. Fin. Code § 620, but to the extent that FDIC's duties under the CFC differ from those under the NBA on this issue, the NBA duties are effective. *See Battista*, 195 F.3d at 1120 (indicating that FIRREA preempted conflicting California law on payment of claims).

The problem for Plaintiff is that it does not have a private right of action under the cited provisions. In California, "[a]doption of a regulatory statute does not automatically create a private right to sue for damages resulting from violations of the statute." *Vikco Ins. Servs., Inc. v. Ohio Indem. Co.*, 70 Cal. App. 4th 55, 62 (1999). Therefore, Plaintiff must be able to point to "the language of the statute or its legislative history" and show that there is a "clear[] indicat[ion]" that "the Legislature *intended* to create such a right to sue for damages." *Id.* (emphasis in original). Yet Plaintiff fails to do so, and various courts have previously found that the California Financial Code does not generally create a private right of action. *See, e.g.*, *De La Torre v. CashCall, Inc.*, 854 F.3d 1082, 1085 (9th Cir. 2017); *Balboa Cap. Corp. v. Shaya Med. P.C. Inc.*, No. SACV 21-00831, 2021 WL 6104014, at *4 (C.D. Cal. Aug. 13, 2021) ("To the contrary, the California Financial Code does not create a private right of action."). The same failure—and similar contrary case law—undermines Plaintiff's claim of a private right of action under the NBA. *Wisdom v. JP Morgan Chase & Co.*, No. CV 22-1494, 2024 WL 2320017, at *2 (D. Del. May 22, 2024) ("There

19

is no private right of action under the National Bank Act."); *Williams v. Pfeifer*, No. 19-CV-5016, 2019 WL 2433606, at *2 (S.D.N.Y. June 11, 2019) ("Although Plaintiff invokes the National Banking Act . . . that statute does not create a private right of action.").

Plaintiff tries to argue, in the alternative, that violations of these statutory provisions amount to a breach of fiduciary duty giving rise to a cause of action. But this attempt to avoid dismissal fails, because Plaintiff has not adequately pled breach of fiduciary duty in its Complaint. The phrase "fiduciary duty" does not appear in the Complaint. *See generally* Compl. And Plaintiff's Opposition brief offers several authorities in support of the proposition that FDIC acting in its capacity as receiver is subject to fiduciary duties owed to claimants, but it does not point the Court to specific allegations in the Complaint amounting to a claim of breach of fiduciary duty. *See* Opp. at 23. Accordingly, the Court hereby DISMISSES Counts V and VI WITHOUT LEAVE TO AMEND the National Bank Act and California Financial Code causes of action, since the lack of a private right of action renders futile any attempt to re-plead those claims. However, the Court grants Plaintiff LEAVE TO AMEND the Complaint in order to plead a new cause of action for breach of fiduciary duty.

### 6. Count VII

Regarding Plaintiff's declaratory judgment claim, Defendants argue that there is no affirmative cause of action under the Declaratory Judgment Act and that "the relief sought by SVBFG is moot . . . because SVBFG already submitted its Claims against FDIC-R1 and FDIC-R2," which already rejected the claims. Mot. at 22. In addition, Defendants state that the claims are subject to the FIRREA claims process and that a request for declaratory relief violates 12 U.S.C. § 1821(j). *Id.* at 22–24. Plaintiff responds that it has asserted "multiple, independent causes of action" and that it "may therefore assert a claim for declaratory relief under the DJA." Opp. at 27. Furthermore, Plaintiff says that the FDIC-Rs "cannot now argue that SVBFG has [mooted] its claims" by participating in the claims process that the FDIC-Rs insisted it undertake. *Id.* To Defendants' point that SVBFG's declaratory relief claim is a "thinly-veiled attempt to restrain or affect the exercise of powers or functions of" the FDIC-Rs, Mot. at 24 (internal quotations omitted), SVBFG says that its request is distinguishable from Defendants' cited

1    authority because it is "not akin to an injunction."  Opp. at 28.

2        The Court first considers—and rejects—Defendants' argument regarding subject matter

3    jurisdiction.  In seeking dismissal of Plaintiff's claim for declaratory relief, Defendants once again

4    invoke section 1821(j)'s "sweeping ouster" of equitable jurisdiction over the FDIC.  *Harrington*,

5    2024 WL 3406990, at *2; *see* Mot. at 24; Reply at 15.  The Court, however, agrees with Plaintiff

6    that this section of FIRREA aims to limit injunctive relief impacting FDIC's exercise of its

7    powers, not declaratory relief evaluating the rights and obligations of creditors and the FDIC.  As

8    previously discussed, "[t]he bar imposed by § 1821(j) does not extend to situations in which the

9    FDIC as receiver asserts authority beyond that granted to it as a receiver," *Sharpe*, 126 F.3d at

10   1155, and seeking declaratory relief is one way in which a plaintiff may pursue its claim that the

11   FDIC was acting out of bounds.  It is not an exercise of judicial restraint in the sense targeted by

12   section 1821(j).  *See D-F Fund VIII, L.L.C. v. Valley Ranch Dev. Co.*, No. 396-CV-3367-R, 1999

13   WL 97929, at *5 (N.D. Tex. Feb. 11, 1999) (rejecting a request for declaratory relief that was

14   "akin to a request for injunctive relief").

15       Next, the Court addresses Defendants' argument that "[t]he Declaratory Judgment Act

16   does not provide an affirmative cause of action where none otherwise exists."  *City of Reno v.*

17   *Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022).  Defendants are correct: rather than providing a

18   standalone cause of action, the Declaratory Judgment Act makes available declaratory relief as an

19   equitable remedy only when a plaintiff has a cause of action under a separate statute.  *See id.* at

20   878–79.  But as Plaintiff explains in its opposition, it has "asserted multiple, independent causes of

21   action" in connection with Defendants' allegedly unlawful conduct, and it is on those causes that

22   the declaratory relief is predicated.  Opp. at 27.

23       The Court likewise declines to dismiss Count VII based on Defendants' mootness

24   argument.  There is a live dispute between the Parties as to whether Plaintiff was required to

25   submit its claims through the FDIC-Rs' claims processes.  If it was, then the exhaustion

26   requirement is a precursor to seeking relief before an appropriate court, but participation in that

27   (required) administrative exhaustion does not render the claims then elevated to the court moot.

28   And if the claims procedure was *not* properly applied to Plaintiff, then Plaintiff's claims are

United States District Court
Northern District of California

21

clearly not moot, since they could not possibly have been waived through the claims procedure.

Defendants' next argument—that "as a matter of law, the Claims are subject to the mandatory, exclusive . . . [FIRREA] claims process[]," Mot. at 22—ignores the standards applicable to a motion to dismiss.  Under those standards, this Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.  *Reese*, 643 F.3d at 690.  Taken in that favorable light, the Complaint adequately alleges that the claims process *did not* apply to Plaintiff's claims.  Critically, Plaintiff pled that FDIC did not require other creditors of Silicon Valley Bank to participate in the claims process, and Plaintiff alleges that there was no justification for treating SVBFG differently from those other creditors.  Compl. ¶¶ 17–19, 121.

Finally, although the Court recognizes that Plaintiff did not directly address Defendants' argument that "'protective' Claims filed in the FIRREA claims processes are . . . ineffectual at avoiding jurisdiction under FIRREA," Mot. at 24, the Court finds Defendants' cited cases on that point inapplicable here.  In *In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702 (2d Cir. 1995), the court found that the party alleged to have submitted to bankruptcy court jurisdiction had filed its proof of claim as its "first move in the bankruptcy proceeding," and had "thereafter bec[o]me deeply involved in the proceedings."  *Id.* at 707.  It apparently did not ever move to withdraw the reference, either, so the *S.G. Phillips Constructors* court concluded that it had "plainly submitted to the equitable resolution of its claims in bankruptcy court."  *Id.* at 708.  Those facts are a far cry from SVBFG's allegations, which indicate that it minimized its participation in the claims process and accompanied that participation with protests against its legitimacy.  Compl. ¶¶ 117–19.  And *Travellers International AG v. Robinson*, 982 F.2d 96 (3d Cir. 1992), pertained to a situation in which a party willingly submitted to a bankruptcy court's claims procedure, but also sought to withdraw a related adversary proceeding from the bankruptcy court.  *Id.* at 97–98.  Unlike in the present suit, the relevant *Travellers International* party did not question the legitimacy of the bankruptcy court's claims procedure.  *See id.*

Accordingly, Defendants' motion to dismiss Count VII is DENIED.

United States District Court
Northern District of California

### 7.  Count VIII

Defendants argue that Plaintiff fails to state a takings claim, because such claims must be asserted directly against the United States rather than against its agents, and because the FDIC-Rs' declination of SVBFG's claims did not "take" SVBFG property.  Mot. at 24.  In its Opposition, Plaintiff does not directly respond to Defendants' arguments, noting only that it believes an exception to the Court of Federal Claims' presumptive jurisdiction over Fifth Amendment takings claims "may be applicable" in this case.  Opp. at 29.  Plaintiff then voluntarily withdraws the claim in order to conserve judicial resources.  *Id.* at 29–30.  In light of Plaintiff's voluntary withdrawal, the Court does not analyze whether Count VIII would survive the motion to dismiss.

### 8.  Count IX

Defendants argue that Plaintiff cannot state a conversion claim because a conversion claim requires ownership or right to possession of the disputed property at the time of the conversion, but title to deposited funds is in the hands of the bank rather than the depositor.  Mot. at 25.  As a result, bank accounts cannot be the subject of conversion.  *Id.*  In any event, Defendants argue, a conversion claim under the Federal Tort Claims Act must be asserted against the United States rather than one of its agencies.  *Id.* at 26.  As with Count VIII, Plaintiff disagrees with Defendants' legal argument—saying that California law establishes that bank account funds may sometimes be subject to a conversion claim—but voluntarily dismisses the conversion claim anyway.  Opp. at 30.  In light of Plaintiff's voluntary withdrawal, the Court does not analyze whether Count IX would survive the motion to dismiss.

### 9.  Counts X, XI, and XII

The Court combines its analysis of Counts X, XI, and XII because all three causes of action assert breach of contract claims that suffer from the same fundamental flaws.  In response to all three counts, Defendants argue that "SVBFG's failure to allege the existence of a *written* agreement" governing the claims is "fatal," because sections 1821(d)(9)(A) and 1823(e) of Title 12—which regulate contract-based claims against the FDIC—require written agreements.  Mot. at 26.  And reviewing the claims under California law, Defendants argue that the allegations are insufficient because they consist only in "conclusory assertion[s]" of the existence of the relevant

23

1  agreements, without further elaborating on the parties' relative assents, obligations, performances,

2  and/or breaches. *Id.* at 28–29. SVBFG responds that it is required only to "put FDIC-Rs on notice

3  of the contract alleged to be breached," which can be accomplished by "plead[ing] the legal effect

4  of the contract." Opp. at 28–29 (citation and internal quotations omitted). Further, Plaintiff says

5  that 12 U.S.C. § 1823(e) is inapplicable, because it only applies to assets—not liabilities—of a

6  failed bank. *Id.* at 29.

7       Under FIRREA, "any agreement which does not meet the requirements set forth in section

8  1823(e) of [Title 12] shall not form the basis of, or substantially comprise, a claim against the

9  receiver or the Corporation." 12 U.S.C. § 1821(d)(9)(A). In turn, section 1823(e) requires that an

10  agreement "tend[ing] to diminish or defeat the interest of the Corporation in any asset acquired by

11  it . . . as receiver of any insured depository institution" be in writing. *Id.* § 1823(e)(1)(A). The

12  interaction between these two provisions is important for purposes of Plaintiff's claims, because

13  section 1823(e) expressly applies only to *assets* acquired by FDIC acting in its capacity as

14  receiver. *Id.* But the Court does not agree with Plaintiff that section 1821(d)(9)(A) should be

15  construed so narrowly. *See* Opp. at 29. Rather, this Court agrees with those other courts that have

16  found that it more logical to understand section 1823(e) as barring "the enforcement of oral

17  agreements that relate to assets held by the FDIC," while section 1821(d)(9), "which applies to

18  'any agreement,' and was later added to the federal statute," is better understood as more broadly

19  applying to agreements that do not necessarily relate to FDIC-held assets. *See Marina de Ponce,*

20  *Inc. v. Fed. Deposit Ins. Corp.*, No. CV 15-1664, 2018 WL 1061441, at *6 (D.P.R. Feb. 23, 2018).

21  In light of this prohibition on "secret" agreements, while Plaintiff may not need to append its

22  written contract(s) to the Complaint in order to state a claim for breach of contract that is

23  plausible, Plaintiff must at least allege that a written agreement *exists*. It did not do so.

24       In any event, Plaintiff also failed to plead sufficient facts to state a breach of contract

25  claim. As Defendants point out, Plaintiff has not alleged that it has actually paid the claims for

26  which it seeks reimbursement through these causes of action. To the contrary, the schedules

27  attached to Plaintiff's Complaint indicate that Plaintiff believes those claims are "unliquidated and

28  undetermined" and presently refuses to admit liability on them. Compl., Schedules 1–3 (ECF

24

1    Nos. 1-10, 1-11, 1-12).  Plaintiff has also not clearly set out facts going to each element of a

2    California breach-of-contract claim: (1) a contract, *i.e.*, offer, acceptance, and consideration; (2)

3    plaintiff's performance; (3) breach; and (4) damages.  *See Hamilton v. Greenwich Invs. XXVI,*

4    *LLC*, 195 Cal. App. 4th 1602, 1614 (2011).  The Court will need more specific facts—as

5    compared to bare conclusions—in order to be able to "draw the reasonable inference that the

6    defendant is liable for the misconduct alleged."  *Ashcroft*, 556 U.S. at 678.  Accordingly,

7    Defendants' motion to dismiss Counts X, XI, and XII is GRANTED.  However, because the Court

8    does not find that any of the *Foman* factors are present here, the dismissal of Counts X, XI, and

9    XII is WITH LEAVE TO AMEND.

10   **IV.    ORDER**

11          For the foregoing reasons, IT IS HEREBY ORDERED that the motion to dismiss (ECF

12   No. 33) brought by Defendants FDIC-R1 and FDIC-R2 is GRANTED IN PART AND DENIED

13   IN PART:

14          1.   The FDIC-Rs' motion to dismiss is DENIED insofar as it argues that the Court lacks

15               subject matter jurisdiction over Counts II, III, V, VI, VII, and VIII due to waiver by

16               SVBFG during the FDIC-Rs' claims processes.

17          2.   The requests for prejudgment interest and lost earnings in Count I are DISMISSED

18               WITHOUT LEAVE TO AMEND.  The motion to dismiss Count I against FDIC-R2 is

19               DENIED.

20          3.   The motion to dismiss is DENIED as to Counts II, III, and VII.

21          4.   Count IV is DISMISSED as to Defendants' continued refusal to pay the Account

22               Funds, but the FDIC-Rs' motion to dismiss Count IV is DENIED as to the $6.2 million

23               transaction that Plaintiff claims was clawed back on March 17, 2023.

24          5.   Counts V and VI are DISMISSED WITHOUT LEAVE TO AMEND as to the National

25               Bank Act and California Financial Code claims, but Plaintiff is granted LEAVE TO

26               AMEND the Complaint to assert a new breach of fiduciary duty cause of action.

27          6.   Counts VIII and IX are DISMISSED WITHOUT LEAVE TO AMEND, pursuant to

28               Plaintiff's voluntary dismissal of those causes of action.

United States District Court
Northern District of California

7. Counts X, XI, and XII are DISMISSED WITH LEAVE TO AMEND.

**IT IS SO ORDERED.**

Dated:  November 29, 2024

_____

BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California