KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST - # 84065
rvannest@keker.com
JAN NIELSEN LITTLE - # 100029
jlittle@keker.com
JULIA L. ALLEN - # 286097
jallen@keker.com
MAYA JAMES - # 318554
mjames@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Plaintiff SVB FINANCIAL TRUST, as Successor in Interest to SVB Financial Group [Additional Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SVB FINANCIAL GROUP,<br><br>    Plaintiff,<br><br>    v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR SILICON VALLEY BANK; FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR SILICON VALLEY BRIDGE BANK, N.A.,<br><br>    Defendants. | Case No. 5:24-cv-01321-BLF<br><br>**MOTION TO CONSOLIDATE**<br><br>Judge:     Hon. Beth Labson Freeman<br><br>Date Filed: March 5, 2024<br><br>Hearing Date: May 1, 2025<br><br>Time: 9:00 a.m. |

# TABLE OF CONTENTS

I.   INTRODUCTION ....................................................................................................................1

II.  LEGAL STANDARD.............................................................................................................2

III. ARGUMENT ..........................................................................................................................3

    A.   Consolidation is appropriate due to the extensive factual and legal overlap between the cases. ...................................................................................................3

    B.   Consolidation will promote efficiency and judicial economy. ...............................6

    C.   Consolidation will not cause undue delay, confusion, or prejudice. .......................7

IV.  CONCLUSION.......................................................................................................................8

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Bodri v. GoPro, Inc.*,
 2016 WL 1718217 (N.D. Cal. Apr. 28, 2016) ............................................................................2

*Holley v. Gilead Scis., Inc.*,
 2020 WL 13557961 (N.D. Cal. Apr. 22, 2010) ..........................................................................7

*Investors Rsch. Co. v. C.D. Cal.*,
 877 F.2d 777 (9th Cir. 1989) .....................................................................................................2

*Jackson v. City & Cnty. of San Francisco*,
 2010 WL 11582918 (N.D. Cal. Dec. 16, 2010) .........................................................................7

*Power Integrations, Inc. v. Chan-Woong Park*,
 2019 WL 119969 (N.D. Cal. Jan. 7, 2019) (Freeman, J.) ..................................................3, 5, 7

*Ralink Tech. Corp. v. Lantiq Deutschland GMBH*,
 2012 WL 314881 (N.D. Cal. Feb. 1, 2012) ...............................................................................3

**Federal Statutes**

12 U.S.C. § 1821(d)(5)(A)(i) ............................................................................................................2

12 U.S.C. § 1821(d)(6)(B)(ii) ......................................................................................................2, 5

12 U.S.C. § 1821(f) ..........................................................................................................................5

Bankruptcy Code § 542 ...................................................................................................................5

Financial Institutions Reform, Recovery, and Enforcement Act .....................................................2

**Rules**

Federal Rule of Civil Procedure 42(a) ...............................................................................1, 2, 3, 6

**Regulations**

Order Confirming the Debtor's Second Amended Plan of Reorganization under
 Chapter 11 ..................................................................................................................................1

**Other Authorities**

9A Charles Alan Wright et al., Federal Practice and Procedure § 2382 (3d ed.) ............................3

**NOTICE OF MOTION AND MOTION TO CONSOLIDATE**

TO ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 1, 2025, at 9:00 a.m., or as soon thereafter as this matter can be heard, in the courtroom of the Hon. Beth Labson Freeman, located at the San Jose Courthouse, Courtroom 3 – 5th Floor, 280 South 1st Street, San Jose, CA 95113, Plaintiff Silicon Valley Bank Financial Group ("SVBFG") moves this Court for an order consolidating Case No. 24-cv-01321-BLF, with Case No. 23-cv-06543-BLF, currently pending before this Court.

This motion is brought pursuant to Rule 42(a) of the Federal Rules of Civil Procedure. This motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the Proposed Order submitted herewith, and any other matter the Court may wish to consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 42(a), Plaintiff Silicon Valley Bank Financial Group ("SVBFG")[1] moves this Court to consolidate the above-captioned proceeding, Case No. 24-cv-01321-BLF (*SVBFG v. FDIC-R*), with Case No. 23-cv-06543-BLF (*SVBFG v. FDIC-C*), currently pending before this Court. Consolidation was intended precisely for cases like these: both involve SVBFG and Federal Deposit Insurance Corporation ("FDIC") entities, arise from the same set of facts, and assert legal claims requesting the return of SVBFG's deposits at Silicon Valley Bank (the "Account Funds") and an end to the FDIC blocking access to SVBFG's deposits following the bank's collapse and the Treasury Secretary's invocation of the Systemic Risk Exception. As such, the two cases share fact witnesses and will both involve novel legal issues arising from the invocation of the Systemic Risk Exception. The principal relief sought in both cases is the return or payment of SVBFG's Account Funds.

Consolidation will promote efficiency and judicial economy by alleviating the burden on parties, witnesses, and the Court: witnesses will not have to appear in two separate cases to testify regarding the same set of facts, the parties need not put on repetitive evidence, and the Court will not adjudicate duplicative disputes. Nor is there any risk of undue delay, confusion, or prejudice: the Court has already approved the parties' stipulation to coordinate discovery between the two

---

[1] Plaintiff SVB Financial Trust has been substituted for SVB Financial Group. *See* Findings of Fact, Conclusions of Law and Order Confirming the Debtor's Second Amended Plan of Reorganization under Chapter 11 of the Bankruptcy Code at § 5.5, No. 23-10367 (MG) (Bankr. S.D.N.Y. Aug. 2, 2024), Dkt. 1379 ("On the Effective Date, [SVBFT] shall be deemed to be substituted as the party to any pending litigation . . . in which the Debtor [(SVB Financial Group)] is a party . . . ."). Depending on the outcome of discussions with the FDIC in its corporate capacity ("FDIC-C"), and the FDIC in its capacity as receiver for Silicon Valley Bank ("FDIC-R1") and the FDIC as receiver for Silicon Valley Bridge Bank ("FDIC-R2"), SVBFT anticipates it will file in the near term either an agreed stipulation or an administrative motion seeking to amend the caption to reflect this already-effectuated substitution pursuant to the Bankruptcy Court's order.

cases, and current case deadlines are within four months of each other.[2]  The Court also has raised for consideration the potential benefits of consolidation.  *See SVBFG v. FDIC-C*, Dkt. No. 44 at 6:5-8 ("[S]o, if I relate them, the next conversation will be consolidating them because I don't know why I'd have two cases on the -- regarding the same pot of money[.]").  Consolidation will streamline the issues for the Court and avoid pretrial and trial briefs addressing overlapping issues.  Consolidation will allow the Court to resolve the entire dispute in a single proceeding, including a single set of dispositive and Daubert motions, a single set of pretrial motions, and a single trial.  Failure to consolidate would impose unnecessary inefficiency and burden on the parties and Court and would result in overlapping issues being subject to separate negotiations, separate motion practice, and separate adjudication by the Court.  For the reasons set forth below, consolidation promises the most efficient and least burdensome path to resolution in these cases.  SVBFG thus respectfully requests that the Court grant its motion and consolidate these cases for all purposes.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 42(a) allows courts to consolidate cases that involve a common question of law or fact.  The district court has broad discretion under this rule to consolidate cases pending in the same district.  *Investors Rsch. Co. v. C.D. Cal.*, 877 F.2d 777, 777 (9th Cir. 1989).  In determining whether to consolidate cases, the Court should "weigh the interest of judicial convenience against the potential for delay, confusion[,] and prejudice."  *Bodri v. GoPro, Inc.*, 2016 WL 1718217, at *1 (N.D. Cal. Apr. 28, 2016) (quoting *Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1052 (N.D. Cal. 2010)).  In evaluating whether consolidation is appropriate, courts also consider the burden that consolidation would impose on

---

[2] Indeed, these cases could and would have already been filed together as one if it had not been for certain administrative hurdles.  Counsel filed two separate cases due to the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") requirement to file suit within 60 days from the disallowance of SVBFG's claim against the FDIC-C, lest the disallowance of the claim be rendered final.  12 U.S.C. § 1821(d)(6)(B)(ii).  SVBFG then had to wait until its deposit claim against FDIC-R was adjudicated and denied before filing a lawsuit against FDIC-R, which did not happen until the last business day before the statutorily mandated 180-day deadline to notify SVBFG of any determination.  *See SVBFG v. FDIC-R*, Dkt. No. 1, Exhibit 1; 12 U.S.C. § 1821(d)(5)(A)(i).  At the time the suit against FDIC-R was filed, the FDIC-C's Motion to Dismiss had already been filed.  *See SVBFG v. FDIC-C*, Dkt. No. 25.

the parties and witnesses. *See Power Integrations, Inc. v. Chan-Woong Park*, 2019 WL 119969, at *2 (N.D. Cal. Jan. 7, 2019) (Freeman, J.) (finding "that consolidation would minimize the risk of delay and the burden on parties, witnesses, and available judicial resources . . . and eliminates the burden on witnesses to appear in two separate cases, the parties to put on duplicative evidence in two separate cases, and for the Court to consider duplicative disputes in two separate cases.").

### III.     ARGUMENT

#### A.     Consolidation is appropriate due to the extensive factual and legal overlap between the cases.

The similarities in the factual allegations and legal claims across these two actions favor consolidation. Fed. R. Civ. P. 42(a); *Power Integrations*, 2019 WL 119969, at *2 ("The Court need find only one issue of law or fact in common to permit consolidation."); *see also* 9A Charles Alan Wright et al., Federal Practice and Procedure § 2382 (3d ed.) ("[T]he existence of a common question by itself is enough to permit consolidation under Rule 42(a)[.]").

*Factual similarities.* Here, SVBFG's cases against FDIC-C and the FDIC-Rs are based on the exact same series of events and underlying facts—the denial of SVBFG's access to the Account Funds and defiance of the invocation of the Systemic Risk Exception. Both actions arise out of the March 2023 collapse of Silicon Valley Bank, and the Secretary of the Treasury's subsequent invocation of the Systemic Risk Exception to guarantee all deposits of all depositors at Silicon Valley Bank. The instant case involves allegations against the FDIC in its capacity as receiver for Silicon Valley Bank ("FDIC-R1") and FDIC as receiver for Silicon Valley Bridge Bank ("FDIC-R2"), and *SVBFG v. FDIC-C* involves allegations against the FDIC in its corporate capacity ("FDIC-C"). Consolidating these cases will avoid unnecessary inefficiencies where the actions of and claims against Defendants FDIC-C and the FDIC-Rs are closely intertwined. *See Power Integrations*, 2019 WL 119969, at *2 (granting opposed motion to consolidate where, although the two cases involved different claims, "both cases are based on conduct that arose out of a prior employer-employee relationship between the parties"); *Ralink Tech. Corp. v. Lantiq Deutschland GMBH*, 2012 WL 314881, at *2 (N.D. Cal. Feb. 1, 2012) (granting motion to consolidate two cases that "require the court to determine whether the . . . patent is valid and

enforceable and whether [the defendant] has infringed upon [plaintiff's] rights under that patent" and therefore "share common questions of law and fact" such that consolidation "likely will conserve the court's and the parties' resources.").

SVBFG alleges that FDIC-C and FDIC-R worked together to unlawfully withhold SVBFG's Account Funds. *See, e.g.*, *SVBFG v. FDIC-C*, Dkt. No. 92 at ¶¶ 74, 76 (alleging that "[o]n March 16, Bridge Bank rejected wire transfers that were properly initiated because the FDIC-R1—at the direction of senior FDIC-C employees—instructed Bridge Bank not to release any of the Account Funds and to call back any wire transfers that SVBFG had initiated from its accounts" and that "[t]he actions of the FDIC-R1 and Bridge Bank were undertaken with the knowledge, and at the direction, of employees of the FDIC acting on behalf of FDIC-C, and could not have been undertaken without their acquiescence"). Emails between FDIC-C and FDIC-R1 personnel show that the two entities worked together to "lock[] down" SVBFG's deposit accounts beginning on March 15. *SVBFG v. FDIC-C*, Dkt. No. 92 at ¶¶ 80-84. In both cases, the factfinder will be required to assess the conduct of, and communications between, FDIC-C, FDIC-R1, and FDIC-R2. Allegations that the FDIC entities unlawfully barred access to SVBFG's Account Funds thus are the basis for the causes of action in both cases.

***Legal similarities.***  SVBFG's cases against FDIC-C and FDIC-R also share common legal claims and questions. In both cases, SVBFG alleges that the FDIC did not have the authority to deny SVBFG's claims to the Account Funds in the aftermath of Silicon Valley Bank's collapse. *See, e.g.*, *SVBFG v. FDIC-R*, Dkt. No. 1 at ¶ 47 ("[T]here was no . . . agreement between SVBFG and SVB pursuant to which SVB was authorized to cancel deposit liabilities it owed to SVBFG or convert them into equity."); *SVBFG v. FDIC-C*, Dkt. No. 92 at ¶ 6 ("[N]one of the FDIC-C, FDIC-R1 or FDIC-R2 has disclosed upon whose authority or at whose direction SVBFG's funds were withheld or actually taken, or what basis they had to do so at the time the funds were seized."). In both cases, SVBFG seeks an order restoring the Account Funds. *SVBFG v. FDIC-C*, Dkt. No. 92 at 50; *SVBFG v. FDIC-R*, Dkt. No. 1 at 56. And in each case, SVBFG argues that the FDIC did not have the statutory authority to convert SVBFG's deposits into loss-bearing equity, as internal FDIC e-mails show it tried to do. *See, e.g.*, *SVBFG v. FDIC-R*, Dkt. No. 1 at

¶ 32 ("FDIC-R1 only has the statutory authority to determine creditor claims against the receivership."); *SVBFG v. FDIC-C*, Dkt. No. 92 at ¶ 6 ("Nor has anyone disclosed to SVBFG what basis the FDIC-C had for instructing . . . the FDIC-R and Bridge Bank to withhold SVBFG's deposits so that they alone among all Silicon Valley Bank deposits should "bear loss," as though they were equity.").

Both actions also have overlapping causes of action. For example, SVBFG has brought claims for promissory estoppel and turnover of account funds pursuant to section 542 of the Bankruptcy Code in each case. Resolution of legal issues related to those claims will undoubtedly occur in both actions. For example, whether the statements underlying the promissory estoppel claims created an entitlement to payment in full of SVBFG's Account Funds must be addressed in each case. Similarly, in support of its turnover claims, SVBFG alleges that its Account Funds constitute a debt owed to SVBFG's estate that must be returned. *SVBFG v. FDIC-C*, Dkt. No. 92 at ¶¶ 139–41; *SVBFG v. FDIC-R*, Dkt. No. 1 at ¶¶ 161–63. Whether the Account Funds are in fact a debt owed to SVBFG's estate that is matured, payable on demand, and payable on order again will have to be adjudicated in both cases.

As another example of overlapping legal determinations, both cases require adjudication of novel legal issues arising from the invocation of the Systemic Risk Exception. In its case against the FDIC-Rs, SVBFG alleges that the Treasury Secretary's invocation of the Systemic Risk Exception and guarantee of immediate "full access" to all deposits rendered inapplicable the regular administrative claims process under 12 U.S.C. § 1821(d) (applicable to depositors with claims against banks in receivership). *SVBFG v. FDIC-R*, Dkt. No. 1 at ¶ 17. In its case against FDIC-C, SVBFG alleges that its June 26, 2023 payment demand was not a claim for insured deposits under 12 U.S.C. § 1821(f), but instead a demand for access to or payment of its *uninsured* Account Funds pursuant to the invocation of the Systemic Risk Exception. *SVBFG v. FDIC-C*, Dkt. No. 92 at ¶ 12. Both claims thus will necessarily require a determination of the legal effect of the invocation of the Systemic Risk Exception.

While the Court need find only one issue of law or fact in common to permit consolidation, here, there are several. *See Power Integrations*, 2019 WL 119969, at *2.

Consolidation is appropriate and necessary to avoid significant inefficiencies where, as here, resolution of the pending claims necessarily involves determinations of factual and legal issues common to both actions.

### B. Consolidation will promote efficiency and judicial economy.

Consolidation under Rule 42(a) will promote efficiency and judicial economy by alleviating the burden on parties, witnesses, and the Court.

First, consolidation will avoid asking the Court to address twice the same issues in two separate actions and thereby conserve judicial resources. For example, consolidation will result in more efficient motion practice on any Daubert motions and motions for summary judgment. Because Plaintiff's allegations center on the same nucleus of operative facts and there are similar causes of action in both cases (as described above), many of the key factual and legal issues the Court will address in adjudicating dispositive and other discovery motions will be common across the actions. In an effort to "avoid unnecessary duplication of discovery and unduly burdening the Court," the parties have already agreed to coordinate discovery between the FDIC actions. *See SVBFG v. FDIC-C*, Dkt. No. 104. But that coordination order does not obviate the need for the Magistrate Judge here to resolve potentially identical discovery disputes in two different cases where Defendants may present inconsistent positions. Just as the parties and the Court have already recognized the efficiencies of coordination with respect to the discovery process, there are efficiencies to be gained from avoiding duplicative briefing and hearings on discovery, dispositive, and other motions that would serve only to waste judicial resources. Consolidation will benefit the Court by placing all issues before it on the same schedule and for adjudication once.

Additionally, fact and expert witnesses will likely be the same or substantially overlapping in both cases. Fact witnesses are likely to include Secretary of the Treasury Janet Yellen, FDIC Chairman Martin Gruenberg, FDIC Vice Chairman Travis Hill, and FDIC Deputy Director of Resolution Readiness Ryan P. Tetrick—all of whom are likely to be significantly burdened should they have to appear in separate cases, mere months apart, to give substantially similar testimony. *See* Declaration of Julia L. Allen ("Allen Decl.") ¶ 8. Consolidation would eliminate

the burden on witnesses to appear in two separate cases, the parties to put on duplicative evidence in two separate cases, and for the Court to consider duplicative disputes in two separate cases. *See Power Integrations*, 2019 WL 119969, at *2 ("Even if the total volume of independent discovery does not change, consolidation significantly reduces the likelihood of duplicative discovery and eliminates the burden on witnesses to appear in two separate cases, the parties to put on duplicative evidence in two separate cases, and for the Court to consider duplicative disputes in two separate cases."). The interests of efficiency and judicial convenience thus weigh strongly in favor of consolidation.

### C. Consolidation will not cause undue delay, confusion, or prejudice.

The interest in judicial convenience is not outweighed here by any potential for delay, confusion, or prejudice, further supporting consolidation.

Where Defendants have already stipulated to coordinating discovery, there can be little risk of prejudice imposed by consolidation. *See Holley v. Gilead Scis., Inc.*, 2020 WL 13557961, at *2 (N.D. Cal. Apr. 22, 2010) (finding little risk of prejudice where parties' counsel expressed their commitment to coordinating voluntarily). These cases were filed within four months of each other, are already coordinated for discovery, and intervening deadlines before trial are offset by approximately four months between the cases. *See* Allen Decl. ¶¶ 4-5. Neither case has "much broader scope" than the other, such that consolidation would impose an undue burden on a particular defendant entity. *See Jackson v. City & Cnty. of San Francisco*, 2010 WL 11582918, at *1 (N.D. Cal. Dec. 16, 2010). Instead, consolidating these cases would allow the Court to streamline these schedules and presents minimal risk of delay given the narrow gap between the existing schedules.

Consolidation will allow the Court to understand the full picture of facts arising from SVBFG's inability to access its deposits following the bank's collapse and the Treasury Secretary's invocation of the Systemic Risk Exception. Indeed, having all involved parties before the Court in a single proceeding will only serve to make clear the roles that FDIC-C and the FDIC-Rs played in the underlying events.

## IV. CONCLUSION

The two lawsuits that are the subject of this motion arise from the exact same series of events, include overlapping claims, and unquestionably will involve resolution of similar legal issues. Proceeding separately with two actions currently scheduled for trial just four months apart is inefficient for the parties, the Court, and the witnesses. The Defendants will suffer no prejudice from consolidating the two cases, and if anything, consolidation will mitigate confusion about the roles of the various FDIC entities.

For the foregoing reasons, SVBFG respectfully requests that the Court grant its motion and consolidate Case No. 23-cv-06543 with Case No. 24-cv-01321 for all purposes.

Dated: January 22, 2025                                        KEKER, VAN NEST & PETERS LLP

                                                By:   /s/ Julia L. Allen
                                                      ROBERT A. VAN NEST
                                                      JAN NIELSEN LITTLE
                                                      JULIA L. ALLEN
                                                      MAYA JAMES

                                                      Attorneys for Plaintiff SVB FINANCIAL TRUST, as Successor in Interest to SVB Financial Group

Dated: January 22, 2025

DAVIS POLK & WARDWELL LLP

By: */s/ Jonathan K. Chang*
JONATHAN K. CHANG - # 355907
jonathan.chang@davispolk.com
900 Middlefield Road
Redwood City, CA 94063
Telephone:   650 752 2000

MARSHALL S. HUEBNER
marshall.huebner@davispolk.com
ELLIOT MOSKOWITZ
elliot.moskowitz@davispolk.com
KATHRYN S. BENEDICT
kathryn.benedict@davispolk.com
450 Lexington Avenue
New York, NY 10017
Telephone:   212 450 4000

Attorneys for Plaintiff SVB FINANCIAL TRUST, as Successor in Interest to SVB Financial Group