1  Jonathan K. Chang (SBN 355907)
   jonathan.chang@davispolk.com
2  DAVIS POLK & WARDWELL LLP
   900 Middlefield Road, Suite 200
3  Redwood City, California 94063
   Telephone: (650) 752-2000
4  Facsimile:  (650) 752-2111

5  Marshall S. Huebner (admitted *pro hac vice*)
   Elliot Moskowitz (admitted *pro hac vice*)
6  Kathryn S. Benedict (admitted *pro hac vice*)
   Nicholas D'Angelo (admitted *pro hac vice*)
7  DAVIS POLK & WARDWELL LLP
   450 Lexington Avenue
8  New York, New York 10017
   Telephone: (212) 450-4000
9  Facsimile:  (212) 701-5800

10 Robert A. Van Nest (SBN 84065)
   rvannest@keker.com
11 Jan Nielsen Little (SBN 100029)
   jlittle@keker.com
12 Julia L. Allen (SBN 286097)
   jallen@keker.com
13 Maya P. James (SBN 318554)
   mjames@keker.com
14 KEKER, VAN NEST & PETERS LLP
   633 Battery Street
15 San Francisco, California 94111
   Telephone: (415) 391-5400
16 Facsimile:  (415) 397-7188

17 *Attorneys for Plaintiff SVB Financial Trust*

18              UNITED STATES DISTRICT COURT

19          FOR THE NORTHERN DISTRICT OF CALIFORNIA

20                   SAN JOSE DIVISION

21 SVB FINANCIAL TRUST,                    ) Case No. 5:24-cv-01321-BLF
                                           )
22              Plaintiff,                 ) **PLAINTIFF'S NOTICE OF MOTION AND**
                                           ) **MOTION TO STRIKE DEFENDANTS'**
23       v.                                ) **AFFIRMATIVE DEFENSES;**
                                           ) **MEMORANDUM OF POINTS AND**
24 FEDERAL DEPOSIT INSURANCE               ) **AUTHORITIES IN SUPPORT THEREOF**
   CORPORATION, as Receiver for Silicon    )
25 Valley Bank and Silicon Valley Bridge Bank, ) Date:      May 1, 2025
   N.A.,                                   ) Time:      9:00 a.m.
26                                         ) Courtroom: 3 – 5th Floor
                Defendants.                ) Judge:     Honorable Beth Labson Freeman
27                                         )
                                           ) Action Filed: March 5, 2024
28 _____ )

# TABLE OF CONTENTS

PAGE

NOTICE OF MOTION AND MOTION TO STRIKE ...................................................................1

STATEMENT OF ISSUES ........................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................2

    PRELIMINARY STATEMENT .............................................................................................2

    BACKGROUND ....................................................................................................................4

    LEGAL STANDARD.............................................................................................................5

    APPLICABLE LAW ..............................................................................................................6

    REQUEST FOR JUDICIAL NOTICE ..................................................................................7

    ARGUMENT ..........................................................................................................................8

        I.      Defendants have no setoff right. ................................................................8

        II.     Defendants' aiding and abetting theory fails. .............................................9

               A.     A single legal person cannot aid and abet itself under the agency immunity rule. ...................................................................9

               B.     Defendants fail to plead that SVBFG took any separate affirmative act. ..........................................................................10

        III.    The First, Second and Third Affirmative Defenses should be stricken for failure to allege breach of any duty. .......................................12

               A.     There is no breach of duty where a wholly-owned subsidiary acts for the benefit of its parent. ...................................12

               B.     SVBFG did not owe a duty to act as a "source of strength.".........14

        IV.    The Unclean Hands defense should be stricken because it is not related to SVBFT's claim. ..........................................................................16

        V.     The Unjust Enrichment defense is precluded by the Parties' contract..........................................................................................................17

        VI.    The Constructive Fraudulent Transfer defense should be stricken for failure to allege insolvency. .................................................................18

        VII.   FDIC-R2 is judicially estopped from asserting any affirmative defenses seeking to set off its liability and lacks mutuality......................20

1

VIII.    The nineteen boilerplate affirmative defenses should be stricken. ............21

CONCLUSION ....................................................................................................................22

# TABLE OF AUTHORITIES

## CASES

PAGE(S)

*Aguado v. XL Ins. Am.*,
  721 F. Supp. 3d 811 (D. Ariz. 2024) ........................................................... 11

*Am. Master Lease LLC v. Idanta Partners, Ltd.*,
  225 Cal. App. 4th 1451 (2014) .................................................................... 11

*Anadarko Petroleum Corp. v. Panhandle E. Corp.*,
  545 A.2d 1171 (Del. 1988) ........................................................................... 12

*Berg & Berg Enters., LLC v. Boyle*,
  178 Cal. App. 4th 1020 (2009) .................................................................... 13

*Berg & Berg Enters., LLC v. Sherwood Partners, Inc.*,
  131 Cal. App. 4th 802 (2005) ...................................................................... 11

*Beryl v. Navient Corp.*,
  No. 20-cv-05920-LB, 2023 WL 2908805 (N.D. Cal. Apr. 11, 2023) .................. 13

*Cal-Agrex, Inc. v. Tassell*,
  258 F.R.D. 340 (N.D. Cal. 2009) (N.D. Cal. 2023) .......................................... 16

*Copperweld Corp. v. Indep. Tube Corp.*,
  467 U.S. 752 (1984) .................................................................................... 12

*Dolce Int'l/San Jose, LLC v. City of San Jose*,
  No. 20-cv-03774, 2020 WL 5910066 (N.D. Cal. Oct. 6, 2020) ......................... 18

*Dowkin v. Honolulu Police Dep't*,
  No. 10–00087, 2012 WL 3012643 (D. Haw. July 23, 2012) ......................... 15-16

*England v. Indus. Comm'n of Utah (In re Visiting Home Servs., Inc.)*,
  643 F.2d 1356 (9th Cir. 1981) .................................................................. 20-21

*F.D.I.C. v. Faigin*,
  No. CV 12–03448, 2013 WL 3389490 (C.D. Cal. July 8, 2013) .......................... 6

*F.D.I.C. v. Van Dellen*,
  No. CV 10–4915, 2012 WL 4815159 (C.D. Cal. Oct. 5, 2012) ........................... 6

*Fishman v. Tiger Nat. Gas Inc.*,
  No. C 17-05351, 2018 WL 4468680 (N.D. Cal. Sep. 18, 2018) ..................... 6, 21

*Hamilton v. State Farm Fire & Cas. Co.*,
  270 F.3d 778 (9th Cir. 2001) ....................................................................... 20

3

*Illumina, Inc. v. BGI Genomics Co.*,
  No. 19-cv-03770, 2020 WL 571030 (N.D. Cal. Feb. 5, 2020) .......................................... 6, 19

*Int'l Petroleum Prod. & Additives Co., v. Black Gold S.A.R.L.*,
  No. 19-cv-03004, 2021 WL 7448611 (N.D. Cal. Oct. 7, 2021) ....................................... 7

*Int'l Test Sols., Inc. v. Mipox Int'l Corp.*,
  No. 16-cv-00791, 2017 WL 2118314 (N.D. Cal. May 16, 2017) ................................... 6

*Jacobson v. Persolve, LLC*,
  No. 14–CV–00735–LHK, 2014 WL 4090809 (N.D. Cal. Aug. 19, 2014) ........................... 7

*Janken v. GM Hughes Elecs.*,
  46 Cal. App. 4th 55 (1996) ........................................................................ 9, 10

*Kanter v. Reed*,
  92 Cal. App. 5th 191 (2023) ..................................................................... 7, 12

*Kubli v. AmTrust Ins. Co. of Kansas*,
  No. CV-18-02053, 2019 WL 13196105 (D. Ariz. Oct. 30, 2019) ....................................... 11

*LL B Sheet 1, LLC v. Loskutoff*
  362 F. Supp. 3d 804 (N.D. Cal. 2019) ............................................................... 17

*Lloyd v. CVB Fin. Corp.*,
  No. CV 10-06256, 2012 WL 12883522 (C.D. Cal. Jan. 12, 2012) ....................................... 7

*Morelewicz v. Gov't Emps. Ins. Co.*,
  207 F. App'x 823 (9th Cir. 2006) ................................................................ 15

*Mulderrig v. Amyris, Inc.*,
  492 F. Supp. 3d 999 (N.D. Cal. 2020) .............................................................. 7

*Neilson v. Union Bank of Cal., N.A.*,
  290 F. Supp. 2d 1101 (C.D. Cal. 2003) ............................................................ 11

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) .............................................................................. 20

*Ochoa v. City of San Jose*,
  No. 21-cv-02456, 2022 WL 1619152 (N.D. Cal. May 23, 2022) ...................................... 6, 21

*Opera Gallery Trading Ltd. v. Golden Trade Fine Art Inc.*,
  No. 2:15-cv-00569, 2016 WL 7665408 (C.D. Cal. Jan. 6, 2016) ....................................... 10

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
  96 F.3d 1151 (9th Cir. 1996) .................................................................... 6, 18

*Pertz v. Heartland Realty Invs., Inc.*,
  No. 19-cv-06330, 2020 WL 95636 (N.D. Cal. Jan. 8, 2020) ......................................... 21

*Pom Wonderful LLC v. Welch Foods, Inc.*,
  737 F. Supp. 2d 1105 (C.D. Cal. 2010) ........................................................ 16-17

*Pond v. Ins. Co. of N. Am.*,
　151 Cal. App. 3d 280 (1984) .............................................................. 16

*Rabin v. Google LLC*,
　No. 22-cv-04547, 2023 WL 4053804 (N.D. Cal. June 15, 2023) ......................... 18

*Richardson v. Reliance Nat. Indem. Co.*,
　No. C 99-2952 CRB, 2000 WL 284211 (N.D. Cal. Mar. 9, 2000) ........................ 13

*Rozsa v. May Davis Grp., Inc.*,
　187 F. Supp. 2d 123 (S.D.N.Y. 2002), *aff'd sub nom.*,
　*Rozsa v. SG Cowen Sec. Corp.*, 165 F. App'x 892 (2d Cir. 2006) ..................... 15

*Sanchez v. Am. Media*,
　No. CV 20-2924-DMG, 2021 WL 4731344 (C.D. Cal. July 13, 2021) ................. 10

*SEC v. Prakash*,
　718 F. Supp. 3d 1098 (N.D. Cal. 2024) ...................................................... 8

*Sparta Surgical Corp. v. Nat'l Ass'n of Secs. Dealers, Inc.*,
　No. C-95-3926-MHP, 1997 WL 50223 (N.D. Cal. Jan. 30, 1997), *aff'd*,
　159 F.3d 1209 (9th Cir. 1998) ................................................................. 15

*Thomas Wiesel Partners LLC v. BNP Paribus*,
　No. C 07–6198 MHP, 2010 WL 1267744 (N.D. Cal. Apr. 1, 2010) ..................... 13

*In re UC Lofts on 4th, LLC*,
　No. ADV 07-90139-CL, 2014 WL 1285415 (Bankr. S.D. Cal. Mar. 27, 2014), *aff'd*,
　2015 WL 5209252 (B.A.P. 9th Cir. Sept. 4, 2015) ..................................... 18, 19

*Vacco Indus., Inc. v. Van Den Berg*,
　5 Cal. App. 4th 34 (1992) ...................................................................... 17

*VFB LLC v. Campbell Soup Co.*,
　482 F.3d 624 (3d Cir. 2007) ................................................................... 12

*Villains, Inc. v. Am. Econ. Co.*,
　870 F. Supp. 2d 792 (N.D. Cal. 2012) ................................................... 9, 10

*Washington Mut. Bank, FA v. Super. Ct.*,
　24 Cal. 4th 906 (2001) ............................................................................ 7

*Wenzel v. Mathies*,
　542 N.W.2d 634 (Minn. App. 1996) ......................................................... 13

*Whittlestone, Inc. v. Handi-Craft Co.*,
　618 F.3d 970 (9th Cir. 2010) .................................................................... 6

*Yang v. Dar Al-Handasah Consultants*,
　250 F. App'x 771 (9th Cir. 2007) ............................................................. 18

1

<u>STATUTES & RULES</u>

2

12 C.F.R. § 208.44 ............................................................................................. 15

3

12 C.F.R. § 225.4(a)(1) ..................................................................................... 15

4

12 U.S.C. §§ 1831o-1(a), (e), (f) ...................................................................... 15

5

12 U.S.C. §§ 1831o(e)(2), (f)(2) ....................................................................... 15

6

Cal. Civ. Code § 3439.04(a) ....................................................................... 18, 19

7

Cal. Civ. Code § 3439.05 ............................................................................ 18, 19

8

Cal. Corp. Code § 309(a) .................................................................................. 13

9

Fed. R. Civ. P. 12(f) .................................................................................. 1, 5, 6

10

Fed. R. Evid. 201 ............................................................................................... 7

11

<u>OTHER AUTHORITIES</u>

12

Restatement (Second) of Torts § 876............................................................... 11

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES - CASE NO. 5:24-CV-01321-BLF

1

### NOTICE OF MOTION AND MOTION TO STRIKE

PLEASE TAKE NOTICE that on May 1, 2025 at 9:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Beth Labson Freeman, United States District Court for the Northern District of California, San Jose Division, Courtroom 3, 280 South 1st Street, San Jose, California 95133, Plaintiff SVB Financial Trust ("SVBFT"), successor to SVB Financial Group ("SVBFG"), will and hereby does move the Court for an order striking the Affirmative Defenses of Defendants Federal Deposit Insurance Corporation ("FDIC") as receiver for Silicon Valley Bank ("FDIC-R1") and as receiver for Silicon Valley Bridge Bank, N.A. ("FDIC-R2," and with FDIC-R1, "FDIC-Rs" or "Defendants") pursuant to Federal Rule of Civil Procedure 12(f). This motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, the Declaration of Elliot Moskowitz and accompanying exhibits, other materials in the record, argument of counsel, and all other material that may properly come before the Court.

### STATEMENT OF ISSUES

1. Whether Defendants have any right to assert setoff under the deposit agreements governing SVBFG's deposit accounts at Silicon Valley Bank ("Deposit Agreements"), or any federal or state law, based upon unmatured and unliquidated claims.

2. Whether the First Affirmative Defense (Setoff for Aiding and Abetting Breach of Fiduciary Duty) should be stricken because one cannot aid and abet themselves and, in any case, Defendants fail to allege an "aiding and abetting" act that is different from the alleged breach of fiduciary duty.

3. Whether the First, Second and Third Affirmative Defenses (Setoff for Aiding and Abetting Breach of Fiduciary Duty, Setoff for SVBFG's Liability for Acts of its Agents, and Setoff for Negligence) should be stricken because Defendants fail to, and cannot, allege a breach of any duty.

4. Whether the Fourth Affirmative Defense (Unclean Hands) should be stricken because the alleged "unclean" conduct is unrelated to the underlying claims, and in any event, is not willful, bad faith conduct that shocks the conscience.

1

5.      Whether the Fifth Affirmative Defense (Unjust Enrichment) should be stricken because there is an enforceable contract that governs the rights of the parties.

6.      Whether the Sixth Affirmative Defense (Constructive Fraudulent Transfer) should be stricken for failure and inability to allege insolvency.

7.      Whether the FDIC-R2's affirmative defenses seeking setoff should be stricken based on judicial estoppel and for failure to allege mutuality of debts.

8.      Whether the Seventh through Twenty-Fifth Affirmative Defenses should be stricken because they assert bare legal conclusions and/or are not affirmative defenses.

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

The Court is familiar with the underlying events giving rise to this lawsuit: On Thursday, March 9, 2023, Silicon Valley Bank ("SVB") experienced the largest bank run in United States history when its customers withdrew $42 billion in deposits in a single day.  Prior to the run on SVB, the largest bank run had been the $19 billion bank run that Washington Mutual experienced *over 16 days* in 2008; during that period, Washington Mutual's largest one-day outflow was $2.8 billion.  While SVB was able to service over 97% of the withdrawals with the cash it had readily available, SVB was closed by its regulator the next day and placed into receivership.  To quell the ensuing panic in the market and mitigate systemic harm to the financial system, on Sunday March 12, 2023, Treasury Secretary Janet Yellen invoked the systemic risk exception to guarantee all deposits of all depositors of SVB based on recommendations from the Board of the FDIC and the Board of the Federal Reserve, in consultation with the President.  The next morning, and many times and in many fora thereafter, the FDIC publicly announced that "[a]ll depositors of the institution will be made whole." Despite these assurances, on March 16, 2023, Defendants blocked SVBFG's access to its deposit accounts holding approximately $1.93 billion.  The next day, SVBFG filed a voluntary bankruptcy petition.

Since then, Defendants have refused to offer any substantive basis for withholding those funds, despite numerous requests for an explanation from SVBFG and the Bankruptcy Court.

1    For example, in April 2023, the Bankruptcy Court asked FDIC-R1 to provide an explanation, but

2    FDIC-R1 merely cited a right of setoff based on various "claims and causes of action"—without

3    revealing what they were.  For its part, FDIC-R2 told the Bankruptcy Court in August and

4    September 2023 that it did not have a right of setoff at all.

5          Now, nearly two years after blocking access to the $1.93 billion deposit, Defendants have

6    asserted a host of far-fetched "setoff" claims to justify their continued withholding, every one of

7    which fails as a matter of law.  SVBFG and SVB had the same officers and directors, and

8    Defendants allege that mismanagement of SVB by these individuals gives rise to setoff claims

9    that are greater than SVBFG's deposit.  Defendants have pled six affirmative defenses based on

10   these theories: Aiding and Abetting Breaches of Fiduciary Duty; SVBFG's Liability for Acts of

11   its Agents; Negligence; Unclean Hands; Unjust Enrichment; and Constructive Fraudulent

12   Transfer.  The first four, Defendants allege, entitle them to retain the entirety of the funds they

13   seized from SVBFG, and the last two supposedly entitle them to set off a $294 million dividend

14   that was allegedly improperly paid to SVBFG.  But there is no basis in the Deposit Agreements

15   or law for Defendants' purported "setoff" claims.

16         Even if there were a basis to assert setoff claims, each of these affirmative defenses fails

17   as a matter of law.  The aiding and abetting claim fails because it is not possible for a legal

18   person to aid and abet their own conduct.  While Defendants try to get around this problem by

19   asserting the claim against SVBFG rather than the directors and officers themselves, the "agency

20   immunity rule" (described below) precludes such a claim.  In addition, Defendants have alleged

21   that the conduct of the directors and officers that constituted the underlying breach of fiduciary

22   duty is the same conduct that aided and abetted that breach.  But the law requires (and common

23   sense dictates) a separate act of aiding and abetting that is distinct from the underlying conduct to

24   state a claim for aiding and abetting.

25         The aiding and abetting claim suffers from an additional infirmity that also dooms the

26   Second and Third Affirmative Defenses (agency liability for the alleged breach of fiduciary duty

27   and negligence).  All three of these defenses are premised on a theory that the directors and

28   officers shared by SVBFG and SVB took steps to boost SVBFG's "short-term earnings and stock

---

3

price" and issued a bank-to-parent dividend at the expense of SVB.  The theory fails as a matter of law because a wholly-owned subsidiary is *supposed* to be run for the benefit of the parent corporation.  In other words, all of the duties owed to both SVB and SVBFG are defined by the interests of SVBFG—so any act these individuals undertook to benefit SVBFG cannot, as a matter of law, amount to a breach of any duty owed to SVB.  Nor is there a duty owed from SVBFG to SVB to serve as a "source of strength" absent a written contract with regulators, and Defendants do not allege such a contract existed here (and cannot so allege, because there was none).  Accordingly, Defendants cannot identify a breach of any duty and the First, Second, and Third Affirmative Defenses should be stricken.

The remaining affirmative defenses based on alleged mismanagement of SVB—unclean hands, unjust enrichment, and constructive fraudulent transfer—suffer equally clear legal flaws, as further described below.  The remaining 19 so-called affirmative defenses are boilerplate defenses based solely on conclusory allegations with no supporting facts and should be stricken as well.

## BACKGROUND

According to the Answer and Affirmative Defenses,[1] from 2000 through March 2023, Silicon Valley Bank ("SVB") was a wholly-owned subsidiary of SVBFG.  (Ans. ¶¶ 40, 42; Aff. Def. ¶¶ 8, 10.)  Indeed, SVB was the principal subsidiary and asset of SVBFG:  as of December 31, 2022, SVBFG had "about $211.8 billion in total assets," of which "about $209 billion," or "about 99%," were "attributable to [SVB]."  (Aff. Def. ¶¶ 8, 10.)  SVB and SVBFG were subject to regulatory oversight from the California Department of Financial Protection and Innovation ("CDFPI") and the Board of Governors of the Federal Reserve ("Federal Reserve"), respectively.  (*Id.* ¶¶ 8, 39.)  As Defendants readily acknowledge, SVBFG and SVB (and their directors and officers) were under intense scrutiny by these regulators throughout the relevant period—but at

---

[1] The facts below are derived from the allegations in the Affirmative Defenses (Dkt. 135 at 88-127 ("Aff. Def.")), which are assumed to be true only for purposes of this motion, the statements in Defendants' Answer to the Complaint (Dkt. 135 at 1-88 ("Ans.")), and materials of which this Court may take judicial notice.

1  no time did either the Federal Reserve or CDFPI raise any concern about the overlapping board

2  structure, SVB's solvency, or the $294 million dividend issued in December 2022. (*See*

3  *id.* ¶¶ 38-45.)

4          Between 2020 and 2021, SVBFG and SVB invested in conservative government-backed

5  debt securities with long-term, fixed-rates.  (*Id.* ¶ 34.)  A substantial portion of those long-term

6  securities were classified as held-to-maturity ("HTM") securities (*Id.* ¶¶ 52-53, 59.)  HTM

7  securities are intended to be held—as the name suggests—to the maturity of the instrument,

8  meaning that a purchaser of a debt instrument intended to receive all of the payments due for the

9  duration of that instrument.  (*See* Moskowitz Decl. Ex. 1, Financial Accounting Standards Board

10 Accounting Standards Codification of Generally Accepted Accounting Principles ("GAAP

11 Standards") 320-10-25-1—320-10-25-4, 320-10-35-1.)  Because HTM securities are not

12 intended to be traded in the market, the accounting rules do not require them to be carried at

13 market value.  (GAAP Standards 320-10-25-5(a); Aff. Def. ¶¶ 50-51.)  Nonetheless, the market

14 value of the HTM portfolio was reported in SVBFG's publicly filed financial statements.

15 (Moskowitz Decl. Ex. 2, SVB Fin. Grp., Quarterly Report (Form 10-Q) at 20/147 (Nov. 7,

16 2022); Moskowitz Decl. Ex. 3, SVB Fin. Grp., Annual Report (Form 10-K) at 147/208 (Feb. 24,

17 2023).)

18         During the years leading up to SVB's closure, SVB and SVBFG shared an entirely

19 overlapping set of directors and officers.  (Aff. Def. ¶¶ 11, 19-21, 25.)  The Boards of Directors

20 of SVB and of SVBFG thus held joint board and committee meetings where decisions were

21 made concerning the two entities.  (*Id.* ¶¶ 12-18, 22-24, 26-27.)  The joint boards and joint

22 committees "customarily and repeatedly made decisions on behalf of both SVBFG and SVB

23 without distinguishing between the two entities."  (*Id.* ¶ 26.)  As pled, every action at issue was

24 taken (i) jointly by the directors and officers of SVBFG and SVB, and (ii) in order to benefit

25 SVBFG.  (*See, e.g.*, *id.* ¶¶ 1, 2, 60, 92, 109, 122.)

26                                    **LEGAL STANDARD**

27         Pursuant to Federal Rule of Civil Procedure 12(f), a court may "strike from a pleading an

28 insufficient defense."  The purpose of a Rule 12(f) motion is to "avoid the expenditure of time

and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Ochoa v. City of San Jose*, No. 21-cv-02456, 2022 WL 1619152, at *1 (N.D. Cal. May 23, 2022) (Freeman, J.) (citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973-74 (9th Cir. 2010)).  Thus, to survive a Rule 12(f) motion, affirmative defenses must meet the "heightened" plausibility pleading standard of *Twombly* and *Iqbal*.  *See, e.g.*, *Ochoa*, 2022 WL 1619152, at *2. Specifically, a defendant's answer must establish the plausibility of its affirmative defenses, which requires pleading a cognizable legal defense and facts sufficient to satisfy each legal element of the same. *See, e.g.*, *id.*; *Illumina, Inc. v. BGI Genomics Co.*, No. 19-cv-03770, 2020 WL 571030, at *3-4 (N.D. Cal. Feb. 5, 2020); *Fishman v. Tiger Natural Gas Inc.*, No. C 17-05351, 2018 WL 4468680, at *4-5 (N.D. Cal. Sep. 18, 2018); *Int'l Test Sols., Inc. v. Mipox Int'l Corp.*, No. 16-cv-00791, 2017 WL 2118314, at *8 (N.D. Cal. May 16, 2017).

## APPLICABLE LAW

California state law governs the affirmative defenses here because SVB was a California state member bank, notwithstanding that SVBFG is a Delaware corporation.[2]  (Ans. ¶ 40; Aff. Def. ¶ 8.)  Federal courts exercising supplemental jurisdiction (as over the affirmative defenses here) apply the choice of law rules of the forum state—here, California.  *See Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996).  California courts apply the "internal affairs doctrine" in assessing corporate breach claims, which provides that matters that primarily concern a corporation's internal operations should be governed by the law of the state of incorporation.  *See, e.g.*, *F.D.I.C. v. Faigin*, No. CV 12–03448, 2013 WL 3389490, at *10 (C.D. Cal. July 8, 2013) (applying California law to action involving California bank under internal affairs doctrine); *F.D.I.C. v. Van Dellen*, No. CV 10–4915, 2012 WL 4815159, at *3 (C.D. Cal. Oct. 5, 2012) (same).  That means California law applies to the affirmative defenses based on alleged breaches of duties owed to SVB.

---

[2] SVBFT believes that Defendants share this view.  However, SVBFT reserves the right to introduce additional arguments under Delaware law should Defendants take the position that Delaware law applies.

1    With respect to the other affirmative defenses not asserting claims for breaches of duties,

2    courts applying California choice of law rules look to California's governmental interest

3    analysis.  *See Int'l Petroleum Prod. & Additives Co., Inc. v. Black Gold S.A.R.L.*, No. 19-cv-

4    03004, 2021 WL 7448611, at *11-12 (N.D. Cal. Oct. 7, 2021) (applying California's

5    governmental interest analysis to aiding and abetting claim).  California substantive law likewise

6    governs the non-breach affirmative defense issues analyzed below (for example, the non-breach

7    elements of the aiding and abetting claim) because, to the extent Delaware and California law

8    might conflict, California has the greatest interest in its laws governing the standards for

9    California-chartered banks.  *Washington Mut. Bank, FA v. Superior Ct.*, 24 Cal. 4th 906, 920

10   (2001) (outlining governmental interest analysis).  In any event, California courts routinely look

11   to Delaware law for guidance on matters of corporate governance.  *See Kanter v. Reed*, 92 Cal.

12   App. 5th 191, 208 (2023) (listing cases).

13                               **REQUEST FOR JUDICIAL NOTICE**

14   Pursuant to Federal Rule of Evidence 201, SVBFT respectfully requests that the Court

15   take judicial notice of Exhibits 1 through 3 to the Declaration of Elliot Moskowitz submitted

16   herewith.  A court may consider matters subject to judicial notice in resolving a motion to strike.

17   *See Jacobson v. Persolve, LLC*, No. 14–CV–00735–LHK, 2014 WL 4090809, at *2 (N.D. Cal.

18   Aug. 19, 2014).  Here, Exhibit 1 is a true and correct copy of selected standards from the GAAP

19   Standards, of which courts routinely take judicial notice.  *See Mulderrig v. Amyris, Inc.*, 492 F.

20   Supp. 3d 999, 1008 n.7 (N.D. Cal. 2020) (taking judicial notice of GAAP Standards); *Lloyd v.

21   CVB Fin. Corp.*, No. CV 10-06256, 2012 WL 12883522, at *14 (C.D. Cal. Jan. 12, 2012) (taking

22   notice of the existence of the GAAP standard as well as the rule that a GAAP standard

23   "purported to enact").  Exhibits 2 and 3 are true and correct copies of SVBFG's Form 10-Q for

24   the quarterly period ending September 30, 2022 and Form 10-K for the fiscal year ending

25   December 31, 2022, respectively.  Both were filed with the Securities Exchange Commission

26   ("SEC") and are referred to in the Affirmative Defenses, including specifically at paragraph 81,

27   which includes a chart of "Unrealized HTM Losses" based on SVBFG's SEC filings.  Courts

28   routinely take judicial notice of SEC filings like Exhibits 2 and 3.  *See, e.g., SEC v. Prakash*, 718

F. Supp. 3d 1098, 1105 (N.D. Cal. 2024) (Freeman, J.) (finding judicial notice of various SEC filings was appropriate).

## ARGUMENT

### I.   Defendants have no setoff right.

Defendants have asserted a number of claims in the guise of affirmative defenses because Defendants forfeited their ability to bring these claims as counterclaims when they elected not to file a proof of claim in SVBFG's bankruptcy.  But each of these setoff defenses fail because Defendants do not identify any specific contractual or legal basis for setoff against SVBFT.

Defendants ambiguously refer to a right of setoff "established under federal and state law and the terms of the Deposit Agreement[s] to the extent that it applies."  (*See, e.g.*, Aff. Def. ¶ 116.)  But beyond these vague references, FDIC-R does not cite to any provision of the Deposit Agreements, nor any state or federal law, permitting FDIC-R to assert setoff based on unmatured and unliquidated claims.  The only citation to any state or federal law relating to the Defendants' purported setoff right is a statute that entitles one of the Defendants to "succeed to 'all rights, titles, powers, and privileges' of SVB" (*Id*. ¶¶ 125-26), meaning the Defendants' ability to assert setoff is governed by the Deposit Agreements between SVB and SVBFG (*see, e.g.*, Ans. ¶ 45 ("The FDIC-Rs admit the Deposit Agreements provided for contractual setoff defenses . . . .")).

The Deposit Agreements only allow the bank to "set off funds" in a deposit account for a "debt you owe to us," not for contingent or hypothetical claims.  The contract provides:

> "**Set Off and Security Interest.** We may charge or set off funds in your account for any direct, indirect and/or acquired ***obligations that you owe us***, regardless of the source of the funds in the account, to the fullest extent permitted by law. We are not required to provide notice before applying your funds to any ***debt you owe to us***."

(*See* Deposit Agreement and Disclosure Statement – Business Accounts (Dkt. 33 Ex. B) at 47 § (p) (emphases added).)  While this provision of the Deposit Agreements would allow SVB to use deposited funds to set off, for example, a defaulted car loan debt owed to the bank, the provision does not apply here.  Defendants have not—and cannot—allege that SVBFG had any unsatisfied "debt" or "obligation" to SVB for which that contractual setoff provision could be

8

1  exercised.  Indeed, Defendants conceded in the Answer that they had no knowledge or

2  information as to any such debts.  (Ans. ¶ 45 (no knowledge or information as to the following:

3  "SVBFG did not have any overdrafts on its deposit accounts.  It had no outstanding letters or

4  credit or open lines of credit.  It had no charged off loans with SVB.  It had not pledged its

5  deposits as collateral for any loan.  It did not have any delinquent loans with SVB.  And it was

6  not a guarantor of any loan with SVB.").)

7       The Deposit Agreements simply provide **no** legal support for what Defendants did here:

8  (1) avail themselves of self-help to seize SVBFG's funds on the basis of an unarticulated and

9  hypothetical claim and then (2) nearly two years later, advance "setoff" affirmative defenses in

10 an effort to justify that wrongful withholding.  Defendants' setoff affirmative defenses fail as a

11 matter of law.

12      **II.    Defendants' aiding and abetting theory fails.**

13      The First Affirmative Defense (Setoff for Aiding and Abetting Breach of Fiduciary Duty)

14 fails as a matter of law for two additional reasons: (1) a person cannot aid and abet their own

15 conduct, and Defendants' effort to plead around this obstacle by asserting the claim against

16 SVBFG rather than its directors and officers is precluded by the agency immunity rule; and

17 (2) Defendants fail to identify any separate aiding and abetting act taken by SVBFG that is

18 distinct from the acts that allegedly constitute the underlying breach of fiduciary duty.

19      **A.  A single legal person cannot aid and abet itself under the agency immunity**

20      **rule.**

21      The law is clear:  a person cannot aid and abet their own conduct.  *See, e.g.*, *Villains, Inc.*

22 *v. Am. Econ. Co.*, 870 F. Supp. 2d 792, 795-96 (N.D. Cal. 2012) (a single person "cannot aid and

23 abet itself"); *see also Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 78 (1996) (aiding and

24 abetting, like conspiracy, requires "concerted wrongful action" among multiple legal persons).

25 Because there was complete overlap between the directors and officers of SVBFG and SVB, any

26 claim that these individuals aided and abetted their own misconduct in allegedly mismanaging

27 SVB fails as a matter of law.

28

9

Defendants try to plead around this problem by asserting the aiding and abetting claim against SVBFG, rather than SVBFG's own directors and officers (it bears noting that FDIC-R1 has separately brought direct claims against these directors and officers). But this artful pleading does not save the claim. Under the "agency immunity rule," a principal and its agents constitute a single legal "person" for purposes of an aiding and abetting claim. *Villains*, 870 F. Supp. 2d at 795-96 (N.D. Cal. 2012). The rule bars liability for aiding and abetting involving a principal and an agent as long as the conduct at issue did not violate a duty independently owed to the plaintiff and was not done for personal financial gain. *See Opera Gallery Trading Ltd. v. Golden Trade Fine Art Inc.*, No. 2:15-cv-00569, 2016 WL 7665408, at *4 (C.D. Cal. Jan. 6, 2016) (applying agency immunity rule to aiding and abetting claim). Courts routinely dismiss aiding and abetting claims based on application of the rule. *See, e.g.*, *Sanchez v. Am. Media*, No. CV 20-2924-DMG, 2021 WL 4731344, at *8 (C.D. Cal. July 13, 2021) (dismissing aiding and abetting claim lacking allegation agents "acted outside the scope of their authority or violated separate duties owed" to plaintiff); *Janken*, 46 Cal. App. 4th at 78-79 (holding plaintiffs could not bring claims against employees for aiding and abetting corporate employer); *Villains, Inc.*, 870 F. Supp. 2d at 795-96 (agency immunity rule barred claims because it was "impossible" for insurers "to have aided and abetted themselves" through their agents).

Here, Defendants repeatedly allege that the shared directors and officers were acting as SVBFG's agents (*see, e.g.*, Aff. Def. ¶¶ 127-28) when allegedly taking steps that solely benefited SVBFG by "boosting SVBFG's short-term earnings and stock price" and making a bank-to-parent dividend (*id.* ¶¶ 117-18; *see also id.* ¶¶ 1, 2, 60, 109, 122.) Because the directors and officers were SVBFG's agents, the agency immunity rule treats them as the same legal person for purposes of an aiding and abetting claim. Accordingly, Defendants' claim is merely that the same legal person—*i.e.*, the directors and officers of SVBFG—aided and abetted their own conduct as directors and officers of SVB. The law does not recognize such a claim.

In short, the agency immunity rule bars the First Affirmative Defense.

## B. Defendants fail to plead that SVBFG took any separate affirmative act.

Defendants likewise fail to identify any specific, affirmative step taken by SVBFG here

that is *distinct from* the acts that allegedly constitute the underlying breach, which further dooms the First Affirmative Defense as a matter of law.

Aiding and abetting requires an act that is distinct from the primary violation. *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1133-35 (C.D. Cal. 2003) (collecting cases for the proposition that aiding and abetting liability narrowly differs from conspiracy insofar as it is not premised on the commission of a single tort); *see also Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.*, 131 Cal. App. 4th 802, 823 n.10 (2005) (distinguishing between conspiracy, which "is not an independent tort" and aiding and abetting liability, which focuses on whether the defendant "substantial[ly] assisted" the underlying tort); Restatement (Second) of Torts § 876 cmt. d (illustrating separate acts of assistance required for aiding and abetting liability); *Am. Master Lease LLC v. Idanta Partners, Ltd*., 225 Cal. App. 4th 1451, 1476 (2014) (looking to section 876). Multiple courts in the Ninth Circuit applying state law based on section 876(b) of the Restatement have held that aiding and abetting liability requires "some action taken separate and apart from the facts giving rise to" the underlying tort claim. *Aguado v. XL Ins. Am.*, 721 F. Supp. 3d 811, 816 (D. Ariz. 2024) (collecting cases; dismissing aiding and abetting claim for failure to distinguish between actions of insurance company and its third-party administrator). This is also common-sense: "[i]t would make little sense to say that the [aider and abettor's] conduct substantially assisted or encouraged the [primary tortfeasor's] breach of duty when that very conduct *was* the breach of duty." *Kubli v. AmTrust Ins. Co. of Kansas*, CV-18-02053, 2019 WL 13196105, at *3 (D. Ariz. Oct. 30, 2019).

Here, there is not a single allegation of an affirmative act undertaken by an SVBFG director or officer that is distinct from the alleged underlying breach of fiduciary duty to SVB. Indeed, the pleading concedes as much: "SVBFG shared the same officers and directors as SVB ***and therefore*** SVBFG's own officers and directors ***engaged in the conduct*** constituting the breaches[.]" (Aff. Def. ¶ 123 (emphases added).) Because Defendants have not distinguished between the acts that allegedly constituted a breach of fiduciary duty and any acts that allegedly constituted substantial assistance, Defendants' aiding and abetting theory fails as a matter of law.

III.    **The First, Second and Third Affirmative Defenses should be stricken for failure to allege breach of any duty.**

The aiding and abetting claim (the First Affirmative Defense) should be stricken for an additional reason that is equally applicable to the agency liability claim (the Second Affirmative Defense) and the negligence claim (the Third Affirmative Defense).  All three of these setoff claims rely on alleged breaches of duties by the shared directors and officers based on the theory that these individuals allegedly favored SVBFG's interests over those of SVB.  (*See* Aff. Def. ¶¶ 116, 118, 127-28, 131-32 (alleging that directors and officers breached fiduciary duties to SVB by acting in the interests of SVBFG).)  This theory is fundamentally flawed because the alleged acts of a wholly-owned subsidiary for the benefit of its parent cannot constitute a breach of fiduciary duty.  Defendants are also wrong, as a matter of law, that there was a duty for SVBFG to serve as a "source of strength" for SVB.  In short, there were no duties—fiduciary or otherwise—owed to SVB that were independent of those owed to its parent, SVBFG.  Because Defendants admit that the directors and officers acted in the interest of SVBFG—as they were required to—Defendants have not, and cannot, plead breach of any duty.  This failure is fatal to each of the first three Affirmative Defenses.

A.    **There is no breach of duty where a wholly-owned subsidiary acts for the benefit of its parent.**

SVB was a wholly-owned subsidiary of SVBFG.  The law is well-settled that a "parent and its wholly owned subsidiary have a complete unity of interest," such that "their general corporate actions are guided or determined not by two separate consciousnesses, but one." *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 771 (1984).  It follows that a subsidiary's directors and officers "are obligated only to manage the affairs of the subsidiary in the best interests of the parent and its shareholders."  *Anadarko Petroleum Corp. v. Panhandle E. Corp.*, 545 A.2d 1171, 1174 (Del. 1988); *see VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 635 (3d Cir. 2007) (similar); *see also Kanter*, 92 Cal. App. 5th at 208 ("California courts have routinely relied on corporate law developed in the State of Delaware given that it is identical to California corporate law for all practical purposes." (internal quotation marks and citations

omitted)); Cal. Corp. Code § 309(a) ("A director shall perform the duties of a director . . . in good faith, in a manner such director believes to be in the best interests of the corporation *and its shareholders* . . ." (emphasis added)).  This principle has led courts to repeatedly confirm that directors and officers of a wholly-owned subsidiary owe duties to the parent company, here SVBFG.  *See, e.g.*, *Beryl v. Navient Corp.*, No. 20-cv-05920-LB, 2023 WL 2908805, at *12 (N.D. Cal. Apr. 11, 2023) ("Officers or directors of a wholly owned subsidiary owe a fiduciary duty to the parent corporation."); *Thomas Wiesel Partners LLC v. BNP Paribus*, No. C 07–6198 MHP, 2010 WL 1267744, at *5 (N.D. Cal. Apr. 1, 2010) ("A fiduciary of a subsidiary also owes a fiduciary duty to the subsidiary's parent corporation."); *Richardson v. Reliance Nat. Indemnity Co.*, No. C 99-2952 CRB, 2000 WL 284211, at *12 (N.D. Cal. Mar. 9, 2000) (holding California courts would conclude directors of subsidiary owe fiduciary duty to shareholder of parent corporation).  Accordingly, there cannot—as a matter of law—be a breach of duty (whether by the parent or directors and officers) to a wholly-owned subsidiary based on actions taken in the parent's interest.  And this rule applies with equal force where the subsidiary is a bank.  *See, e.g.*, *Wenzel v. Mathies*, 542 N.W.2d 634, 641 (Minn. App. 1996) (holding director of bank owed fiduciary duty to shareholders of bank holding company).

Here, Defendants assert that SVB's officers and directors owed "fiduciary duties of care and loyalty to SVB" and that SVBFG had a duty of "ordinary care" and breached those duties by taking various acts for the purpose of "boosting SVBFG's short-term earnings and stock price" and paying a December 2022 bank-to-parent dividend.  (Aff. Def. ¶¶ 117-18, 131; *see also id.* ¶¶ 1, 2, 60, 92, 109, 122, 128.)  But this theory of breach suffers from a fatal flaw:  SVBFG and its wholly owned subsidiary SVB shared one set of interests prior to SVB's closure.  Therefore, any acts that benefited the parent cannot constitute a breach of a duty to the subsidiary as a matter of law.

While courts have recognized a possible exception to this unitary interest when a wholly-owned subsidiary is actually insolvent, *see Berg & Berg Enterprises, LLC v. Boyle*, 178 Cal. App. 4th 1020, 1041 (2009) (directors may owe duties to non-shareholders only where entity is actually insolvent), Defendants notably have not pled—and cannot plead—actual insolvency

here for the relevant time periods.  At most, Defendants assert that *if* SVB's unrealized "losses" in its HTM portfolio had been "recognized" as of September 30, 2022, they would have exceeded SVB's "total equity" at the time.  (Aff. Def. ¶ 82.)  But this is inconsistent with how Defendants admit that the HTM portfolio should be valued.  (*Id.* ¶ 50 ("The accounting treatment for HTM securities allowed SVB to exclude unrealized losses attributable to its HTM portfolio").)  Moreover, SVBFG's audited financial report reflects that by the end of 2022, even if unrealized losses in SVB's HTM portfolio were recognized (contrary to the accounting rules) those losses would be exceeded by SVB's total equity **by over $1 billion**.  (*See* Moskowitz Decl. Ex. 3, SVB Fin. Grp., Annual Report (Form 10-K) at 111/208, 147/208 (HTM unrealized losses of $15.1 billion and equity of $16.2 billion).)  In any event, the vast majority of the conduct allegedly giving rise to an underlying breach of duty to SVB occurred well before September 30, 2022.  (*E.g.*, Aff. Def. ¶¶ 35-36 ("During 2020 and 2021, SVB purchased tens of billions of dollars of long-term securities" that "exposed SVB to severe interest-rate risk"), ¶ 65 (alleging SVB "regularly and materially exceeded" EVE-at-Risk limits "throughout 2021 and 2022 in rising interest-rate scenarios"); ¶ 67 (alleging senior management altered models measuring risk to "no longer show a breach" in April 2022); ¶ 85 ("By July 2022 . . . SVB [had] terminate[d] all but $564 million" of interest-rate swaps).)  Because Defendants have not alleged actual insolvency at the time of these acts, the directors and officers did not owe any duty to SVB that was independent of the interests of SVBFG.

## B.  SVBFG did not owe a duty to act as a "source of strength."

Defendants' assertion that SVBFG had a "responsibility to serve as a source of strength for SVB" (*id.* ¶¶ 109, 131) is wrong as a matter of law.  SVBFG had no duty, by law or otherwise, to serve as a source of strength for SVB.

Contrary to Defendants' allegations, the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank Act") and Regulation Y ("Reg. Y.") (*id.* ¶¶ 110-13) do not automatically impose an obligation for bank holding companies to act as a source of strength. Instead, the Federal Deposit Insurance Act (as amended by the Dodd-Frank Act) and the Federal Reserve's Regulation H (applicable to state member banks such as SVB) and Reg. Y (applicable

1   to bank holding companies such as SVBFG) imposes an obligation *on regulators* to take action

2   when a bank becomes undercapitalized, including requiring the relevant regulator to direct the

3   bank to submit a capital restoration plan, recapitalize itself, or enter into a contractual agreement

4   with the bank holding company.  *See* 12 U.S.C. §§ 1831o-1(a), (e), (f) (source of strength

5   defined); 12 C.F.R. § 225.4(a)(1) (source of strength); 12 U.S.C. §§ 1831o(e)(2), (f)(2) (capital

6   restoration plan and recapitalization requirements); 12 C.F.R. § 208.44 (capital restoration

7   plans).  Here, Defendants do not allege that any such directions were imposed or contractual

8   agreement executed with respect to SVBFG.  Nor could they; none existed.

9         Perhaps in recognition that there was no source of strength obligation imposed by

10  regulators, Defendants attempt to shoehorn a negligence claim by alleging that SVBFG had a

11  duty to serve as a source of strength to SVB "consistent with federal law and SVBFG's own

12  policies."  (Aff. Def. ¶ 131.)  But there is no private right of action created by the Dodd-Frank

13  Act or Reg. Y, and Defendants cannot circumvent that bar by styling their claim as one for

14  breach of duty.  *See* 12 U.S.C. § 1831o-1(a) (providing that "[t]he *appropriate Federal banking*

15  *agency*" shall issue implementation regulations to create a source of strength obligation on bank

16  holding companies (emphasis added)); *Sparta Surgical Corp. v. Nat'l Ass'n of Secs. Dealers,*

17  *Inc.*, No. C-95-3926-MHP, 1997 WL 50223, at *2-3 (N.D. Cal. Jan. 30, 1997), *aff'd*, 159 F.3d

18  1209 (9th Cir. 1998) (dismissing plaintiff's common law claims alleging duty of care based on

19  regulation that did not provide for a private cause of action); *see also Rozsa v. May Davis Group,*

20  *Inc.*, 187 F. Supp. 2d 123, 129 (S.D.N.Y. 2002) ("In the absence of [] a private right of action,

21  alleged breaches of regulatory rules do not form the basis for a fiduciary duty."), *aff'd sub nom*,

22  *Rozsa v. SG Cowen Sec. Corp.*, 165 F. App'x 892 (2d Cir. 2006).  Similarly, even assuming

23  SVBFG breached an internal policy to serve as a source of strength (*see* Aff. Def. ¶ 113), it is

24  settled that a violation of internal company policies does not give rise to a tort claim.  *See*

25  *Morelewicz v. Gov't Emps. Ins. Co.*, 207 F. App'x 823, 826 (9th Cir. 2006) (violation of internal

26  policies does not give rise to tort claim); *Dowkin v. Honolulu Police Dep't*, No. 10–00087, 2012

27  WL 3012643, at *4 (D. Haw. July 23, 2012) (listing cases for proposition that violation of

28

1    internal policies do not create basis for negligence claim). In short, SVBFG did not have any

2    duty to act as a source of strength for SVB.

3                                        *         *         *

4            For the reasons explained above, Defendants have not—and cannot—allege any duties

5    owed to SVB that were independent of the interests of SVBFG. Therefore, the premise of

6    Defendants' First, Second and Third Affirmative Defenses—that directors and officers breached

7    duties owed to SVB by acting in the interests of SVBFG—fails as a matter of law. Accordingly,

8    the first three Affirmative Defenses should be stricken for failure to allege a breach of any duty

9    owed to SVB.

10   **IV.    The Unclean Hands defense should be stricken because it is not related to**

11   **SVBFT's claim.**

12           The unclean hands doctrine "is qualified by the requirement that the party against whom

13   the doctrine is sought to be invoked directly 'infected' the actual cause of action before the court,

14   and is not merely guilty of unrelated improper past conduct." *Pond v. Ins. Co. of N. Am.*, 151

15   Cal. App. 3d 280, 290 (1984) (citation omitted). For example, in *Cal-Agrex, Inc. v. Tassell*, Cal-

16   Agrex asserted claims for breach of contract against certain individuals. 258 F.R.D. 340, 351

17   (N.D. Cal. 2009). Defendants asserted an unclean hands defense in response, alleging that

18   (i) Cal-Agrex intended to acquire products under the contract that it would then repackage and

19   sell for a non-approved use and (ii) Cal-Agrex converted products sold by defendants under a

20   different contract between the parties. *Id.* at 351-52. Reiterating its prior ruling as a matter of

21   law, the Court denied defendants' unclean hands defense again after defendants moved for relief

22   from the judgment on the grounds that "[n]either of these actions relates to the breach of

23   contract claim" because (i) "anything Cal-Agrex did to the [product] it actually received has no

24   bearing on the breach of contract claim," and (ii) there was no connection between the contract

25   subject to the breach claim and the contract subject to the conversion defense. *Id.*; *see also Pom*

26   *Wonderful LLC v. Welch Foods, Inc.*, 737 F. Supp. 2d 1105, 1110-11 (C.D. Cal. 2010) (holding

27   unclean hands defense that plaintiff "misleads consumers to believe its juices are not from

28   concentrate" not sufficiently related to claim that defendant "misleads consumers into believing

---

                                              16

its juice products contain more pomegranate juice than they actually do" because the defense was "premised on a different deception, different factual allegations, and different types of advertisements"); *Vacco Indus., Inc. v. Van Den Berg*, 5 Cal. App. 4th 34, 52-53 (1992) (holding employee's wrongful termination not sufficiently related to claims for misappropriation of employer's trade secrets as to support unclean hands defense).

Here, Defendants' unclean hands allegations are even further afield from SVBFT's claims. SVBFT's claims seek the return of the funds in its deposit accounts and concern events following the closure of SVB. By contrast, Defendants' unclean hands defense is based on the assertion that SVBFG "controlled and managed SVB for SVBFG's own benefit." (Aff. Def. ¶ 137.) There is no factual overlap between the two, which are premised on entirely different periods of time and conduct. For this reason, the unclean hands defense should be stricken.

Not only are the unclean hands allegations unrelated to SVBFT's claims, the unclean hands defense is narrowly applied only where there is a "willful act" that "violates conscience[] or good faith. . . ." *See LL B Sheet 1, LLC v. Loskutoff*, 362 F. Supp. 3d 804, 821 (N.D. Cal. 2019) (Freeman, J.) (citations omitted). Mere negligence is not enough. *See id.* As set forth above in Section III, Defendants' theory is insufficient to demonstrate even negligence on the part of SVBFG. Defendants, therefore, have not identified (and cannot identify) anything approaching the type of underlying conduct that satisfies the unclean hands standard, and for that independent reason, the unclean hands affirmative defense should be stricken.

## V.    The Unjust Enrichment defense is precluded by the Parties' contract.

Defendants allege that "SVBFG's claims are all barred to the extent it received and unjustly retained a benefit at the expense of SVB and now the FDIC-Rs." (Aff. Def. ¶ 139.) The only "enrichment" allegedly received *by SVBFG* is the $294 million bank-to-parent dividend. (*Id.* ¶ 140.) But there was nothing "unjust" about this dividend for the reasons explained above. In any event, this affirmative defense should be stricken because it is precluded by the contract between SVBFG and SVB that underlies SVBFT's Complaint.

1    Unjust enrichment "cannot lie where there exists between the parties a valid express

2    contract covering the same subject matter."  *Yang v. Dar Al-Handasah Consultants*, 250 F.

3    App'x 771, 773 (9th Cir. 2007); *accord. Paracor*, 96 F.3d at 1167 ("[U]njust enrichment is an

4    action in quasi-contract, which does not lie when an enforceable binding agreement exists

5    defining the rights of the parties.").  Here, the subject matter of the entire complaint is deposit

6    accounts governed by contract, the Deposit Agreements.  (*See* Ans. ¶¶ 1-2.)  It is undisputed that

7    the Deposit Agreements are valid and enforceable.  (*Id.* ¶ 140 ("To the extent a response is

8    required, the FDIC-Rs admit that the Deposit Agreements are valid contracts[.]").)  It is also

9    undisputed that the Deposit Agreements define the rights of SVBFG and SVB, now FDIC-Rs,

10   including setoff rights.  (*See, e.g.*, *id.* ¶ 45 ("The FDIC-Rs admit the Deposit Agreements

11   provided for contractual setoff defenses . . . .").)  The Deposit Agreements therefore cover the

12   "same subject matter" as the unjust enrichment defense.  Accordingly, Defendants "have failed

13   to state a claim for unjust enrichment because they have alleged no facts to support an inference

14   that the [Deposit] Agreements are unenforceable."  *Rabin v. Google LLC*, No. 22-cv-04547,

15   2023 WL 4053804, at *13 (N.D. Cal. June 15, 2023) (Freeman, J.); *see also Dolce Int'l/San*

16   *Jose, LLC v. City of San Jose*, No. 20-cv-03774, 2020 WL 5910066, at *3 (N.D. Cal. Oct. 6,

17   2020) (dismissing unjust enrichment claim because litigant "fail[ed] to allege that the express

18   contract governing the Parties['] conduct may be unenforceable or invalid").

19       **VI.    The Constructive Fraudulent Transfer defense should be stricken for failure**

20       **to allege insolvency.**

21       Defendants' attempt to plead a constructive fraudulent transfer defense to set off

22   SVBFG's claims by the $294 million bank-to-parent divided paid in December 2022 fails

23   because Defendants have not alleged any facts to suggest that SVB was insolvent, became

24   insolvent, or was approaching insolvency at any point prior to its closure.

25       Under California law, constructive fraudulent transfer claims are subject to California

26   Civil Code Sections 3439.04(a) and 3439.05.  *See In re UC Lofts on 4th, LLC*, No. ADV 07-

27   90139-CL, 2014 WL 1285415, at *12 (Bankr. S.D. Cal. Mar. 27, 2014), *aff'd*, 2015 WL

28   5209252 (B.A.P. 9th Cir. Sept. 4, 2015).  A constructive fraudulent transfer claim under the latter

section requires pleading that "the debtor was insolvent at th[e] time [of the transfer] or the debtor became insolvent as a result of the transfer."  Cal. Civ. Code § 3439.05.  Defendants plead neither here—indeed, Defendants' mere rote repetition of the elements (Aff. Def. ¶ 142) is facially insufficient.  *See, e.g.*, *Illumina, Inc. v. BGI Genomics Co.*, No. 19-cv-03770-WHO, 2020 WL 571030, at *3-4 (N.D. Cal. Feb. 5, 2020) ("[T]he simple listing of a series of conclusory statements" is insufficient (internal quotation marks omitted)); (*see also supra*, Section III.A.)  Nor could Defendants plead insolvency in light of SVBFG's independent auditors not having identified any going concern or liquidity risks in SVBFG's audited financial reports for the year ending December 31, 2022.  (Moskowitz Decl. Ex. 3, SVB Fin. Grp., Annual Report (Form 10-K) at 107-08/208 (Feb. 24, 2023).)  Indeed, the audited financial report reflects that the $294 million divided paid in December 2022 did not render SVB insolvent—at the end of that same month, SVB had over $1 billion in equity value, even if the unrealized losses in SVB's HTM portfolio are included in the calculation.  (*Id.* at 111/208, 147/208.)  Thus, it is not surprising that Defendants have not—and cannot—plead that any of SVBFG or SVB's regulators raised any concerns about the dividend.

Defendants' constructive fraudulent transfer defense fares no better under section 3439.04(a).  Section 3439.04(a) requires that, at the time of the dividend, (1) SVB's assets "were unreasonably small in relation to the business or transaction" or (2) SVB intended to incur, believed, or reasonably believed that it would incur "debts beyond its ability to pay as they become due."  Cal. Civ. Code § 3439.04(a)(2).  Defendants do not plead facts to support either scenario.  According to Defendants' own Answer, the dividend amounted to a mere 1.4% of SVB's $209 billion in assets (and less than 30% of SVB's over $1 billion in equity value) at the time it was made (Aff. Def. ¶ 10; Moskowitz Decl. Ex. 3, SVB Fin. Grp., Annual Report (Form 10-K) at 111/208, 147/208 (Feb. 24, 2023)), a proportion that cannot possibly constitute unreasonably small capital.  And there is no allegation anywhere that SVB failed to pay any debts during the relevant period or that there was any belief that SVB would not be able to pay its debts in the future.  *See, e.g.*, *In re UC Lofts*, 2014 WL 1285415, at *16.  Accordingly, this Affirmative Defense should be stricken.

1

2

**VII.    FDIC-R2 is judicially estopped from asserting any affirmative defenses**

**seeking to set off its liability and lacks mutuality.**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

FDIC-R2 is judicially estopped from asserting any affirmative defenses seeking to set off its liability because it expressly and repeatedly disclaimed any such right before the Bankruptcy Court in SVBFG's Chapter 11 proceedings. *See New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (explaining that judicial estoppel is an equitable doctrine designed to further "orderly administration of justice and regard for the dignity of judicial proceedings"). Specifically, FDIC-R2 repeatedly represented to the Bankruptcy Court that it "has no right of setoff" in seeking dismissal of an adversary complaint SVBFG filed to secure the return of the $1.93 billion in its account. *See* Mem. of Law in Supp. of Mot. to Dismiss at 28-29, *SVB Fin. Grp. v. F.D.I.C.*, Adv. Pro. No. 23-01137 (Bankr. S.D.N.Y. Aug. 11, 2023) [ECF No. 32] ("[T]he FDIC-R2 has no right of setoff against the Deposit Accounts liability nor has it asserted (nor can it) any right of setoff."); Reply Mem. of Law in Supp. of Mot. to Dismiss at 5, *SVB Fin. Grp. v. F.D.I.C.*, Adv. Pro. No. 23-01137 (Bankr. S.D.N.Y. Sept. 6, 2023) [ECF No. 71] ("FDIC-R2 has no right of setoff against the Deposit Account liabilities nor has it asserted a right of setoff."). Following the voluntary dismissal of the adversary proceeding, SVBFG developed a plan of reorganization with the understanding that only FDIC-R1 held potential defensive setoff rights, and the Bankruptcy Court approved it with the same understanding. *See, e.g.*, July 7, 2024 Hr'g Tr. 82:12-13, *In re SVB Fin. Grp.*, No. 23-10367 (Bankr. S.D.N.Y.) [ECF No. 1408] (counsel for SVBFG explaining at confirmation hearing that "FDIC-R2 or Bridge Bank is not claiming any right of set-off"). Allowing FDIC-R2 to assert a right of setoff now would be manifestly unfair to SVBFT and would undermine the integrity of the prior bankruptcy process. *Cf. Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 784-85 (9th Cir. 2001) (applying judicial estoppel to "prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy").

26

27

28

In any event, FDIC-R2 cannot, as a matter of law, assert any right of setoff against SVBFT because it fails to satisfy the basic requirement of mutuality required to assert setoff. *See England v. Indus. Comm'n of Utah (In re Visiting Home Servs., Inc.)*, 643 F.2d 1356, 1360

(9th Cir. 1981) (explaining that the debts must be "between the same individual[s], and in the same capacities" for one debt to offset another).  FDIC-R2's conclusory assertion that Bridge Bank "succeeded to certain rights of [] FDIC-R1 under the Transfer Agreement" falls far short of establishing that FDIC-R2 actually holds setoff claims against SVBFT as successor to SVBFG, as is necessary for there to be mutually owed debts.  (Aff. Def. ¶¶ 126, 130, 135); *Fishman*, 2018 WL 4468680, at *3 ("boilerplate," "bare statements reciting mere legal conclusions" could not survive motion to strike).  FDIC-R2's setoff defenses should accordingly be stricken.

### VIII.   The nineteen boilerplate affirmative defenses should be stricken.

Defendants assert nineteen additional, *pro forma* affirmative defenses in Affirmative Defenses Seven through Twenty-Five.  (Aff. Def. ¶¶ 143-60.)  All nineteen should be stricken for failure to assert anything more than a recitation of bare legal conclusions, which is insufficient as a matter of law.  *See, e.g.*, *Ochoa*, 2022 WL 1619152, at *2 (striking defense supported by no factual allegations); *Fishman*, 2018 WL 4468680, at *3.

In addition, the Seventh, Eighth, and Thirteenth Affirmative Defenses should be stricken for the additional reason that they are not affirmative defenses at all, but "merely contest the sufficiency" of the complaint.  *See Pertz v. Heartland Realty Invs., Inc.*, No. 19-cv-06330, 2020 WL 95636, at *2 (N.D. Cal. Jan. 8, 2020).  And the Ninth through Twelfth and Fourteenth through Twenty-Fifth Affirmative Defenses should similarly also be stricken since they too are not actual affirmative defenses but "simply deny liability."  *See id.*

1

## **CONCLUSION**

2      For the foregoing reasons, Plaintiff SVBFT respectfully requests that the Court strike

3  Defendants' Affirmative Defenses from the Answer.

4  Dated: February 12, 2025                    DAVIS POLK & WARDWELL LLP

5                                              */s/ Elliot Moskowitz*
                                               ────────────────────────────────
6                                              Jonathan K. Chang (SBN 355907)
                                                 jonathan.chang@davispolk.com
7                                              900 Middlefield Road, Suite 200
                                               Redwood City, California 94063
8                                              Telephone: (650) 752-2000
                                               Facsimile:  (650) 752-2111
9

10                                             Marshall S. Huebner (admitted *pro hac vice*)
                                               Elliot Moskowitz (admitted *pro hac vice*)
11                                             Kathryn S. Benedict (admitted *pro hac vice*)
                                               Nicholas D'Angelo (admitted *pro hac vice*)
12                                             DAVIS POLK & WARDWELL LLP
                                               450 Lexington Avenue
13                                             New York, New York 10017
                                               Telephone: (212) 450-4000
14                                             Facsimile:  (212) 701-5800

15
                                               Robert A. Van Nest (SBN 84065)
16                                             rvannest@keker.com
                                               Jan Nielsen Little (SBN 100029)
17                                             jlittle@keker.com
                                               Julia L. Allen (SBN 286097)
18                                             jallen@keker.com
                                               Maya P. James (SBN 318554)
19                                             mjames@keker.com
                                               KEKER, VAN NEST & PETERS LLP
20                                             633 Battery Street
                                                 San Francisco, California 94111
21                                             Telephone: (415) 391-5400
                                               Facsimile:  (415) 397-7188
22
                                               *Attorneys for Plaintiff SVB Financial Trust*
23

24

25

26

27

28

PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES - CASE NO. 5:24-cv-01321-BLF