Jonathan K. Chang (SBN 355907)
  jonathan.chang@davispolk.com
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, California 94063
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111

Marshall S. Huebner (admitted *pro hac vice*)
Elliot Moskowitz (admitted *pro hac vice*)
Kathryn S. Benedict (admitted *pro hac vice*)
Nicholas D'Angelo (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800

Robert A. Van Nest (SBN 84065)
  rvannest@keker.com
Jan Nielsen Little (SBN 100029)
  jlittle@keker.com
Julia L. Allen (SBN 286097)
  jallen@keker.com
Maya P. James (SBN 318554)
  mjames@keker.com
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, California 94111
Telephone: (415) 391-5400
Facsimile:  (415) 397-7188

*Attorneys for Plaintiff SVB Financial Trust*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SVB FINANCIAL TRUST,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Silicon Valley Bank and Silicon Valley Bridge Bank, N.A.,<br><br>Defendants. | Case No. 5:24-cv-01321-BLF<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES**<br><br>Date:      May 1, 2025<br>Time:      9:00 a.m.<br>Courtroom: 3 – 5th Floor<br>Judge:     Honorable Beth Labson Freeman<br><br>Action Filed: March 5, 2024 |

**TABLE OF CONTENTS**

PAGE

INTRODUCTION ...............................................................................................................................1

ARGUMENT .....................................................................................................................................2

    I.    Defendants have no setoff right. ................................................................................2

    II.   Defendants' aiding and abetting theory (the First Affirmative Defense) fails................4

        A.    Defendants' aiding and abetting theory is precluded by the agency immunity rule. ...................................................................................................4

        B.    Defendants fail to plead that SVBFG took any separate affirmative act. ..............5

    III.  Defendants fail to allege any duty that Plaintiff breached requiring the First, Second, and Third Affirmative Defenses to be stricken. ...............................................7

        A.    Defendants' breach of duty argument fails under the unitary interest rule. ...........7

        B.    Neither California law nor the source of strength doctrine creates a duty on a bank holding company to contribute capital to a subsidiary bank.................9

    IV.  Defendants' additional defenses of Unclean Hands, Unjust Enrichment, and Constructive Fraudulent Transfer should be stricken. ..................................................10

        A.    Defendants' Unclean Hands defense fails because the supporting allegations bear no relation to the allegations in the Complaint..........................10

        B.    Defendants' Unjust Enrichment defense is precluded by the Deposit Agreement................................................................................................................11

        C.    Defendants' Constructive Fraudulent Transfer defense should be stricken because Defendants do not allege insolvency. ......................................................13

    V.   FDIC-R2 is judicially estopped from asserting any Affirmative Defenses. .................14

    VI.  Defendants' remaining Affirmative Defenses should be stricken. ...............................14

CONCLUSION ..................................................................................................................................15

# TABLE OF AUTHORITIES

CASES

PAGE(S)

*AngioScore, Inc. v. TriReme Med., LLC*,
   70 F. Supp. 3d 951 (N.D. Cal. 2014) .................................................................................. 5-6

*ASARCO LLC v. Ams. Mining Corp.*,
   382 B.R. 49 (S.D. Tex. 2007) ................................................................................................ 5

*In re Bay Plastics, Inc.*,
   187 B.R. 315 (Bankr. C.D. Cal. 1995) ................................................................................. 13

*Brown v. USA Taekwondo*,
   11 Cal. 5th 204 (2021) ........................................................................................................... 9

*Campagnolo S.R.L. v. Full Speed Ahead, Inc.*,
   258 F.R.D. 663 (W.D. Wash. 2009) ..................................................................................... 11

*Campos v. Wells Fargo Bank, N.A.*,
   345 B.R. 678 (E.D. Cal. 2005) ............................................................................................... 3

*Cathay Logistics, LLC v. Gerber Plumbing Fixtures, LLC*,
   2016 WL 3912011 (C.D. Cal. July 19, 2016) ........................................................................ 4

*Citizens Bank of Maryland v. Strumpf*,
   516 U.S. 16 (1995) ................................................................................................................. 2

*In re Colonial BancGroup, Inc.*,
   2012 WL 12878 (M.D. Ala. Jan. 4, 2012) .............................................................................. 3

*Comcast of Sacramento I, LLC v. Sacramento Metro. Cable Television Comm'n*,
   250 F. Supp. 3d 616 (E.D. Cal. 2017) .................................................................................... 3

*Constr. Protective Servs., Inc. v. TIG Specialty Ins. Co.*,
   29 Cal. 4th 189 (2002) ........................................................................................................... 3

*Cory v. Golden State Bank*,
   95 Cal. App. 3d 360 (1979) ................................................................................................... 3

*In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices Litig.*,
601 F. Supp. 2d 1201 (S.D. Cal. 2009) .................................................................................... 12

*Crocker-Citizens Nat'l Bank v. Control Metals Corp.*,
   566 F.2d 631 (9th Cir. 1977) ................................................................................................. 3

*Dirosa v. Showa Denko K.K.*,
   44 Cal. App. 4th 799 (1996) .................................................................................................. 9

*FDIC v. AmFin Fin. Corp.*,
  2011 WL 2200387 (N.D. Ohio June 6, 2011),
  *aff'd sub nom. In re AmTrust Fin. Corp.*, 694 F.3d 741 (6th Cir. 2012) ................................10

*FDIC v. Ching*,
  2018 WL 621297 (E.D. Cal. Jan. 26, 2018) .............................................................................7

*FDIC v. Hawker*,
  2012 WL 2068773 (E.D. Cal. June 6, 2012) ........................................................................... 8

*FDIC v. Johnson*,
  2012 WL 5818259 (D. Nev. Nov. 15, 2012) ........................................................................... 8

*FDIC v. Van Dellen*,
  2012 WL 4815159 (C.D. Cal. Oct. 5, 2012) ........................................................................... 8

*Fiol v. Doellstedt*,
  50 Cal. App. 4th 1318 (1996) ................................................................................................. 6

*Fishman v. Tiger Nat. Gas Inc.*,
  2018 WL 4468680 (N.D. Cal. Sept. 18, 2018) ................................................................. 13-14

*Gansman v. Tanenbaum*,
  2024 WL 694111 (N.D. Cal. Feb. 20, 2024) ......................................................................... 13

*Garcia v. Salvation Army*,
  918 F.3d 997 (9th Cir. 2019) ................................................................................................ 14

*In re Google Location Hist. Litig.*,
  514 F. Supp. 3d 1147 (N.D. Cal. 2021) ................................................................................ 12

*Granberry v. Islay Invs.*,
  9 Cal. 4th 738 (1995) ............................................................................................................. 2

*Hall-Johnson v. Citibank, N.A.*,
  2024 WL 3907037 (N.D. Cal. Aug. 19, 2024) ...................................................................... 14

*Hamilton v. State Farm Fire & Cas. Co.*,
  270 F.3d 778 (9th Cir. 2001) ................................................................................................ 14

*In re Imperial Credit Indus., Inc.*,
  527 F.3d 959 (9th Cir. 2008) ................................................................................................ 10

*Jensen v. Thomas*,
  2024 WL 5295012 (N.D. Cal. Aug. 15, 2024) ...................................................................... 14

*LaChapelle v. Kim*,
  2015 WL 7753235 (N.D. Cal. Dec. 1, 2015) ........................................................................ 13

*Norman v. Life Care Centers of Am., Inc.*,
  107 Cal. App. 4th 1233 (2003) ............................................................................................... 9

*Ochoa v. City of San Jose*,
  2022 WL 1619152 (N.D. Cal. May 23, 2022) ...................................................................... 14

*Perez v. Gordon & Wong Law Grp., P.C.*,
    2012 WL 1029425 (N.D. Cal. March 26, 2012) ..................................................................13

*Pom Wonderful LLC v. Welch Foods, Inc.*,
    737 F. Supp. 2d 1105 (C.D. Cal. 2010) ............................................................................11

*Ramirez v. Plough, Inc.*,
    6 Cal. 4th 539 (1993) ..........................................................................................................9

*Sanchez v. Am. Media*,
    2021 WL 4731344 (C.D. Cal. July 13, 2021) ....................................................................4

*Sheen v. Wells Fargo Bank, N.A.*,
    12 Cal. 5th 905 (2022) ........................................................................................................9

*Siegal v. Gamble*,
    2016 WL 1085787 (N.D. Cal. Mar. 21, 2016) ...................................................................6

*Troy Grp., Inc. v. Tilson*,
    364 F. Supp. 2d 1149 (C.D. Cal. 2005) ............................................................................13

*Villains, Inc. v. Am. Econ. Ins. Co.*,
    870 F. Supp. 2d 792 (N.D. Cal. 2012) ................................................................................4

*In re Weisberg*,
    136 F.3d 655 (9th Cir. 1998) ..............................................................................................3

STATUTES & RULES

12 U.S.C. § 1821(k) ......................................................................................................................8

Cal. Civ. Code § 1714 ...................................................................................................................9

OTHER AUTHORITIES

Adam J. Levitin, *Samson's Toupee: Banking Law's Source-of-Strength Doctrine*,
    41:3 YALE L.J. 1078 (2024) ...............................................................................................10

Office of the Comptroller of the Currency, *The Director's Book* (2020),
    https://www.occ.gov/publications-and-resources/publications/banker-
    education/files/directors-book.html ............................................................................... 8-9

## INTRODUCTION

Defendants gave no justification for seizing nearly two billion dollars from Plaintiff two years ago. Now, having failed to file a proof of claim in Plaintiff's bankruptcy, Defendants belatedly assert convoluted setoff theories that are both unprecedented and untethered to the law. Their theories are doomed for three primary reasons: first, Defendants have no setoff right because there was no existing debt; second, the agency immunity rule bars their claims; and third, there is no breach of duty here as a matter of law. Defendants' opposition fails to remedy each of these independent and fatal flaws.

First, Defendants fail to identify any debt—as required under the Deposit Agreement, state, and federal law, and reaffirmed by the very cases they cite—against which they could claim any setoff.

Second, in an effort to salvage their aiding and abetting claim, Defendants assert that the agency immunity rule does not apply and that they need not allege a separate affirmative act. Both arguments fail. Defendants themselves allege an agency relationship between SVBFG and SVB's directors and officers, and they cannot unring that bell: the agency immunity rule dictates that the principal and agent must be treated as the same person for purposes of an aiding and abetting claim. As to Defendants' suggestion that they need not allege a separate affirmative act, the law is clear that they must. And they cannot do so. Because Defendants allege that SVBFG and SVB acted through wholly overlapping directors and officers who met at wholly overlapping board meetings, the same acts allegedly constituting a primary violation by SVB are the acts allegedly constituting SVBFG's aiding and abetting.

Third, Defendants fail to allege a breach of any fiduciary or other duty. Defendants concede that fiduciary duties of officers and directors of a wholly-owned subsidiary are defined by the duties owed to the parent corporation. Defendants try to circumvent this hurdle by suggesting that officers and directors owe special fiduciary duties in the banking context. But none of the laws or regulations cited by Defendants—including the source of strength obligation—compel a different result, nor are they in any event enforceable through a private right of action. In short, Defendants' theory that some breach of any fiduciary or other duty

occurred because the interests of the parent were favored over the interests of the bank fails as a matter of law.

Defendants fare no better as to the remaining affirmative defenses that repackage these same allegations or contain mere boilerplate assertions. Each fails as a matter of law and should be stricken.

## ARGUMENT

As explained in the Motion, Defendants have failed to plead any basis for their affirmative defenses. Contrary to Defendants' argument that they need only provide "fair notice" (Opp. 7), affirmative defenses must satisfy the heightened pleading standard under *Iqbal* and *Twombly*. (Mot. 5-6); *see infra* Section VI. Defendants fail to do so here.

### I.   Defendants have no setoff right.

There is no basis for Defendants to assert a setoff right because there was (and is) no debt on which it can be asserted. (Mot. 8.) Defendants suggest that their setoff right stems from "federal and state law and the terms of the Deposit Agreement." (Opp. 8.) None of those sources provide the right to assert contingent unliquidated claims as setoff.

Defendants point to three statutory provisions supposedly justifying their seizure of Plaintiff's funds: Section 553 of the Bankruptcy Code, 12 U.S.C. § 1822(d), and Section 431.70 of California's Code of Civil Procedure. (Opp. 8-9.) But none provide a substantive right. Section 553 of the Bankruptcy Code does not create a right of setoff, but rather preserves pre-existing rights of setoff in bankruptcy proceedings. *See Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995). Similarly, 12 U.S.C. § 1822(d) only recognizes a right of setoff for "insured deposit(s)" but as this Court has already held, SVBFT's deposit claims are not claims for insured deposits. *See* Order Granting in Part and Denying in Part Motion to Dismiss (Dkt. 85) at 12. And Section 431.70 of the Code of Civil Procedure provides the procedural means by which a setoff right may be asserted; it does not create a substantive right to assert setoff, nor does it provide that anything other than a matured debt gives rise to a setoff right. *Granberry v. Islay Invs.*, 9 Cal. 4th 738, 744 (1995) (Section 431.70 "merely describes procedures to be followed" when setoff is already proper). Moreover, even if Defendants could point to a

statutory right of setoff, both state and federal courts have made clear that there must be a "debt" owed, and here there is none. *See, e.g.*, *Cory v. Golden St. Bank*, 95 Cal. App. 3d 360, 369 (1979) (prerequisite for setoff is "that there first exist some matured debt owed to the Bank against which the setoff could be applied"); *Crocker-Citizens Nat. Bank v. Control Metals Corp.*, 566 F.2d 631, 637 (9th Cir. 1977) ("[A] bank may only exercise this equitable right of setoff in response to and to the extent of a matured debt owed by the depositor to the bank."). Without a statutory basis, Defendants rely on the Deposit Agreement for their substantive right to setoff. (Opp. 8.) That too fails as the Deposit Agreement only authorizes setoff for "debt[s]" that are "owed." *See* Deposit Agreement and Disclosure Statement – Business Accounts (Dkt. 33, Ex. B) at 47 § (p). Defendants have not—because they cannot—identified any "debt" that was owed when they seized SVBFG's funds. (Mot. 8-9.)

Defendants' cited cases reaffirm these basic points. In *Campos v. Wells Fargo Bank, N.A.*, 345 B.R. 678 (E.D. Cal. 2005), the bank asserting a setoff right had already obtained a judgment against the depositor and "the Bank thus had a right to offset the debt owed by debtor under the 1994 judgment." *Id.* at 683. Likewise, *In re Colonial BancGroup, Inc.*, 2012 WL 12878, at *3 (M.D. Ala. Jan. 4, 2012), concerned a setoff right—asserted pursuant to a formal capital maintenance obligation imposed on the bank holding company by its regulator—that is specifically protected under 11 U.S.C. § 365(o) and does not exist here. *Id.* at *2, *4; *see infra* Section III.B. The setoff right in *In re Weisberg*, 136 F.3d 655, 657-58 (9th Cir. 1998) was similarly governed by the Bankruptcy Code and the court determined that mutual debts existed between a stockbroker and a debtor, given the specific definition of a "debt" applicable to their securities contracts.

Defendants' remaining cases are simply inapposite. *Comcast of Sacramento I, LLC v. Sacramento Metro. Cable Television Comm'n*, 250 F. Supp. 3d 616 (E.D. Cal. 2017), involved a setoff right asserted pursuant to a specific statutory provision inapplicable here and where the plaintiff did not dispute its failure to pay the fees in question or the amount owed. Additionally, *Constr. Protective Servs., Inc. v. TIG Specialty Ins. Co.*, 29 Cal. 4th 189 (2002) did not even analyze whether or when setoff could be applied, much less on the basis of an unmatured debt,

1  but only whether an insurance company was required to indemnify the plaintiff against a setoff
2  claim.  Finally, *Cathay Logistics, LLC v. Gerber Plumbing Fixtures, LLC*, 2016 WL 3912011
3  (C.D. Cal. July 19, 2016), does not create a setoff right; to the contrary, it notes the
4  uncontroversial premise that any right to setoff must be grounded in a sound legal basis—and
5  then finds that the defendant failed to establish any such basis.  *Id.* at *5.  As explained in the
6  Motion and below, Defendants have failed to identify any basis for either their right to setoff or
7  the merits of their purported setoff claims.  Accordingly, their setoff defenses should be stricken.

**II.    Defendants' aiding and abetting theory (the First Affirmative Defense) fails.**

Defendants' aiding and abetting claim is precluded by the agency immunity rule and the inability to show any acts separate from the primary violation.  (Mot. 9-11.)  Defendants argue that the agency immunity rule does not apply where an agent is acting on behalf of multiple parties, and that they need not allege separate affirmative acts (and that regardless they have done so).  (Opp. 16-19.)  Defendants are wrong on all counts.

**A.    Defendants' aiding and abetting theory is precluded by the agency immunity rule.**

Defendants' argument that the agency immunity rule does not apply here because "there are two distinct legal entities" (Opp. 17), contradicts the basic premise of their affirmative defenses.  Specifically, Defendants alleged that SVB's directors and officers "were acting as authorized agents of SVBFG" (Aff. Def. ¶ 128); therefore, the agency immunity rule dictates that SVB (the agent, acting through its directors and officers) and SVBFG (the principal) must be treated as the same person for purposes of an aiding and abetting claim.  (Mot. 10); *see Villains, Inc. v. Am. Econ. Ins. Co.*, 870 F. Supp. 2d 792, 795-96 (N.D. Cal. 2012).

California law is clear on this point: "[a] corporation cannot conspire with or aid and abet itself."  *Sanchez v. Am. Media, Inc.*, 2021 WL 4731344, at *8 (C.D. Cal. July 13, 2021); (Mot. 10.)  In *Sanchez*, the plaintiff alleged that two agents of the same corporation committed a tortious act, and then aided and abetted one another in committing that tort.  *Id.* at *3, *8.  The court determined that there is "no authority" that the defendants could "be both personally liable and secondarily liable for the same tort."  *Id.* at *8.  The same is true here.  The same officers

1  and directors of both SVBFG and SVB cannot be personally liable for allegedly breaching
2  fiduciary duties owed to SVB and be secondarily liable for aiding and abetting that same breach.
3  Because Defendants' aiding and abetting theory relies on those same acts of the same officers
4  and directors being imputed to SVBFG, the theory fails as a matter of law.
5        Defendants point to two decisions to support their position that if "an agent acts on behalf
6  of multiple parties" there are automatically "two distinct legal entities" which can aid and abet
7  each other. (Opp. 17.) Neither apply. First, *ASARCO LLC v. Ams. Mining Corp.*, 382 B.R. 49
8  (S.D. Tex. 2007) applies New Jersey law and does not concern the application of the agency
9  immunity rule. Instead, the case involves the alleged insolvency of the subsidiary, which created
10 different duties owed to the subsidiary and conflicting interests between the parent and
11 subsidiary. *ASARCO*, 382 B.R. at 72-73. Here—and as outlined below—there is no well-pled
12 allegation of insolvency and the interests of the parent and subsidiary remain united. *See infra*
13 Sections III, IV.C. *AngioScore, Inc. v. TriReme Med., LLC*, 70 F. Supp. 3d 951 (N.D. Cal.
14 2014), is similarly inapposite. There, the court addressed only whether alter ego and aiding and
15 abetting claims could be pled simultaneously (not whether agency immunity precludes such a
16 claim), an analysis that has no bearing here. *Id.* at 957-60. In short, because "SVB's officers
17 and directors . . . were SVBFG's agents," (Aff. Def. ¶ 127), agency immunity applies and
18 precludes Defendants' aiding and abetting claim.
19     **B.     Defendants fail to plead that SVBFG took any separate affirmative act.**
20       Defendants' opposition fails to counter the second fundamental flaw with their aiding and
21 abetting claim. Without a separate affirmative act by SVBFG that substantially assisted an
22 alleged breach of fiduciary duty committed by SVB's directors and officers, Defendants' aiding
23 and abetting theory fails. (Mot. 10-11.) Defendants claim that there is "no such requirement"
24 for an aiding and abetting claim, and otherwise attempt to cobble together certain acts that
25 purport to be "separate" from the primary act constituting a breach. (Opp. 18.) Defendants are
26 wrong.
27       First, the law is clear that an aiding and abetting claim requires an act distinct from the
28 primary violation. (Mot. 11.) Defendants rely again on *AngioScore* but that case actually

*contradicts* Defendants' argument. 70 F. Supp. 3d at 960-61.  There, plaintiff brought a breach of fiduciary duty claim against a former director based on patent infringement, and alleged that three separate corporations aided and abetted in that breach by carrying out the commercialization of the device at issue.  *Id.* at 957, 961.  The former director committed separate acts constituting the primary breach (misappropriating intellectual property) and the aiding and abetting (causing the other corporations to commercialize the device).  The case did not involve the situation here: individuals acting in the same capacity as to both entities engaging in the same acts.  *AngioScore* is thus irrelevant.

Second, the purported distinct acts identified by Defendants are either not "acts" at all or are actually the same acts allegedly constituting the primary violation.  (Opp. 18-19.)  For example, Defendants allege that officers "either agreed with or failed to discharge their duties to challenge" the decision to terminate the bank's interest-rate swaps.  (*Id.*)  But inaction cannot constitute substantial assistance as a matter of law, since no action is involved at all.  *See Siegal v. Gamble*, 2016 WL 1085787, at *13 (N.D. Cal. Mar. 21, 2016) (holding that "inaction," "failing to advocate" and "failing to advise" are "omissions [that] do not constitute substantial assistance or encouragement" (citing *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1326 (1996))).

In the few places where an actual act is identified, Defendants still fail to specify any act taken by a director or officer on behalf of SVBFG as opposed to on behalf of SVB.  To be sure, Defendants now argue in their opposition that directors approved (on behalf of SVBFG) allegedly negligent actions (on behalf of SVB) (Opp. 16), but those assertions are not grounded in any of their own allegations, which do not distinguish between the conduct allegedly constituting breaches and the conduct allegedly assisting those breaches.  (Aff. Def. ¶¶ 14, 35, 56-58, 64, 68, 74, 88, 99, 102, 123.)  Indeed, Defendants have alleged all of the decisions were made jointly by entirely overlapping directors and officers at the same meetings reflected in a single set of minutes.  (Aff. Def. ¶¶ 12-13.)  There was, therefore, no opportunity for SVBFG to have taken any separate affirmative act distinct from the alleged primary violation (the supposedly negligent investment strategies and dividend).  Because Defendants have failed to plead any separate act, the First Affirmative Defense should be stricken.

### III. Defendants fail to allege any duty that Plaintiff breached requiring the First, Second, and Third Affirmative Defenses to be stricken.

Defendants fail to identify a breach of any duty, a necessary element for their claims of aiding and abetting (First Affirmative Defense), agency (Second Affirmative Defense), and negligence (Third Affirmative Defense). (Mot. 12.) Defendants' assertion that special rules apply in the banking context, or that California law and related regulations create special duties (Opp. 14, 20), is unavailing and the First, Second, and Third Affirmative Defenses should be stricken.[1]

#### A. Defendants' breach of duty argument fails under the unitary interest rule.

Defendants have not disputed that the fiduciary duties of officers and directors of a wholly-owned subsidiary are defined by the duties owed to the parent corporation. (Mot. 12-13.) Instead, Defendants attempt to argue that different rules apply to banks and that their officers and directors owe special fiduciary duties. (Opp. 10-15.)

Defendants' argument misses the point: the issue is not whether SVBFG's officers and directors owed any fiduciary or other duties to the bank or the content of those duties, but rather whether duties owed to the bank were distinct from those owed to SVBFG. Defendants fail to identify a single case against a parent company supporting their position, and none of their cases undermine the well-established principle that a parent and its wholly-owned subsidiary are owed a unitary set of fiduciary duties. (Mot. 12.) Defendants highlight one district court case that, in fact, is consistent with that governing principle: *FDIC v. Ching*, 2018 WL 621297, at *1 (E.D. Cal. Jan. 29, 2018). Contrary to Defendants' suggestion, FDIC did not allege that the bank's directors acted "to benefit the holding company" in *Ching* (or any of the other cases cited in the Opposition) (Opp. 11); rather, FDIC alleged the defendant directors in *Ching* "benefitted personally" and acted "in their own self-interest" when issuing the dividend to "line their

---

[1] Defendants falsely claim that "SVBFT does not specifically address the FDIC-Rs' second affirmative defense (which alleges agency liability)." (Opp. 15.) But, as made clear in the Motion (Mot. 1, 12, 16), SVBFT has asserted the Second Affirmative Defense fails for failure to allege breach of any duty.

1  pockets" and "recoup their investment" above the market price for the parent corporation's
2  shares. *FDIC v. Ching*, No. 2:13-CV-01710-KJM (E.D. Cal. Aug. 19, 2013) (Dkt. 1) ("*Ching*
3  Compl.") ¶¶ 38, 62, 63. Thus, *Ching* does not concern whether a parent and wholly-owned bank
4  have divergent interests, much less (as Defendants suggest) the retention of a dividend by "the
5  bank's sole shareholder and holding company" (Opp. 12), but rather a dividend to the directors
6  themselves. *Ching* Compl. ¶¶ 37, 63. Indeed, neither the court's decision nor the complaint in
7  *Ching* indicates that the defendant directors acted on behalf of the parent company, or that the
8  parent company benefited from the defendants' actions.

9  Neither *Ching*—nor the other "scores of cases" invoked by Defendants—involve the fact
10 pattern here: the FDIC asserting claims alleging a bank holding company breached duties
11 supposedly owed to the bank by acting in the bank holding company's interests. Instead, those
12 cases all concern directors' and officers' alleged breaches of duties based on the interests of
13 those individuals (not of the holding companies). (Opp. 12); *see, e.g.*, *FDIC v. Van Dellen*, 2012
14 WL 4815159, at *1 (C.D. Cal. Oct. 5, 2012) (suit against former officers for imprudent loan
15 approvals); *FDIC v. Hawker*, 2012 WL 2068773, at *1 (E.D. Cal. June 7, 2012) (same); *FDIC v.
16 Johnson*, 2012 WL 5818259, at *2 (D. Nev. Nov. 15, 2012) (suit against former officers for
17 mismanagement of loan approval process). That Defendants' "scores of cases" do not support
18 their affirmative defenses is not surprising. As Defendants concede, 12 U.S.C. § 1821(k)
19 provides that FDIC as receiver may bring claims against officers and directors (not holding
20 companies) of failed banks for gross negligence. (Opp. 12.) And, as explained, Defendants'
21 theory that the officers and directors breached some duty by supposedly favoring the parent over
22 the bank fails as both shared one set of interests prior to SVB's closure. (Mot. 12-13.)

23 Absent caselaw to support their position, Defendants rely on the "Director's Book" and
24 the "Bank Holding Company Supervision Manual" (Opp. 11)—neither of which assists them.
25 As the "Director's Book" explains, "[i]n the case of affiliated banks and holding companies, the
26 strategic objectives, corporate values, and corporate governance principles of the affiliated bank
27 **should align with the holding company**." *See* Office of the Comptroller of the Currency, *The
28 Director's Book* at 34 (2020), https://www.occ.gov/publications-and-

resources/publications/banker-education/files/directors-book.html (emphasis added).  In any event, these sources do not give rise to private causes of action and to the extent they describe applicable regulatory obligations, those obligations are enforceable only through action by the applicable banking regulator.  *See infra* Section III.B; (Mot. 15).

Because Defendants allege that the officers and directors were acting for the benefit of SVBFG, and those interests were aligned with those of SVB as a matter of law, Defendants have not alleged any breach of duty (whether fiduciary or based on ordinary care).

### B. Neither California law nor the source of strength doctrine creates a duty on a bank holding company to contribute capital to a subsidiary bank.

Defendants next suggest that SVBFG owed its bank subsidiary some generalized duty that has been breached.  (Opp. 20-21.)  Defendants' arguments that Reg. Y, along with SVBFG's internal policies, "inform" the standards for a supposed duty of care created by California statutory law, (Opp. 20-21 (citing Cal. Civ. Code § 1714)), also fail.

First, California's general duty of care is entirely inapplicable here.  Despite conceding that they "are not seeking to enforce a private right of action created by the federal regulation," Defendants contend that California's statutory general duty of care is informed by those same regulations and serves as an alternative basis of liability.  (Opp. 20.)  Putting aside the incoherence of Defendants' position, the general duty of care applies only to torts that result in physical or real property damage, not to torts causing purely economic loss like those alleged here.  *See Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 920 (2022) (holding lender owed borrower no duty of care in part because "section 1714 does not impose a general duty to avoid purely economic losses").  Defendants' authorities are inapposite as they all concern personal injury torts.  *See Brown v. USA Taekwondo*, 11 Cal. 5th 204 (2021) (alleged injuries from sexual abuse); *DiRosa v. Showa Denko K.K.*, 44 Cal. App. 4th 799 (1996) (alleged injuries from ingestion of toxic substance); *Norman v. Life Care Centers of Am., Inc.*, 107 Cal. App. 4th 1233 (2003) (alleged injury from elder abuse and wrongful death); *Ramirez v. Plough, Inc.*, 6 Cal. 4th 539 (1993) (alleged injury caused by drug manufacturer).  Because the only harm that Defendants allege here is financial (*e.g.*, Aff. Def. ¶¶ 124, 128, 133, 138), California's general

1  duty of care does not apply.

2          Second, Defendants' invocation of Reg. Y's "source of strength" provision cannot be
3  used as an end-run around the fact that there is no private right of action created by that
4  regulation.  (Mot. 15.)  Defendants admit that.  (Opp. 20.)  Thus, the only relevance of any
5  "source of strength" obligation would be if that obligation required SVBFG to contribute capital
6  to SVB.  But a capital contribution obligation only exists pursuant to a Capital and Liquidity
7  Maintenance Agreement ("CALMA") or capital directive pursuant to the Federal Reserve's
8  Regulation H (applicable to state member banks such as SVB) and Defendants have not—
9  because they cannot—allege any such CALMA or directive existed here.  (Mot. 14-15); *compare*
10 *FDIC v. AmFin Fin. Corp.*, 2011 WL 2200387, at *12 (N.D. Ohio June 6, 2011) (absent a
11 sufficiently definite CALMA there was no source of strength obligation), *aff'd sub nom. In re*
12 *AmTrust Fin. Corp.*, 694 F.3d 741 (6th Cir. 2012) *with In re Imperial Credit Indus., Inc.*, 527
13 F.3d 959, 966 (9th Cir. 2008) (enforcing bank holding company's performance guaranty
14 pursuant to approved CALMA with FDIC); *see also* Adam J. Levitin, *Samson's Toupee:*
15 *Banking Law's Source-of-Strength Doctrine*, 41:3 YALE L.J. 1078, 1112 (2024) ("[T]he source-
16 of-strength doctrine itself . . . does not create liability for a [holding company] of a failed bank.
17 Instead, the doctrine must be implemented through a properly drafted CALMA").  There is
18 simply no basis for Defendants to contend that Plaintiff (or its directors and officers) breached
19 any "source of strength" obligation, much less that any such breach would be enforceable
20 through common law claims instead of regulatory action.
21         Accordingly, the First, Second, and Third Affirmative Defenses should be stricken.
22 **IV.   Defendants' additional defenses of Unclean Hands, Unjust Enrichment, and
           Constructive Fraudulent Transfer should be stricken.**
23
24      **A.   Defendants' Unclean Hands defense fails because the supporting allegations
              bear no relation to the allegations in the Complaint.**
25
26 Defendants' unclean hands theory fails because it is not sufficiently related—or, indeed,
27 related at all—to the claims made in Plaintiff's complaint.  (Mot. 16-17.)  Defendants assert that
28 they have shown the necessary relationship because the alleged unclean acts "relate" to "the

transaction concerning which the complaint is made." (Opp. 22.) But the actual standard is far more exacting. Defendants must show that "the misconduct that forms the basis for the unclean hands defense [is] *directly related* to plaintiff's use or acquisition of the right in suit." *See Pom Wonderful LLC v. Welch Foods, Inc.*, 737 F. Supp. 2d 1105, 1110 (C.D. Cal. 2010) (emphasis added; internal quotation marks omitted). Here, there is no basis to conclude that the alleged acts of mismanagement identified by Defendants are somehow "directly related" to Plaintiff's right to its account funds. Plaintiff's claims are based on Defendants' wrongful conduct in withholding SVBFG's account funds *after* SVB's closure on March 10, 2023, while Defendants' unclean hands defense is premised on SVBFG's alleged mismanagement of the bank *before* SVB entered receivership. Defendants argue that "[t]he relationship exists" because "the deposit amounts that SVBFT seeks to obtain in this case are attributable to its misconduct" (Opp. 22), but "[g]eneral allegations regarding . . . prior history" are far too attenuated to constitute "the subject matter" of the dispute. *See Campagnolo S.R.L. v. Full Speed Ahead, Inc.*, 258 F.R.D. 663, 665-66 (W.D. Wash. 2009). Contrary to Defendants' suggestion that this presents a factual issue, the Court can and should resolve the adequacy of this defense based on the pleadings. *Id.* The unclean hands defense should be stricken.

**B.     Defendants' Unjust Enrichment defense is precluded by the Deposit Agreement.**

Defendants' unjust enrichment defense fails because any purported "enrichment" of SVBFG was not unjust and, regardless, the claim is barred by the valid, enforceable contract between the parties that forms the basis of Plaintiff's complaint. (Mot. 17-18.) Defendants respond that the Deposit Agreement does not "cover the conduct on which the unjust enrichment claim is based" or "provide for the specific recovery sought by Plaintiffs' unjust enrichment claim." (Opp. 23.) That is simply wrong.

First, Defendants fail to explain how any purported enrichment was unjust. They state only that SVBFG "obtained short-term benefits" from the bank-to-parent dividend (Aff. Def. ¶ 140) without explaining *why* that was unjust when both entities share a unitary interest. (Opp. 23); *see supra* Section III.A.

Second, Defendants are incorrect that the Deposit Agreement does not cover the dispute. Courts look to whether the contract covers the conduct underlying the "subject matter of the dispute" (i.e., the complaint). (Mot. 18.) The Deposit Agreement plainly covers Defendants' liability for funds deposited in SVBFG's accounts. *See* Deposit Agreement and Disclosure Statement – Business Accounts (Dkt. 33, Ex. B) at 10 § (b) ("[[W]e owe you the amount of your deposit, subject to the terms of the Deposit Agreement."). Thus, whether or not Defendants "owe [SVBFT] the amount of [its] deposit"—the subject matter of the dispute—is clearly covered by the Deposit Agreement. Moreover, Defendants' affirmative defenses are premised on the Deposit Agreement as the basis for their purported setoff right. *See* Deposit Agreement and Disclosure Statement – Business Accounts (Dkt. 33, Ex. B) at 47 § (p); (Aff. Def. ¶¶ 115-141.) There simply is no basis for Defendants' assertion that the Deposit Agreement does not "cover the conduct on which the unjust enrichment claim is based" or the remedy sought (setoff). (Opp. 23).

Defendants' cited cases are inapposite as both involved contracts that did not cover the subject matter of the complaint. *In re Google Location Hist. Litig.* concerns allegations that Google was unjustly enriched by tracking and storing users' location data while users were not interacting with Google services. 514 F. Supp. 3d 1147, 1150 (N.D. Cal. 2021). The Court determined that the Terms of Service governed only "[w]hen you use Google services" but did not address when users were ***not*** using Google services, which was the premise of the allegations in that case. *Id.* at 1159-60. Similarly, in *In re Countrywide Fin. Corp. Mortg. Mktg. and Sales Practices Litig.*, 601 F. Supp. 2d 1201 (S.D. Cal. 2009), a federal RICO class action against lending entities, plaintiffs demanded disgorgement and because the court determined the lending contracts did not provide for disgorgement, the unjust enrichment claim could proceed. *Id.* at 1220-21. Here, the Deposit Agreement covers the issues in the Complaint: Plaintiff's entitlement to funds in its deposit accounts, as well as Defendants' alleged basis for their purported setoff defense. Defendants' unjust enrichment defense should be stricken.

**C.    Defendants' Constructive Fraudulent Transfer defense should be stricken because Defendants do not allege insolvency.**

The constructive fraudulent transfer defense should be stricken because Defendants fail to allege insolvency. (Mot. 18-19.) Rather than address that argument, Defendants suggest—incorrectly—that Plaintiff has the burden to show there was *no* insolvency. (Opp. 23-24.) That is backwards: having asserted fraudulent transfer as a defense, Defendants carry the burden of pleading insolvency. *See Perez v. Gordon & Wong Law Grp., P.C.*, 2012 WL 1029425, at *11 (N.D. Cal. March 26, 2012). They have not done so.

While Defendants argue that the proper rubric is fair market value rather than generally accepted accounting principles (Opp. 24), Defendants fail to allege insolvency under either approach. (Mot. 18-19.) To begin, even if Defendants are "correct that GAAP are not the controlling principles for purposes of insolvency, GAAP may still be relevant to the insolvency determination." *See Gansman v. Tanenbaum*, 2024 WL 694111, at *1 (N.D. Cal. Feb. 20, 2024) (Freeman, J.). Defendants do not address this authority or explain why GAAP treatment of HTM securities is not relevant here. And Defendants fare no better under their preferred fair market approach, which requires showing SVB's liabilities exceeded its assets using a fair valuation. *See In re Bay Plastics, Inc.*, 187 B.R. 315, 330 (Bankr. C.D. Cal. 1995). Defendants do not make *any* allegation about the fair value of SVB's assets or liabilities, much less allege that the fair value of SVB's liabilities exceeded its assets at the time the dividend was paid, or that SVB became insolvent under this test because of the dividend. *See Lachapelle v. Kim*, 2015 WL 7753235, at *6-7 (N.D. Cal. Dec. 2, 2015) (granting motion to dismiss constructive fraudulent transfer claims where plaintiffs failed to plead facts supporting insolvency). To the contrary, SVBFG reported that SVB's equity exceeded its liabilities (including unrealized losses) as of December 31, 2022—mere days after the dividend was paid. (Mot. 19.) The Court may take judicial notice of the fact that SVBFG made these representations in an SEC filing. *See Troy Grp., Inc. v. Tilson*, 364 F. Supp. 2d 1149, 1152 (C.D. Cal. 2005). Because SVB's financial condition is an element of the constructive fraudulent transfer defense, Defendants must allege more than "bare statements reciting mere legal conclusions." *Fishman v. Tiger Nat. Gas Inc.*,

2018 WL 4468680, at *3 (N.D. Cal. Sept. 18, 2018). Defendants have not done so. The constructive fraudulent transfer defense should be stricken.

## V. FDIC-R2 is judicially estopped from asserting any Affirmative Defenses.

FDIC-R2 repeatedly represented to the Bankruptcy Court that it "has no right of setoff" and is otherwise unable to satisfy the basic requirement of mutuality required to assert setoff. (Mot. 20-21); *see supra* Section I. Defendants respond only that "FDIC-R2's position on this issue has been entirely consistent," that "it had no setoff rights only because it had no liability to SVBFT in the first place." (Opp. 10.) Defendants miss the point. Having taken one position in one forum, a party cannot turn around and assert a contrary position in another forum. *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 784 (9th Cir. 2001).

## VI. Defendants' remaining Affirmative Defenses should be stricken.

Defendants' remaining defenses should be stricken as inadequately plead. (Mot. 21.) Defendants rely on *Jensen v. Thomas*, (Opp. 25), which makes clear that it adopts the minority position in concluding "that affirmative defenses are not subject to the heightened pleading requirements of *Twombly* and *Iqbal*." *Jensen*, 2024 WL 5295012, at *2 (N.D. Cal. Aug. 15, 2024) (citation omitted). The "vast majority of courts" require that affirmative defenses satisfy the heightened pleading standard and reject "bare statements" supporting claims. *See Hall-Johnson v. Citibank*, N.A., 2024 WL 3907037, at *2 (N.D. Cal. Aug. 19, 2024); *Ochoa v. City of San Jose*, 2022 WL 1619152, at *2 (N.D. Cal. May 23, 2022) (Freeman, J.). Defendants' reliance on *Garcia v. Salvation Army*, 918 F.3d 997 (9th Cir. 2019) for the proposition that "fair notice" is sufficient, (Opp. 7), is unavailing as that case only addresses whether a claim raised for the first time at summary judgment is preserved, not whether a claim survives a motion to strike. Defendants' Affirmative Defenses Ten, Eleven, Twelve, Fourteen, Eighteen, Twenty-Two, and Twenty-Four should therefore be stricken.[2]

---

[2] Defendants have voluntarily withdrawn Affirmative Defenses Seven, Eight, Nine, Thirteen, Fifteen, Sixteen, Seventeen, Nineteen, Twenty, Twenty-One, Twenty-Two, and Twenty-Five. (Opp. 25 n.2.)

**CONCLUSION**

For these reasons, Plaintiff respectfully requests that the Court grant the Motion.

Dated:   April 10, 2025

Respectfully submitted,

*/s/ Elliot Moskowitz*
Jonathan K. Chang (SBN 355907)
  jonathan.chang@davispolk.com
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, California 94063
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111

Marshall S. Huebner (admitted *pro hac vice*)
Elliot Moskowitz (admitted *pro hac vice*)
Kathryn S. Benedict (admitted *pro hac vice*)
Nicholas D'Angelo (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800

Robert A. Van Nest (SBN 84065)
  rvannest@keker.com
Jan Nielsen Little (SBN 100029)
  jlittle@keker.com
Julia L. Allen (SBN 286097)
  jallen@keker.com
Maya P. James (SBN 318554)
  mjames@keker.com
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, California 94111
Telephone: (415) 391-5400
Facsimile:  (415) 397-7188

*Attorneys for Plaintiff SVB Financial Trust*