KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST - # 84065
rvannest@keker.com
JAN NIELSEN LITTLE - # 100029
jlittle@keker.com
JULIA L. ALLEN - # 286097
jallen@keker.com
MAYA JAMES - # 318554
mjames@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Plaintiff SVB FINANCIAL
TRUST

DAVIS POLK & WARDWELL LLP
Marshall S. Huebner (*pro hac vice*)
marshall.huebner@davispolk.com
Elliot Moskowitz (*pro hac vice*)
elliot.moskowitz@davispolk.com
Kathryn S. Benedict (*pro hac vice*)
kathryn.benedict@davispolk.com
Nicholas D'Angelo (*pro hac vice*)
nicholas.dangelo@davispolk.com
450 Lexington Avenue
New York, NY 10017
Telephone:    212 450 4000

DAVIS POLK & WARDWELL LLP
Jonathan K. Chang - # 355907
jonathan.chang@davispolk.com
900 Middlefield Road
Redwood City, CA 94063
Telephone:    650 752 2000

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| SVB FINANCIAL TRUST,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Silicon Valley Bank, et al.,<br><br>Defendants. | Case No. 5:24-cv-01321-BLF<br>Case No. 5:23-cv-06543-BLF<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:    June 5, 2025<br>Time:    11:00 a.m.<br>Dept.:    Courtroom 3 – 5th Floor<br>Judge:    Hon. Beth Labson Freeman<br><br>Date Filed:  March 5, 2024<br><br>Trial Date:  July 13, 2026 |
| SVB FINANCIAL TRUST,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION,<br><br>Defendant | |

2968242

Pursuant to Civil Local Rule 16-10(d), the Standing Order for All Judges of the Northern District of California, and the Court's Standing Order, Plaintiff SVB Financial Trust ("SVBFT") and Defendants Federal Deposit Insurance Corporation, in its corporate capacity ("FDIC-C"), Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank ("FDIC-R1") and Silicon Valley Bridge Bank, N.A. (collectively, "FDIC-R") (together with FDIC-C, the "FDICs") (together with SVBFT, the "Parties") jointly submit this Joint Case Management Statement in connection with the June 5, 2025 case management conference.  Because Case No. 5:23-cv-06543-BLF against FDIC-C is stayed pursuant to the Court's so-ordering of the May 28, 2025 Stipulation (FDIC-R Action, Dkt. 208), FDIC-C takes no position on any of the issues discussed below.

## I.    NARROWING OF ISSUES

### SVBFT's Position

This week, the Parties significantly streamlined these consolidated cases and narrowed the issues for the Court to decide to just this: whether and to what extent the FDIC-R's affirmative defenses reduce or extinguish its now stipulated liability to SVBFT for breach of contract (Count One).  In a stipulation filed May 28, 2025 (FDIC-C Action, Dkt. 189; FDIC-R Action, Dkt. 205) ("May 28, 2025 Stipulation"), the Parties agreed that FDIC-R's liability to SVBFT under Count One is $1,710,000,000, subject to any reduction based on the FDIC-R1's Preserved Defenses— which are themselves a subset of the affirmative defenses the FDICs initially pled.[1]  And FDIC-C agreed to unconditionally guarantee the payment of this amount, backed by the full faith and

---

[1] The Preserved Defenses consist of: Setoff For Aiding and Abetting Breaches of Fiduciary Duty (Affirmative Defense No. 1); Setoff for SVB Financial Group's Liability For Acts of its Agents (Affirmative Defense No. 2); Setoff For Negligence (Affirmative Defense No. 3); Unclean Hands (Affirmative Defense No. 4); Unjust Enrichment (Affirmative Defense No. 5); Constructive Fraudulent Transfer (Affirmative Defense No. 6); Precluded By Contract (Affirmative Defense No. 10); Precluded by Immunity (Affirmative Defense No. 11); and *In Pari Delicto* (Affirmative Defense No. 14).

credit of the United States, at the time of final judgment.  In return, SVBFT agreed to dismiss all of its claims against FDIC-R (except the breach of contract claim against FDIC-R1), with prejudice, and to stay its case against FDIC-C.  Thus, the Court need not adjudicate any of SVBFT's affirmative claims, including whether SVBFT is entitled to recover the full amount of its deposits based on the promissory estoppel claim asserted against the FDIC-C, the import of the Systemic Risk Exception, or even which entity (FDIC-R or FDIC-C) is responsible for denying SVBFT access to its Account Funds.  Instead, the only issues left to litigate and decide are the validity of FDIC-R's Preserved Defenses, and their impact—if any—on FDIC-R's now stipulated liability.

### FDIC-R1's Position

SVBFT abandoned their promissory estoppel claim and request for $1.93 billion—after consuming substantial judicial and party resources for a year litigating those claims—as part of a stipulation staying and ultimately dismissing the FDIC-C and the FDIC-R2 in exchange for a commitment to pay a judgment, if any, after a complete resolution of the FDIC-R1's affirmative defenses.  The stipulation obviated the need for just a few depositions concerning a two-week period on which SVBFT based its promissory estoppel claim.  But this stipulation did not materially streamline or simplify the most complicated part of the case.  Indeed, the bulk of the case remains and is factually complex, involves millions of documents, billions of dollars in setoffs, and requires more than 20 fact depositions on the mismanagement of SVB's securities portfolio and imprudent payment of a bank-to-parent dividend at a time when SVB was under financial distress.  These defenses were timely filed in January 2025, less than six months ago. Extensive fact depositions and expert discovery regarding negligent and grossly negligent conduct by SVB and Holding Company officers and directors over a multi-year period remain to be completed.

## II.    CASE MANAGEMENT CONFERENCE

### SVBFT's Position

Given the important issues that the Parties have raised in this joint statement for discussion during the June 5 case management conference, SVBFT respectfully requests that the

Court hold the June 5 case management conference in person; to the extent the Court is unavailable for an in-person hearing on June 5, SVBFT requests that the Court keep the June 5 date and proceed virtually so that the Parties have the benefit of the Court's guidance on these issues as soon as practicable.

**FDIC-R1's Position**

FDIC-R1 defers to the Court's preference for handling of the June 5 case management conference and welcomes the opportunity to present its position in any format. FDIC-R1 understands that the Court ordered a Zoom webinar hearing. To the extent the Court instead decides an in-person hearing would be more helpful, FDIC-R1 welcomes that opportunity.

**III. SCHEDULING**

**SVBFT's Position**

Given that the Parties have substantially narrowed the issues that remain to be resolved, leaving only the need to adjudicate FDIC-R1's Preserved Defenses, SVBFT respectfully requests that the Court accelerate the bench trial currently scheduled for July 13, 2026, to a date closer in time to the February 5, 2026 summary judgment hearing, which would permit the Court to resolve outstanding issues of fact (if any) soon after resolving any matters presented for adjudication at the summary judgment hearing. To the extent the Court determines that granting summary judgment is appropriate, the Court may vacate the trial date, or, alternatively, go forward to a bench trial to resolve any outstanding issues of fact that remain. Adjudicating the Preserved Defenses at the earliest available time would limit the ongoing prejudice suffered by SVBFT as a result of prejudgment interest not being available in these actions.

The current consolidated case schedule is set forth below alongside SVBFT's proposed accelerated schedule:

| Event | Date | SVBFT Proposed Date |
|---|---|---|
| Close of Fact Discovery | July 25, 2025 | July 25, 2025 |
| Opening Expert Reports | September 18, 2025 | September 18, 2025 |
| Rebuttal Expert Reports | October 22, 2025 | October 22, 2025 |
| Close of Expert Discovery | December 10, 2025 | December 10, 2025 |
| Motions for Summary Judgment | December 31, 2025 | December 31, 2025 |
| MSJ opposition(s) | January 14, 2026 | January 14, 2026 |
| Reply to MSJ | January 21, 2026 | January 21, 2026 |
| Hearing on MSJs | February 5, 2026 | February 5, 2026 |
| Daubert Motion(s) | TBD | TBD |
| Opposition(s) to Daubert Motion(s) | TBD | TBD |
| Replies to Daubert Motion(s) | TBD | TBD |
| Motions *in limine*, if any | April 10, 2026 | TBD |
| Oppositions to Motions *in limine*, if any | April 23, 2026 | TBD |
| Hearing on Daubert Motion(s) | TBD (no later than May 14, 2026) | TBD |
| Joint Pretrial Statement and Proposed Order | April 23, 2026 | TBD |
| Proposed Findings of Fact and Conclusions of Law | April 23, 2026 | TBD |
| Trial brief (if any) | April 23, 2026 | TBD |
| Final Pretrial Conference | May 7, 2026, 1:30 pm | TBD |
| Trial (10 days) | July 13, 2026 | February or March 2026 subject to the Court's availability |

FDIC-R1's proposal below that the Court extend the case schedule by at least five months does not comport with reality: it ignores the substantial progress that the Parties have made in completing document discovery, scheduling depositions (which are all currently set to go forward before the current close of fact discovery), and in narrowing the dispute pursuant to the May 28, 2025 Stipulation.  FDIC-R1 further mischaracterizes the developments since the February 6, 2025 Case Management Conference on several issues, which SVBFT addresses in turn.

**Depositions.**  The fact that FDIC-R1 dragged its feet and failed to notice a single deposition until May 7, 2025—three months after the February 6, 2025 case management conference—only demonstrates its attempt to manufacture delay and avoid final resolution of FDIC-R1's Preserved Defenses.  And even with the FDIC-R1's delay in noticing any depositions, the majority of the former directors and officers have confirmed or offered dates for deposition prior to the July 25 close of fact discovery, as expected.  To date, the Parties have confirmed dates for sixteen of the twenty depositions that the FDIC-R1 has noticed that remain relevant following the May 28, 2025 Stipulation.  For the remainder, counsel for the witnesses have been conferring with the Parties to identify dates that the witnesses are available.  Not a single witness has refused to be deposed prior to July 25.  Nor has the FDIC ever indicated—until this filing—that it is unwilling or unable to accommodate the dates identified by the witnesses; to the contrary, it confirmed on May 28 that the depositions would go forward on those dates.  (From its end, SVBFT has always been—and still is—prepared to go forward on the noticed and scheduled dates.)

Following the February 6, 2025 case management conference, SVBFT repeatedly asked that the FDIC-R identify the ten witnesses it intended to depose so that the Parties could confer in good faith and efficiently on the additional depositions that would be necessary beyond the default limit.  The FDIC-R initially identified 36 witnesses, and only as part of the joint letter brief procedures before Judge DeMarchi did it reduce that number to 30 witnesses.  As of the date of the discovery hearing before Judge DeMarchi on deposition limits, April 30, 2025, the FDIC-R had not noticed a single deposition.  At the hearing, Judge DeMarchi warned FDIC-R that they needed to start scheduling depositions "right away" because there was "no guarantee" that this

1    Court would extend the close of fact discovery beyond July 25.  Apr. 30 Hr'g Tr. at 17:6-8;

2    17:23-18:2.  Only after that hearing did the FDIC-R1 finally issue 22 subpoenas (two of which

3    are now moot following the May 28, 2025 stipulation).  The fact that the witness depositions are

4    now primarily concentrated in July is entirely a problem of FDIC-R's own making.  And there is

5    no reason that the FDIC-R—which is represented by three different law firms—cannot now live

6    with this timeline.

7    **Document Discovery.**  FDIC-R1 suggests that the case schedule should be extended in

8    part due to document production issues.  That position is baseless: the sole issues that remains for

9    adjudication in this action relate to FDIC-R1's Preserved Defenses, and the FDIC-R1 has had the

10   Bank ESI data (over 22 million documents) relevant to the Preserved Defenses since ***2023***, and

11   the FDIC-R1 issued administrative subpoenas for additional documents from the former directors

12   and officers in ***January 2024*** (the same documents that the FDIC-R1 had had for months and

13   months and were produced to SVBFT in this litigation in February 2025).  Simply put, FDIC-R

14   has had all of the documents that are the basis for its Preserved Defenses for over a year.

15   Documents that were produced by SVBFT after the February 6, 2025 case management

16   conference consist almost entirely of post-bank closure documents that are irrelevant to the

17   Preserved Defenses.  The pre-closure documents that SVBFT produced after the February 6, 2025

18   case management conference consist almost exclusively of board materials that were already in

19   the Bank ESI data.  That is, the vast majority of the pre-closure documents that SVBFT produced

20   after the February 6, 2025 case management conference are effectively re-productions of

21   materials that FDIC-R1 has had access to for several years.

22   FDIC-R1's recently raised dispute regarding a small set of documents that SVBFT has

23   designated as subject to exclusive privilege is just another example of FDIC-R1's efforts to

24   manufacture delay.  SVBFT served its privilege log identifying these documents on April 9.  The

25   FDIC-R1 then waited over six weeks, until May 23, on the eve of submitting this statement, to

26   file the nine-page motion with Judge DeMarchi challenging that early April privilege assertion.

27   Regardless, FDIC-R1's challenge is not a basis to change the existing case schedule: it affects a

28   small number of documents, the issue will be heard on June 24 (weeks before the majority of the

depositions are even scheduled to go forward), and there is no basis for challenging SVBFT's assertion of privilege in any case.

**Expert Discovery.**  FDIC-R1 suggests that the existing stipulated expert discovery schedule "does not realistically account for the expert opinions and expert depositions relating to the FDIC-Rs' affirmative defenses."  That position makes no sense given that the FDIC-R1 stipulated to the existing expert discovery schedule on February 28, 2025 knowing full well the scope of its alleged affirmative defenses that were filed on January 10, 2025.  (FDIC-R Action, Dkt. No. 169.)  Since stipulating to that expert discovery schedule, the scope of expert discovery has only narrowed, not enlarged, pursuant to the May 28, 2025 Stipulation.

**The Officer Action.**  SVBFT includes below in the Bifurcation Section the reasons why the Preserved Defenses, if any, that survive the Motion to Strike should proceed without further delay.  As discussed, FDIC-R's complaints of prejudice are a result of FDIC-R1's belatedly filed lawsuit against the former directors and officers, which exists solely to delay resolution of SVBFT's claims and seeks billions of dollars that those 17 individuals simply cannot pay.

**FDIC-R1's Position**

An extension of the Court's case management deadlines is necessary given the substantial amount of oral discovery that remains to be completed concerning the FDIC-R1's affirmative defenses, the current posture of the pleadings, and the need to manage this litigation to preserve the FDIC-R1's jury trial right in the litigation against seventeen of the Bank's  former officers and directors pending before Judge Wise, *FDIC as Receiver for Silicon Valley Bank v. Becker et al.*, No. 5:25-cv-00569 ("D&O Case").  As FDIC-R proposed at the last case management conference, fact discovery should be extended to December 5, 2025 so FDIC-R1 can resolve ongoing document and privilege disputes and complete twenty-three depositions.

### A.    Developments Since the Court's February 6, 2025 Case Management Conference

At the last case management conference on February 6, 2025, this Court set July 25, 2025, as the fact discovery cutoff (Dkt. No. 157), which the Court recognized was an "ambitious schedule."  (Dkt. No. 158, February 6, 2025 Transcript of Proceedings ("Tr."), 25:9-10.)  That deadline is only six months after the FDIC-Rs filed their affirmative defenses to SVBFT's claims.

*See* Dkt. No. 135.

The Court set this deadline based, in part, on representations by SVBFT's counsel that (1) party document productions were nearly completed, and (2) the Bank's former directors and officers were ready and willing to sit for depositions.  *See* Tr. 5:15-16 ("[W]e actually are quite far along in discovery, and document discovery is nearly completed as we sit here today."); Tr. 8:14-18 ("we're going to be talking about starting depositions this month, or early next, we're in February now, and I think that they'll be a handful of people on both sides that need to be deposed"); Tr. 9:1-3 ("The Ds and Os, we're in touch with them. They're prepared to sit for depositions. They're not going to demand a lot of delay[.]"); Tr. 9:18-19 ("[T]he document production is almost complete on both sides and we're ready to start depositions."); Tr. 16:18-20 ([The directors and officers] "do intend to participate, obviously as third parties in this case and will sit for deposition.").

These representations have proven to be inaccurate.  First, party document productions were not substantially complete until April 30, 2025, which was the deadline for party documents in the FDIC-C Case.  SVBFT, the FDIC-C, and the FDIC-Rs continued to produce significant numbers of documents months after the February 6, 2025 case management conference.  SVBFT did not produce a *single* document in this case until January 29, 2025, and SVBFT has continued to produce documents into May.  There remain ongoing document disputes concerning SVBFT's document production, including SVBFT's improper exclusive privilege claims over legal advice provided to the joint Board of Directors of the Bank and holding company concerning corporate governance matters, which are at issue in this case.  Resolution of these disputes is necessary for the completion of director and officer depositions critical to the FDIC-Rs' affirmative defenses.

Second, despite SVBFT's counsel's representations, the former directors and officers have been unwilling to appear promptly for depositions.  As the Court is aware, on January 16, 2025, the FDIC-R1 filed suit against seventeen former directors and officers of the Bank ("D&Os").  Testimony from the D&Os is crucial to the FDIC-R1's affirmative defenses in this case.  The FDIC-Rs first requested deposition dates from these witnesses in March, again in April, and then again in May.  The FDIC-Rs requested all available dates in May, June, and July for these depositions, so

contrary to SVBFT's claims, the FDIC-R timely requested these depositions months in advance but could not get third party agreement due to the D&O Case. The D&Os refused to even provide proposed dates until very recently. For months, the D&Os objected to appearing for depositions until the FDIC-R1 produced all documents relevant to the D&O Case to them. To expedite depositions and despite their third-party status in this litigation, the FDIC-R1 produced to the D&Os millions of documents before its responses to requests for production in the D&O Case were even due. After the FDIC-Rs' threatened motions to compel, the D&Os finally recently offered tentative dates, almost entirely concentrated in a few weeks in July, for all their depositions. These proposed dates—including as many as three depositions in a single day and seven or more in a single week—are wholly unreasonable and would unnecessarily jam more than twenty depositions throughout the country into approximately twenty-three business days. The FDIC-Rs have moved diligently to request these depositions beginning in March, but their volume and importance require additional time to complete. Several third-party witnesses have yet to provide any proposed deposition dates. And most recently on May 28, former CEO Gregory Becker offered for the first time a tentative set of dates the week of July 22. Mr. Becker conditioned that date on the FDIC-R1 noticing that deposition in both lawsuits and representing that all documents that will be used in the deposition have been produced even though other directors and officers are demanding supplemental productions before their depositions. Mr. Becker has indicated he intends to take this dispute to Judge DeMarchi and has requested a lead counsel conference for early June.

Moreover, the D&Os have placed numerous unreasonable conditions on their appearance at depositions including, but not limited to, the following: (1) the D&Os contend that FDIC-R1 waives its right to take depositions of these witnesses in the D&O Case; and (2) unless the FDIC-R1 produces additional documents (which cannot feasibly be done within the current discovery schedule), the D&Os may seek to bar usage of their deposition testimony in the D&O Case. Further, the D&Os have claimed that if the FDIC-R1 does not produce more documents, then the deponents may not be able to adequately prepare, and therefore the FDIC-Rs may not obtain useful or informed testimony from these critical witnesses. The FDIC-R1 should not be forced to compromise its D&O Case in this manner to meet the existing case schedule in this case. As the

FDIC-Rs have raised several times, including in connection with the related case and consolidation motions, coordinating schedules between this action and the D&O Case is necessary to avoid these complications and inefficiencies given the relationship of triable issues and overlap in discovery.

The start of depositions in this case also have been delayed by SVBFT's failure to cooperate in negotiations over the appropriate number of depositions. In advance of the February case management conference, the FDIC-Rs raised SVBFT's refusal to agree to a reasonable and necessary increase to deposition limits given the scope of the FDIC-Rs' defenses and the number of potentially relevant witnesses, including the seventeen former D&Os. (Dkt. 150). By unreasonably limiting the number of depositions, SVBFT sought to block the FDIC-Rs from developing sufficient evidence for their defenses because SVBFT has access to all the former D&Os and has represented they require no depositions to address the FDIC-Rs' defenses. At the February 6, 2025 case management conference, the Court directed the Parties to substantively discuss potential deponents to reach agreement, stated that more than ten depositions would be appropriate, and expected that SVBFT would object to only a few depositions. (Tr. at 26:19-27:15.) Over three meet and confer sessions, SVBFT refused to engage substantively in that witness-by-witness process, resulting in an April 30, 2025 hearing before Judge DeMarchi, after which the Parties stipulated that the FDIC could take 23 Rule 30(b)(1) depositions. (Dkt. Nos. 182, 189, 196-98.) No party has taken a deposition yet; for their part, the FDIC-Rs could not begin taking depositions until they knew at least the approximate number of depositions that they would be permitted so they could prioritize which depositions to take. SVBFT could have agreed to a reasonable number of depositions months earlier to facilitate the process, but SVBFT chose to litigate that issue before agreeing to 23 depositions at the hearing. One week after the April 30, 2025 hearing before Judge DeMarchi, the FDIC-Rs served twenty-two deposition notices because the FDIC-Rs then knew the scope of permitted depositions. Certain third parties including former Bank employees and consultants are confirmed and directors and officers have tentatively offered dates with the above referenced improper conditions. Efforts to secure these and additional depositions are ongoing, but the timeframe is far too compressed to reasonably complete the depositions in the current schedule.

**B.      Preservation of the FDIC-R1's Jury Trial Right in the D&O Case**

As this Court has recognized, the jury trial in the D&O Case should proceed before the bench trial of the FDIC-Rs' affirmative defenses in this case. (Tr. 14:8-16.) A contrary approach risks depriving the FDIC-R1 of its jury trial right. As the Court noted when denying the FDIC-Rs' motion to consolidate, "through case management the Court can ensure that the FDIC is not prejudiced by the progress of the Becker Action vis-à-vis this action." (Dkt. No. 194, at 3.) Accordingly, the trial on the FDIC-Rs' defenses should follow the jury trial in the Becker Action. That case remains at the pleading stage with a hearing on pending motions to dismiss set for September 10, 2025, and an initial case management conference set for September 9, 2025.

Given the timing of the D&O Case, concentrating twenty-three depositions—which would benefit from coordination with the other action—plus depositions taken by SVBFT into July 2025 and completing expert discovery in 2025 is both prejudicial to the FDIC-Rs and wholly unnecessary given that trial of this matter must await the completion of the D&O Case and its jury trial, which will surely take longer than this current case schedule.

**C.      A Meaningful Extension of the Court's Case Management Deadlines is Warranted**

The current July 25 fact discovery deadline should be extended for several reasons. First, SVBFT's motion to strike the FDIC-Rs' affirmative defenses remains pending following argument in early May. The Parties should have the benefit of the Court's ruling on that motion to inform fact depositions. Yet under the current schedule, the Parties may not have the Court's ruling until after most, if not all, of fact discovery is completed. Moreover, the Parties need that ruling to inform and direct expert work. On the current schedule, opening expert reports are due on September 18.

Second, the scope and complexity of depositions concerning the FDIC-Rs' affirmative defenses require additional time. All the FDIC-Rs' witnesses are third parties, virtually all of whom are cooperating with SVBFT, so there is an extreme asymmetry in the Parties' need for depositions and resulting positions on the discovery schedule. The FDIC-Rs are working expeditiously to take the twenty-three fact depositions concerning their defenses, but they need to resolve document disputes with the D&Os and coordinate those depositions with the D&O Case, to the extent

12

1    possible.  No depositions by any party have taken place.  Requiring the FDIC-Rs to depose these

2    third parties in a less than thirty-day sprint is unreasonable and prejudicial to the FDIC-Rs' ability

3    to develop evidence for their defenses in this highly significant litigation with $1.71 billion at issue.

4    Third, SVBFT's conduct has undermined its stated goal of rapidly moving this case to trial.

5    SVBFT filed two lawsuits rather than one; waited more than a year to move for consolidation of

6    those suits; chose to pursue constitutional and extra-contractual claims requiring multiple rounds

7    of motions to dismiss and hearings plus significant volumes of document production and disputes

8    on written discovery concerning those claims; wasted the Parties' and the Court's time and

9    resources on claims and processes for addressing a supposed exclusive attorney-client privilege

10   that it has since largely abandoned; deprived the FDIC-Rs of the ability to review millions of Bank

11   documents for over a year based on privilege objections; delayed its own document production and

12   meaningful negotiations on custodians and search terms for the FDIC-Rs' document production of

13   Bank documents; moved to strike the FDIC-Rs' affirmative defenses; refused to negotiate

14   meaningfully on an appropriate number of depositions; and represented that the D&Os would sit

15   for depositions even though the D&Os' counsel refused to even provide deposition availability for

16   months afterwards and conditioned attendance on unreasonable conditions.  SVBFT's own

17   litigation tactics have consumed substantial party and judicial resources rather than simplifying the

18   case for trial.  SVBFT cannot repeatedly complicate the case's progress and then claim prejudice

19   of its own making.

20   Fourth, an extension is particularly warranted because this case should not proceed to trial

21   before the D&O Case due to the FDIC-R1's jury trial right.  Concentrating fact and expert discovery

22   into a very narrow period will not speed up the ultimate resolution of this case because trial in this

23   case must await the jury trial in the D&O Case.  At a minimum, the fact discovery schedule should

24   be sufficiently extended so the FDIC-Rs can address any document disputes with the D&Os and

25   attempt to coordinate those depositions with the D&O Case and take the depositions over a

26   reasonable period of time.

27   Based on the foregoing factors, the FDIC-R1 submits that the fact discovery deadline should

28   be extended to December 5, 2025.  This is the same fact discovery deadline that the FDIC-Rs

proposed at the February case management conference.  Given the scope of complex factual issues, the present posture and remaining oral discovery to be completed, and need for coordination with the D&O Case, a December 5, 2025 fact discovery cutoff remains an aggressive deadline that protects the FDIC-R1's need to secure substantial third-party testimony to prove its defenses.

The FDIC-R1 proposes that subsequent expert and summary judgment deadlines then flow from that date as the FDIC-Rs previously proposed.  At the Court's instruction, the FDIC-Rs stipulated to the highly compressed, current expert discovery schedule based on the trial and summary judgment dates set by the Court.  The FDIC-Rs have always taken the position, consistent with the February case management conference, that a longer expert schedule is needed given the scope of expert opinions and expert depositions relating to the FDIC-R1's affirmative defenses. The FDIC-R1 anticipates that each party will have multiple experts on topics that include the standard of care governing the Bank and SVBFT's shared directors and officers, mismanagement of the Bank's held-to-maturity and available-for-sale securities portfolios, payment of the imprudent bank-to-parent dividend, the Bank's insolvency, and the billions in damages caused by SVBFT's misconduct.  Sufficient time for experts to review the factual record, prepare opening and rebuttal reports, and conduct expert depositions is needed.  In short, the current expert schedule is not feasible given the scope of anticipated expert reports and discovery, particularly based on the FDIC-R1's affirmative defenses.

The FDIC-R1's proposed case schedule is attached as Exhibit 1, which is the same schedule that the FDIC-Rs proposed prior to the February 6, 2025 case management conference.  The Parties, third parties, and the Court will benefit from a realistic case schedule that permits an efficient resolution of this matter.

SVBFT's unreasonable request to accelerate the trial date has been twice rejected and is plainly absurd.  It requests the trial to occur in the same month as the summary judgment hearing without any proposal for pretrial processes.  SVBFT merely makes this request in hopes the Court will reject the FDIC-R1's request to extend the discovery schedule.  But unlike SVBFT's request, the FDIC-R1's proposal is grounded in the objective status of discovery and the significant scope of work remaining to complete fact and expert discovery.  The Parties have worked at a rapid

1  pace to conduct discovery on the FDIC-Rs' defenses as quickly as possible since their filing in

2  January. But completing over twenty depositions prior to July 25 while a pleadings-based motion

3  remains pending and third parties are raising substantial issues is not feasible or fair to the FDIC-

4  R1's ability to conduct discovery to prove its defenses. And it is not remotely justified by any

5  extraordinary exigency.

6  **IV.    BIFURCATION**

7        In a recent hearing, May 1, 2025 Hr'g Tr. 62:11-63:4, the Court raised the possibility of

8  bifurcating SVBFT's claims and FDICs' affirmative defenses in this matter, where SVBFT's

9  claims against the FDICs would proceed on the current case schedule, and the FDICs' affirmative

10  setoff defenses would be stayed pending the outcome of *Federal Deposit Insurance Corporation*

11  *as Receiver for SVB v. Becker, et. al.*, No. 5:25-cv-569 (N.D. Cal.) (the "Officer Action"). Under

12  this proposal, the Court suggested that it might order the FDIC to place any amount owed under

13  SVBFT's affirmative claims in an interest-bearing escrow account until the FDIC's affirmative

14  defenses are resolved. The Parties take the following positions:

15        **<u>SVBFT's Position</u>**

16        In light of the May 28, 2025 Stipulation, bifurcation of SVBFT's affirmative claims from

17  FDIC-R1's Preserved Defenses is not required because SVBFT's affirmative claims have already

18  been resolved, and the only remaining issues to be adjudicated are FDIC-R1's Preserved

19  Defenses. SVBFT objects to delaying the resolution of FDIC-R1's Preserved Defenses until after

20  the trial in the Officer Action.

21        As a threshold matter, delaying resolution of the Preserved Defenses is unnecessary

22  because the Court should grant SVBFT's pending motion to strike the FDICs' affirmative

23  defenses. (*See* FDIC-R Action, Dkt. 160.) But even if the FDICs' setoff defenses were to

24  survive, the Court still should not delay adjudication of the Preserved Defenses pending the

25  Officer Action because doing so would unfairly and prejudicially delay resolution of this action.

26  SVBFT filed its claims against the FDICs as soon as it was legally able to, in 2023 and 2024.

27  SVBFT's claims to recover its money have now been pending in this Court for over a year, with

28  trial set for July 13, 2026. The Parties have expended significant efforts to keep this consolidated

1  action on track and have streamlined the issues in dispute by resolving liability on SVBFT's

2  affirmative claims, leaving only the FDIC-R1's Preserved Defenses for adjudication.  The Parties

3  have completed document discovery, including for all of the Preserved Defenses, and fact

4  discovery will close in less than two months.

5         There is also no good cause to delay trial on the Preserved Defenses.  Nothing that

6  happens in this consolidated action, including the resolution of the Preserved Defenses, will bind

7  the director and officer defendants in the Officer Action.  As this Court has held, the FDIC-R

8  Action and the Officer Action "do not concern substantially the same parties, property,

9  transaction, or event."  FDIC-R Action, Dkt. 194 at 3.  Moreover, the *res judicata* doctrines of

10  claim preclusion and issue preclusion can only be invoked against a party to both proceedings, or

11  against nonparties who meet narrow exceptions, none of which are applicable here.  *See Taylor v.*

12  *Sturgell*, 553 U.S. 880, 895 (2008) (narrowly defining the preclusive effect of a federal court

13  judgment on nonparties).  Because the directors and officers are not parties to this consolidated

14  action, and SVBFT does not purport to represent their interests (and each defendant in the Officer

15  Action is represented by their own separate counsel), they cannot be bound by the Court's

16  adjudication of the FDIC-R1's Preserved Defenses in this consolidated action.  The reverse is also

17  true.  No issue resolved against the directors and officers in the Officer Action can bind SVBFT

18  in this case.  Thus, no efficiency is gained by allowing the Officer Action to proceed first, even if

19  issues were to overlap.  This case and the Officer Action likewise do not satisfy the separate

20  "identity of claims" requirement for claim preclusion.  *Turtle Island Restoration Network v. U.S.*

21  *Dep't of State*, 673 F.3d 914, 918 (9th Cir. 2012) (evaluating whether claims involve

22  "substantially the same evidence," "infringement of the same right," and "arise out of the same

23  transactional nucleus of facts").  As set forth in detail in SVBFT's opposition to FDIC-R's motion

24  to consolidate, the factual and evidentiary issues in the Preserved Defenses will be narrowly

25  focused on SVBFT's purported duties and asserted failures in supervising SVB, and not the

26  alleged breach of duties of 17 former directors and officers at issue in the Officer Action.  *See*

27  FDIC-R Action, Dkt. 180, at 6–7.  This Court's orders denying FDIC-R's motion to relate the

28  cases and to coordinate this action with the Office Action underscore that point.  (FDIC-R Action,

1  Dkt. 194 at 3; FDIC-R Action, Dkt. 142.)

2        FDIC-R will not be prejudiced if the Preserved Defenses are heard in this action first, and

3  to the extent FDIC-R claims prejudice, it is of their own making.  FDIC-R delayed filing its

4  lawsuit against the former directors and officers for over a year and seeks billions from

5  individuals who cannot possibly pay the amount sought.  Issue preclusion also will only bind the

6  FDIC-R in the Officer Action on issues that were "necessarily decided" in this case.  *Oyeniran v.*

7  *Holder*, 672 F.3d 800, 806 (9th Cir. 2012).  The significant differences between the Preserved

8  Defenses and the claims in the Officer Action make it unlikely that there will be any overlapping

9  "necessarily decided" issues in this action.  Even assuming FDIC-R is bound on some issue

10  decided in this action, that would not "interfere" with FDIC-R1's Seventh Amendment jury trial

11  right in the Officer Action or cause any prejudice.  This issue was presented to the Supreme Court

12  in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979).  The Court held that the Seventh

13  Amendment does not prevent a court from adjudicating equitable claims even if that adjudication

14  would preclude subsequent relitigation of the same factual issues in a jury trial.  439 U.S. at 336–

15  37.  As a result, courts in this district have refused to stay the resolution of equitable claims

16  pending a jury trial in other actions; "*Parklane Hosiery* . . . counsels against" such a result.  *See,*

17  *e.g.*, *United States v. Cathcart*, 2008 WL 4279716, at *1–*2 (N.D. Cal. Sept. 12, 2008)

18  (Hamilton, J.).  Indeed, Judge Orrick has described "delaying resolution" of a "significantly more

19  advanced" action slated for a nonjury determination of a shared issue in favor of a jury trial action

20  filed a year later as an "inefficient [and] absurd result."  *Complete Genomics, Inc. v. Illumina,*

21  *Inc.*, 2021 WL 1197096, at *3–*4 (N.D. Cal. Mar. 30, 2021).  Just so, here.

22        Finally, during the pendency of this consolidated action, prejudgment interest does not

23  accrue due to the FDICs' claim to sovereign immunity, *see* FDIC-R Action, Dkt. 108, at 11.  As a

24  result, every day of delay in resolving FDIC-R1's Preserved Defenses prejudices SVBFT due to

25  the lost time value of its money.  The Court's suggestion that the funds could be placed in an

26  interest-bearing escrow account during any delay in the trial of the Preserved Defenses in this

27  action would mitigate—but not cure—the loss of earning potential on SVBFT's funds.  And

28  delaying adjudication of the FDIC-R1's Preserved Defenses pending resolution of the Officer

Action will result in substantial delay, as the Officer Action is in its infancy.  Despite launching an investigation into potential claims in **2023**, FDIC-R1 chose to delay filing the Officer Action until January 2025.  *See* Officer Action, Dkt. 1.  The motions to dismiss in the Officer Action were recently filed and will not be heard until September 10, 2025, *see* Officer Action, Dkts. 99-100, 102-105, and the initial case management conference is currently scheduled for September 9, 2025, *id.* Dkt. 110.  The Court should not force SVBFT to endure a potential multi-year delay for the Officer Action to get off the ground in order to reach a final adjudication of this action.

FDIC-R1 chose not to pursue and waived its claims against SVBFT in bankruptcy, then delayed a year after SVBFT filed its claims in the FDIC-R Action before initiating the Officer Action.  Neither the Seventh Amendment nor principles of fairness support derailing the resolution of SVBFT's claims as a result of FDIC-R1's own choices.

### FDIC-R1's Position

The FDIC-R1 agrees that bifurcation is unnecessary now that the Parties have reached the stipulation, but SVBFT's contentions on this issue are not really about "bifurcation."  SVBFT instead seeks to rush the FDIC-Rs' defenses to trial at a breakneck pace, inhibit coordination of discovery with the D&O Case, and override the FDIC-Rs' constitutional right to a jury trial in that action.  The Court has already held that "through case management the Court can ensure that the FDIC is not prejudiced by the progress of the Becker Action vis-à-vis this action."  (Dkt. 194 at 3.)  Yet this sort of prejudice is exactly what SVBFT advocates through its spurious arguments about bifurcation.

As explained above, an extension of the case-management deadlines is necessary given the pace of and ongoing disputes about document production, efforts to coordinate depositions between the D&O Case and this action, and SVBFT's own litigation tactics.  SVBFT's proposal to shorten rather than modestly extend the discovery schedule entirely ignores these issues.  By advocating for an unnecessarily compressed schedule that will deprive the FDIC-Rs of their right to develop critical testimony from the D&Os, SVBFT invites the sort of prejudice to the FDIC-Rs that the Court stated it would avoid by coordinating the cases through case management.

SVBFT also improperly asks the Court to ignore the FDIC-R1's jury-trial rights in the

D&O Case.  There is no dispute that the FDIC-R1 has a right to a jury trial in the D&O Case or that the breaches of fiduciary duty asserted as the basis for its affirmative defenses are the same breaches of fiduciary duty alleged in the D&O Case.  Because these breaches are the same, any findings about these breaches in this action could be argued to have preclusive effect in the D&O Case, thereby preventing the jury in that action from assessing the officers' and directors' liability for these breaches.

SVBFT has no answer to this risk of depriving the FDIC-R1 of its constitutional jury trial right.  Instead, it continues to mischaracterize the defenses by falsely suggesting that they concern SVBFT's "supervision" of the Bank "and not the alleged breach of duties of 17 former directors and officers," when in fact the D&Os' breaches are the predicate for the defenses. Courts have repeatedly held that a jury trial should precede a bench trial—even in cases filed years apart— where the cases involve "resolution of essentially the same factual question," as they do here.  *Ill. Union Ins. Co. v. Intuitive Surgical, Inc.*, 179 F. Supp. 3d 958, 959-62 (N.D. Cal. 2016).

Nothing in the cases that SVBFT has cited changes this conclusion. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979); *United States v. Cathcart*, No. C 07-4762 PJH, 2008 WL 4279716, at *1 (N.D. Cal. Sept. 12, 2008); *Complete Genomics, Inc. v. Illumina, Inc.*, 2021 WL 1197096 (N.D. Cal. Mar. 30, 2021). The *Parklane* case concerned whether findings in a concluded equitable action have preclusive effect in an ongoing legal action where there is a right to a jury trial. *Id*. at 334-37.  *Parklane* did not address the issue before this Court, which is how the Court should sequence ongoing proceedings to protect a jury-trial right in one of the proceedings when there is no previously adjudicated bench trial.  Cases like *Illinois Union* show that courts should exercise their case-management discretion to protect the jury-trial right.  As for the *Cathart* and *Complete Genomics* cases, both are irrelevant, since those cases involved requests for complete stays of one action while another proceeds, whereas here the FDIC-R seeks only to coordinate the actions to minimize interference with its jury-trial right and the risk of prejudice from being unable to develop necessary deposition testimony.  *Complete* Genomics also involved proceedings at different stages: one case had just been filed while the other was filed a year earlier, had finished with fact discovery, and was set for a hearing on summary judgment.

1    2021 WL 1197096, at *4.  In contrast, here both the FDIC-R1's defenses and the D&O Case were

2    filed in January 2025 within six days of each other, substantial document productions have been

3    made in both actions, pleadings-based motions remain pending in both actions, and no

4    depositions have occurred in either case yet.  The cases accordingly should proceed in parallel,

5    and the jury trial right should be respected.

6         The Court also need not resolve definitively the sequencing of trials between this case and

7    the D&O Case at this juncture in any event.  That issue can and should be the subject of separate

8    briefing where it can be fully argued—as opposed to addressing and deciding the issue based on a

9    joint status report followed by a status hearing.  For present purposes, the substantial efficiency

10   benefits and the extensive oral discovery that remains to be completed are more than sufficient to

11   justify the extension of the schedule that the FDIC-Rs propose.

12        SVBFT also has no valid claim of "prejudice" from the schedule that the FDIC-Rs have

13   proposed because SVBFT cannot recover prejudgment interest from the FDIC-Rs.  As the Court

14   has already recognized (Dkt. 108), Congress has not waived the FDIC's sovereign immunity

15   against claims of prejudgment interest and therefore has denied parties a remedy against the FDIC

16   for alleged lost time value of money.  That decision reflects a deliberate policy choice to protect

17   the FDIC as a government agency performing functions in the public interest, including managing

18   the orderly resolution of failed financial institutions like the Bank.  SVBFT cannot end run this

19   congressional policy choice by demanding a highly accelerated and unworkable schedule—which

20   would prejudice the FDIC-Rs—to make up for allegedly lost time and thereby gain the very relief

21   that Congress disallowed.  Because SVBFT has no right to prejudgment interest, it cannot be

22   "prejudiced" by the unavailability of that remedy.  Otherwise, every party could demand

23   expedited consideration of claims against the FDIC on this basis—a result that Congress never

24   intended or provided for.

25        Finally, there has been no delay by the FDIC-Rs, and if anything, it is SVBFT that has

26   delayed the proceedings through its own litigation decisions about the number of parties and

27   claims to assert and discovery disputes to raise—a great many of which it has since abandoned.

28   The FDIC-R1 filed the D&O Action just six days after it filed its affirmative defenses in this

proceeding.  By statute, the FDIC-R1 had until at least March 10, 2026, to investigate and bring the claims asserted against the D&Os.  *See* 12 U.S.C. § 1821(d)(14)(A)(ii).  Here it sued more than *fourteen months* early so that its parallel contentions in the D&O Action and this case could be coordinated. SVBFT's criticism of the FDIC-R1's proactive approach is baseless—just like SVBFT's oft-repeated ad hominem attack that the FDIC-R only brought the D&O Case to delay this proceeding rather than to discharge its statutory duties.  FDIC-R1's constitutional right to a jury trial in the D&O action takes precedence over SVBFT's preference for an accelerated trial that would prejudice the FDIC-Rs' ability to develop evidence for its defenses.

Dated:  May 30, 2025

**KEKER, VAN NEST & PETERS LLP**

By:  */s/ Julia L. Allen*
ROBERT A. VAN NEST
JAN NIELSEN LITTLE
JULIA L. ALLEN
MAYA JAMES

Attorneys for Plaintiff SVB FINANCIAL TRUST

Dated:  May 30, 2025

**DAVIS POLK & WARDWELL LLP**

By:  */s/ Elliott Moskowitz*
Marshall S. Huebner
Elliott Moskowitz
Kathryn S. Benedict
Nicholas D'Angelo
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Telephone:    212 450 4000
marshall.huebner@davispolk.com
elliot.moskowitz@davispolk.com
kathryn.benedict@davispolk.com
nicholas.dangelo@davispolk.com

JONATHAN K. CHANG - # 355907
900 Middlefield Road
Redwood City, CA 94063
Telephone:    650 752 2000
jonathan.chang@davispolk.com

Attorneys for Plaintiff SVB FINANCIAL TRUST

1   Dated:  May 30, 2025

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**

By:   */s/ Eric C. Lyttle*
Eric C. Lyttle
Jonathan G. Cooper
1300 I Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 538-8000
Facsimile: (650) 538-8100
Email: ericlyttle@quinnemanuel.com
Email: jonathancooper@quinnemanuel.com

Emily Casey Warren Kapur
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100
Email: emilykapur@quinnemanuel.com

Benjamin I. Finestone
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
Email: benjaminfinestone@quinnemanuel.com

Joshua Courtney
General Commercial
865 S Figueroa Street, 10th Floor
Los Angeles, CA 90017
joshuacourtney@quinnemanuel.com

*Attorneys for Federal Deposit Insurance
Corporation in its corporate capacity*

JOINT CASE MANAGEMENT STATEMENT
Case Nos. 5:24-cv-01321-BLF / 23-cv-06543-BLF

1 | Dated: May 30, 2025

**REED SMITH LLP**

2

By:   */s/ Casey D. Laffey*
3
Zachary Kaye
Casey D. Laffey
4
Ian Turetsky
599 Lexington Avenue, Suite 22
5
New York, NY 10022
claffey@reedsmith.com
6
zkaye@reedsmith.com
ituretsky@reedsmith.com
7

Raymond A. Cardozo
8
Emily Frances Lynch
101 Second Street, Suite 1800
9
San Francisco, CA 94105
rcardozo@reedsmith.com
10
elynch@reedsmith.com
11

Kurt F. Gwynne
12
1201 N. Market Street, Suite 1500
Wilmington, DE 19901
13
kgwynne@reedsmith.com

14
Dated: May 30, 2025

**ARENTFOX SCHIFF LLP**
15

By:   */s/ Lawrence Heftman*
16
David Christopher Giles
17
Lawrence Heftman
Michael Molzberger
18
233 South Wacker Drive, Suite 7100
Chicago, IL 60606
19
david.giles@afslaw.com
lawrence.heftman@afslaw.com
20
michael.molzberger@afslaw.com
21

Lynn Fiorentino
22
44 Montgomery Street, 38th Floor
San Francisco, CA 94104
23
lynn.fiorentino@afslaw.com

24

25

26

27

28

Dated:  May 30, 2025                    By:    **BAILEY & GLASSER**

_/s/ Stephen Sorensen_____
Stephen Sorensen
Michael L Shenkman
Elliott McGraw
1055 Thomas Jefferson Street NW, Suite 540
Washington, D.C. 20007
emcgraw@baileyglasser.com
ssorensen@baileyglasser.com
mshenkman@baileyglasser.com

*Attorneys for Federal Deposit Insurance*
*Corporation, as Receiver for Silicon Valley*
*Bank and Federal Deposit Insurance*
*Corporation, as Receiver for Silicon Valley*
*Bridge Bank, N.A.*

1

## **ATTESTATION**

I am the ECF user whose identification and password are being used to file the foregoing Stipulation and Proposed Order.  Pursuant to Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from the other signatories.

Dated:  May 30, 2025                                     By:   */s/ Robert A. Van Nest*
                                                                              ROBERT A. VAN NEST

# EXHIBIT 1

**FDIC-R1's Proposed Case Management Deadlines**

| EVENT | FDIC-R PROPOSAL | CURRENT CASE SCHEDULE |
|---|---|---|
| Close of Fact Discovery | December 5, 2025 | July 25, 2025 |
| Deadline to Serve Opening Expert Reports | January 30, 2026 | September 18, 2025 |
| Deadline to Serve Rebuttal Expert Reports | March 13, 2026 | October 22, 2025 |
| Close of Expert Discovery | April 17, 2026 | December 10, 2025 |
| Deadline to File Motions for Summary Judgment | May 15, 2026 | [To Be Determined] |
| Deadline to File Oppositions to Motions for Summary Judgment | June 19, 2026 | [To Be Determined] |
| Deadline to File Replies in Support of Motions for Summary Judgment | July 17, 2026 | [To Be Determined] |
| Deadline to File Daubert Motions | May 15, 2026 | [To Be Determined] |
| Deadline to File Oppositions to Daubert Motions | June 19, 2026 | [To Be Determined] |
| Deadline to File Replies in Support of Daubert Motions | July 17, 2026 | [To Be Determined] |
| Hearing on Motion(s) for Summary judgment | [To Be Determined] | February 5, 2026 |
| Deadline to File Motions in Limine | [Based on Trial Setting] | April 23, 2026 |
| Deadline to File Opposition to Motions in Limine | [Based on Trial Setting] | April 30, 2026 |
| Deadline to File Joint Pretrial Statement | [Based on Trial Setting] | April 23, 2026 |
| Deadline to File Proposed Findings of Fact and Conclusions of Law | [Based on Trial Setting] | April 30, 2026 |
| Deadline to File Trial Brief (if any) | [Based on Trial Setting] | April 30, 2026 |
| Final Pretrial Conference | [Based on Trial Setting] | May 7, 2026 |
| Trial | [To Be Determined] | July 13, 2026 |