Raymond A. Cardozo, Esq. (Bar No. 173263)
Emily F. Lynch, Esq. (Bar No. 324055)
**REED SMITH LLP**
101 Second Street, Suite 1800
San Francisco, CA 94105
Telephone: (415) 543-8700
Email: rcardozo@reedsmith.com
Email: elynch@reedsmith.com

Kurt F. Gwynne, Esq. (admitted *pro hac vice*)
Casey D. Laffey, Esq. (admitted *pro hac vice*)
**REED SMITH LLP**
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 521-5400
Email: kgwynne@reedsmith.com
E-mail: claffey@reedsmith.com

*Counsel to the Federal Deposit Insurance
Corporation as Receiver for Silicon Valley
Bank and Silicon Valley Bridge Bank, N.A.*

Stephen Sorensen (SBN 199408)
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007
Phone: 202-463-2101
Email: ssorensen@baileyglasser.com

Lawrence H. Heftman (admitted *pro hac vice*)
David C. Giles (admitted *pro hac vice*)
Michael K. Molzberger (admitted *pro hac vice*)
**ARENTFOX SCHIFF LLP**
233 S. Wacker Dr., Suite 7100
Chicago, IL 60606
Telephone: 312-258-5500
Email: lawrence.heftman@afslaw.com
          david.giles@afslaw.com
          michael.molzberger@afslaw.com

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| SVB FINANCIAL TRUST, | Case No. 5:24-cv-01321-BLF |
| Plaintiff, | **FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR SILICON VALLEY BANK'S MOTION TO OVERRULE EXCLUSIVE PRIVILEGE OBJECTIONS** |
| v. | |
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR SILICON VALLEY BANK AND SILICON VALLEY BRIDGE BANK, N.A., | Date:  June 24, 2025 Time: 10:00 a.m. Judge: Hon. Virginia K. DeMarchi |
| Defendants. | |
| SVB FINANCIAL TRUST, | Case No. 5:23-cv-06543-BLF |
| Plaintiff, | |
| v. | **REDACTED** |
| FEDERAL DEPOSIT INSURANCE CORPORATION IN ITS CORPORATE CAPACITY, | **[UNREDACTED VERSION FILED UNDER SEAL]** |
| Defendant. | |

**NOTICE OF MOTION AND MOTION TO OVERRULE PRIVILEGE OBJECTIONS**

PLEASE TAKE NOTICE that on June 24, 2025 at 10:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Virginia K. DeMarchi, United States District Court for the Northern District of California, San Jose Division, Courtroom 3, 280 South 1st Street, San Jose, California 95133, the Federal Deposit Insurance Corporation as Receiver for Silicon Valley Bank ("FDIC-R") will move for an order overruling privilege objections by SVB Financial Trust ("SVBFT") to forty-seven documents that are relevant to this action and are being submitted with this motion for *in camera* review.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Since the failure of Silicon Valley Bank ("Bank") and the appointment of the FDIC-R as its receiver, the Bank's former holding company, now known as SVBFT, has improperly restricted the FDIC-R's use of documents possessed by the Bank based on a specious claim that SVBFT holds an exclusive claim of attorney-client privilege over some of the documents. This contention fails as a matter of law. With respect to relevant documents inappropriately withheld in this case, SVBFT and the Bank were *jointly* represented by outside and inside counsel. Any privilege therefore belongs to both entities, not to SVBFT alone.

SVBFT and the Bank received legal advice together. SVBFT had no officers, directors, or legal department of its own. The Boards of Directors of SVBFT and the Bank met jointly and were composed of the same people. The senior management and inhouse counsel of the two entities also were the same people with the same titles. The lawyers communicating with shared officers and directors of both institutions on matters relevant to both institutions represented SVBFT and the Bank, as one of the directors for SVBFT and the Bank has already testified. Under settled law, any communications with these lawyers cannot be privileged from disclosure to the Bank, since the Bank was a joint client of the lawyers, and joint clients cannot assert the attorney-client privilege in litigation against each other.

Out of thousands of improperly logged documents based on this supposed exclusive privilege, the FDIC-R has proactively identified documents that it may use in upcoming

depositions and that it is submitting with this motion for *in camera* review. These documents all reflect or relate to communications between the law firm of Sullivan & Cromwell LLP and members of the Boards of Directors of SVBFT and the Bank, or inhouse counsel for both institutions, about corporate-governance matters that affected both institutions. These communications are subject to a joint privilege—not an exclusive privilege held by SVBFT. For that reason (and those described below), SVBFT's exclusive-privilege objections should be overruled, and the FDIC-R should be free to use these documents in this litigation.

**BACKGROUND**

### A.    SVBFT and the Bank's Joint Personnel

The Bank was the primary asset of its holding company, accounting for nearly 99% of SVBFT's assets as of year-end 2022. (*See* Declaration of David C. Giles ("Decl."), attached as Exhibit 1 and Group Exhibit C thereto.) The members of the Boards of Directors for SVBFT and the Bank overlapped completely. Each member of SVBFT's Board of Directors was also a member of the Bank's Board of Directors, and vice versa, and the Boards of Directors held only joint meetings, producing a single set of minutes for both entities. (*See* SVBC-N-0002-00000075 at pp. 1-2, 13-17, submitted as Document No. 47 for *in camera* review.) The primary officers of SVBFT were also the Bank's primary officers and held the same titles at both entities. (*Id*.) It is undisputed that SVBFT had no employees or inhouse counsel of its own; a single inhouse legal department represented both SVBFT and the Bank. (*See* ECF 68 at 2, 4-7 (no dispute on this point).)

The overlapping Boards of Directors of SVBFT and the Bank operated through shared, unitary committees. These committees included the Finance Committee, the Risk Committee, and the Governance Committee—each of which was charged with acting "on behalf of the Board," which their charters defined as the Boards of Directors of both SVBFT and the Bank. (*Id*. Ex. D (providing for the Finance Committee to oversee both "the Company [*i.e.*, SVBFT] and the Bank's financial performance"); *id*. Ex. E; *id.* Ex. F (providing for the Governance Committee to oversee "corporate governance matters and practices of the Company and the Bank")).) These

1  committees accordingly were responsible for managing both SVBFT's and the Bank's operations

2  and activities.

3  **B.    SVBFT's Improper Claims of Exclusive Privilege**

4  SVBFT was closed on March 10, 2023, and the FDIC-R was appointed as its receiver.

5  Upon its appointment, the FDIC-R succeeded to all rights, titles, powers, and privileges of the

6  Bank, including the right to assert any evidentiary or other privileges belonging to the Bank, such

7  as its attorney-client privilege. 12 U.S.C. § 1821(d)(2)(A).

8  When the Bank failed, SVBFT had few or no relevant documents in its possession. The

9  Bank possessed all (or almost all) records of its and SVBFT's operations (which were

10  comingled), and the FDIC-R acquired these documents upon its appointment as receiver. Since

11  then, SVBFT has interfered with the FDIC-R's rights to these documents by falsely claiming that

12  some of them are exclusively privileged and threatening disqualification and other sanctions if the

13  FDIC-R reviewed them. (*See* ECF 68 (recounting this procedural history).)

14  These threats resulted in an extremely expensive and protracted process of manually

15  reviewing hundreds of thousands of documents using clean teams and other costly resources to

16  try to address SVBFT's purported exclusive-privilege claims. (*See id*. (reporting that as of August

17  2024, there were approximately 400,000 potentially privileged documents that remained

18  unreviewed).) Then, after engaging in this manual review for over eighteen months and after

19  three months of proceedings before the Court—including three hearings, five letter submissions,

20  and half-a-dozen court orders—SVBFT abruptly abandoned its position that the FDIC-R could

21  not review the documents unless they were prescreened by SVBFT. This about-face resulted in a

22  stipulation permitting the FDIC-R to review all documents in its possession, while SVBFT

23  reserved the right to object or "claw back" specific documents and to present those arguments to

24  the Court. (*See* ECF 112 at 1; ECF 167.)

25  **C.    Documents Related to Corporate Governance of SVBT and the Bank**

26  Under the stipulated order, the parties have the right to recall deposition witnesses if a

27  privilege objection during a deposition is ultimately overruled. To avoid needless inefficiency and

28

1  minimize the number of witnesses who may be recalled, the FDIC-R preemptively identified

2  forty-six documents that it may use in depositions and that SVBFT previously claimed were

3  subject to an exclusive privilege. SVBFT has confirmed that it maintains its privilege objection to

4  these documents, all of which concern corporate governance of SVBFT and the Bank and relate

5  to advice provided to SVBFT and the Bank on that topic by Sullivan & Cromwell. (*See* Decl. Ex.

6  B.)[1]

7          In February 2021, members of the SVBFT and Bank Boards of Directors contacted

8  Sullivan & Cromwell, which ultimately was retained to provide advice about annual board

9  evaluations and related issues. Neither SVBFT nor Sullivan & Cromwell have ever identified an

10  engagement letter for this representation, but Sullivan & Cromwell had previously executed the

11  outside counsel guidelines *for the Bank*. (*Id*. Ex. G.) In addition, Joel Friedman, a director of

12  SVBFT and the Bank and Chair of the Finance Committee who was involved in selecting

13  Sullivan & Cromwell for this corporate-governance role, has testified that ███████████████

14  ████████████████████████████ (Decl. Ex. H (Friedman Tr.) at 94:11-20.)

15          As provided for in the parties' stipulation (ECF 167 at 5), the FDIC-R is submitting these

16  corporate-governance documents for *in camera* review. Each relates to both SVBFT and the Bank

17  and fits into at least one of the four categories described below. (A chart identifying the

18  documents by category and bates number is attached as Exhibit A to the Giles Declaration.)

19          **SVBFT and Bank Board Self-Evaluation Material.** Eighteen documents concern self-

20  evaluations of SVBFT and the Bank's directors, the Boards of Directors, and certain board-level

21  committees. These self-evaluations consisted of written surveys and oral interviews conducted by

22  outside counsel, Marc Treviño, at Sullivan & Cromwell and covered the directors' views of the

23  boards' functions and development opportunities. As with Sullivan & Cromwell's advice

24  generally, Friedman testified that ██████████████████████████████████████

25

26  [1] As part of the meet-and-confer in advance of filing this motion, SVBFT identified a forty-
   seventh document, SVBC-N-0002-00000075, that the FDIC-R intended to attach as an exhibit to

27  this motion but that SVBFT claimed was exclusively privileged and therefore should be included
   in the materials for *in camera* review under the parties' stipulation. (*See* ECF 167 at 5 ¶ 4.b.)

28

1
█████████████████████████████████████████████████████

2
█████████████ (*Id*. Ex. H (Friedman Tr.) at 157:8 to 158:9; *see also id*. 155:8-14.)[2]

3
     **SVBFT and Bank Responses to Regulatory Criticism.** Fourteen of the documents

4
submitted for *in camera* review concern serious criticism of the Boards of Directors by the

5
regulators for SVBFT and the Bank. Following a "Governance and Risk Management" target

6
review of both SVBFT and the Bank, regulators issued a supervisory letter to both Boards of

7
Directors warning that "governance and risk management practices are below supervisory

8
expectations." (Decl. Ex. I.) This supervisory letter was accompanied by three "Matters Requiring

9
Immediate Action" ("MRIAs") requiring improvement in board effectiveness, risk management,

10
and internal audit functions of both SVBFT and the Bank. (*Id*.) These regulatory criticisms were

11
followed by a draft memorandum of understanding ("MOU") between SVBFT, the Bank, and

12
each of their regulators. (*Id*. Ex. J.) Among other things, the MOU provided that SVBFT would

13
serve as a "source of strength" for the Bank and that the Boards of Directors would hold

14
management of both institutions accountable for "remediating the deficiencies identified by this

15
MOU." (*Id*.)

16
     **SVBFT and Bank Committee Structures.** Ten documents reflect communications with

17
members of the Boards of Directors or inhouse counsel about the number, structure, composition,

18
and responsibilities of several of the unitary committees of SVBFT and the Bank, like the Risk

19
Committee and the Finance Committee. As part of the work of the Governance Committee for

20
SVBFT and the Bank, and in part because of the governance and risk-management regulatory

21
review of both institutions, the Governance Committee undertook a reassessment of which

22
committees could be eliminated or restructured and which should be considered for new

23
leadership.

24

---

[2] Indeed, for one of the self-evaluation documents (which is labeled SVBC143-01334109 and
submitted as Document No. 15 for in camera review), SVBFT has taken fundamentally
inconsistent positions. By email dated November 13, 2024, SVBFT's counsel withdrew its
exclusive-privilege designation for this document after the FDIC-R indicated that it would
challenge the designation as part of ongoing proceedings before the Court. Yet SVBFT then
included the document anyway in its privilege claims for the corporate-governance documents at
issue in this motion. (Decl. Ex. C.)

1    **SVBFT and Bank Board and Committee Packets.** Six documents are redacted packets

2  (or a related transmittal email) presented to the Boards of Directors or to the unitary Governance

3  Committee. Key parts of these packets that have been redacted are specifically about the Bank's

4  business, including investor presentations providing an introduction to the Bank and its alleged

5  growth opportunities, as well as material about the responses to the board-governance MRIAs

6  issued to both SVBFT and the Bank. (*See* SVBC101-00038995, submitted as Document No. 43

7  for *in camera* review, at pp. 87-127, 152-205.) As with the other documents over which SVBFT

8  has improperly asserted an exclusive privilege, these documents reflect communications with

9  representatives of both SVBFT and the Bank about matters affecting both entities. They

10  accordingly cannot be exclusively privileged as a matter of law.

11  **ARGUMENT**

12    As the party invoking the attorney-client privilege, SVBFT has the burden to establish that

13  the privilege applies. *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010); *Anderson v.*

14  *Nationwide Mut. Ins. Co.*, No. 2:12-CV-1057 MCE DAD, 2013 WL 1737133, at *1 (E.D. Cal.

15  Apr. 22, 2013) (a party who objects to discovery of information in litigation "has the burden of

16  clarifying, explaining and supporting its objections"). SVBFT cannot meet this burden because it

17  cannot show any exclusive attorney-client relationship with the lawyers involved in the

18  documents submitted with this motion for *in camera* review.

19    Where two parties—like SVBFT and the Bank—retain or consult the same lawyer in a

20  matter, the parties are the lawyer's joint clients and cannot assert the attorney-client privilege

21  against each other for communications related to the joint representation. Cal. Evid. Code § 962;

22  *Anderson*, 2013 WL 1737133, at *3; *Vieste, LLC v. Hill Redwood Dev.*, No. C-09-04024 JSW

23  DMR, 2010 WL 4807058, at *4-5 (N.D. Cal. Nov. 18, 2010); *accord Hyde Park Venture*

24  *Partners Fund III, L.P. v. FairXchange, LLC*, 292 A.3d 178, 189 (Del. Ch. 2023). This rule

25  applies even if there is no formal engagement agreement with the lawyer and regardless of

26  whether the lawyer-client communications concern a matter of common interest to both clients.

27  *Vieste*, 2010 WL 4807058, at *4-5; *see also Anderson*, 2013 WL 1737133, at *3. Because

28

1    lawyers have an equal duty of loyalty to both joint clients, both are entitled to access *all*

2    communications with the jointly retained attorney. *Wortham & Van Liew v. Superior Ct.*, 188

3    Cal. App. 3d 927, 932 (1987); *see also Anten v. Superior Ct.*, 233 Cal. App. 4th 1254, 1259

4    (2015) ("[I]n a joint client situation, confidences are necessarily disclosed." (quoting *Zador Corp.*

5    *v. Kwan*, 31 Cal. App. 4th 1285, 1294 (1995)); Restatement (Third) of the Law Governing

6    Lawyers §75 & cmt. d.[3]

7           These rules preclude SVBFT's exclusive-privilege claims as a matter of law. SVBFT and

8    the Bank had a joint attorney-client relationship with their outside and inside counsel because a

9    reasonable party in the Bank's position would have expected these lawyers to represent it and

10   because the Bank's representatives did in fact expect these lawyers to represent it. "[W]hether an

11   attorney-client relationship exists is a question of law, and it depends on 'how the situation

12   appears to a reasonable person in the client's position' under the 'totality of the circumstances.'"

13   *Glenn v. Hyundai Motor Am.*, No. 815CV02052DOCKESX, 2017 WL 11630379, at *4 (C.D.

14   Cal. Dec. 13, 2017) (quoting *Responsible Citizens v. Superior Court*, 16 Cal. App. 4th 1717, 1733

15   (1993)); *see also Luna Gaming--San Diego LLC v. Dorsey & Whitney, LLP,* No.

16   06CV2804BTMWMC, 2009 WL 587801, at *3 (S.D. Cal. Mar. 6, 2009) ("[T]he existence of the

17   attorney-client relationship is a question of law resolved through an objective test.").

18          The documents submitted *in camera* show that SVBFT cannot meet its burden to establish

19   anything other than a joint-client relationship. As explained above, these documents all reflect or

20   relate to communications with representatives of SVBFT and the Bank, since SVBFT had no

21   employees of its own, its directors and officers held the same positions with the Bank, and its

22   principal committees were all shared with the Bank. (*See supra* Section A.) All of these

23   documents also reflect or relate to corporate-governance issues addressed by Sullivan &

24

---

25   [3] Where state law supplies the rule of decision, the Court applies state privilege law. Fed. R. Evid.
26   501. Because there is no relevant conflict of laws, the Court should apply California privilege law
     as it is the law of the state in which the Court sits. *Lakes v. Bath & Body Works LLC*, No.
27   216CV02989MCEGGH, 2018 WL 2318106, at *2 (E.D. Cal. May 22, 2018).

28

FDIC-R's MOTION TO OVERRULE
PRIVILEGE OBJECTIONS
5:24-CV-01321-BLF & 5:23-CV-06543-BLF

1    Cromwell, which according to Friedman ██████ ████████ ████████████████████████.

2    (Decl. Ex. H at 94:11-20, 157:8 to 158:9; *see also id.* 155:8-14.)

3          For example, the documents related to the directors' self-evaluations are about the

4    performance of both institutions' Boards of Directors, their members, and their committees—all

5    matters that affected both institutions. Likewise, the documents related to regulators' criticisms

6    are about confidential supervisory recommendations, MRIAs, and a draft MOU for both

7    institutions. (*See id*. Exs. I and J.) The documents about restructuring SVBFT and the Bank's

8    unitary committees concern the operation of both institutions' key board-level committees. (*See*

9    *id*. Exs. D, E, and F.) And the redacted packets all reflect presentations to the Boards of Directors

10   or the unitary Governance Committee of both entities. These packets also include confidential

11   information of the Bank itself, including draft investor materials related to the Bank's

12   performance and proposed responses to board-governance MRIAs issued to the Bank along with

13   SVBFT. (*See* SVBC101-00038995, submitted as Document No. 43 for *in camera* review, at pp.

14   87-127, 152-205.)

15         Viewed from the Bank's perspective, no reasonable party would have understood that the

16   lawyers involved in these communications represented only SVBFT—and there is no

17   contemporaneous pre-failure evidence that the lawyers or the officers and directors viewed it that

18   way. Courts have frequently recognized that shared management between corporate affiliates by

19   itself can show a joint attorney-client relationship. *E.g., Lennar Mare Island, LLC v. Steadfast*

20   *Ins. Co.*, 105 F. Supp. 3d 1100, 1110 (E.D. Cal. 2015) ("[P]arent's ownership of the subsidiary

21   would not alone equate the two for conflict purposes, but if they share management and a legal

22   department, they may be one client."); *Teradyne, Inc. v. Hewlett-Packard Co.*, No. C-91-0344

23   MHP ENE, 1991 WL 239940, at *3-4 (N.D. Cal. June 6, 1991) (same point where one

24   corporation has "control and supervision" of an affiliate's legal affairs or the affiliate's

25   confidential information is disclosed); *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft*,

26   69 Cal. App. 4th 223, 244 (1999) (same where affiliates have "a shared legal department" or

27   "intertwined" management (quoting ABA Formal Ethics Op. No. 95-390 at 9, available at

28

1  https://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/ethics-

2  opinions/95-390.pdf)). Here SVBFT and the Bank not only had the same people serving as

3  directors and officers of both institutions, but the attorney-client communications at issue concern

4  the operations and affairs of both institutions and include confidential Bank information. The

5  communications also were understood, by directors like Friedman, as ███████████████.

6  Those facts are more than enough to establish a joint-client relationship and to show that SVBFT

7  has no basis for its exclusive-privilege objections. Those objections should be overruled.[4]

8  **CONCLUSION**

9         For the foregoing reasons, the Court should enter an order overruling SVBFT's exclusive-

10  privilege objections to the FDIC-R's use of the forty-seven documents submitted *in camera* with

11  this motion.

12  Dated:  May 23, 2025                              By: /s/*Lawrence H. Heftman*
                                                           Lawrence H. Heftman

13

14                                                         One of the Attorneys for the Federal
                                                           Deposit Insurance Corporation as
15                                                         Receiver for Silicon Valley Bank and
                                                           Silicon Valley Bridge Bank, N.A

16

17

18

19

20

21

22

23  _____

24  [4] As the FDIC-R has previously explained, SVBFT cannot establish its claims of exclusive
    privilege both for the reasons described above and because it has waived any exclusive-privilege
    claim by comingling its records with those of the Bank and thereby disclosing the purportedly
25  privileged information to a third party. (*See* ECF 68 at 3-4 (explaining this waiver in further
    detail).) Because the forty-seven documents submitted with this motion for *in camera* review are
26  not exclusively privileged in the first place (they are jointly privileged), the Court need not
    address SVBFT's waiver to decide this motion. But to the extent that documents other than these
27  forty-seven are improperly withheld based on waived privilege claims, the FDIC-R reserves the
    right to argue waiver in connection with those documents.

28