# EXHIBIT I

RESTRICTED FR // EXTERNAL

| CALIFORNIA DEPARTMENT OF FINANCIAL PROTECTION AND INNOVATION | FEDERAL RESERVE BANK OF SAN FRANCISCO |

 2101 ARENA BOULEVARD
SACRAMENTO, CALIFORNIA 95834
(916) 576-4941

101 MARKET STREET
SAN FRANCISCO, CALIFORNIA 94108
(415) 974-2000 

May 31, 2022

**BY SECURE EMAIL**

Board of Directors
Silicon Valley Bank/Silicon Valley Bank Financial Group
3003 Tasman Drive
Santa Clara, California 95054

Members of the Board:

The Federal Reserve Bank of San Francisco (FRBSF) and the California Department of Financial Protection and Innovation (CDFPI) jointly completed an assessment of Governance and Risk Management practices at SVB Financial Group and its subsidiary bank, Silicon Valley Bank (SVB or the Firm). The review focused on the Firm's board effectiveness[1] and the Firm's risk management program. The board effectiveness portion of the review focused on (1) board oversight centered on how senior management is held accountable and (2) governance centered on the board's composition, committee structure and quality of reporting presented to board. The risk management program portion of the review focused on (1) risk oversight and governance across the firm's three lines of defense and (2) risk monitoring and reporting. This letter serves to formalize the supervisory findings discussed with the Firm's board and Internal Audit on May 23, 2012, and management on May 27, 2022.

**Executive Summary**
The Firm's governance and risk management practices are below supervisory expectations. The board has not provided effective oversight to ensure senior management implements risk management practices commensurate with the Firm's size and complexity. The board did not provide effective oversight of management's responsibility to implement the large financial institution (LFI) readiness initiatives or the foundational risk management program principles applicable for all banks, irrespective of size. When risk management weaknesses were indicated by breaches of internal risk metrics, internal audits and past regulatory

---

[1] As set forth in the Federal Reserve's *Supervisory Guidance on Board of Directors' Effectiveness* (*SR 21-03*) and *Enhanced Prudential Standards (Regulation YY)*

examinations, the board did not hold senior management accountable to remediate these issues. In addition, performance objectives and incentive compensation practices do not clearly incorporate risk management objectives.

The lack of effective board oversight has resulted in the Firm missing several elements of a sound three lines of defense risk management program. The long-dated supervisory findings related to enterprise risk management, technology risk management, and information security risk management, coupled with additional findings related to liquidity risk management in the third quarter 2021, indicate weaknesses in the Firm's ability to self-identify internal control weaknesses and manage risks proactively. Moreover, the Firm's internal audit department has not provided appropriate coverage of the firm's LFI readiness initiatives or second line independent risk function.

The concerns noted in board oversight coupled with the risk management weaknesses raise concerns about the Firm's governance and controls. The Firm needs effective governance and controls for sustained safety and soundness. The board is directed to ensure appropriate resources are immediately dedicated toward remediation of the concerns noted in prior supervisory cycles as well the findings noted in this supervisory letter.

This review identified three Matters Requiring Immediate Attention[2] (MRIAs) which are further detailed in the Appendix:

| New MRIAs | Due Date for Completion |
|---|---|
| **1. Board Effectiveness** | **August 31, 2022** |
| **2. Risk Management Program** | **August 31, 2022** |
| **3. Internal Audit Effectiveness** | **August 31, 2022** |

---

[2] **Matters Requiring Immediate Attention** (MRIAs) arising from an examination, inspection, or any other supervisory activity are matters of significant importance and urgency that the FR requires organizations to address immediately and include: (1) matters that have the potential to pose significant risk to the organization's safety and soundness; (2) matters that represent significant noncompliance with applicable laws and regulations; (3) repeat criticisms that have escalated in importance due to insufficient attention or inaction by the organization; and (4) in the case of consumer compliance examinations, matters that have the potential to cause significant consumer harm.

**Matters Requiring Attention** (MRAs) constitute matters that are important, and that the FR is expecting an organization to address over a reasonable period of time, but when the timing need not be "immediate" as the threat to safety and soundness is less immediate than with issues giving rise to MRIAs. An MRA typically will remain an open issue until resolution and confirmation by examiners that the banking organization has taken corrective action. If a banking organization does not adequately address an MRA in a timely manner, examiners may elevate an MRA to an MRIA. Similarly, a change in circumstances, environment, or strategy can also lead to an MRA becoming an MRIA.

RESTRICTED FR // EXTERNAL

**Board Effectiveness**

Board oversight does not meet supervisory expectations.  The board did not provide effective oversight of the Firm's LFI transition plan implementation or the foundational risk management program execution.  Oversight weaknesses have resulted in management performing a second risk management gap assessment and transformation plan over two years after an initial risk assessment was performed in 2020.  Additionally, the Firm still has a significant number of resources to hire as part of addressing the existing deficiencies across all three lines of defense.  Effective oversight has been hindered by the board lacking members with relevant large financial institution risk management experience.

The board and board committees have not held senior management accountable for executing a sound risk management program, nor sufficiently challenged management on the content of the risk information reported to the board to achieve effective oversight.  Senior management performance evaluation and compensation programs are not linked to the Firm's risk management objectives.  Risk management deficiencies, identified by independent risk functions or through regulatory examinations, have not been meaningfully considered in the Firm's incentive compensation program.

The second line independent risk function either lacks or has not effectively used its authority and stature.  The board's Risk Committee has not held executive sessions with the Chief Risk Officer (CRO).   The lack of direct executive committee sessions between the Risk Committee and the CRO contributes to the underdevelopment of the Firm's second line independent risk function.  The Risk Committee is not directly engaged in its primary function, ensuring an appropriate state of risk management with a full understanding of the root causes associated with existing internal control issues.  Both the Risk Committee and Audit Committee rely heavily on the Chief Executive Officer (CEO) for assessing the CRO's and Chief Auditor's (CA) performance rather than the feedback being provided directly from the Committee Chairs.  The lack of direct feedback provided by the Committee Chairs reflects negatively on the board's oversight, particularly with respect to control functions such as second line independent risk and third line internal audit.

**Risk Management Program**

The Firm's risk management program is not effective.  The weaknesses described below impact the effectiveness of the independent risk management functions and the execution of the risk management programs.

The current risk management framework is not comprehensive, does not incorporate coverage for all risk stripes, and does not address foundational enterprise level risk management matters, such as issues management and escalation.  Moreover, the risk management framework is not commensurate to the Firm's size and complexity as required under *Section 252.33 Risk Management and Risk Committee Requirements* under *Regulation*

RESTRICTED FR // EXTERNAL

*YY (Enhanced Prudential Standards)*. The lack of an effective risk management framework and policy has resulted in inconsistent core risk management activities and ultimately a reactive/patched, rather than holistic/integrated, approach to risk management. Second line independent risk management has not clearly defined requirements to achieve an effective state. The lack of qualified leadership and project management discipline, without clear deliverables and milestones to execute on planned risk management work streams, are factors contributing the firm's ineffective risk management program.

Risk management framework weaknesses have resulted in inadequate risk monitoring and reporting to senior management and the board. The framework, policies, and standards do not clearly define ownership, reporting, escalation, and approval of risk limits. The current framework for risk appetite statement (RAS)-level breaches is broad and does not indicate who is responsible for reviewing and approving the business risk owner's remediation plan. Risk metrics are limited to RAS metrics and do not include comprehensive key risk indicators and early warning indicators. The current framework does not incorporate sufficient RAS metrics for model risk, third party management risk, and human capital risk. Additionally, the framework does not effectively specify the responsibilities for the second line independent risk function.

The management level risk committee structure does not deliver on foundational risk management committee practices. In the current structure, the Firm's risk management committees are advisory in nature, do not make decisions, are not required to have charters, and do not include a clear path of escalation for all risk stripes. The current structure relies heavily on business line committees for risk management decisions with no clear mechanism for second line independent risk management to provide effective challenge. The risk management framework lacks a centralized risk committee to oversee risks enterprise-wide, across risk domains, businesses, and entities. While the Risk Management Advisory Committee (RMAC) and Executive Committee (EC) could serve the purpose of holistic risk oversight, the RMAC is advisory in nature and does not include all senior executives while risk discussions at the EC are isolated and ancillary to discussions of core businesses or products. Neither the RMAC nor the EC provide effective holistic risk oversight.

**Internal Audit (IA)**
IA's coverage of risk management is less than effective. IA did not hold SVB senior management accountable despite indicators of an ineffective risk management program. IA exhibited a slow and reactive approach to testing the Firm's LFI readiness transition plan, risk management programs and functions, and integration of acquired entities, such as Leerink Partners. Additionally, IA does not provide sufficient information to allow the Audit Committee to fulfill its oversight responsibilities, nor is IA's reporting consistent with other large complex institutions or Audit Committee reporting guidance set forth under *Supervision and Regulation Letter 13-1 Supplemental Policy Statement on the Internal Audit Function and Its Outsourcing*.

RESTRICTED FR // EXTERNAL

Despite the indicators of weaknesses in the second line independent risk management, the CA did not include coverage of this area in the 2020 or 2021 audit plans. IA's risk assessment methodology and oversight processes were not effective as areas with known weaknesses were not subject to audit despite their ineffective state. Moreover, the Audit Committee did not effectively challenge the CA on the adequacy of IA coverage.

**Next Steps**

Within 90 days of receipt of this letter[3], management is required to submit written remediation plans the Firm has taken or will take to address the supervisory findings described above and, in the Appendix. The remediation plans should contain sufficient detail on the completion milestones, including validation of corrective actions by Internal Audit, within timeframes that have been reviewed and approved by the board. Please send all supervisory correspondence from your institution in electronic format only, copying our centralized mailbox as a recipient at sf.sc.supervisory.mail@sf.frb.org.

Please note that this letter contains confidential material and should be treated accordingly by your organization.[4] As such, the contents of this letter are subject to the rules of the Board of Governors of the Federal Reserve System regarding disclosure of confidential supervisory information as well as California Financial Code 452. Please direct any comments or questions to Anthony Campbell with CDFPI at (916) 812-4147 and Les Fong with the FRBSF at (415) 977-3547.

---

[3] Any institution about which the Federal Reserve makes a written material supervisory determination is eligible to utilize the appeals process as described in Internal Appeals Process for Material Supervisory Determinations and Policy Statement Regarding the Ombudsman for the Federal Reserve System, 85 Fed. Reg. 15175 (March 17, 2020). An appeal under this process may be made of any written material supervisory determination, as defined in the policy statement. The Board's Ombudsman (Ombudsman) can provide assistance regarding questions related to the System's material supervisory determination appeals process and claims of retaliation. The Ombudsman can also provide assistance to facilitate the informal resolution of concerns prior to the filing of a formal appeal. An institution may contact the Ombudsman at any time by calling 1-800-337-0429, by sending a facsimile to 202-530-6208, by writing to the Office of the Ombudsman, Board of Governors of the Federal Reserve System, Washington, D.C. 20551, or by sending an e-mail to ombudsman@frb.gov.

[4] THIS DOCUMENT IS STRICTLY CONFIDENTIAL: This document has been prepared by an examiner selected or approved by the Board of Governors of the Federal Reserve System. The document is the property of the Board of Governors and is furnished to directors and management for their confidential use. The document is strictly privileged and confidential under applicable law, and the Board of Governors has forbidden its disclosure in any manner without its permission, except in limited circumstances specified in the law (12 U.S.C 1817(a) and 1831m) and in the regulations of the Board of Governors (12 C.F.R. 261.20). Under no circumstances should the directors, officers, employees, trustees or independent auditors disclose or make public this document or any portion thereof except in accordance with applicable law and the regulations of the Board of Governors. Any unauthorized disclosure of the document may subject the person or persons disclosing or receiving such information to the penalties of Section 641 of the U.S. Criminal Code (18 U.S.C. 641). Each director or trustee, in keeping with his or her responsibilities, should become fully informed regarding the contents of this document. In making this review, it should be noted that this document is not an audit and should not be considered as such.

Sincerely,

| | |
|---|---|
| Clothilde V. Hewlett | Nestor Lim |
| Commissioner | Assistant Vice President |
| Department of Financial Protection and Innovation | LFBO Dedicated Supervisory Team Lead |
| | Federal Reserve Bank of San Francisco |

By:

Frank Bushnell
Regional Deputy Commissioner

cc: Greg Becker, Chief Executive Officer
John Peters, Chief Auditor
Christopher Loeffelholz, Division Chief, FDIC

RESTRICTED FR // EXTERNAL

| **Appendix I: New Matters Requiring Immediate Attention (MRIAs)** |
|---|

**MRIA #1: BOARD EFFECTIVENESS**

**Issue:** The Board's oversight over the Firm's risk management practices is not adequate and has contributed to an ineffective risk management program.  The lack of an effective risk management program increases the potential that emerging risks may go undetected or root causes for internal controls deficiencies are not addressed.  Key points noted during the exam supporting this issue include:

- The board did not hold senior management accountable through appropriate performance management programs.  Senior management performance objectives and incentive compensation practices do not clearly link to risk management objectives.
- The disaggregated risk committee reporting and decentralized committee oversight responsibilities impede the board's ability to have a comprehensive view of the firm's risk exposures and vulnerabilities.
- The current board composition lacks depth and experience.  The board's director recruiting process does not effectively address what would constitute an appropriate mix of skills, tenure, and risk experience in alignment with the changes in the Firm's size and complexity
- With the limited and inconsistent reporting provided to the Risk Committee, the board did not adequately challenge management to provide substantive updates on the effectiveness of the Firm's risk management program.

**Required Action:** By August 31, 2022, the board is required to develop a plan for effective oversight of senior management.  At a minimum, the board should address the following elements, along with the timeframe to implement the plan's elements:

a. Mechanisms to hold senior management accountable for meeting risk management expectations
b. Protocols for board executive sessions with second line independent risk and third line IA leadership to promote candid assessments of firm's governance and controls and more direct board oversight of the CRO and the CA
c. Board committee structure, risk reporting, and escalation process to support holistic risk oversight
d. Director recruiting criteria to support diversity of expertise within the context of board composition
e. Training program to maintain alignment of directors' skills with the Firm's size and complexity

**MRIA #2: RISK MANAGEMENT PROGRAM**

**Issue:** SVB's existing risk management program is not effective.  The existing risk management structure and framework does not provide the Firm with appropriate mechanisms to operate a fully integrated risk management program and impedes management's ability to identify emerging risks and address root causes of internal control deficiencies.  Observations noted during the exam that contribute to this issue are:

- Risk monitoring and reporting are distributed across different management committees, without a central risk-focused committee and without the stature to oversee risks on an aggregated and holistic basis.
- The risk management program lacks effective risk monitoring, reporting and oversight. The existing program framework poorly defines standards for setting/approving risk limits and reporting/ escalating internal control exceptions.
- Risk reporting does not effectively present the information within the context of why the firm should/should not accept the risk associated with the informational topic being presented.

**Required Action:** By August 31, 2022, management is required to complete a comprehensive gap assessment against regulatory and industry standards for a large financial institution risk management program.  Management should develop a holistic remediation plan to address the identified gaps.  The gap assessment and the remediation plan should be presented for the board risk committee's review, effective challenge, and approval.  At a minimum, the remediation plan should address the following elements and the timeframes to implement the plan's elements:

a. Enterprise-level risk programs, policies, and procedures with clear roles and responsibilities and the mechanisms to enforce accountability
b. Processes for risk identification, assessment, mitigation, monitoring, and escalation
c. Reporting to support effective risk-acceptance decision making

**MRIA #3: INTERNAL AUDIT EFFECTIVENESS**

**Issue:** The Internal Audit Department's (IA) methodology and programs do not sufficiently challenge management, provide the Audit Committee with sufficient and timely reporting, or ensure the timely analysis of critical risk management functions and the overall risk management program.  The deficiencies in IA's processes and reporting negatively affected its ability to provide timely, independent assurance that the Firm's risk management, governance and internal controls were operating effectively. Key points noted during the exam that contribute to this issue are:

- Despite the weaknesses indicated in the second line independent risk function, IA's 2020 and 2021 risk assessment and audit plans did not result in appropriate or timely coverage of SVB's second line enterprise risk management, financial risk management, or operations risk management.
- While the Firm launched a Large Financial Institution (LFI) transition program with specific workstreams centered on risk management, IA did not conduct comprehensive monitoring or project audits to challenge the Firm's overall progress with respect to risk management and LFI readiness.
- While the Firm acquired Leerink Partners (now known as SVB Securities) in 2019, this entity was not fully integrated into the Firm's risk management governance structure and IA provided minimal coverage of this key business line during the past two audit cycles.
- Internal Audit's Audit Committee (AC) reporting lacks fundamental components.  The current reporting does not provide the AC with sufficient and timely information to fulfill its oversight responsibilities.  Also, the AC has not clarified what reporting they need to effectively execute their oversight role.  Key elements lacking in AC reporting include:
  - ❖ Discussion of adverse audit results and high-risk issues along with associated management action plans.
  - ❖ Comprehensive analysis and stratification of outstanding issues including the identification of thematic macro control issues and trends and their impact on the risk assessment.
  - ❖ Remediation plans to address past due audit issues.
  - ❖ Risk management self-assessments for all significant risk categories and updates of the remediation of issues identified through these self-assessments

**Required Action:**  By August 31, 2022, IA is required to conduct a comprehensive gap assessment against regulatory and industry standards applicable for a large financial institution audit function.  IA should also develop a remediation plan to address the identified gaps.  The gap assessment and remediation plan should be presented for AC review, effective challenge, and approval.  At a minimum, the remediation plan should address the following elements and the timeframes to implement the plan's elements:

a. Risk assessment methodology and associated oversight processes to ensure the risk assessment drives accurate auditable entity risk results with appropriate coverage frequency. Risk assessment results should be subject to effective challenge by IA leadership including the AC

b. Reporting that considers the applicable regulatory and industry guidance to support the AC fulfill their oversight responsibilities