United States District Court
Northern District of California

1

2

3 **UNITED STATES DISTRICT COURT**

4 **NORTHERN DISTRICT OF CALIFORNIA**

5 **SAN JOSE DIVISION**

6

7 SVB FINANCIAL TRUST,                            Case No.  24-cv-01321-BLF

8              Plaintiff,

9       v.                                        **ORDER DENYING PLAINTIFF'S**
**MOTION THAT THE FDIC-R PLACE**
10 FEDERAL DEPOSIT INSURANCE                  **$1.71 BILLION IN ESCROW**
CORPORATION, AS RECEIVER FOR
11 SILICON VALLEY BANK, et al.,                [Re:  ECF No. 226, 227]

12             Defendants.

13

14       Before the Court is Plaintiff SVB Financial Trust's ("Trust") request that the Court order the

15 Federal Deposit Insurance Corporation as receiver for Silicon Vallery Bank ("FDIC-R1") to place

16 the $1.71 billion owed under the Trust's breach of contract claim in an interest-bearing escrow

17 account until FDIC-R1's Preserved Defenses are resolved. ECF 226 ("Mot."). FDIC-R1 filed an

18 Opposition. ECF 227 ("Opp."). For the reasons below, the Court DENIES the Trust's request.

19 **I.    BACKGROUND**

20       On March 5, 2024, the Trust[1] filed this action against FDIC-R1 and FDIC as the receiver for

21 Silicon Valley Bridge Bank ("FDIC-R2") (collectively, "FDIC-Rs") for blocking access to

22 approximately $1.93 billion of the Trust's deposits. ECF 1. In the Complaint, the Trust asserted

23 twelve claims for relief: (1) Breach of Contract, *id.* ¶¶ 139–149; (2) Estoppel, *id.* ¶¶ 150–153; (3)

24 Turnover of the Account Funds Pursuant to Section 542 of the Bankruptcy Code, *id.* ¶¶ 154–163;

25

26 [1] This action and the consolidated *SVB Financial Trust v. Federal Deposit Insurance Corp., in its
*corporate capacity*, No. 5:23-cv-06543-BLF (N.D. Cal.) ("FDIC-C Action") were initially brought by
27 SVB Financial Group ("SVBFG"). *See* ECF 1; FDIC-C Action, ECF 1. The parties in both this action
and FDIC-C Action have stipulated to substitute SVB Financial Trust for SVBFG as plaintiff in both
28 actions. *See* ECF 146; FDIC-C Action, ECF 129.

United States District Court
Northern District of California

1    (4) Violation of the Automatic Stay Under Section 362(a) of the Bankruptcy Code, *id.* ¶¶ 164–167;

2    (5) Claim Under Sections 1406 and 681 of the California Financial Code (against FDIC-R1 only),

3    *id.* ¶¶ 168–175; (6) Claim Under Sections 91 and 194 of the National Bank Act (against FDIC-R2

4    only), *id.* ¶¶ 176–181; (7) Declaratory Judgment Under 28 U.S.C. § 2201 *et seq.*, *id.* ¶¶ 182–189;

5    (8) Violation of SVBFG's Fifth Amendment Rights Under the United States Constitution, *id.* ¶¶

6    190–199; (9) Conversion, *id.* ¶¶ 200–207; (10) Breach of Contract (against FDIC-R1 only), *id.* ¶¶

7    208–216; (11) Breach of Implied Contract (against FDIC-R1 only), *id.* ¶¶ 217–224; and (12) Breach

8    of Contract (against both FDIC-Rs), *id.* ¶¶ 225–231. On November 29, 2024, the Court granted in

9    part and denied in part FDIC-Rs' motion to dismiss SVBFG's Complaint. ECF 108.

10          On January 17, 2025, FDIC-Rs filed their Answer to the Trust's Complaint and asserted

11    twenty-five affirmative defenses. ECF 135 ("Aff. Def."). The twenty-five affirmative defenses are:

12    (1) Setoff for Aiding and Abetting Breaches of Fiduciary Duty, Aff. Def. ¶¶ 115-26; (2) Setoff for

13    SVBFG's Liability for Acts of its Agents, *id.* ¶¶ 127-30; (3) Setoff for Negligence, *id.* 131-35; (4)

14    Unclean Hands, *id.* ¶¶ 136-38; (5) Unjust Enrichment, *id.* ¶¶ 139-41; (6) Constructive Fraudulent

15    Transfer, *id.* ¶ 142; (7) Failure to State a Claim, *id.* ¶ 143; (8) Lack of Subject Matter Jurisdiction,

16    *id.* ¶ 144; (9) Condition Precedent, *id.* ¶ 145; (10) Precluded by Contract, *id.* ¶ 146; (11) Immunity,

17    *id.* ¶ 147; (12) Inconsistent with Governing Statute, *id.* ¶ 148; (13) Speculative Damages, *id.* ¶ 149;

18    (14) In Pari Delicto, *id.* ¶ 150; (15) Estoppel and Waiver, *id.* ¶ 151; (16) Fault of SVBFG, *id.* ¶ 152;

19    (17) Fault of Another, *id.* ¶ 153; (18) Limitation of Liability, *id.* ¶ 154; (19) Failure of Performance,

20    *id.* ¶ 155; (20) Material Breach, *id.* ¶ 156; (21) Failure to Mitigate Damages, *id.* ¶ 157; (22) Precluded

21    by 12 U.S.C. § 1821(i), *id.* ¶ 158; (23) Precluded by Documentary Evidence, *id.* ¶ 159; (24) Failure

22    to Exhaust Administrative Remedies, *id.* ¶ 160; and (25) Lack of Third Party Beneficiary, *id.* at 126.

23          On May 29, 2025, the Court granted the Parties' Stipulation Regarding Resolution of Certain

24    Claims. ECF 208. In the Stipulation, the parties agree that FDIC-R1's liability for the Trust's

25    "Breach of Contract claim in Count 1 of the Complaint shall be in the amount of $1,710,000,000 . .

26    . provided, however, to the extent that FDIC-R1 prevails, in whole or in part, on one or more of the

27    Preserved Defenses, the Trust Claim Liability shall be reduced or eliminated to an amount(s)

28    specified in a final, nonappealable court order." *Id.* at 3.

1    On June 24, 2025, the Court granted in part, denied in part, and terminated in part the Trust's

2    motion to strike the FDIC-R1's affirmative defenses with leave to amend. ECF 233. On July 10,

3    2025, FDIC-R1 filed a case management statement advising the Court that it does not seek to amend

4    its affirmative defenses. ECF 237.

5    **II.    LEGAL STANDARD**

6    A district court has "ample power to make orders for the maintenance of assets, as a

7    condition of leaving them in the control of the government." *United States v. $277,000 U.S.*

8    *Currency*, 69 F.3d 1491, 1496 (9th Cir. 1995). A district court can impose a reasonable condition

9    that "return[s] custody of the funds to the claimant and direct[s] the claimant to place [the funds] in

10   an escrow subject to the ultimate outcome." *Id.* It is within a district court's equitable discretion to

11   enter an escrow order. *See United States v. Cal-Almond Inc.*, 102 F.3d 999, 1004 (9th Cir. 1996). A

12   district court's "equitable jurisdiction is not to be denied or limited in the absence of a clear and

13   valid legislative command." *Porter v. Warner Holding Co.,* 328 U.S. 395, 398 (1946).

14   **III.    DISCUSSION**

15   The Trust argues that the Court has "inherent authority" to order FDIC-R1 to place the

16   stipulated liability amount of $1.71 billion into escrow. Mot. at 3-5. The Trust further argues that

17   the Court's authority to order an escrow in this case is not barred by statute. Mot. at 6-8.

18   In response, FDIC-R1 argues that the Court is expressly barred by the Financial Institutions

19   Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C § 1821 ("FIRREA"). Opp. at 3-9. FDIC-

20   R1 further argues that a preliminary injunction is unavailable to protect the Trust's breach of contract

21   claim for money damages. Opp. at 10-11. Additionally, FDIC-R1 contends that the Trust is

22   essentially seeking pre-judgment attachment but fails to meet the standard under California law.

23   Opp. at 11-14.

24   The Court addresses the parties' arguments in turn.

25   **A.  The Court Has the Authority to Order an Escrow.**

26   The Trust argues that the Court's "inherent equitable authority extends to ordering an

27   escrow." Mot. at 3 (citing *United States v. $277,000 U.S. Currency*, 69 F.3d 1491, 1493-94 (9th Cir.

28   1995)). The Trust argues that the equitable remedy of an escrow should be favored because "FDIC

United States District Court
Northern District of California

3

1     wrongfully seized the Trust's funds," and FDIC should not continue to benefit from this wrong.

2     Mot. at 5.

3         In response, FDIC-R1 does not contend that the Court lacks authority to promulgate and

4     enforce rules for the management of litigation and the court's docket. Opp. at 11 (citing *Coleman v.*

5     *Allison Soc. Worker*, No. 19-cv-00964-SI, 2019 U.S. Dist. LEXIS 108131, at *2-3 (N.D. Cal. June

6     27, 2019)). Rather, FDIC-R1 contends that the Court cannot "enter orders that exceed its jurisdiction

7     or violate applicable statutes." Opp. at 11 (citing *Spurlock v. FBI*, 69 F.3d 1010, 1016 (9th Cir.

8     1995)).

9         The Court agrees with the Trust that in general ordering an escrow is within a district court's

10    inherent equity power. *See $277,000 U.S. Currency*, 69 F.3d at 1496. In *United States v. $277,000*

11    *U.S. Currency*, the United States seized a claimant's property, including cash, but was ultimately

12    found to have no proper claim to the property. *Id.* at 1492. The Ninth Circuit found that the

13    government generally has no liability for pre-judgment interest because of sovereign immunity. *See*

14    *id.* Nonetheless, the Ninth Circuit affirmed the district court's decision to place the funds-at-issue

15    in an escrow pending the outcome of the case. *Id.* at 1496. The Ninth Circuit explained that district

16    courts have "ample power" to place the funds "in an escrow subject to the ultimate outcome." *Id.*

17    The Ninth Circuit explained that "assets amenable to such treatment should be put to use, with their

18    increase accruing ultimately to whatever party is found to have the right to the property." *Id.* at 1497.

19        Similarly, in *Cal-Almond*, the district court ordered the Almond Board to place the disputed

20    funds into escrow pending the outcome of the appeal. *United States v. Cal-Almond Inc.*, 102 F.3d

21    999, 1001 (9th Cir. 1996). The Ninth Circuit found the district court appropriately exercised its

22    "equitable discretion" in ordering the escrow because the district court found "unreasonable delay

23    by the Secretary in ruling on a pending petition, or bad faith by the Secretary in bringing the

24    enforcement action." *Cal-Almond Inc.*, 102 F.3d at 1004.

25        However, regardless of the Court's general authority to order an escrow pending resolution

26    of a case, the Court cannot issue an order that is barred by statute. *See Spurlock v. F.B.I.*, 69 F.3d

27    1010, 1016 (9th Cir. 1995) (holding a district court's "inherent authority . . . does not authorize it to

28    carve out exceptions to the FOIA remedies expressly provided by Congress."); *see also Cibelli v.*

1   *Davis*, 2021 U.S. Dist. LEXIS 103848, *2 (D.N.J. June 2, 2021) (holding a district court's inherent

2   power in a habeas matter cannot bypass the relevant habeas statute). Accordingly, the Court analyzes

3   whether its general equitable authority to order an escrow is barred by statute in this case.

4   **B.   The Court's Authority to Order an Escrow In This Case Is Barred.**

5   The Trust argues that there is no bar preventing the Court from exercising its equitable

6   authority to order an escrow in this case. Mot. at 5-8. In response, FDIC-R1 argues that the Court's

7   authority to order declaratory, injunctive, or other equitable relief is barred by Section 1821(j) of

8   FIRREA, among other legal authorities. *See* Opp. at 1-3.

9   **1.   12 U.S.C. § 1821(j)**

10   The Trust argues that, in its motion to dismiss order at ECF 108, the Court has already

11   determined that Section 1821(j) of FIRREA does not apply. Mot. at 6-7. The Trust contends that

12   "FDIC-R has stipulated to its liability for breach of contract" which is "outside the prescribed

13   mechanisms provided by FIRREA." Mot. at 7 (citing *Sharpe v. F.D.I.C.*, 126 F.3d 1147, 1155 (9th

14   Cir. 1997)). In response, FDIC-R1 argues that ordering it to move funds into escrow is equitable

15   relief that is not allowed by FIRREA. *See* Opp. at 3-7.

16   In the Order on FDIC-Rs' motion to dismiss, the Court found that Section 1821(j) does not

17   bar the Trust's promissory estoppel claim. ECF 108 at 12-13 (citing *Sharpe*, 126 F.3d at 1155). The

18   Court found that the Trust had plausibly alleged that the FDIC-Rs were "assert[ing] authority

19   beyond that granted to" them as receivers when they ignored their express promises and directives

20   under the systemic risk exception. ECF 108 at 12. Contrary to the Trust's contention, the Court did

21   not address whether, as here, the Court has the authority under Section 1821(j) to order FDIC-R1 to

22   move funds into an escrow pending the outcome of this action. The Court is also not persuaded by

23   the Trust's reliance on *Sharpe*. *See* Mot. at 7. In *Sharpe*, the Ninth Circuit held that Section 1821(j)

24   did not bar breach of contract claims against FDIC because "FIRREA does not permit the FDIC to

25   breach contracts at will." *Sharpe*, 126 F.3d at 1155. However, the Ninth Circuit did not address

26   whether Section 1821(j) bars the Court's authority to order an escrow in this case. *See id.*

27   12 U.S.C. § 1821(j) provides that "[except in limited circumstances not applicable in this

28   case], no court may take any action . . . to restrain or affect the exercise of powers or functions of

United States District Court
Northern District of California

United States District Court
Northern District of California

1    the Corporation as a conservator or a receiver." Section 1821(j) is "intended to permit the FDIC to

2    perform its duties as conservator and receiver promptly and effectively without judicial

3    interference." *Hindes v. FDIC*, 137 F.3d 148, 160 (3d Cir. 1998).

4          Courts have interpreted Section 1821(j) as a "sweeping ouster of courts' power to grant

5    equitable remedies" that bars all "nonmonetary" remedies against the FDIC as receiver. *Freeman v.*

6    *FDIC*, 56 F.3d 1394, 1399 (D.C. Cir. 1995); *see Sahni v. Am. Diversified Partners*, 83 F.3d 1054,

7    1058 (9th Cir. 1996), *as amended* (July 24, 1996) ("It is well-established that § 1821(j) bars restraint

8    by the courts on the statutory powers of the FDIC when it acts as receiver."); *Henrichs v. Valley*

9    *View Dev.*, 474 F.3d 609, 614 (9th Cir. 2007) ("[N]o court may grant equitable relief against the

10   FDIC except as provided by FIRREA."). Here, it is undisputed that the Trust seeks equitable relief—

11   an order directing FDIC-R1 to move its stipulated liability of $1.71 billion for the Trust's breach of

12   contract claim into an escrow before FDIC-R1's Preserved Defenses are adjudicated. *See* Mot. at 6;

13   Opp. at 4-5.

14         "Section § 1821(j) shields only the exercise of powers or functions Congress gave to the

15   FDIC; the provision does not bar injunctive relief when the FDIC has acted beyond, or contrary to,

16   its statutorily prescribed, constitutionally permitted, powers or functions." *Sharpe*, 126 F.3d at 1155

17   (internal quotation marks and citation omitted).  Courts have adopted a two-step inquiry to determine

18   whether a court action is barred by Section 1821(j): "[f]irst, the Court must evaluate whether the

19   action implicates the exercise of an FDIC receivership power or function. If so, the FDIC is protected

20   from all court action that would 'restrain or affect' the exercise of those powers or functions. The

21   second step is to determine whether action by the Court would 'in fact restrain or affect the FDIC

22   as receiver.'" *Onebeacon Midwest Ins. Co. v. FDIC*, No. 2:12-CV-0106-RWS, 2013 U.S. Dist.

23   LEXIS 44237, at *7-8 (N.D. Ga. Mar. 28, 2013) (citing *Bank of Am. Nat'l Ass'n v. Colonial Bank*,

24   604 F.3d 1239, 1243 (11th Cir. 2010)).

25         As to the first step, here, a court order requiring the FDIC-R to place its stipulated liability

26   of $1.71 billion in escrow would interfere with essential FDIC-R powers or functions provided by

27   statute. *See, e.g.,* 12 U.S.C. § 1821(d)(2)(B) (FDIC-R has the power to "preserve and conserve the

28   assets and property of such institution"); 12 U.S.C. § 1821(d)(2)(A)(i) (FDIC-R has the power to

6

succeed to "all rights, titles, powers, and privileges of the [failed] insured depository institution."); 12 U.S.C. § 1821(d)(10) (FDIC-R has the power to determine the payment on claims); 12 U.S.C. § 1821(d)(13)(E)(i) (FDIC-R has the function to "minimize[] any loss realized in the resolution of cases."). As to the second step, mandating the transfer of the funds into an escrow "restrains or affects the exercise of the FDIC-R's power" including to liquidate assets and to pay claims based on statutory priority. *Harrington v. FDIC*, No. 23-cv-06296-HSG, 2024 U.S. Dist. LEXIS 123140, at *9-10 (N.D. Cal. July 12, 2024). For the above reasons, the Court finds that its authority to order an escrow is barred by 12 U.S.C. § 1821(j). *See Assignment for the Ben. of Creditors of Orion Bancorp*, 2010 U.S. Dist. LEXIS 161746, at *5 (M.D. Fla. 2010) ( "Requiring the FDIC to place the proceeds of the tax refund into an escrow account will impermissibly restrain and affect the FDIC's exercise of receivership powers and functions."); *Michels v. Resolution Tr. Corp.*, No. 4-93-1167, 1994 U.S. Dist. LEXIS 6563, at *10 (D. Minn. Apr. 13, 1994) ("A court order mandating or prohibiting certain actions with respect to the mortgage escrow accounts would 'affect or restrain' the [] operation of [the failed depository institutions].").

Because the Court is statutorily barred from ordering FDIC-R1 to move its stipulated $1.71 billion liability into an escrow, the Court need not reach the remainder of the parties' arguments.

## IV.    ORDER

For the foregoing reasons, the Court DENIES the Trust's request that the Court order FDIC-R1 to place the $1.71 billion owed under the Trust's breach of contract claim in an interest-bearing escrow account until FDIC-R1's Preserved Defenses are resolved.

Dated:  July 16, 2025

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California