Stephen Sorensen (Bar No. 199408)
Elliott McGraw (Bar No. 275613)
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007
Phone: (202) 463-2101
E-mail: ssorensen@baileyglasser.com
E-mail: emcgraw@baileyglasser.com

Lawrence H. Heftman (admitted *pro hac vice*)
David C. Giles (admitted *pro hac vice*)
Michael K. Molzberger (admitted *pro hac vice*)
Kaitlin G. Klamann (admitted *pro hac vice*)
**ARENTFOX SCHIFF LLP**
233 S. Wacker Dr., Suite 7100
Chicago, IL 60606
Telephone: (312) 258-5500
E-mail: lawrence.heftman@afslaw.com
E-mail: david.giles@afslaw.com
E-mail: michael.molzberger@afslaw.com
E-mail: kaitlin.klamann@afslaw.com

*Counsel to the Federal Deposit Insurance
Corporation as Receiver for Silicon Valley Bank*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| SVB FINANCIAL TRUST,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR SILICON VALLEY BANK AND SILICON VALLEY BRIDGE BANK, N.A.,<br><br>　　　　Defendants. | Case No. 5:24-cv-01321-BLF<br><br>**FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR SILICON VALLEY BANK'S OPPOSITION TO MOTION IN LIMINE NUMBER TWO TO EXCLUDE TESTIMONY OF PRUDENT BUT-FOR WORLDS**<br><br>Date Filed: March 5, 2024<br>Trial Date: June 29, 2026<br>Judge: Hon. Beth L. Freeman |

## MEMORANDUM OF POINTS AND AUTHORITIES

SVB Financial Trust ("Liquidating Trust") asks the Court to bar the FDIC-R from introducing evidence or argument suggesting that the Holding Company and Bank could have made other investment decisions instead of buying long-term, fixed-rate securities at rock-bottom interest rates in breach of internal interest-rate-risk limits with nearly $100 billion in uninsured, COVID-surge deposits. No evidence suggests that the officers and directors were required to make these imprudent investments, and none of the Liquidating Trust's experts offer such an opinion, which would be baseless. Instead, the Liquidating Trust falsely contends that the FDIC-R purportedly did not provide any evidence or expert opinion disclosing "any plausible alternative decisions that the officers and directors could and should have made." In fact, the evidence identifies numerous alternatives, the FDIC-R's liability experts opine on those alternatives, and the FDIC-R's damages expert calculates damages based on one such alternative. The Liquidating Trust's motion rests entirely on a mischaracterization of the record evidence and should be denied.

The Holding Company and Bank's records identify alternatives to placing a long-term bet on low interest rates, including holding more cash, buying securities with less interest-rate risk, and employing more interest rate hedges. The Bank's investment portfolio was an extreme outlier compared to other banks. The FDIC-R's liability experts have opined that the Bank should have purchased fewer long-term securities and complied with internal interest-rate-risk limits (referred to as "EVE-at-Risk"). To do so, the officers buying the securities should have purchased tens of billions of dollars less in 30-year mortgage-backed securities and instead retained more cash, purchased shorter-term securities or other securities with less interest-rate risk, hedged against interest rate risk, or a combination of all these prudent alternatives. The FDIC-R's damages expert, Kenneth Malek, calculated the outcome of doing so. He created a "but-for world" in which the Bank purchased fewer long-term securities and held more cash to bring the Bank into compliance with EVE-at-Risk limits. (*See generally* ECF 295-16, Malek Damages Rpt.) Thus, although the FDIC-R was not required to provide an alternative portfolio to prove causation or damages, the FDIC-R has done so and has shown that merely complying with EVE-at-Risk would

have reduced the Bank's investment-securities losses by over $4.5 billion, which greatly exceeds SVBFT's deposit claim.

## ARGUMENT

### I.       The FDIC-R Does Not Need to Prove an Alternative Investment Portfolio.

The Liquidating Trust cites no legal authority requiring the FDIC-R to construct an alternative investment portfolio to prove causation or damages. That is because the FDIC-R need only prove the officers' and directors' negligence and gross negligence was a "substantial factor" in causing billions of dollars in damages. *See, e.g.*, *Rutherford v. Owens-Illinois, Inc.*, 16 Cal. 4th 953, 969 (1997). Causation need not be proven "with absolute certainty" and instead requires only "evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result." *Garbell v. Conejo Hardwoods, Inc.*, 193 Cal. App. 4th 1563, 1569 (2011). Here buying long-term securities with massive interest-rate risk while in breach of interest-rate-risk limits was a substantial factor in causing losses on those securities. The FDIC-R has provided a more than reasonable damages computation supported by expert testimony. (*See* ECF 295-16, Malek Damages Rpt.)

### II.      The FDIC-R Disclosed Alternative Investment Approaches.

The Liquidating Trust argues that the FDIC-R "has failed to identify and disclose any plausible alternative decisions that the officers and directors could and should have made." (ECF 289 at 1.) That is false.

First, the Holding Company and Bank's records are replete with alternative approaches identified by employees that could have been employed to reduce interest-rate risk. (*See, e.g.*, Ex. 1, Choi Dep. Tr. at 88:14-89:18 (explaining ways to comply with EVE-at-Risk limits); Ex. 2, Gardi Dep. Tr. at 244:24-246:3 (same); Ex. 3, Kruse Dep. Tr. at 141:7-142:19 (same); Ex. 4, December 2020 ALCO Packet at 159–61 (same); Ex. 5, Busch Dep. Tr. at 218:11-23 (ALCO and Beck rejected Busch's 2021 alternative investment recommendations); Ex. 6, Haider Dep. Tr. at 153:16-24 (testifying that the Bank should have adhered to policy limits on interest rate risk).)

In addition, the FDIC-R's liability experts, Scott Warman and Sam Davis, have both opined that the Holding Company and the Bank should not have invested a massive influx of

concentrated, unstable, and uninsured COVID surge deposits in long-term, fixed-rate securities in breach of EVE-at-Risk limits and prudent-banking principles. Davis and Warman have both opined that the Holding Company and Bank should have reduced interest-rate risk by purchasing lower-duration securities, holding more cash, and holding more available-for-sale securities and hedging them. For example, Warman has opined as follows:

> Once these EVE breaches began in September 2020, these management and Board level committees should have implemented a plan to limit future investments to short duration instruments (including retaining more cash or very short duration securities) and should not have permitted continued long duration mortgage-backed securities purchases with heightened extension risk until SVBFG and SVB were at least again operating within their own risk limits.  The future investments should have also been made in a way that made the movement back within thresholds sustainable given the duration extension risk already present in the portfolio.  That is to say, care should have been given to purchase bonds like shorter term Treasuries which would not extend when interest rates rose, as this extension would have logically driven the Bank back out of compliance with its own risk thresholds.  This interest rate risk was clearly a foreseeable risk, yet it was ignored repeatedly throughout 2021.

(ECF 295-3, Warman Opening Rpt., ¶ 153.)

As another example, Davis notes that "BlackRock showed the Holding Company through hypothetical portfolios that the Bank could comply with its EVE risk metrics by taking less duration risk.  The Holding Company disregarded this approach and instead pursued investments in longer-duration securities that exacerbated the breaches of EVE." (ECF 295-8, Davis Opening Rpt. ¶ 106; *see also id.* ¶¶ 106, 114.) Indeed, the Bank was an extreme outlier among its peer banks in terms of the amount of long-duration securities designated as held-to-maturity, among other metrics. (*E.g.,* ECF 295-3, Warman Opening Rpt. at 42, 47-48, 60; ECF 295-4, Warman Rebuttal Rpt. at 15-18, 21, 24.)

The FDIC-R's experts also testified about various alternative options in their depositions. For example, Warman testified that to remediate the near-continuous EVE-at-Risk breaches, the Bank should not have continued to purchase long-duration securities and instead should have reduced the duration of its assets by, among other things, holding more cash or purchasing shorter-duration securities. (Ex. 7, Warman Dep. Tr. at 146:6-148:4.) When asked specifically how much cash or shorter-duration securities should have been purchased instead of long-term, extendable mortgage-backed securities, Warman noted that the precise amount is a matter of arithmetic. (*Id.* 148:16-155:8, 162:22-163:19.)

In his opinion, Malek did that arithmetic to create an alternative investment portfolio that complies with EVE-at-Risk. As Malek explained in his report,

> I computed the damages on the underlying securities using a "Minimally Compliant EVE Based Damages Approach." This approach constructs a but-for world where the securities portfolio was, on a short-term basis, minimally compliant with SVBFT and SVB's EVE-at-Risk metrics to determine which portion of the underlying securities would not have been purchased to compute damages and the remainder held in cash or cash equivalents.  To compute EVE-at-Risk in the but-for world, I used SVBFG and the Bank's existing EVE-at-Risk modeling approach and reduced the securities purchased on a quarterly basis (relative to the securities purchased in the actual world) so that the inner EVE-at-Risk thresholds were not breached. . . .  I select the securities for which I compute the Damages from those which I identify quantitatively as having relatively high components of risk, based on a combination of long duration and low yield.  For . . . the Minimally Compliant EVE-Based Approach, this results in the Bank not purchasing in the but-for worlds varying degrees of MBS securities given that those were the securities with the highest negative impact on EVE-at-Risk and the worst risk-adjusted returns given their long term and duration, significant duration extension risk, and relative yield.

(ECF 295-16, Malek Damages Rpt., at 8; *see also* Malek Tr. 52:25-53:11.) Malek also computed regulatory capital ratios and net-interest income at risk in his Minimally Compliant EVE Based Damages Approach. Those computations show that in this alternative world—where dramatically fewer long-term mortgage-backed securities are purchased—there would be no material change in the Bank's compliance with regulatory-capital ratios and net-interest-income-at-risk limits. (Malek Supplemental Disclosure, ECF 295-19.)

The Liquidating Trust mischaracterizes an excerpt in Malek's opening report by falsely asserting that the excerpt somehow disclaims the Minimally Compliant EVE Based Damages Approach. Malek actually opined that although this but-for world represented an improvement to the Bank's actual securities portfolio, it *should have gone further* in limiting the amount of long-term, extendable mortgage-backed securities:

> To be clear, … the Minimally Compliant EVE-Based Damages Approach [is] not presented as [a] prudent alternative investment approach[] in a but-for world based upon the Bank's risk profile, but rather to demonstrate that even these limited constraints on SVBFG and SVB's actual investments in a but-for world would have avoided several billion dollars in losses, far in excess of SVBFT's claim[.]

(ECF 295-16, Malek Damages Rpt., at 9; *see also* Malek Tr. 66:9-24.)

The Holding Company and Bank had a variety of options to prudently manage interest-rate risk and comply with EVE-at-Risk limits. Warman and Davis did not construct an *optimal* alternative portfolio because the FDIC-R is not required to show an optimal portfolio to prevail. Instead, they opined on various options to address the Bank's extreme interest-rate risk, all of which would have been more prudent than what the Holding Company and Bank actually did. Malek then modeled one such alternative consistent with those liability opinions: not buying the riskiest mortgage-backed securities and instead holding more cash to comply with EVE-at-Risk limits. This scenario is conservative from a damages perspective as modeling higher yielding assets beyond cash would have increased the FDIC-R's damages. (Malek Dep. Tr. 59:4-24.)

## CONCLUSION

The Court should deny the Liquidating Trust's motion in limine number two.

Dated: April 30, 2026

By: */s/ Lawrence H. Heftman*
Lawrence H. Heftman

One of the Attorneys for the Federal Deposit Insurance Corporation as Receiver for Silicon Valley Bank