United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

SVB FINANCIAL TRUST,

              Plaintiff,

      v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, AS RECEIVER FOR
SILICON VALLEY BANK, et al.,

              Defendants.

Case No.  5:24-cv-01321-BLF

**ORDER RE MOTIONS *IN LIMINE***

[Re: ECF Nos. 288, 289, 290, 291, 296, 297, 298, 299, 300]

Before the Court are SVB Financial Trust's ("Trust") four motions *in limine* ("MILs"), *see* ECF Nos. 288, 289, 290, 291, and Federal Deposit Insurance Corporation's ("FDIC") five MILs, *see* ECF Nos. 296, 297, 298, 299, 300.  All MILs are opposed.  *See* ECF Nos. 311, 312, 313, 314, 315, 316, 317, 318, 319.  The Court held the Final Pretrial Conference on May 7, 2026, and issued oral rulings on the Parties' MILs.  ECF No. 327.  The Court subsequently issued orders approving and adopting the Parties' Joint Pretrial Statement, *see* ECF No. 326, and setting trial schedule and procedures, *see* ECF No. 325.

For the reasons stated at the pretrial conference and set forth below, the Court rules on the Parties' MILs as follows.

## I.    BACKGROUND

The parties are familiar with the facts of this case, which the Court summarizes here as relevant.  *See* ECF No. 110.

The collapse of Silicon Valley Bank ("Bank") was one of the largest bank failures in U.S. history.  The Bank was an FDIC–insured, state-chartered bank headquartered in Santa Clara, California, and owned by SVB Financial Group ("Holding Company").  ECF No. 1 ("Compl.")

United States District Court
Northern District of California

¶¶ 1–3, 42–44.  On March 10, 2023, the California Department of Financial Protection and Innovation ("DFPI") closed the Bank and appointed FDIC as receiver.  Compl., Ex. 3 at 1.

On March 5, 2024, the Holding Company (now represented by the Trust)[1] filed a twelve-count complaint against FDIC, alleging that FDIC had blocked the Holding Company from accessing approximately $1.93 billion of its deposits in the Bank.  *See* Compl. ¶¶ 90–95, 117–19.  FDIC answered, *inter alia*, that the claims were barred because they were set off by claims for the Holding Company's mismanagement of the Bank's investment decisions—including by causing and encouraging the Bank to buy billions of dollars of long-duration, fixed-income debt securities at low interest rates, selling hedges, and paying a $294 million dividend—through certain overlapping officers, directors, and joint committees acting on behalf of both the Holding Company and Bank.  *See* ECF No. 135 ("Answer") ¶ 118.

The litigation was streamlined significantly on May 29, 2025, when the Court approved the Parties' stipulation resolving most of the Trust's claims.  ECF No. 208.  The Parties agreed to dismiss all the Trust's claims from this action except its contract claim, for which FDIC's liability shall be $1.7 billion, reduced by the Trust's liability for any affirmative defenses on which the FDIC prevails.  *Id.* at 3–5.

Four of FDIC's affirmative defenses remain.  ECF No. 233.  First, FDIC argues that the Holding Company aided and abetted the tortious conduct of the officers and directors.  Answer ¶¶ 115–26.  Second, FDIC argues that the Trust cannot recover for damages caused by the tortious conduct of officers and directors acting as dual agents of the Holding Company and Bank.  *Id.* ¶¶ 127–30.  Third, FDIC argues that the Trust/Holding Company cannot take advantage of its own wrongdoing and that its recovery is barred by the doctrine of unclean hands.  *Id.* ¶¶ 136–38.  Fourth, FDIC argues that the Trust's claims must be set off by the $294 million bank-to-parent dividend in December 2022, which FDIC alleges constituted a constructive fraudulent transfer.  *Id.* ¶ 142.

---

[1] Pursuant to an order of a bankruptcy court in the Southern District of New York, *see In re SVB Fin. Grp.*, No. 23-10367-MG (Bankr. S.D.N.Y. Aug. 2, 2024), ECF No. 1379, the Trust was substituted as plaintiff on February 3, 2025.  *See* ECF No. 146 (order granting stipulation to substitute plaintiff and amend case caption).

2

On February 23, 2026, the Court granted FDIC's motion for partial summary judgment, holding that (1) California's business-judgment rule does not apply to the conduct of officers of the Holding Company and Bank, and (2) the Trust is precluded from asserting that FDIC failed to mitigate its damages.  ECF No. 286 at 8.

## II.    LEGAL STANDARD

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  "[R]elevant evidence is admissible unless another rule or federal law provides otherwise, and that irrelevant evidence is inadmissible."  *Crawford v. City of Bakersfield*, 944 F.3d 1070, 1077 (9th Cir. 2019); *accord* Fed. R. Evid. 402 (providing that relevant evidence is admissible unless precluded by the Constitution, federal statute, the federal rules of evidence, or a rule prescribed by the Supreme Court).  Rule 401's "basic standard of relevance . . . is a liberal one."  *Crawford*, 944 F.3d at 1077 (alteration in original) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 587 (1993)).  "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403; *see also United States v. LeMay*, 260 F.3d 1018, 1027 (9th Cir. 2001).

## III.    DISCUSSION

### A.  The Trust's MILs

#### 1.  MIL No. 1 to Exclude Bank Closure and Post-Closure Evidence

In its MIL No. 1, the Trust seeks to exclude all evidence of events occurring after March 8, 2023—including the March 9, 2023, bank run and March 10, 2023, bank closure—on two grounds.  First, the Trust argues that this evidence is subject to exclusion under Rules 401 and 402 because it is not "relevant to any of FDIC-R's allegations or its causation and damages theory" and that in fact "FDIC-R itself contends that these events are not part of its liability or causation and damages theory."  ECF No. 288 at 1.  Second, the Trust urges that the evidence in any case should be excluded under Rule 403 because it poses a substantial danger of prejudice by "inviting

United States District Court
Northern District of California

3

impermissible, self-serving hindsight-based evaluation of pre-closure conduct." *Id.* FDIC responds that post-run and post-closure evidence is relevant to causation and damages because it demonstrates that "the misconduct of the Liquidating Trust's agents made the Bank highly susceptible to that run." ECF No. 311 at 1. FDIC further responds that the Trust conflates hindsight with hindsight bias. *Id.* at 5.

The Trust's MIL No. 1 suffers from many of the same defects as the Parties' other motions, *see infra*, in that it is so broad in scope that the Court cannot give a ruling that makes sense prior to the presentation of evidence. In any case, the Court disagrees with the Trust's suggestion that post-closure evidence could only be relevant to damages and causation if FDIC's theory of damages was based on the bank run and failure. As FDIC correctly points out, such evidence is relevant to its affirmative defense that "the officers and directors' mismanagement of interest-rate and liquidity risk put the Bank in a highly compromised financial position susceptible to the bank run." ECF No. 311 at 2. Stated simply, the Court declines to categorically exclude all closure and post-closure evidence based on an argument that at this stage point boils down to semantics, and the liberal relevance standard contemplated by Rules 401 and 402 is particularly ill-suited to warrant such exclusion.

Although the Trust's arguments about the need to avoid hindsight bias are well taken, the Court cannot exclude evidence without considering the context in which it will be presented and the purpose for which it will be offered. The only evidence that the Trust identifies for exclusion in this respect is the Barr Report,[2] which it argues should be excluded because "[c]ourts in this district have recognized that retrospective government conclusions warrant exclusion under Rule 403 when admitting them would invite the factfinder to substitute the agency's conclusions for its own assessment under the applicable legal standard." ECF No. 288 at 4 (citing *United States v. Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927 (N.D. Cal. 2016)). The Trust's reliance on Pacific Gas & Electricity—a criminal trial tried to a jury—is misplaced. There, the district court

---

[2] Michael S. Barr, *Review of the Federal Reserve's Supervision and Regulation of Silicon Valley Bank* (Apr. 18, 2023), https://www.federalreserve.gov/publications/files/svb-review-20230428.pdf.

United States District Court
Northern District of California

excluded a report by the National Transportation Safety Board regarding a catastrophic pipeline explosion because it did not address the criminal obstruction issue before the jury and hence was likely to be prejudicial. *Id.* at 947–48. The concerns discussed by the district court in *Pacific Gas & Electricity* are simply not applicable here.

The Trust's MIL No. 1 to exclude bank closure and post-closure evidence is accordingly DENIED.

### 2. MIL No. 2 to Exclude Testimony of Prudent But-For Worlds

In its MIL No. 2, the Trust seeks to prohibit FDIC's experts from testifying as to "what the Bank should have done differently with the deposit influx it faced during the global pandemic" under Federal Rules of Civil Procedure 26 and 37 and Federal Rule of Evidence 403. The Trust argues that FDIC's experts (namely, Mr. Davis, Mr. Warman, and Mr. Malek) do not offer any analysis or opinion regarding how a prudent banker should have constructed an investment portfolio under the circumstances in this case and cannot supply such opinions at trial. ECF No. 289 at 2–3. FDIC responds that it is not required to "prove" an alternative investment portfolio and that its experts disclosed in their reports the subject of their planned testimony: "alternative approaches . . . that could have been employed to reduce . . . risk." ECF No. 312 at 2.

An expert must disclose all of the opinions he or she intends to offer, along with the facts, data, and analysis on which those opinions rely. Fed. R. Civ. P. 26(a)(2)(B). Parties may not present information at trial that was not properly disclosed. *See* Fed. R. Civ. P. 37(c)(1). Undisclosed expert opinions are accordingly subject to exclusion. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001); *Wyman v. Sunbeam Prods., Inc.*, No. 17-cv-04926-BLF, 2021 WL 1531000, at *3 (N.D. Cal. Apr. 19, 2021).

All agree that expert witnesses may not testify to opinions that they did not state in their reports. The Court cannot rule that the opinions offered were not previously disclosed because those opinions are not currently before it. The fact that FDIC's experts did not offer a "perfect" or "optimal" investment strategy does not mean they are categorically barred from opining as to (properly disclosed) alternatives that they believe would have been better. *See, e.g.*, Warman Opening Report ¶ 153 (opining that the Bank's management "should have implemented a plan to

United States District Court
Northern District of California

5

limit future investments to short duration instruments . . . and should not have permitted continued long duration mortgage-backed securities purchases with heightened extension risk"). To the extent that FDIC's experts attempt to offer undisclosed opinions at trial, the Trust is free to object at that time.

The Trust's MIL No. 2 to exclude testimony of prudent but-for worlds is accordingly DENIED.

### 3. MIL No. 3 to Exclude Testimony of Scott Warman or Sam Davis

In its MIL No. 3, the Trust requests that the Court order FDIC to choose between whether Mr. Warman or Mr. Davis will testify at trial, urging that their combined testimony is cumulative under Rule 403. In support of its argument, the Trust provides several excerpts from Mr. Warman and Mr. Davis's expert reports that it submits are "nearly identical." ECF No. 290 at 2. FDIC responds that Mr. Warman and Mr. Davis have "different professional experience in different key banking roles" and will accordingly offer opinions using "different analytical frameworks," with Mr. Warman focusing on alleged asset-liability-management failures and Mr. Davis focusing on the standards of care applicable to banking officers and directors. ECF No. 313.

"The exclusion of relevant, but cumulative, evidence is within the sound exercise of the trial court's discretion." *United States v. Marabelles*, 724 F.2d 1374, 1382 (9th Cir. 1984); *see also Davis v. Mason Cnty*, 927 F.2d 1473, 1484 (9th Cir. 1991) (affirming exclusion of cumulative expert testimony). Rule 403 is "'an extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence.'" *United States v. Patterson*, 819 F.2d 1495, 1505 (9th Cir. 1987) (quoting *United States v. Meester*, 762 F.2d 867, 875 (11th Cir. 1985)). Evidence that is otherwise relevant must be "needless[ly] cumulative" to warrant exclusion. *United States v. Skillman*, 922 F.2d 1370, 1374 (9th Cir. 1990) (alteration in original) (internal quotation marks omitted).

The Trust's request is premature. Mr. Warman and Mr. Davis have not testified, so the Court cannot determine the degree of overlap between their testimony and, more importantly, whether that the degree of overlap is so extreme as to render the opinion of one or the other so superfluous as to be unhelpful and warrant exclusion. *See Montgomery v. Wal-Mart Stores, Inc.*,

United States District Court
Northern District of California

6

United States District Court
Northern District of California

No. 12-cv-03057-AJB-DHB, 2015 WL 11233382, at *4 (S.D. Cal. Sept. 24, 2015) ("Rule 403, as a trial-oriented rule, is properly employed only after the Court has a complete record upon which to determine whether, in this case, there will be 'needless presentation of cumulative evidence.'" (quoting Fed. R. Evid. 403)).  FDIC represents that Mr. Warman and Mr. Davis will opine as to different aspects of risk management from different backgrounds.  *See* ECF No. 313 at 3.  If that prediction turns out to be overly optimistic, the Trust will no doubt be free to renew its objection at trial.

The Trust's MIL No. 3 to exclude the testimony of Mr. Warman or Mr. Davis is accordingly DENIED.

### 4.  MIL No. 4 to Exclude Testimony of Robert Jackson Regarding Compensation of Bank Executives

In its MIL No. 4, the Trust seeks to preclude Mr. Jackson from testifying regarding the purported compensation of three Bank executives as improperly undisclosed expert testimony under Rule 37, on the grounds that he "admitted that his expert report overstated the amount of that purported compensation by *at least* $20 million" and FDIC refused to disclose the "models and calculations behind his estimates of that purported compensation."  ECF No. 291 at 1.  FDIC responds that Mr. Jackson has satisfied his disclosure obligations by "provid[ing] all the data on which he relied in a total of 12 Excel-readable files" and "thoroughly explained his calculations and analysis."  ECF No. 314 at 1.  FDIC further responds that the Trust has repeatedly failed to articulate "any specific example of what [it] claimed was missing."  *Id.* (internal quotation marks and citation omitted).

Rule 26(a)(2)(B)'s disclosure requirement includes not only an expert's underlying conclusions but also the "datasets, models, and calculations that [the expert] considered and relied on in forming his opinions."  *Eisen v. Day*, No. 21-cv-05349-VKD, 2024 WL 1244482, at *6 (N.D. Cal. Mar. 21, 2024).  "The rule is 'worded specifically to provide the opposing party with access to all materials reviewed or considered by the expert.'"  *Id.* (quoting *Utne v. Home Depot U.S.A., Inc.*, No. 16-cv-01854-RS-SK, 2022 WL 4139256, at *3 (N.D. Cal. May 9, 2022)).

Mr. Jackson's apparent $20 million overstatement is a matter for cross-examination, not exclusion. The Trust does not argue that this discrepancy was the product of an improper methodology or lack of qualifications, and it accordingly goes to the credibility of Mr. Jackson's testimony rather than its admissibility. Based on the Parties' representations at oral argument, the Court is unable to determine whether Mr. Jackson complied with his disclosure obligations by producing the intermediate calculations underlying his opinions (or even what the Trust was seeking from him, for that matter). The Court will accordingly allow the Trust to make a clear, reasonably detailed request for disclosure and direct that Mr. Jackson answer whether there exist any undisclosed intermediate calculations. Given that the Trust has apparently made "*eight separate requests*," this should not be a tall order. ECF No. 291 at 1. In the event such intermediate calculations and data exist and have not been turned over, FDIC is ORDERED to produce them and to make Mr. Jackson available for further deposition.

The Trust's MIL No. 4 is accordingly CONDITIONALLY GRANTED IN PART and DENIED IN PART. The Court leaves it to the Parties to meet and confer regarding a timeline pursuant to this order.

**B. FDIC's MILs**

    **1. MIL No. 1 to Exclude Argument or Evidence that FDIC's Conduct Caused Damages or that the Bank Run, Bank Failure, or Interest Rate Changes Were Superseding Causes of Any Damages**

In its MIL No. 1, FDIC seeks an order prohibiting the Trust from arguing or presenting evidence that "the FDIC-R's own conduct in selling securities increased its losses" or that its losses were caused by the "the run on the Bank on the Bank" or "changes in interest rates." ECF No. 296 at 1. With respect to FDIC's own conduct in selling the securities, FDIC contends that the Trust is attempting to circumvent the Court's summary judgment order—which prohibited the Trust from arguing that FDIC failed to mitigate its damages. With respect to the Trust's alternative theories of causation, FDIC urges that the Court should preclude presentation on these "undisclosed superseding-cause defense[s]," which, in any case (according to FDIC) fail as a matter of law. *Id.* at 2. The Trust responds that it offers evidence regarding post-closure sales to

show that FDIC cannot prove causation (not to assert an affirmative mitigation defense) and that the Trust has repeatedly taken the position that FDIC will not be able to show causation.  ECF No. 315 at 2.

The decision whether to exclude an undisclosed affirmative defense is committed to the discretion of the trial court, with the primary inquiry being whether the other party would be prejudiced in the absence of exclusion.  *Magana v. Com. of the N. Mariana Islands,* 107 F.3d 1436, 1446 (9th Cir.1997); *see also Karoun Dairies, Inc. v. Karlacti, Inc.*, No. 08-cv-01521-AJB-WVG, 2014 WL 3340917, at *3 (S.D. Cal. July 8, 2014).

As was the case with many of the Trust's motions, *see supra*, it is inconceivable how the Court could possibly decide FDIC's MIL No. 1 in the absence of evidence.  *See, e.g.*, *Weaver v. Bank of Am. Nat'l Tr. & Sav. Ass'n*, 59 Cal. 2d 428, 434 (1963) (explaining that the foreseeability of intervening risks "generally frames a question for the trier of fact").  The Court has already ruled that the Trust may not present a mitigation defense, but this does not mean that the Court will preclude evidence of other causes of financial loss just because FDIC urges that it is being used for the improper purpose of proving up that it failed to mitigate its damages.  As the Court made clear at the hearing, the Trust will not be permitted to argue that FDIC should have taken a different approach in discharging its statutory duty to dispose of the Bank's assets.  To the extent there is any evidence that the Trust seeks to admit which FDIC contends is properly characterized as mitigation evidence, an objection will need to be presented at trial when the evidence is offered.

FDIC's framing of its MIL No. 1 that the Trust should be barred from presenting undisclosed "defenses to affirmative defenses" is unpersuasive and unhelpful.  The Parties' apparent dispute regarding their relevant burdens of proof is largely semantic—FDIC bears the burden to prove causation as an element of its affirmative defenses.  *See Tribeca Cos., LLC v. First Am. Title Ins. Co.*, 239 Cal. App. 4th 1088, 1114 (2015).  To the extent that the Trust seeks to rebut FDIC's evidence by presenting evidence of superseding causes, that is its prerogative.  Whether the evidence will ultimately reflect that the officers and directors' alleged misconduct

was a substantial factor in FDIC's damages is the crux of this case and not suitable for resolution as a motion *in limine*.

FDIC's MIL No. 1 to preclude evidence of FDIC's conduct or argument that the bank run, bank failure, or interest rates changes caused its losses is accordingly DENIED.

### 2. MIL No. 2 to Preclude Argument or Evidence of Lack of Actual Knowledge

In its MIL No. 2, FDIC seeks to preclude the Trust from "disput[ing] that the Holding Company had actual knowledge of any breaches of fiduciary duty" with respect to FDIC's second affirmative defense for aiding and abetting. ECF No. 297 at 1. In support of this position, FDIC vaguely invokes the legal truism that a "corporation has the knowledge of its officers and directors." *Id.* The Trust responds that FDIC's MIL No. 2 should be denied "because it asks the Court to reach a dispositive decision regarding the Holding Company's knowledge and an underlying breach before hearing any evidence." ECF No. 316 at 2–3.

Actual knowledge is an element of FDIC's aiding and abetting affirmative defense, which under California law requires FDIC to prove (1) an underlying breach of fiduciary duty committed by the officers or directors, (2) the Holding Company's actual knowledge that the officers or directors' conduct constituted a breach, (3) the Holding Company's conscious decision to assist the wrongful conduct, and (4) that the Holding Company's substantial assistance or encouragement was a substantial factor in causing harm. *George v. eBay, Inc.*, 71 Cal. App. 5th 620, 641–42 (2021); *see also* Restatement (Second) of Torts § 876(b).

FDIC's MIL No. 2 is too vague for the Court to make a coherent ruling. FDIC does not identify what alleged conduct of the officers or directors it is referring to and has not identified any evidence that it seeks to exclude. To the extent that FDIC seeks a declaration that it has already satisfied its burden of proving actual knowledge because it has identified officers and directors employed by the Holding Company, the Court agrees with the Trust that the motion is an inappropriate request for a "dispositive ruling on a claim." *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n.4 (9th Cir. 2013). It may very well be that FDIC ultimately establishes as a matter of law that the Holding Company had actual knowledge of alleged breaches of its agents

United States District Court
Northern District of California

acting within the scope of their capacity, but absent evidence of the breach of fiduciary duty, the legal issue is simply not before the Court at this time.

FDIC's MIL No. 2 to preclude argument as to actual knowledge is accordingly DENIED.

### 3.  MIL No. 3 to Exclude Certain Testimony of Professor Glenn Hubbard

In its MIL No. 3, FDIC seeks to preclude the Trust's expert witness Dr. Hubbard from opining whether the officers and directors of the Bank and Holding Company met the standard of care for reasonably prudent bankers on two grounds.  First, FDIC argues that he lacks the necessary experience to offer this opinion pursuant to Federal Rule of Evidence 702 because he himself has never been a bank officer or director.  ECF No. 298 at 2–3.  Second, FDIC argues that his testimony as to economic reasonableness based on market perceptions should be excluded under Rules 401 and 402, contending that "[h]is so-called economically reasonable' test is irrelevant because the applicable standard of care is whether the directors and officers acted as prudent bankers."  *Id.* at 4.  The Trust responds that Dr. Hubbard's experience qualifies him to offer his opinions and that economic reasonableness testimony for which he is offered is relevant to the standard of care of a prudential banker under California law.  ECF No. 317 at 2–4.

Federal Rule of Evidence 702 provides that a qualified expert may testify if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."  In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 requires the district court to act as a "gatekeeper" to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."  509 U.S. 579, 589 (1993).  In deciding a *Daubert* challenge, the district court makes findings as to both relevance and reliability based on the soundness of the expert's methodology, not the correctness of their conclusions.  Moreover, the inquiry into admissibility of expert opinion is a "flexible one," where "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."  *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010).

11

United States District Court
Northern District of California

The Trust's economics expert Dr. Hubbard is the Dean Emeritus of the Graduate School of Business of Columbia University, where he is also a Professor in the Department of Economics of the Faculty of Arts.  Hubbard Rep. ¶ 9.  Dr. Hubbard's teaching at Columbia has concentrated on finance, financial markets, macroeconomics, and public economics.  *See id.*  Dr. Hubbard holds an A.M. and Ph.D. in economics from Harvard University.  *Id.* ¶ 10.  Prior to joining the faculty at Columbia, Dr. Hubbard held academic appointments at several other institutions, and before that, he was an advisor to the President of the Federal Reserve Bank of New York from 2007 to 2017.  *See id.* ¶¶ 10, 11.  Dr. Hubbard opines, inter alia, that the Bank's "influx of deposits put pressure on [its] profitability and regulatory capital ratios," that, "[i]n the context of those pressures, [the Bank] made economically reasonable investment decisions," and that its "decisions to invest its remaining deposits in low credit risk, liquid debt instruments were economically reasonable."  *Id.* ¶ 16.

FDIC argues that Dr. Hubbard is not qualified to offer an opinion regarding the reasonableness of the officers and directors' conduct because he has "never worked at a bank, received any banking-specific education or training, acted as a bank officer or director, or served on an asset-liability management committee . . . or other bank committees."  ECF No. 298 at 4–5.  While the Court agrees in principle that his training as an economist is "not a substitute" for such experience, *id.* at 5 the Federal Rules of Evidence do not contemplate such a narrow view of expert qualification, which require only that the expert's "knowledge, skill, experience, training, or education will help the trier of fact."  Fed. R. Evid. 702.  Dr. Hubbard has nearly two decades of experience overseeing large fixed-income investment portfolios involving the same sort of risk appetite metrics as those in this case.  *See* Hubbard Rep. App'x A.  His academic experience as a professor of economics with a specialization in financial markets also qualifies him to opine as to risks and tradeoffs associated with a bank's investment decisions—to the extent FDIC argues that he lacks specific experience making those decisions, that goes to his credibility rather than the admissibility of his testimony.

FDIC also argues that Dr. Hubbard's opinions as to whether the conduct at issue in this case was economically reasonable is irrelevant because "the applicable standard of care is whether

the directors and officers acted as prudent bankers." ECF No. 298 at 4. Insofar as FDIC asserts that California law requires evaluating the officers and directors' conduct under a professional negligence theory (akin to a reasonable medical doctor standard in the medical malpractice context), it is mistaken. This is a corporate director and officer case judged under the ordinarily prudent person standard. Cal. Corp. Code § 309; *see also FDIC v. Castetter*, 184 F.3d 1040, 1046 (9th Cir. 1999) (explaining that directors of California banks need not "possess[] specialized knowledge"). FDIC marshals no authority for its suggestion that California law imposes a different standard of care in this case. Likewise, FDIC's argument that Dr. Hubbard cannot "serve as fill-in for a standard-of-care expert by testifying to how the market perceived the professional's conduct" misses the point. ECF No. 298 at 5. Dr. Hubbard's testimony on this point is one factor out of constellation of factors that the Court may properly consider in ultimately deciding whether the standard of care was satisfied in this case. Cross examination is the proper mechanism for potentially discrediting Dr. Hubbard's opinions, not exclusion.

FDIC's MIL No. 3 to exclude certain testimony of Dr. Hubbard is accordingly DENIED.

### 4. MIL No. 4 to Exclude Regulatory Statements Offered to Show Compliance with the Standard of Care

In its MIL No. 4, FDIC seeks to exclude "regulatory reports of examination, supervisory letters, and other regulatory communications offered to show that the officers or directors . . . met the standard of care" in this case. ECF No. 299. First, FDIC argues that regulatory statements are irrelevant (or that their probative value is substantially outweighed by undue delay and waste of time) because bank regulators do not owe any duties to officers and directors to "warn them of breaches of the standard of care." *Id.* at 2. Second, FDIC argues that the regulatory statements are inadmissible if offered for their truth because they are hearsay. *Id.* at 3. The Trust responds that contemporaneous bank examination reports are in fact relevant to the decisions that FDIC "now challenges as imprudent with the benefit of hindsight" and that they are admissible for their truth as public records under Federal Rule of Evidence 803(8). ECF No. 318 at 3–4.

Federal Rule of Evidence 803(8) creates an exception to the hearsay rule for public records. A document is a record or statement of a public office if it sets out (1) the offices

activities; (2) a matter observed while under a legal duty to report; or (3) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation. Fed. R. Evid. 803(8); *see also United States v. Giacomini*, No. 20-cr-00134-BLF-1, 2022 WL 393194, at *8 (N.D. Cal. Feb. 9, 2022).

As with its MIL No. 3, FDIC's argument regarding the financial examinations' relevance to the standard of care is based on too narrow a conception of the applicable legal standard. On the contrary, reports from federal and state regulators assessing the financial data, market conditions and expectations, and risk metrics that were contemporaneously considered by the officers and directors is relevant to whether they acted as a reasonable person would in their position. FDIC fails to explain why the fact that bank regulators did not owe a fiduciary duty to the Holding Company or Bank to warn them of breaches of the standard of care means that their reports are irrelevant. *See* ECF No. 299 at 2. The Court agrees with the Trust that this evidence is "relevant to the issue of the applicable standard of care and whether [the officers and directors] met that standard." *FDIC v. Van Dellen*, No. 10-cv-04915 DSF-SHX, 2012 WL 12886491, at *2 (C.D. Cal. Oct. 18, 2012) (denying FDIC's motion *in limine* to exclude the Office of Thrift Supervision's examinations and conclusions in action against bank officers).

The Court agrees with the Trust that the examination reports are likely to be admissible for their truth under the public records exception. *See, e.g.*, *FDIC v. Ching*, No. 13-cv-01710-KJM-EFB, 2016 WL 8730685, at *2 (E.D. Cal. Oct. 28, 2016). FDIC's invocation of the "narrow restriction" on Rule 803(8) described by the Fifth Circuit in *United States v. Gluk*, 831 F.3d 608 (5th Cir. 2016), for reports that embody the "positions and opinions of individual staff members of an agency" that the agency later "disavows" or "declines to accept" misses the mark. ECF No. 299 (citing *Gluk*, 831 F.3d at 613–14. There is no indication here that the either the Federal Reserve or DFPI "declined to accept" or otherwise repudiated the examination reports at issue here. To the extent that FDIC argues that the Barr Report constitutes such a disavowal, the Court disagrees. It was only later, in the postmortem reviews, that the earlier regulatory reports were questioned.

14

FDIC's MIL No. 4 to exclude regulatory statements offered to show compliance with the standard of care is accordingly DENIED.

### 5.   MIL No. 5 to Preclude Argument or Evidence that Officers are Protected by the Business Judgment Rule or that Director Involvement Negates Causation

In its MIL No. 5, FDIC seeks to preclude the Trust from arguing that "director 'oversight,' joint decisionmaking, subsequent approval, or other director involvement in officer decisions shields the officer decisions with the business-judgment rule's protection."  ECF No. 300 at 3. The Trust responds that FDIC's MIL No. 5 is "not a motion *in limine* at all but rather a thinly veiled attempt at relitigating issues this Court has already considered."  ECF No. 318 at 1.

The Court has already held that the Bank and Holding Company's officers are subject to an ordinary negligence standard.  As the Court explained at the partial summary judgment hearing, there are three broad categories of decisionmaking at issue in this case "conduct of officers working as officers alone," "conduct . . . of officers and directors jointly making decisions," and "decisionmaking by directors only."  ECF No. 283 at 10:6–10.  The Court explained that, for the so-called hybrid decisions falling into the second category, FDIC will have to "present evidence on the decisionmaking process that the Holding Company implemented . . . so [the Court could] understand what the consequence of the Board's role in the decisionmaking was."  *Id.* at 43:6–14. To the extent that FDIC requests that the Court now hold as a matter of law that regardless of whether officers participated in joint decisions along with directors, they remain subject to the ordinary negligence standard—without offering up a single example and before the Court has the opportunity to consider any evidence—the Court declines to do so.

FDIC's MIL No. 5 to preclude evidence or argument that hybrid decisions are subject to the business judgment rule is accordingly DENIED.

## IV.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) The Trust's MIL No. 1 is DENIED.

(2) The Trust's MIL No. 2 is DENIED.

(3) The Trust's MIL No. 3 is DENIED.

United States District Court
Northern District of California

(4) The Trust's MIL No. 4 is CONDITIONALLY GRANTED IN PART and DENIED IN PART. The Parties SHALL meet and confer regarding a statement by the Trust of the intermediate work product whose production it seeks from Mr. Jackson. Mr. Jackson shall notify the Trust if such documents exist and, to the extent that they do, FDIC is ORDERED to produce them and make Mr. Jackson available for further deposition.

(5) FDIC's MIL No. 1 is DENIED.

(6) FDIC's MIL No. 2 is DENIED.

(7) FDIC's MIL No. 3 is DENIED.

(8) FDIC's MIL No. 4 is DENIED.

(9) FDIC's MIL No. 5 is DENIED.

(10) This order terminates Nos. 288, 289, 290, 291, 296, 297, 298, 299, 300.

**IT IS SO ORDERED.**

Dated: May 12, 2026

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

16